CHRIS BAKER, State Bar No. 181557
cbaker@bakerlp.com
DEBORAH SCHWARTZ, State Bar No. 208934
dschwartz@bakerlp.com
BAKER CURTIS & SCHWARTZ, P.C.
1 California Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 433-1064
Fax:  (415) 366-2525

Attorneys for Plaintiff
MARCIE HAMILTON

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCIE HAMILTON,<br><br>              Plaintiff,<br><br>  vs.<br><br>JUUL LABS, INC.,<br><br>              Defendant. | Case No.:  3:20-cv-3710<br><br>**COMPLAINT**<br><br>1.  **PAGA – LABOR CODE § 1102.5**<br>2.  **PAGA – LABOR CODE §§ 96(k) and 98.6**<br>3.  **PAGA – LABOR CODE § 232 and 1197.5**<br>4.  **PAGA – LABOR CODE § 232.5**<br>5.  **PAGA – LABOR CODE § 432.5**<br>6. **UNFAIR COMPETITION**<br><br>**REQUEST FOR PRELIMINARY AND PERMANENT PUBLIC INJUNCTION** |

## INTRODUCTION

1.     A generation ago, the tobacco industry willfully concealed its harmful and illegal conduct through employee non-disclosure agreements ("NDAs") and other unlawful practices (such as misuse of the attorney-client privilege).  The makers of Pall Mall and Lucky Strike sought and obtained an injunction prohibiting one employee, Jeffrey Wigand, from disclosing information about the industry's manipulation of nicotine and the other public health dangers.  At the risk of being jailed for contempt, Wigand breached his NDA.  He spoke to the press, to

government regulators, to public interest attorneys, and he testified in court. Consequently, the tobacco industry eventually paid more than $300 billion in settlements and faced significant additional regulation. Wigand was nearly bankrupted from the legal fees associated with the tobacco industry's efforts to enforce his NDA and silence him.

2. Some things, apparently, never change.

3. As detailed below, Defendant JUUL Labs, Inc., now 35% owned by Altria (producer of Marlboro cigarettes, among others), **still** seeks to illegally silence current and former employees through NDAs, exit certifications, severance agreements, and other policies and practices (collectively, "confidentiality requirements"). These confidentiality requirements are deeply harmful to JUUL's current and former employees, to the public, and to the State of California. They prevent employee speech, whistleblowing, and competition.

4. JUUL's confidentiality requirements are in gross violation of the California Labor Code and, as detailed below, other California and federal laws. Thus, pursuant to the Private Attorneys General Act (PAGA) and the Unfair Competition Law, Plaintiff Marcie Hamilton seeks civil penalties, appropriate injunctive relief, and a declaration that JUUL's confidentiality requirements are illegal, unenforceable, and must be changed.

**PARTIES**

5. Plaintiff Marcie Hamilton is a resident of San Francisco, California. She worked at JUUL from approximately April 2, 2018 to March 2019 as its Director of Program Management. As a high-level managerial employee, she reported directly to JUUL's Senior Vice President of Product Management, who in turn reported to JUUL's Chief Executive Officer.

6. The State of California is the legal entity upon whose behalf the PAGA claims are brought. Hamilton acts as the State's proxy under PAGA.

7. All JUUL's current and former employees that are or were subject to JUUL's confidentiality requirements are aggrieved employees within the meaning of PAGA. Hamilton also seeks the appropriate share of any civil penalties on behalf of and for the benefit of these aggrieved employees. She also seeks a preliminary and permanent injunction on behalf of the

public.

8. On information and belief, more than 3000 aggrieved employees have been subject to the legal violations that are the subject of this case. They have collectively worked tens of thousands, if not hundreds of thousands, of pay periods.

9. Defendant JUUL Labs, Inc. is incorporated in Delaware. In December 2018, Altria, one of the largest tobacco companies in the world, invested $12.8 billion in JUUL in exchange for 35% of the company. Altria is a Virginia corporation and its principle executive offices are located in Virginia. Upon acquiring its stake in JUUL, Altria appointed KC Crosthwaite, an Altria senior executive based in Virginia, as its observer on JUUL's Board of Directors.

10. In September 2019, JUUL appointed Crosthwaite as its Chief Executive Officer.

11. On information and belief, soon after Crosthwaite's appointment, JUUL took steps to sell its San Francisco office building at 123 Mission St. JUUL currently leases 20,000 square feet or more of office space in Washington, D.C.

12. JUUL has also concluded that the city of San Francisco is hostile to its business. According to a May 5, 2020 news report by the Wall Street Journal, JUUL has announced that it is moving its corporate headquarters from San Francisco to Washington, D.C. as part of a restructuring. It is also moving its corporate headquarters in an effort to repair its relationships with federal regulators. On information and belief, this move has already occurred in relevant respects.

13. In the fall of 2019, and again in May 2020, JUUL announced layoffs of large parts of its workforce.

14. On information and belief, Crosthwaite currently resides with his wife and family in Virginia, and Crosthwaite's primary physical work locations for JUUL are in Washington, D.C. and Virginia. This is especially so in light of the current pandemic.

15. On information and belief, JUUL's Chief Legal Officer resides in the Washington D.C. Metropolitan Area and his primary physical work location is JUUL's Washington, D.C. office.

16. On information and belief, five of Crosthwaite's direct reports – including JUUL's Chief Operations Officer, Chief Quality Officer, and Chief Growth Officer – have residences and primary physical work locations in places other than San Francisco, California.

17. On information and belief, executives currently employed by Altria continue to assert considerable influence, direction and control over JUUL. These executives have residences and primary physical work locations in places other than San Francisco, California.

18. JUUL's center of direction, control, and coordination is not a single place in San Francisco, California. JUUL is not a citizen of California.

## JURISDICTION AND VENUE

19. This Court has diversity jurisdiction of this case. 29 U.S.C. § 1332. The amount in controversy far exceeds $75,000. At the time of the filing of this suit, Hamilton and JUUL are citizens of different states. Hamilton is a citizen of California. Under 29 U.S.C. § 1332(c), JUUL is not a citizen of California. JUUL is instead a citizen of Delaware (its place of incorporation). The current location of JUUL's principle place of business or "nerve center" is a physical location in either Washington, D.C. or Virginia.

20. Venue is proper in the Northern District of California because Hamilton resides in the Northern District and JUUL conducts business in the Northern District.

## BACKGROUND

21. It is unfortunately well-established that employers rely on illegal NDAs and other unlawful employment requirements to prevent whistleblowing, competition, and speech by their employees. This is because "employees, having no reason to familiarize themselves with the specifics of California's employment law, will tend to assume that the contractual terms proposed by their employer. . . are legal, if draconian. Furthermore, even if they strongly suspect that a . . . clause is unenforceable, such employees will be reluctant to challenge the legality of the contractual terms and risk the deployment of [the employer's] considerable legal resources against them. Thus, the *in terrorem* effect of the Agreement will tend to secure compliance with its illegal terms in the vast majority of cases." *Latona v. Aetna U.S. Healthcare Inc.* (C.D. Cal. 1999) 82 F.Supp.2d 1089, 1096.

22.     Armed with these illegal NDAs and confidentiality requirements, and in reliance on their terrorizing effect, powerful employers, often with the help of prominent law firms, threaten employees with termination, financial ruin and more if they dare disclose corporate wrongdoing or engage in other relevant protected conduct.  To identify three notorious examples, a Theranos whistleblower faced threats of litigation and six figures in legal fees for disclosing information about Theranos's fraud.  Carreyrou, <u>Theronas Whistleblower Shook the Company – and His Family</u>, Wall Street Journal (Nov. 18, 2016).  Harvey Weinstein's serial and horrendous misconduct was hidden and facilitated through the use of employer-mandated NDAs.  Helmore, <u>Harvey Weinstein lawsuit: attorney general says 'we have never seen anything as despicable."</u> The Guardian (Feb. 12, 2018) (linking to New York State complaint against Weinstein detailing use of NDAs to prevent reporting of Weinstein's illegal conduct).  And, of course, Jeffrey Wigand lost nearly everything because of the tobacco industry's efforts to silence him with an NDA, lest he disclose its unlawful and unethical conduct.  Lyman, <u>A Tobacco Whistle-Blower's Life Is Transformed</u>, the New York Times (Oct. 15, 1999).

23.     JUUL currently faces numerous government investigations arising from its business practices, including as it relates to the use of its products by minors.  JUUL also faces numerous administrative and court actions (by governments and otherwise) arising from its business practices, including as it relates to its relationship with Altria and the health dangers of its products.

24.     JUUL relies on NDAs and other confidentiality requirements to prevent its current and former employees from providing information relevant to these investigations and actions.   JUUL relies on NDAs and other confidentiality requirements to prevent disclosure of its unlawful and unethical business practices.  JUUL's use of illegal NDAs and other confidentiality requirements violate California law.

///

///

///

///

## FACTS

### JUUL's Confidentiality and Non-Disparagement Agreement

25. On March 22, 2018, Hamilton accepted an offer to work for JUUL as its Director of Program Management. As an express condition of her employment, JUUL required Hamilton to sign its standard "Proprietary Information and Invention Assignment Agreement" ("NDA"). On information and belief, JUUL has a policy of requiring all of its employees to sign this standard or a substantially similar NDA. JUUL's offer letter to Hamilton, states that: "this offer, and employment pursuant to this offer, is conditioned upon" . . . "[y]our signed agreement to, and ongoing compliance with, the terms of the enclosed [NDA]." On information and belief, all JUUL employees receive an offer letter with similar terms.

26. The NDA states "Employee shall at all times during the term of the Employee's employment with the Company and thereafter, hold in strictest confidence, and not use . . . or disclose to any person, firm, or corporation, without written authorization from the Company's Board of Directors (the "Board"), any Confidential Information of the Company." The NDA defines "Confidential Information" to mean, essentially, <u>everything</u> related to JUUL, including: customers (including those with whom the Employee merely became "acquainted" during the term of Employee's employment), "products," "markets," a laundry list of other categories of items, "other business information of the Company;" and "information disclosed by the Company to Employee and information developed or learned by Employee during the course of employment with Company." But that is not all.

27. The NDA also contains a non-disparagement provision. It defines Confidential Information to include: "all information of which the unauthorized disclosure <u>could be detrimental to the interests of the Company</u>, whether or not such information is identified as Confidential Information."

28. The NDA contains no "carve-outs" for whistleblowing under Labor Code § 1102.5, the SEC Rules, or any other law, the disclosure of potentially illegal conduct under Government Code § 12964.5, the disclosure of wages under Labor Code §§ 232 and 1197.5, the disclosure of working conditions under Labor Code § 232.5, or the exercise of free speech rights

under Labor Code §§ 96(k) and 98.6.   The NDA does not contain a notice of immunity concerning the disclosure of trade secrets for the purpose of whistleblowing, as required by the Defend Trade Secrets Act.  Instead, the NDA states: "Employee agrees that <u>Employee</u> bears the burden of proving that given information or materials are <u>not</u> confidential."

29. The NDA requires employees to "execute any proper oath or verify any proper document required to carry out the terms of this Agreement."   It states that: "In the event of the termination of the Employee's employment, Employee hereby covenants and agrees to sign and deliver the 'Termination Certificate' attached hereto as <u>Exhibit C</u>."

30. The NDA also requires that employees agree that "for a period of twelve (12) months immediately following the termination of Employee's relationship with the Company for any reason . . . the employee shall not either directly or indirectly solicit, induce, recruit, or encourage any of the Company's employees to leave their employment, or attempt to solicit, induce, recruit, encourage or take away employees of the Company, either for Employee or any other person or entity."

31. The NDA has no temporal or geographic limitation.  It lasts forever.  It also purports to give JUUL the right to enforce the agreement "by injunction, specific performance or other equitable relief, without bond" because "Employee may have access to and become acquainted with the Confidential Information of the Company."  The NDA also makes clear that injunctive relief is not JUUL's sole remedy in the event of an employee breach.  An employee may also be held liable to JUUL for monetary damages.

32. The NDA unlawfully prohibits whistleblowing, competition, and speech.   It is, among other things, an unlawful restrictive covenant that has as one well-established purpose the suppression of wages.

The Termination Certificate

33. On March 15, 2019, JUUL informed Hamilton that it had decided to terminate her employment.  It required her to sign the "Termination Certificate" that all employees must agree to sign as a condition of employment. The Certificate requires employees to certify they have "complied with all the terms of the [NDA]."  The Certificate further states:

> In compliance with the [NDA], I will preserve as confidential all trade secrets, confidential knowledge, data, or other proprietary information, relating to products, processes, know-how, designs, formula, developmental or experimental work, computer programs, data bases, other original works of authorship, customer lists, business plans, financial information <u>or other subject matter pertaining to any business of the Company or any of its employees, clients, consultants, or licensees.</u>

34. In accordance with her contractual obligations, Hamilton signed the Termination Certificate. On information and belief, and consistent with their contractual obligations, other former JUUL employees have done the same.

35. The Termination Certificate unlawfully prohibits whistleblowing, competition, and speech.

<u>The Severance Agreement</u>

36. In addition to informing Hamilton, on March 15, 2019, of its intent to terminate her employment, JUUL also informed Hamilton it would continue to employ and pay her wages through April 2, 2019, as well as pay her a bonus, if she signed a JUUL severance agreement. This was an important date because employment through April 2, 2019 would allow Hamilton's first tranche of equity to vest.

37. The severance agreement included a general release of claims, including claims arising under the Fair Employment & Housing Act.

38. The severance agreement further required Hamilton to refrain from any "disparagement" of JUUL <u>and</u> "its current and former parents, subsidiaries, related entities and affiliates, and their respective employee benefit plans or funds, officers, directors, shareholders [including Altria, its largest shareholder], partners, employees, agents, trustees, administrators, predecessors, successors, and assigns."

39. The severance agreement further required Hamilton to keep the existence and terms of the severance agreement itself "confidential," even though the agreement contained extensive information about working conditions and wages.

40. On information and belief, JUUL requires all employees to sign agreements with similar terms as a condition of continuing employment, or as a condition of receiving

compensation, wages, or bonuses.

41. Hamilton declined to sign the severance agreement. As a result, JUUL refused to employ her through April 2, 2019 and refused to pay her bonus, resulting in the loss of wages and other compensation. Her equity did not vest.

42. Hamilton continues to be subject to the NDA and Termination Certificate. These documents are restrictive covenants that restrain Hamilton's employment opportunities and suppress her worth in the labor market.

43. Hamilton is in possession of information about her employment with JUUL. The NDA and Termination Certificate prohibit Hamilton from communicating this information to government regulators, government officials, the press, and others. JUUL's confidentiality requirements prohibit all aggrieved employees from engaging in whistleblowing and other conduct protected by California law.

### Other Confidentiality Requirements

44. As alleged in Hamilton's PAGA notice, JUUL also maintains policies and practices that unlawfully prohibit employees from engaging in whistleblowing, seeking new or better work, disclosing information about their wages and working conditions, or otherwise engaging in protected speech under California law.

### JUUL's Knowledge

45. JUUL knows its confidentiality requirements are illegal. Among other things, JUUL is presumed to know the law, and, on information and belief, JUUL received the advice of competent counsel in drafting and promulgating its confidentiality requirements. In addition, when JUUL proposes certain release agreements to employees, it sometimes includes in these release agreements certain carve-outs required by law. Moreover, and as detailed below, on or around August 14, 2019, JUUL received a PAGA notice detailing the manner in which certain of JUUL's confidentiality requirements violate the law.

### Administrative Exhaustion & Pre-Litigation Settlement Efforts

46. Plaintiff filed a PAGA notice with the Labor Workforce & Development Agency ("LWDA") on August 14, 2019. It is attached as Exhibit A. She has heard no response from the

LWDA stating that it intends to investigate the claims alleged in this lawsuit. On September 30, 2019, the parties entered into a tolling agreement in order to determine if a pre-litigation resolution of this matter was possible. The parties engaged in a mediation in January 2020. The claims alleged in this lawsuit were not resolved, and the parties have been unable to reach a resolution since that time.

47. Plaintiff has administratively exhausted her LWDA remedies. To the extent she has not, and for the avoidance of doubt, she will amend her complaint to include all the allegations set forth in this complaint upon the exhaustion of a new PAGA notice period.

48. On information and belief, JUUL still has not changed the illegal confidentiality requirements referenced above. If anything, JUUL continues to aggressively require, implement, and enforce its illegal confidentiality requirements with respect to its current and former employees. It continues to require employees to sign agreements that unlawfully prohibit them from engaging in whistleblowing, competition, and speech.

49. The Private Attorneys General Act was enacted to deter Labor Code violations and unfair competition. PAGA grants courts the same discretion as the LWDA to assess civil penalties. Labor Code § 2699(e)(1). This discretion necessarily includes the discretion to condition any contemplated reduction in civil penalties on an employer's agreement to injunctive relief.

50. Hamilton seeks both civil penalties and negative and affirmative injunctive relief.

## CAUSES OF ACTION

51. Hamilton brings the following claims:

### FIRST CAUSE OF ACTION

### (PAGA VIOLATION OF LABOR CODE § 1102.5(a))

52. Plaintiff incorporates by reference the allegations set forth above to the extent she has exhausted her PAGA administrative remedies with respect to those allegations.

53. Labor Code § 1102.5(a) makes it unlawful for an employer to make, "adopt, or enforce any rule, regulation, or policy preventing an employee from disclosing information to a government or law enforcement agency, to a person with authority over the employee [or to

another employee with the authority to investigate, discuss, or correct the violation], or from providing information to, or testifying before, any public body conducting an investigation, hearing or inquiry," if the employee has reasonable cause to believe that the information discloses a violation of law, "regardless of whether disclosing the information is part of the employee's job duties."

54. As detailed above, JUUL's confidentiality requirements violate Labor Code §1102.5(a). JUUL has adopted and enforced policies preventing employees from disclosing information concerning reasonably-suspected violations of the law to government agencies and public bodies.

55. Labor Code § 1102.5(f) states that, "in addition to other penalties, an employer that is a corporation or limited liability company is liable for civil penalties not exceeding ten thousand dollars ($10,000) for each violation of this section."

56. Additional penalties under PAGA for a violation of Labor Code § 1102.5(a) are "one hundred dollars ($100) for each aggrieved employee per period for the initial violation and two hundred dollars ($200) for each aggrieved employee per pay period for each subsequent violation."

57. Plaintiff seeks from Defendant JUUL Labs, Inc., on behalf of herself, the State of California, and all aggrieved employees, PAGA penalties as set forth above for each employee per pay period within the statutory time frame.

## SECOND CAUSE OF ACTION

**(PAGA VIOLATION OF LABOR CODE §§ 96(k) and 98.6)**

58. Plaintiff incorporates by reference the allegations set forth above to the extent she has exhausted her PAGA administrative remedies with respect to those allegations.

59. Labor Code § 96(k) gives employees the right to engage in "lawful conduct occurring during non-working hours away from the employer's premises." This lawful conduct includes the exercise of free speech rights, as protected by the California and United States Constitutions. Labor Code §98.6(b) makes it unlawful to threaten an employee with discharge for engaging in conduct protected by Labor Code § 96(k).

60. As detailed above, JUUL's confidentiality requirements violate Labor Code § 96(k) and 98.6. Among other things, JUUL threatens employees with discharge if they engage in lawful conduct during non-working hours away from JUUL's premises, including speech of which JUUL does not approve.

61. Penalties under PAGA for a violation of Labor Code §§ 96(k) and 98.6 are "one hundred dollars ($100) for each aggrieved employee per period for the initial violation and two hundred dollars ($200) for each aggrieved employee per pay period for each subsequent violation."

62. Plaintiff seeks from Defendant JUUL Labs, Inc., on behalf of herself, the State of California, and all aggrieved employees, PAGA penalties as set forth above for each employee per pay period within the statutory time frame for each statutory section.

### THIRD CAUSE OF ACTION

### (PAGA VIOLATION OF LABOR CODE §§ 232 AND 1197.5(k))

63. Plaintiff incorporates by reference the allegations set forth above to the extent she has exhausted her PAGA administrative remedies with respect to those allegations.

64. Labor Code § 232 states, among other things, that no employer may "require, as a condition of employment, that an employee refrain from disclosing the amount of his or her wages." Labor Code § 1197.5(k) states, among other things, that "an employer shall not prohibit an employee from disclosing the employee's own wages, discussing the wages of others, inquiring about another employee's wages, or aiding or encouraging any other employee to exercise his or her rights under [Labor Code § 1197.5]."

65. As detailed above, JUUL, through its confidentiality requirements, prohibits employees from disclosing the amount of their wages, discussing the wages of others, and aiding or encouraging other employees to exercise their rights under Labor Code §§ 232 and 1197.5.

66. Penalties under PAGA for a violation of Labor Code §§ 232 and 1197.5 are "one hundred dollars ($100) for each aggrieved employee per period for the initial violation and two hundred dollars ($200) for each aggrieved employee per pay period for each subsequent violation."

67. Plaintiff seeks from Defendant JUUL Labs, Inc., on behalf of herself, the State of California, and all aggrieved employees, PAGA penalties as set forth above for each employee, per pay period, within the statutory time frame for each statutory section.

## FOURTH CAUSE OF ACTION

### (PAGA VIOLATION OF LABOR CODE § 232.5)

68. Plaintiff incorporates by reference the allegations set forth above to the extent she has exhausted her PAGA administrative remedies with respect to those allegations.

69. Labor Code § 232.5 states, among other things, that no employer may "require, as a condition of employment, that an employee refrain from disclosing information about the employer's working conditions."

70. As detailed above, JUUL, through its confidentiality requirements, requires that employees – through signed writings and otherwise – refrain from disclosing information about JUUL's working conditions.

71. Penalties under PAGA for a violation of Labor Code §§ 232.5 are "one hundred dollars ($100) for each aggrieved employee per period for the initial violation and two hundred dollars ($200) for each aggrieved employee per pay period for each subsequent violation."

72. Plaintiff seeks from JUUL Labs, Inc., on behalf of herself, the State of California, and all aggrieved employees, PAGA penalties as set forth above for each employee, per pay period, within the statutory time frame.

## FIFTH CAUSE OF ACTION

### (PAGA VIOLATION OF LABOR CODE § 432.5)

73. Plaintiff incorporates by reference the allegations set forth above to the extent she has exhausted her PAGA administrative remedies with respect to those allegations.

74. Labor Code § 432.5 states that no employer "shall require any employee or applicant to agree, in writing, to any term or condition which is known by such employer . . . to be prohibited by law."

    a. Business & Professions Code §§ 17200 *et seq.* makes certain business practices unlawful.

   b. Business & Professions Code § 16600 and the Cartwright Act make contracts in restraint of trade unlawful.

   c. Government Code § 12964.5 makes it unlawful for an employer, in exchange for a raise or bonus, or as a condition of employment, to require an employee to sign a non-disparagement agreement or other document that purports to deny the employee the right to disclose information about unlawful or potentially unlawful conduct.

   d. Rule 21F-17 of the Securities and Exchange Commission states that "no person may take any action to impede an individual from communicating directly with the [SEC] about a possible securities law violation, including enforcing, or threatening to enforce, a confidentiality agreement."

   e. The Defend Trade Secrets Act requires employers to provide notice to employees in any contract or agreement that governs the use of trade secrets or other confidential information that employees shall not be held civilly or criminally liable for disclosing trade secrets for the purpose of reporting or investigating a suspected violation of law.  18 U.S.C. § 1833.

   f. The law and public policy prohibit employers from requiring employees to sign NDAs or abide by confidentiality requirements that prohibit them from disclosing potentially illegal conduct in furtherance of a federal securities action, a federal False Claims Act violation, or otherwise, to an attorney investigating such unlawful conduct.

   g. As detailed above, Labor Code §§ 96(k), 98.6, 232, 232.5, 1102.5, and 1197.5(k) place strict restrictions on an employer's ability to silence its current and former employees.

75. As detailed above, JUUL, through its confidentiality requirements, require employees to agree in writing to terms and conditions which JUUL knows are prohibited by the above laws.

76.  Penalties under PAGA for a violation of Labor Code § 432.5 are "one hundred dollars ($100) for each aggrieved employee per period for the initial violation and two hundred

dollars ($200) for each aggrieved employee per pay period for each subsequent violation."

77. Plaintiff seeks from Defendant JUUL Labs, Inc., on behalf of herself, the State of California, and all aggrieved employees, PAGA penalties as set forth above for each employee, per pay period, within the statutory time frame.

## SIXTH CAUSE OF ACTION
## (UNFAIR COMPETITION)

78. Plaintiff incorporates by reference the allegations set forth above.

79. Business & Professions Code § 17200 defines unfair competition to include "any unlawful, unfair, or fraudulent business act or practice." Business & Professions Code § 17203 gives courts the power "to make such orders or judgments, including the appointment of a receiver, as may be necessary to prevent the use or employment . . . of any practice which constitutes unfair competition."

80. JUUL engages in unfair competition through its use of NDAs and other confidentiality requirements.

81. As detailed above, Hamilton has suffered injury in fact and has lost money and property as a result of this unfair competition.

82. Hamilton, like all aggrieved employees, remain subject to JUUL's illegal NDA and has been harmed by its confidentiality requirements. This is an ongoing and irreparable public harm.

83. Hamilton thus seeks a preliminary and permanent public injunction against JUUL.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following:

1. A preliminary and permanent public injunction redressing JUUL's ongoing violations of the law, including:

    a. An order prohibiting JUUL from seeking to enforce its illegal confidentiality requirements.

    b. An order requiring JUUL to notify its current and former employees of the Court's injunction, that the at-issue confidentiality requirements are illegal and

unenforceable, and that employees have the right to engage in whistleblowing, competition and speech consistent with the laws identified in this Complaint.

       c.     An order requiring JUUL to modify its confidentiality requirements to bring them into compliance with the laws identified in this Complaint.

       d.     An order requiring JUUL to verify its compliance with the Court's injunction through independent monitoring or other appropriate means.

2. Full and complete civil penalties for each separate violation of PAGA, as to each statutory section, in accordance with the Private Attorneys General Act.

3. Interest on penalties.

4. Attorneys' fees and costs under PAGA, CCP § 1021.5, or any other applicable law or doctrine.

5. All other relief the Court deems proper and just.

Dated:   June 4, 2020                          BAKER CURTIS & SCHWARTZ, P.C.

                                      By:_____/s/ Chris Baker_____
                                             Chris Baker
                                             Attorneys for Plaintiff
                                             MARCIE HAMILTON

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

Dated:   June 4, 2020                          BAKER CURTIS & SCHWARTZ, P.C.

                                        By:_____/s/ Chris Baker_____
                                             Chris Baker
                                             Attorneys for Plaintiff
                                             MARCIE HAMILTON