# Exhibit A



Chris Baker
1 California Street, Suite 1250
San Francisco, CA 94111
tel. (415) 433-1064
cbaker@bakerlp.com
www.bakerlp.com

August 14, 2019

**Via On-Line (& Email)**

Labor & Workforce and Development Agency (LWDA)
Attention: PAGA Administrator
Division of Occupational Safety & Health (DOSH)
Attention: Michael Frye
DOSH Regional Manager
455 Golden Gate Ave., Rm 9516
San Francisco, CA  94102
DOSHREG1SanFrancisco@dir.ca.gov

**Via Certified Mail**

Jerry Masoudi
Chief Legal Officer
c/o Miray Gweon
JUUL Labs, Inc.
560 20th Street
San Francisco, CA  94107-4344

  RE: Request For Relief Under the Private Attorneys General Act

Dear DOSH, LWDA, Mr. Masoudi, and Ms. Gweon:

  This office represents Marcie Hamilton.  Ms. Hamilton worked as JUUL Labs, Inc's Director of Program Management from on or around April 2, 2018 through April 2, 2019.

  Ms. Hamilton seeks to represent the State of California and other current and former employees of JUUL Labs, Inc. ("JUUL") pursuant to Labor Code § 2698 *et seq*.  Hamilton, of course, may bring Labor Code claims as a PAGA representative even though she may not have

DOSH & LWDA
JUUL Labs, Inc.
August 14, 2019
Page 2

been personally affected by certain violations, because she has been subject to "one or more" Labor Code violations.  *E.g., Huff v. Securitas Security Services, Inc.* (2018) 23 Cal.App.5th 745.

The facts and theories upon which Hamilton bases her Labor Code/PAGA claims include, but are not limited to, the following:

1. JUUL has a policy of requiring current and former employees to sign and comply with, as a condition of employment, illegal non-disclosure and non-disparagement agreements (NDAs), policies, and practices ("confidentiality requirements").  These agreements, policies, and practices – which JUUL describes as "ongoing" – prohibit employees from disclosing information about their wages, working conditions, and actual or potentially illegal conduct.  They also constitute unlawful restrictive covenants because they define, essentially, <u>everything</u> as confidential.  For example:

2. As partially detailed in the attached exhibit, the JUUL NDA required of Hamilton prohibits her from ever using or disclosing to **any** third party "confidential information," which is defined to include: "customer lists and customers," "business information," and "<u>all information of which the unauthorized disclosure could be detrimental to the interests of Company, whether or not such information is identified as confidential information.</u>"  The NDA further states that "<u>Employee</u> bears the burden of proving that given information or materials are not "Confidential Information."  Indeed, the JUUL NDA even declares **itself** confidential, though it is obviously a condition of working for JUUL.  And

3. In addition, the NDA required Hamilton to agree to sign, as a condition of employment, an "Exit Certification" that requires her to comply with the JUUL NDA post-employment.  JUUL required Hamilton to sign this termination certification on March 15, 2019 in exchange for continued wages and employment.

4. Moreover, the NDA also includes an illegal restrictive covenant prohibiting Hamilton from soliciting JUUL employees for a twelve month post-employment period.

5. JUUL's policy of requiring employees to sign and comply with illegal NDAs (the same as or having the same effect as Hamilton's) and other confidentiality requirements violates numerous Labor Code provisions, including Labor Code §§ 232, 1197.5 (outlawing employer prohibitions on the disclosure or discussion of wage information), § 232.5 (outlawing employer prohibitions on the disclosure or discussion of working conditions); § 1102.5 (outlawing employer policies prohibiting the disclosure of potentially illegal conduct to government agencies); § 96(k) (outlawing employer prohibitions on employees engaging in lawful conduct during non-work hours, including exercising free speech rights); and § 98.6 (prohibiting employers from threatening to discharge employees for engaging in conduct protected by § 96(k)).

DOSH & LWDA
JUUL Labs, Inc.
August 14, 2019
Page 3

6.	In addition, JUUL's unlawful NDAs and confidentiality requirements violate numerous other laws, including, but not limited to: (1) Business & Professions Code § 16600 and the Cartwright Act (because an overbroad NDA and non-solicitation provision constitute an illegal restraint of trade); (2) the rules of the Securities & Exchange Commission (prohibiting NDAs that prevent employees from communicating with the SEC); (3) the Defend Trade Secrets Act (giving employees an affirmative right to engage in whistleblowing and requiring a notice of immunity in any NDA); (4) public policy and other positive laws in favor of whistleblowing concerning illegal conduct (e.g., Labor Code § 6310, the False Claims Act, etc.); (5) Government Code § 12964.5 (prohibiting NDAs that prevent employees from disclosing potentially illegal conduct); (5) Business & Professions Code § 17200 *et seq.* (stating that illegal or unfair business practices are against the law), and (6) Civil Code § 3513 (a law established for a public reason cannot be contravened by a private agreement).

7.	For all the above reasons, the JUUL NDAs and other confidentiality requirements violate Labor Code § 432.5 because they contain terms that JUUL knows are prohibited by law. Among other things, employers are presumed to know the law.

JUUL's NDAs and confidentiality requirements are illegal. Accordingly, and consistent with her legal rights (including under Labor Code § 6310), Hamilton state the following additional facts and theories in support of additional PAGA claims.

8.	JUUL permits (and indeed actively encourages) vaping by its employees and contractors of JUUL's products at JUUL's enclosed places of employment. This vaping occurs, among other places, in JUUL's offices and conferences rooms. Moreover, JUUL actively encourages vaping by its employees for purposes of product testing. JUUL does not advise its employees of the hazardous nature of its products or the products' contents. JUUL's products are unsafe and hazardous.

9.	This conduct violates Labor Code § 6398 (and all regulations adopted pursuant to this section), § 6398.5, § 6400 ("Every employer shall furnish employment and a place of employment that is safe and healthful for the employees therein."); §§ 6401, 6403 (requiring employers to use methods and processes reasonably adequate to render employment and places of employment safe and reasonably necessary to protect the life, safety, and health of employees); § 6402 (stating that no employer shall require, or permit any employee to go or be in any employment or place of employment which is not safe and healthful); § 6404 (prohibiting employers from occupying an unsafe or unhealthy workplace); § 6404.5 (prohibiting workplace smoking), and 8 CCR § 5148 (as promulgated pursuant to Labor Code § 142.3).

The aggrieved employees are all current and former JUUL employees and temporary employees (hired through staffing firms or otherwise) required to sign a JUUL NDA and/or otherwise comply with its confidentiality requirements, and/or who work or who have worked at JUUL's places of employment.

DOSH & LWDA
JUUL Labs, Inc.
August 14, 2019
Page 4

     For the above violations, Hamilton seeks civil penalties on behalf of herself and all other aggrieved employees (including temporary employees), as well as the State of California, in accordance with Labor Code §§ 2699 *et seq.*

     Thank you for your attention to this matter.

                                              Very truly yours,

                                              Chris Baker

# EXHIBIT

PROPRIETARY INFORMATION AND
INVENTION ASSIGNMENT AGREEMENT

This Agreement is entered into as of **March 20, 2018** (the "Effective Date") by and between JUUL Labs, Inc., a Delaware corporation (the "Company"), and **Marcie Hamilton** ("Employee"). As a condition of Employee's employment with the Company, and in consideration of Employee's employment with the Company and receipt of the compensation now and hereafter paid to Employee by the Company, Employee agrees to the following:

1. **At-Will Employment.** The parties agree that Employee's employment with the Company shall be "at-will" employment and may be terminated at any time with or without cause or notice at the option of either the Company or Employee. No provision of this Agreement shall be construed as conferring upon Employee a right to continue as an employee of the Company.

2. **Right to Advice of Counsel.** Employee acknowledges that he or she has had the right to consult with counsel and is fully aware of Employee's rights and obligations under this Agreement.

3. **Successors**.

    3.1 **Company's Successors.** Any successor to the Company (whether direct or indirect and whether by purchase, lease, merger, consolidation, liquidation or otherwise) to all or substantially all of the Company's business and/or assets shall assume the obligations under this Agreement and agree expressly to perform the obligations under this Agreement in the same manner and to the same extent as the Company would be required to perform such obligations in the absence of a succession. For all purposes under this Agreement, the term "Company," shall include any successor to the Company's business and/or assets which executes and delivers the assumption agreement described in this subsection 3.1 or which becomes bound by the terms of this Agreement by operation of law.

    3.2 **Employee's Successors.** Without the written consent of the Company, Employee shall not assign or transfer this Agreement or any right or obligation under this Agreement to any other person or entity. Notwithstanding the foregoing, the terms of this Agreement and all rights of Employee hereunder shall inure to the benefit of, and be enforceable by, Employee's personal or legal representatives, executors, administrators, successors, heirs, distributees, devisees and legatees.

4. **Confidential Information**.

    4.1 **Company Information**. Employee shall at all times during the term of Employee's employment with the Company and thereafter, hold in strictest confidence, and not use, except for the benefit of the Company, or disclose to any person, firm or corporation without written authorization of the Company's Board of Directors (the "Board"), any Confidential Information of the Company. As used herein, "Confidential Information" means and includes any Company confidential or proprietary information, technical data, trade secrets or know-how, including, but not limited to, research, product plans, products, services, customer lists and customers (including, but not limited to, customers of the Company on whom Employee has called or with whom he or she became acquainted during the term of Employee's employment), markets, software, developments, inventions, conceptions, patentable subject matter, processes, formulas, technology, specifications, designs, drawings, engineering, hardware configuration information, marketing, forecasts, finances or other business information of the Company. Confidential Information includes both information disclosed by the Company to Employee and information developed or learned by Employee during the course of employment with Company. Confidential Information also includes all information of which the unauthorized disclosure could be detrimental to the interests of Company, whether or not such information is identified as Confidential Information. Confidential Information does not include information which Employee can establish has become publicly known and made generally available through no wrongful act of Employee or of others who were under confidentiality obligations as to the item or items involved.

    4.2 **Former Employer Information**. Employee shall not, during Employee's employment with the Company, improperly use or disclose any proprietary information or trade secrets of any former or concurrent employer or other person or entity and Employee shall not bring onto the premises of the Company any unpublished document or proprietary information belonging to any such employer, person or entity unless consented to in writing by such employer, person or entity.

-4-

4.3 **Third Party Information**. Employee shall hold all confidential or proprietary information that the Company has received from any third party to which it is the Company's obligation to maintain the confidentiality of such information and to use it only for certain limited purposes in the strictest confidence and not to disclose it to any person, firm or corporation or to use it except as necessary in carrying out Employee's work for the Company consistent with the Company's agreement with such third party.

5. **Inventions**. Employee hereby represents, warrants and covenants as follows:

5.1 **Inventions Retained and Licensed**. Attached hereto, as Exhibit A, is a list describing all inventions, original works of authorship, developments, improvements, and trade secrets which were made by Employee prior to Employee's employment with the Company (collectively referred to as "Prior Inventions"), which belong to Employee, which relate to the Company's proposed business, products or research and development, and which are not assigned to the Company hereunder; or, if Exhibit A is left blank, Employee hereby represents that there are no such Prior Inventions. If in the course of Employee's employment with the Company, Employee incorporates into a Company product, process or machine a Prior Invention owned by Employee or in which Employee has an interest, the Company is hereby granted and shall have a nonexclusive, royalty-free, irrevocable, perpetual, worldwide license to make, have made, modify, use and sell such Prior Invention as part of or in connection with such product, process or machine.

5.2 **Assignment of Inventions**. Employee shall, or will promptly make, full written disclosure to the Company, will hold in trust for the sole right and benefit of the Company, and agrees to assign and hereby does assigns to the Company, or its designee, all of Employee's rights, title, and interest, including, without limitation, any right of priority, in and to any and all inventions, original works of authorship, developments, concepts, improvements, designs, discoveries, ideas, trademarks or trade secrets, whether or not patentable or registrable under copyright or similar laws, which Employee may solely or jointly conceive or develop or reduce to practice, or cause to be conceived or developed or reduced to practice, during the period of time Employee is employed by the Company (collectively referred to as "Inventions"), except as provided in Section 5.5 below. Employee hereby acknowledges that all original works of authorship which are made by Employee (solely or jointly with others) within the scope of and during the period of Employee's employment with the Company and which are protectable by copyright are "works made for hire," as that term is defined in the United States Copyright Act. Employee hereby understands and agrees that the decision whether or not to commercialize or market any invention developed by Employee solely or jointly with others is within the Company's sole discretion and for the Company's sole benefit and that no royalty will be due to Employee as a result of the Company's efforts to commercialize or market any such Invention.

5.3 **Maintenance of Records**. Employee shall keep and maintain adequate and current written records of all Inventions made by him or her (solely or jointly with others) during the term of Employee's employment with the Company. The records will be in the form of notes, sketches, drawings, and any other format that may be specified by the Company. The records will be available to and remain the sole property of the Company at all times.

5.4 **Registrations**. Employee shall assist the Company, or its designee, at the Company's expense, in every proper way to secure the Company's rights in the Inventions and any copyrights, patents, mask work rights or other intellectual property rights relating thereto in any and all countries, including the disclosure to the Company of all pertinent information and data with respect thereto, the execution of all applications, specifications, oaths, assignments and all other instruments which the Company shall deem necessary in order to apply for and obtain such rights and in order to assign and convey to the Company, its successors, assigns, and nominees the sole and exclusive rights, title and interest in and to such Inventions, and any copyrights, patents, mask work rights or other intellectual property rights relating thereto. Employee agrees that it is Employee's obligation to execute or cause to be executed, when it is in Employee's power to do so, any such instrument or papers after the termination of this Agreement. If the Company is unable because of Employee's mental or physical incapacity or for any other reason to secure Employee's signature to apply for or to pursue any application for any United States or foreign patents, mask works or copyright registrations covering Inventions or original works of authorship assigned to the Company as above, then Employee hereby irrevocably designates and appoints the Company and its duly authorized officers and agents as Employee's agent and attorney in fact, to act for and in Employee's behalf and stead to execute and file any such applications and to do all other lawfully permitted acts to further the prosecution and issuance of letters patent or copyright registrations thereon with the same legal force and effect as if executed by Employee.

5.5     **Exception to Assignments**. It is agreed and acknowledged that the provisions of this Agreement requiring assignment of Inventions to the Company do not apply to any invention which qualifies fully under the provisions of California Labor Code Section 2870 (attached hereto as <u>Exhibit B</u>). Employee covenants that he or she will advise the Company promptly in writing of any inventions that he or she believes meet the criteria in California Labor Code Section 2870 and not otherwise disclosed on <u>Exhibit A</u>.

6.     **Conflicting Employment**. Employee shall not, during the term of Employee's employment with the Company, engage in any other employment, occupation, consulting or other business activity related to the business in which the Company is now involved or becomes involved during the term of Employee's employment, nor will he or she engage in any other activities that conflict with Employee's obligations to the Company.

7.     **Returning Company Documents**. At the time of leaving the employ of the Company, Employee covenants that he or she shall deliver to the Company (and will not keep in Employee's possession, recreate or deliver to anyone else) any and all devices, records, data, notes, reports, proposals, lists, correspondence, specifications, drawings blueprints, sketches, materials, equipment, other documents or property, or reproductions of any aforementioned items developed by Employee pursuant to Employee's employment with the Company or otherwise belonging to the Company, its successors or assigns, including, without limitation, those records maintained pursuant to Section 5.3. In the event of the termination of Employee's employment, Employee hereby covenants to sign and deliver the "Termination Certification" attached hereto as <u>Exhibit C</u>.

8.     **Notification of New Employer**. In the event that Employee leaves the employ of the Company, Employee agrees to grant consent to notification by the Company to Employee's new employer about Employee's rights and obligations under this Agreement.

9.     **Representations and Covenants**. Employee agrees to execute any proper oath or verify any proper document required to carry out the terms of this Agreement. Employee represents that his or her performance of all the terms of this Agreement will not breach any agreement to keep in confidence proprietary information acquired by Employee in confidence or in trust prior to Employee's employment by the Company. Employee has not entered into, and agrees not to enter into, any oral or written agreement in conflict herewith. Employee agrees that Employee bears the burden of proving that given information or materials are not Confidential Information or that the assignment of inventions does not apply under the circumstances.

10.     **Solicitation of Employees**. Employee covenants that, for a period of twelve (12) months immediately following the termination of Employee's relationship with the Company for any reason, whether with or without cause, he or she shall not either directly or indirectly solicit, induce, recruit or encourage any of the Company's employees to leave their employment, or take away such employees, or attempt to solicit, induce, recruit, encourage or take away employees of the Company, either for Employee or for any other person or entity.

11.     **Equitable Relief**. Because Employee's services are personal and unique and because Employee may have access to and become acquainted with the Confidential Information of the Company, the Company shall have the right to enforce this Agreement and any of its provisions by injunction, specific performance or other equitable relief, without bond and without prejudice to any other rights and remedies that the Company may have for a breach of this Agreement.

12.     **Notice Clause.**

12.1     **Manner.** Any notice hereby required or permitted to be given shall be sufficiently given if in writing and delivered in person, by facsimile transmission, electronic mail, overnight delivery service or U.S. mail, in which event it may be mailed by first-class, certified or registered, postage prepaid, to either party at the address of such party or such other address as shall have been designated by written notice by such party to the other party.

12.2     **Effectiveness.** Any notice or other communication required or permitted to be given under this Agreement will be deemed given (i) on the day when delivered in person, (ii) on the first business day of or after the date of confirmation that the facsimile has been successfully transmitted to the facsimile number for the party notified if sent by facsimile, (iii) on the first business day of or after the date of receipt by the party notified if sent by electronic mail, or (iv) the third business day after the day on which such notice was mailed in accordance with this Section.

        13.    **<u>Severability</u>**.  The invalidity or unenforceability of any provision of this Agreement, or any terms hereof, shall not affect the validity or enforceability of any other provision or term of this Agreement.

        14.    **<u>Integration</u>.**  This Agreement represents the entire agreement and understanding between the parties as to the subject matter herein and supersedes all prior or contemporaneous agreements whether written or oral.  No waiver, alteration, or modification of any of the provisions of this Agreement shall be binding unless in writing and signed by duly authorized representatives of the parties hereto.

        15.    **<u>Governing Law and Venue</u>.**  This Agreement shall be governed by and construed in accordance with the internal substantive laws, but not the choice of law rules, of the state of California. The state and federal courts located in the Northern District of California shall be the sole and exclusive forum for disputes arising out of or relating to this Agreement. The parties hereby consent to the personal jurisdiction of such courts.

        16.    **<u>Counterparts.</u>**  This Agreement may be executed in any number of counterparts, each of which shall be an original, and all of which together shall constitute on and the same instrument.

[signature page follows]

IN WITNESS WHEREOF, each of the parties has executed this Agreement, in the case of the Company by their duly authorized officers, as of the day and year first above written.

**JUUL LABS, INC.**

By: _/s/ Lee Readman_
E12B45A547144BA...

Name: Lee Readman
Title: VP, Talent & International HR

**EMPLOYEE**

Sign: _/s/ Marcie Hamilton_
75189646B73A49E...

Print Name: Marcie Hamilton

-8-

JUUL Labs, Inc.   560 20th St., San Francisco CA, 94107   juullabs.com

# EXHIBIT A

## LIST OF PRIOR INVENTIONS
## AND ORIGINAL WORKS OF AUTHORSHIP

| Title | Date | Identifying Number or Brief Description |
|---|---|---|
| N/A | | |

__X__ No inventions or improvements

_____ Additional Sheets Attached

Signature of Employee: _____
DocuSigned by:
*Marcie Hamilton*
75189646B73A49E...

Date: __3/22/2018__

CONFIDENTIAL   This document and any materials attached thereto may contain proprietary and confidential information.
Any dissemination, copying or use of its contents without the express written authorization of juul labs, inc is strictly prohibited.

DocuSign Envelope ID: 39AEF075-A355-4190-A88D-C1F395621DAA
Case 3:20-cv-03710-EMC   Document 1-1   Filed 06/04/20   Page 13 of 14

JUUL Labs, Inc.   560 20th St., San Francisco CA, 94107   juullabs.com

# EXHIBIT B

## CALIFORNIA LABOR CODE SECTION 2870
## INVENTION ON OWN TIME – EXEMPTION FROM AGREEMENT

"(a)     Any provision in an employment agreement which provides that an employee shall assign, or offer to assign, any of employee's rights in an invention to employee's employer shall not apply to an invention that the employee developed entirely on employee's own time without using the employer's equipment, supplies, facilities, or trade secret information except for those inventions that either:

(1)     Relate at the time of conception or reduction to practice of the invention to the employer's business, or actual or demonstrably anticipated research or development of the employer; or

(2)     Result from any work performed by the employee for the employer.

(b)     To the extent a provision in an employment agreement purports to require an employee to assign an invention otherwise excluded from being required to be assigned under subdivision (a), the provision is against the public policy of this state and is unenforceable."

**CONFIDENTIAL**  This document and any materials attached thereto may contain proprietary and confidential iinformation.
Any dissemination, copying or use of its contents without the express written authorization of juul labs, inc is strictly prohibited.

JUUL Labs, Inc.   560 20th St., San Francisco CA, 94107   juullabs.com

# EXHIBIT C

# TERMINATION CERTIFICATION

This is to certify that I do not have in my possession, nor have I failed to return, any devices, records, data, notes, reports, proposals, lists, correspondence, specifications, drawings, blueprints, sketches, materials, equipment, other documents or property, or reproductions of any aforementioned items belonging to _____, its subsidiaries, affiliates, successors or assigns (together, the "Company"). I have complied with all the terms of the Proprietary Information and Invention Assignment Agreement signed by me, including the reporting of any inventions and original works of authorship (as defined therein), conceived or made by me (solely or jointly with others) covered by that agreement.

In compliance with the Proprietary Information and Invention Assignment Agreement, I will preserve as confidential all trade secrets, confidential knowledge, data or other proprietary information relating to products, processes, know-how, designs, formulas, developmental or experimental work, computer programs, data bases, other original works of authorship, customer lists, business plans, financial information or other subject matter pertaining to any business of the Company or any of its employees, clients, consultants or licensees.

Date: _____

Print Name: _____

**CONFIDENTIAL**  This document and any materials attached thereto may contain proprietary and confidential iinformation.
Any dissemination, copying or use of its contents without the express written authorization of juul labs, inc is strictly prohibited.