CHRIS BAKER, State Bar No. 181557
cbaker@bakerlp.com
DEBORAH SCHWARTZ, State Bar No. 208934
dschwartz@bakerlp.com
BAKER CURTIS & SCHWARTZ, P.C.
1 California Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 433-1064
Fax:  (415) 366-2525

Attorneys for Plaintiff
MARCIE HAMILTON

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MARCIE HAMILTON,<br><br>            Plaintiff,<br><br>    vs.<br><br>JUUL LABS, INC.,<br><br>            Defendant. | Case No. 3:20-CV-3710-EMC<br><br>**PLAINTIFF MARCIE HAMILTON'S OPPOSITION TO MOTION TO DISMISS AND MOTION TO STRIKE**<br><br>Date: August 20, 2020<br>Time: 1:30 p.m.<br>Dept: Courtroom 5, 17th Floor<br>Judge: Honorable Edward M. Chen |

# TABLE OF CONTENTS

Page No.

I.  INTRODUCTION ................................................................................................ 1

II.  PLAINTIFF'S FACTUAL ALLEGATIONS ...................................................... 2

    A.  The NDA and Termination Certification .................................................. 2

    B.  JUUL's Corporate Policies and Practices ................................................ 3

    C.  The Severance Agreement ........................................................................ 4

    D.  The Systemic Use of Illegal NDAs .......................................................... 7

III.  ARGUMENT ....................................................................................................... 8

    A.  Standard of Review ................................................................................... 8

    B.  Plaintiff's Claims Do Not Turn on Technical Contract Interpretation ................. 8

    C.  JUUL's Argument That Its NDA Is Ambiguous Defeats Its
        Motion to Dismiss .................................................................................. 10

    D.  Plaintiff Has Adequately Pled PAGA Claims under Labor Code
        §§ 1102.5(a), 232, 1197.5 and Labor Code § 232.5 ............................. 12

    E.  Plaintiff Has Adequately Pled PAGA Claims under Labor Code
        §§ 96(k) and 98.6(b), Labor Code § 432.5 and an Unfair Competition
        Claim under Business & Professions Code §§ 17200 *et seq.* ............... 14

        1.  Labor Code §§ 96(k) and 98.6 Make It Unlawful for
            Employers to Prevent Employees from Exercising
            Free Speech Rights during Non-Work Hours Away
            from Their Employer's Premises .............................................. 14

        2.  Plaintiff Has Alleged a Claim under Labor Code § 432.5 ................. 16

            a.  An Illegal Contract Is Not Just "Void," It Is
                "Prohibited by Law" .................................................... 16

            b.  JUUL's Confidentiality Requirements Violate the
                Federal Defend Trade Secrets Act ............................. 17

            c.  Plaintiff Has Adequately Pled JUUL's Severance
                Agreement Is Prohibited by Law under Government
                Code § 12964.5 ........................................................... 17

d.      Plaintiff Has Adequately Pled Employer "Knowledge" under Labor Code § 432.5   ........................................................ 18

3.      Plaintiff Has Stated a Claim under the Unfair Competition Law   ........... 19

F.      JUUL's Alternative Arguments Should Be Overruled   ........................................ 20

IV.      CONCLUSION .......................................................................................................... 20

# TABLE OF AUTHORITIES

**Page No.**

**Cases**

*Advanced Bionics Corp. v. Medtronic, Inc.,*
   29 Cal.4th 697 (2002) ................................................... 16

*AMN Healthcare, Inc. v. Aya Healthcare Services, Inc.*
   28 Cal.App.5th 923 (2018)........................................... 16, 19

*Application Group, Inc. v. Hunter Group, Inc.,*
   61 Cal.App.4th 881 (1998) ........................................ 16

*Baker Pacific Corp. v. Suttles,* 220 Cal.App.3d 1148 (1990) ................. 1, 9

*Barbee v. Household Automotive Finance Corp.,*
   113 Cal.App.4th 525 (2003) ...................................... 14

*Barker v. Insight Global, LLC,*
   2019 WL 176260 (N.D. Cal. Jan. 11, 2019) ................... 19

*Brightpoint Distribution, LLC v. Aliphcom,*
   2016 WL 10842589 (N.D. Cal. Nov. 8, 2016) ................. 8

*Bodemer v. Swanel Beverage, Inc.,*
   884 F.Supp. 717 (N.D. Ill. 2012) ................................ 16

*California Dept of Toxic Substances Control v. Dee M. McLemore Trust,*
   2019 WL 5684535 (N.D. Cal. Nov. 1, 2019) ................. 1

*City of Manhattan Beach v. Superior Court,* 13 Cal.4th 232 (1996).......... 11

*Crestview Cemetery Assn. v. Dieden* 54 Cal.2d 744 (1960) ................. 12

*Doe v. U.S.,* 419 F.3d 1058 (9th Cir. 2005) ................................. 8

*D'sa v. Playhut, Inc.,* 85 Cal.App.4th 927 (2000) ......................... 9

*Edwards v. Arthur Andersen LLC,* 44 Cal.4th 937 (2008) ............... 10, 11

*FT Travel--New York, LLC v. Your Travel Center Inc.,*
   112 F.Supp.3d 1063 (C.D. Cal. 2015) .......................... 8

*Gerawan Farming, Inc. v. Lyons,* 24 Cal.4th 468 (2000) ............... 14, 15

*Golden Gateway Center v. Golden Gateway Tenant Ass'n,*
   26 Cal.4th 1013 (2013) ............................................. 15

- iii -

*Grinzi v. San Diego Hospice Corp.*, 120 Cal.App.4th 72 (2004) .................................................. 15

*Intel Corp. v. Via Technologies, Inc.*,
    2001 WL 777085 (N.D. Cal. Mar. 20, 2001) .................................................. 11

*Kennecott Corp. v. Union Oil Co. of California*,
    196 Cal.App.3d 1179 (1987) .................................................. 12

*Latona v. Aetna U.S. Healthcare Inc.*,
    82 F.Supp.2d 1089 (C.D. Cal. 1999) .................................................. 7

*Murphy v. Kenneth Cole Productions, Inc.*,
    40 Cal.4th 1094 (2007). .................................................. 18

*National Abortion Federation v. Center for Medical Progress*,
    2015 WL 5071977 (N.D. Cal. Aug. 27, 2015) .................................................. 11

*Nuvasive, Inc. v. Miles*,
    2019 WL 4010814 (Del. Ch. Aug. 26, 2019) .................................................. 19

*People v. Toomey*, 157 Cal.App.3d 1 (1984) .................................................. 8

*Picketfence Inc. v. R.R. Donnelley & Sons Co.*,
    2007 WL 9811030 (N.D. Cal Nov. 6, 2007) .................................................. 11

*R.R. Donnelly & Sons Co. v. Fagan*,
    767 F.Supp. 1259 (S.D.N.Y. 1991) .................................................. 16

*Salton Bay Marina, Inc. v. Imperial Irrigation Dist.*,
    172 Cal.App.3d 914 (1985) .................................................. 12

*Sepulveda v. Olympus Am., Inc.*,
    2007 WL 9811200 (N.D. Cal. Jan. 10, 2007) .................................................. 15

*Solutionsz Videoconferencing, Inc. v. Davidson*,
    2019 WL 6872904 (C.D. Cal. Aug. 22, 2019) .................................................. 15, 19

*Stonebrae, L.P. v. Toll Bros., Inc.*,
    2009 WL 248101 (N.D. Cal. Jan. 30, 2009) .................................................. 11

*The Retirement Group v. Galante*,
    176 Cal.App.4th 1226 (2009) .................................................. 16

*Toce v. Rentch*, 2018 WL 280024 (S.D. Cal. Jan. 3, 2018) .................................................. 8, 11

*United States ex. rel. Vatan v. QTC Medical Services, Inc.*,
    721 Fed.Appx. 662 (9th Cir. 2018) .................................................. 3, 4

*United States Security and Exchange Commission v. Henke*,
     275 F.Supp.2d 1075 (9th Cir. 2000) ........................................................ 8

*WeRide Corp. v. Huang*,
     379 F.Supp.3d 834, 852 (N.D. Cal. 2019) ...................................... 19

*Willner v. Manpower*, 35 F.Supp.3d 1116 (N.D. Cal. 2014) ...................... 18

**Codes, Rules and Statutes**

California Business & Professions Code
     § 16600 ........................................................................................... 16
     § 16720 ........................................................................................... 17
     § 17200 .......................................................................... 14, 16, 18, 19
     § 17203 ........................................................................................... 20
     § 17204 ........................................................................................... 20

California Civil Code
     § 1643 ............................................................................................. 11
     § 1644 ............................................................................................... 7
     § 3541 ............................................................................................. 11

California Government Code
     § 12964.5 ................................................................................... 17, 18

California Labor Code
     § 96(k) ....................................................................................... 14, 15
     § 98.6 ......................................................................................... 14, 15
     § 98.6(a) ..................................................................................... 14, 15
     § 98.6(b) .......................................................................................... 14
     § 226(a) ........................................................................................... 18
     § 232 ................................................................................... 9, 12, 13
     § 232.5 .............................................................................. 9, 12, 13
     § 232.5(a) ........................................................................................ 13
     § 232.5(b) ........................................................................................ 13
     § 232.5(d) ........................................................................................ 13
     § 432.5 ............................................................................ 14, 16, 18, 19
     § 1102.5(a) ..................................................................... 8, 9, 12, 13
     § 1197.5 ........................................................................................... 12
     § 1197.5(k) ............................................................................. 12, 13
     § 1197.5(k)(1) ................................................................................... 8
     § 2699.5 ........................................................................................... 14
     § 2802 ............................................................................................. 10

PLAINTIFF'S OPPOSITION TO JUUL MOTION TO DISMISS / CASE NO. 3:20-CV-3710-EMC

Federal Rules of Civil Procedure
     Rule 8(a) ........................................................................................................ 3, 4
     Rule 9(b) ........................................................................................................... 4

18 U.S.C § 1833(b)(1) ............................................................................................. 5
18 U.S.C § 1836 ("DTSA") ............................................................................. 17, 19

**Other Sources**

James B. Stewart, *David Boies Pleads Not Guilty*, N.Y. TIMES (Sept. 21, 2018),
     https://www.nytimes.com/2018/09/21/business/david-boies-pleads-not-guilty.html ........ 9

1

## I.     INTRODUCTION

2      The courts have long rejected the "circular and unintelligible" argument that a contract

3   prohibited by law is <u>not</u> prohibited by law because it <u>is</u> prohibited by law.  *E.g., Baker Pacific*

4   *Corp. v. Suttles,* 220 Cal.App.3d 1148, 1154 (1990).  In its motion to dismiss, Defendant JUUL

5   Labs, Inc. argues a variation on that theme: Namely, that its illegal confidentiality requirements

6   are actually legal because, otherwise, they would be illegal.  In doing so, JUUL relies – at the

7   pleading stage – on one canon of contract interpretation, but not others.  JUUL also ignores the

8   fact that: (1) rules of contract interpretation only apply when a contract is ambiguous, and an

9   ambiguous contract cannot be interpreted adverse to a plaintiff at the pleadings stage; and (2)

10   Plaintiff Marcie Hamilton's claims, in large part, do not arise in contract at all.  Rather, they

11   concern illegal prohibitions on statutory rights and other unlawful business practices.

12      JUUL also attaches and seeks judicial notice of a severance agreement that contains

13   certain provisions applicable only to that severance agreement.  <u>The severance agreement</u>

14   <u>provided to the Court is different than the one in Plaintiff's counsel's files and that is referenced</u>

15   <u>in the Complaint</u>.  The Court cannot take judicial notice of a document that is <u>not</u> the document

16   referenced in the Complaint.  Even if it could, the provisions in the severance agreement upon

17   which JUUL heavily relies are <u>not</u> found in JUUL's NDA, Termination Certification, or JUUL's

18   corporate policies and practices.  Notably, JUUL does <u>not</u> attach or seek judicial notice of its

19   confidentiality <u>policies</u>, even though they, too, are referenced in the Complaint.  One wonders

20   why.  This Court should not take judicial notice of a document <u>not</u> referenced in the Complaint

21   while JUUL willfully withholds from the Court <u>other</u> documents actually referenced in the

22   Complaint.  *See, California Dept of Toxic Substances Control v. Dee M. McLemore Trust*, 2019

23   WL 5684535, * 4 (N.D. Cal. Nov. 1, 2019) (refusing to take judicial notice because the alleged

24   facts in the pleadings supply the "facts" and "the important issues within the claim will not be

25   decided on the basis of an incomplete record.").

26      JUUL's motions should be denied.  To the extent JUUL's motion to dismiss or motion to

27   strike are granted in any respect, Plaintiff requests leave to amend.

28

## II.    PLAINTIFF'S FACTUAL ALLEGATIONS

### A.    The NDA and Termination Certification

Plaintiff Hamilton is a former JUUL executive.  (Complaint ¶ 5).  JUUL has a policy of requiring all employees to sign an NDA as an express condition of <u>initial</u> and <u>continued</u> employment.  (Complaint ¶¶ 25-26).  Plaintiff's offer letter, for example, states: "this offer, and employment pursuant to this offer, is conditioned upon . . . your signed agreement to, and ongoing compliance with," the JUUL NDA.  (Complaint ¶ 25).

The NDA prohibits employees "<u>during the term of the Employee's employment and thereafter</u>" from using or disclosing any "Confidential Information," except for the benefit of JUUL.  (Complaint ¶ 26, Ex. A § 4.1).  The NDA defines "Confidential Information" to include virtually everything related to JUUL, including "information disclosed by the Company to Employee and information developed or learned by Employee during the course of employment with the Company."  *Id.*  The non-disparagement provision of the NDA explains that *"*Confidential Information" also includes "all information of which the unauthorized disclosure <u>could be detrimental to the interests of the Company</u>, whether or not such information is identified as Confidential Information." (Complaint ¶ 27, Ex. A § 4.1).  The NDA places the burden of proof on the employee to establish information is <u>not</u> confidential. (Complaint ¶ 28; Ex. A § 9).  The NDA requires employees to sign a "Termination Certification" in the event they separate from JUUL's employ.  (Complaint ¶ 29, Ex. A § 7).

The Termination Certification, in turn, requires employees to "preserve as confidential [a laundry list of categories] in addition to "<u>other subject matter pertaining to **any** business of the Company or **any** of its **employees**, clients, consultants or licensees</u>."  (Complaint ¶¶ 29, 34, Ex. A, p. 14 of 14).  The extraordinary breadth of JUUL's definition of "Confidential Information" is confirmed by the fact that <u>the form Certification itself</u> – which is an obvious working condition - is designated as "CONFIDENTIAL."  (Ex A, p. 14 or 14 (bottom of page)).

Neither the NDA nor the Termination Certification includes any carve-out or other limitation on the employees' express obligation to <u>not</u> use or disclose any information related to JUUL or its employees to <u>anyone</u>, except to benefit JUUL. (Complaint ¶ 28).

### B.    JUUL's Corporate Policies and Practices

Plaintiff worked for JUUL for almost a year as a senior executive.  She was thus aware of JUUL's corporate policies and practices.  Plaintiff's Complaint alleges that these policies and practices "unlawfully prohibit employees from engaging in whistleblowing, seeking new or better work, disclosing information about their wages or working conditions, or otherwise engaging in protected speech under California law." (Complaint ¶ 44).  The Complaint further alleges, among other things, that "JUUL has adopted and enforced policies preventing employees from disclosing information about reasonably-suspected violations of the law to government agencies and public bodies." (Complaint ¶ 54).  Plaintiff's PAGA notice, which is referenced within and attached to the Complaint (See Complaint ¶ 46), states:

> JUUL has a policy of requiring current and former employees to sign and comply with, as a condition of employment, illegal non-disclosure and non-disparagement agreements (NDAs), policies and practices ("confidentiality requirements").  These agreements, policies, and practices – which JUUL describes as "ongoing" – prohibit employees from disclosing information about wages, working conditions, and actual or potentially illegal conduct.  They also constitute unlawful restrictive covenants because they define, essentially, <u>everything</u> as confidential.

(Complaint, Ex. A ¶ 1).

After Plaintiff filed her PAGA notice, the parties entered into a tolling agreement and, in January 2020, engaged in an unsuccessful pre-litigation mediation.  Plaintiff states: "On information and belief, JUUL has still not changed the illegal confidentiality requirements referenced above.  If anything, JUUL continues to aggressively require, implement, and enforce its illegal confidentiality requirements with respect to its current and former employees." (Complaint ¶¶ 46-48).

In contrast to the severance agreement, JUUL has conspicuously declined to seek judicial notice of its corporate confidentiality policies or provide the Court with copies.  Therefore, the Court cannot know precisely what the policies say.  Plaintiff, however, has alleged these policies' nature, purpose, effect, existence, implementation and ongoing enforcement.  Plaintiff is not required to plead more with respect to policies that are in <u>JUUL's</u> possession. *United States ex. rel. Vatan v. QTC Medical Services, Inc.*, 721 Fed.Appx. 662, 663 (9th Cir. 2018) (finding plaintiff pled adequate facts under FRCP 8(a) when he described the nature of contract and other

elements of claim).  As the Ninth Circuit explained in *Vatan*, even with respect to the heightened

pleading standard for fraud under FRCP 9(b): "[Plaintiff's] second amended complaint pleads the

contents of that contract pursuant to information and belief and adduces the factual basis for that

belief.  Where, as here, the relevant information is within the defendant's exclusive possession

and control, such pleading is sufficient to satisfy Rule 9(b)'s particularity requirement . . . .  The

district court's requirement to the contrary would vitiate the False Claims Act, by excluding many

whistle-blowers who – as here – allege insider knowledge of wrongdoing . . . <u>and solely lack</u>

<u>access to the corporate documents outlining the precise nature of the company's obligations.</u>"

Plaintiff is in a similar position, except she need only meet the lower pleading standard of

FRCP 8(a), i.e., "a short and plain statement of the claim showing that the pleader is entitled to

relief."  She has done so as to JUUL's corporate policies and practices.

### C.      The Severance Agreement

On March 15, 2019, JUUL informed Hamilton of its intent to terminate her employment.

(Complaint ¶ 36).  JUUL offered Hamilton <u>continued</u> employment and the payment of wages

<u>through April 2, 2019</u>, as well as the payment of a bonus, <u>if</u> she signed JUUL's severance

agreement.  (Complaint ¶ 36).  <u>If</u> Hamilton signed the severance agreement, she would also vest

her first tranche of equity. (*Id.*).  The version of the severance agreement presented to the Court

by JUUL makes clear it is an offer of <u>continued</u> employment.[1]  It sets a separation date of April 2,

2019 and states that "EMPLOYEE will continue to receive his/her base salary and his/her current

gross annual rate on the COMPANY's normal payroll dates." (JUUL RJN Ex. B ¶¶1, 2(a)).  The

agreement also prohibited Plaintiff from commencing employment with <u>another</u> employer

through April 2 (RJN Ex. B ¶ 7(d)), meaning she would remain in JUUL's employ.

There is no allegation that JUUL offered Plaintiff this severance agreement in order to

resolve an existing employment dispute under FEHA.  (See Complaint ¶ 36).  Rather, JUUL,

quite transparently, sought a general release and other illegal contractual terms because it

---

[1] The severance agreement actually referenced in Plaintiff's Complaint and provided to Plaintiff is
even more clear.  Unlike the severance agreement JUUL presents to the Court, the severance
agreement referenced by Plaintiff in the Complaint also states "EMPLOYEE will be eligible for
continued vesting through the Separation Date.  EMPLOYEE is scheduled to vest the following
equity on April 2, 2019, **subject to continued employment** through the Separation Date**.**"

believed Plaintiff would sign a release rather than lose the valuable equity and bonus she had spent almost a year working to earn.

The illegal provisions of the severance agreement include: (1) a general release of claims, including claims under the Fair Employment and Housing Act (Complaint ¶ 37); (2) an exceedingly broad non-disparagement provision (Complaint ¶ 38); and (3) a confidentiality provision with respect to the terms, conditions, and existence of the severance agreement itself, all of which self-evidently concern Plaintiff's wages and working conditions. (Complaint ¶ 39).

The severance agreement presented to the Court by JUUL also contains the following as it relates to the JUUL NDA and Termination Certification:

> EMPLOYEE acknowledges and reaffirms in its entirety the Proprietary Information and Invention Assignment Agreement executed upon commencement of his/her employment [the NDA] and his/her continuing obligations thereunder.  EMPLOYEE agrees that EMPLOYER'S obligation to provide the payments and benefits set forth in paragraph 2 above is subject to confirmation that EMPLOYEE has returned to EMPLOYER an executed copy of the Termination Certification attached as Exhibit C to [the NDA].  Nothing in this Agreement is intended to or shall be construed to modify, impair, or terminate any of EMPLOYEE's obligations pursuant to [the NDA] that by the terms of [the NDA] continue after the termination of his/her employment.  Notwithstanding the foregoing, Employee understands, pursuant to 18 U.S.C. § 1833(b)(1), he/she cannot be held criminally or civilly liable under any federal or state trade secret law for the disclosure of a trade secret [in accordance with the Defend Trade Secrets Act].

(RJN, Ex. B ¶ 6) (emphasis added).

Thus, the severance agreement identified by JUUL seeks to slightly modify the NDA by stating that, if the employee signs the severance agreement, then notwithstanding the NDA, an employee may disclose trade secret information in accordance with the Defend Trade Secrets Act. Of course, even if Plaintiff had signed the severance agreement, the Termination Certification, confidentiality policies, and all other provisions of the NDA would remain in full force and effect.

The severance agreement presented by JUUL also states, in the very same paragraph:

> Nothing in **this Agreement** prohibits or restricts EMPLOYEE (or EMPLOYEE's attorney) from initiating communications directly with, or responding to any inquiry from, or providing testimony before the Securities and Exchange Commission ("SEC") any other self-regulatory

organization or any other federal or state regulatory authority regarding this Agreement or its underlying facts or circumstances or a possible securities law violation.

(RJN, Ex. B ¶ 6) (emphasis added).  Thus, while <u>the severance agreement</u> contains a purported carve out for communications protected by SEC Rule 21F-17, <u>the carve-out is limited to the prohibitions on speech set forth in the severance agreement</u>.  The NDA, Termination Certification, and, as alleged, confidentiality policies and practices, contain no carve-out.  They contain only prohibitions.

The severance agreement (as attached to JUUL's RJN) also states that specified confidentiality and non-disparagement provisions <u>in the severance agreement</u> do not prohibit the exercise of certain enumerated protected rights "to the extent such rights cannot be waived by agreement." (RJN Ex. B, ¶ 7(g)).  The NDA, Termination Certification and, as alleged, confidentiality policies contain no such language.

Finally, <u>the severance agreement</u> (as attached to JUUL's RJN) contains mutually exclusive provisions stating <u>both</u> (1) that the employee <u>will not</u> "commence, maintain, prosecute, or participate in, or assist with (unless compelled by legal process or court order) any action or proceeding of any kind, judicial or administrative, whether on behalf of EMPLOYEE or a third party, in any court, agency, or investigative or administrative body against any Releasee;" <u>and</u> (2) that, "nothing in this Agreement prohibits EMPLOYEE from engaging in "Protected Activity," which, for purposes of this Agreement, means filing a charge or complaint or otherwise disclosing relevant information to or communicating, cooperating, or participating with, any state, federal, or government agency . . . ."  (RJN, Ex. ¶ 6).  So which is it, even with respect to the severance agreement?  Can employees commence, participate, or assist in a proceeding before a government agency or not?  A risk-adverse employee, of course, will decide it is better to <u>not</u> participate.  That is JUUL's purpose in drafting a contract which contains clear prohibitions and incomprehensible exceptions.

Regardless, the NDA, Termination Certification, and, as alleged, confidentiality policies and practices, contain no exception for "Protected Activity," not even the one set forth in the severance agreement that JUUL presents to this Court.

1    Plaintiff declined to sign JUUL's severance agreement.  Thus, JUUL did not continue her

2    employment, did not pay her wages, and did not pay her a bonus.  Plaintiff's equity did not vest.

3    Plaintiff remains bound by the confidentiality provisions in JUUL's NDA and Termination

4    Certification, exactly as they were originally presented, unmodified by any provision of a

5    severance agreement (Complaint ¶¶ 42-44).  JUUL's excessive focus on a severance agreement

6    not referenced in Plaintiff's Complaint does not defeat Plaintiff's claims.

7         **D.    The Systemic Use of Illegal NDAs**

8         Plaintiff's Complaint includes allegations concerning the systemic use of illegal NDAs,

9    and ties that systemic use to Plaintiff's claims and request for relief as to JUUL.

10        Employers typically view whistleblowers, competition, government and public scrutiny,

11   and reputational harm as problems: sometimes big and dangerous problems.  Employers see

12   NDAs and other confidentiality requirements as solutions: the more oppressive and onerous, the

13   better.  Employers currently see little downside – and significant upside – in requiring current and

14   former employees to abide by illegal NDAs and other confidentiality requirements.  This is

15   because "employees, having no reason to familiarize themselves with the specifics of California's

16   employment law, will tend to assume that the contractual terms proposed by their employer . . .

17   are legal, if draconian.  Furthermore, even if they strongly suspect that a clause is unenforceable,

18   such employees will be reluctant to challenge the legality of the contractual terms and risk

19   deployment of [the employer's] considerable legal resources against them.  Thus, the *in terrorem*

20   effect of the Agreement will tend to secure compliance with its illegal terms in the vast majority

21   of cases."  *Latona v. Aetna U.S. Healthcare Inc.* 82 F.Supp.2d 1089, 1096 (C.D. Cal. 1999).

22   (Complaint ¶ 21).

23        In addition, employees read the papers.  The Complaint thus provides three high-profile

24   examples of the pernicious use of employer-mandated NDAs. (Complaint ¶¶ 1, 22).  The heavily-

25   publicized experiences of whistleblowers faced with threatened or actual legal action arising from

26   NDAs naturally informs the public's understanding of their often-boilerplate language.  "The

27   words of a contract are to be understood <u>in their ordinary and popular sense</u> . . . unless a special

28   meaning is given to them by usage, in which case the latter must be followed." Cal. Civ. Code §

1644.  This is especially the case with respect to employees in the tobacco industry, where the aggressive use of NDAs has permitted the industry to conceal the serious public health dangers of their products for generations. (Complaint ¶¶ 1-2).  JUUL is a tobacco company.

Plaintiff seeks both civil penalties and equitable relief. (Complaint Prayer ¶¶ 1, 2).  In determining the amount of penalties and the form of equitable relief, the Court should consider the need to deter, not just Defendant, but other employers who might consider engaging in similar misconduct.  *E.g., United States Security and Exchange Commission v. Henke*, 275 F.Supp.2d 1075, 1086 (9th Cir. 2000) (awarding civil penalties as a deterrent to defendant <u>and others</u>); *People v. Toomey*, 157 Cal.App.3d 1, 22 (1984) (upholding permanent injunction "to . . . deter appellant <u>and others</u> from future misconduct.").  Allegations about similar conduct by other employers – and the need to deter such conduct – is therefore also relevant to Plaintiff's requests for relief.

## III.  ARGUMENT

### A.  Standard of Review

Plaintiff's Complaint asserts five PAGA causes of action and one unfair competition cause of action.  None of Plaintiff's claims arise in contract, although JUUL's NDAs and severance agreements are important, and potentially dispositive, evidence of JUUL's violations of the law.  The Complaint's factual allegations must be accepted as true and construed in a manner most favorable to Plaintiff.  *Doe v. U.S.,* 419 F.3d 1058, 1062 (9th Cir. 2005).  If a contract is ambiguous, the Court must resolve all ambiguities in Plaintiff's favor.  *FT Travel--New York, LLC v. Your Travel Center, Inc*., 112 F. Supp. 3d 1063, 1090 (C.D. Cal. 2015); *Brightpoint Distribution, LLC v. Aliphcom*, 2016 WL 10842589, at *3 (N.D. Cal. Nov. 8, 2016); *Toce v. Rentch*, 2018 WL 280024, at *4 (S.D. Cal. Jan. 3, 2018).

### B.  Plaintiff's Claims Do Not Turn on Technical Contract Interpretation

As an initial matter, Plaintiff's claims – by and large – do not hinge on technical rules of contract interpretation.  For example, Labor Code § 1102.5(a) states that "an employer . . . shall not make, adopt, or enforce any <u>rule, regulation or policy</u> preventing an employee from disclosing information to a government or law enforcement agency. . . ."   Labor Code 1197.5(k)(1) states

"an employer shall not <u>prohibit</u> an employee from disclosing the employee's own wages, discussing the wages of others [or], in inquiring about another employee's wages."  Labor Code §§ 232 and 232.5 state that <u>no employer may "require</u>, as a condition of employment, that an employee refrain from disclosing information about [wages or working conditions] <u>or</u> "require an employee to sign a waiver or <u>other document</u> that **purports to deny** the employee the right to disclose information about [wages or working conditions]."

Thus, a policy of requiring an employee to sign even a supposedly "ambiguous" agreement or other writing, or comply with a supposedly "ambiguous" policy, can violate the Labor Code if the purpose or purported effect is to restrain the exercise of statutory rights.  The perspective of the <u>average</u> employee is what matters.  *See, e.g., D'sa v. Playhut, Inc.*, 85 Cal.App.4th 927, 935 (2000).  The <u>average</u> employee is not an experienced employment lawyer and cannot afford one.  As explained in an analogous context:

> We cannot expect workers generally to be cognizant of judicial decisions concerning the interpretation of exculpatory provisions within releases. We reject the concept that a worker, compelled by economic necessity to secure employment, can be thus coerced into signing sweeping agreements exculpating various entities from *all* aspects of tort liability in the uninformed hope the agreement will not be enforced by the courts.  We see situations where the uninformed releasing employee will forego legitimate claims rather than assume the risk of expensive, time-consuming litigation for an uncertain result.

*Baker Pacific*, 220 Cal.App.3d at 1155; *D'sa*, 85 Cal.App.4th at 935 (same with respect to unenforceable non-compete).

Thus, a foundation of many of Plaintiff's claims is the *in terrorem* purpose and/or effect of JUUL's confidentiality requirements, not the niceties of individual contract interpretation.  For example, an employer who points to a blanket NDA like JUUL's and says to a potential whistleblower "be careful what you say or our lawyers will break you" violates the Labor Code.[2]  (See Complaint ¶ 22.)  This is so even if, when faced with a lawsuit for stacked civil penalties

---

[2] See, *e.g.*, James B. Stewart, *David Boies Pleads Not Guilty*, N.Y. TIMES (Sept. 21, 2018), https://www.nytimes.com/2018/09/21/business/david-boies-pleads-not-guilty.html ("[Boies'] partners sent letters threatening suspected talkers with litigation if they disclosed trade secrets or confidential information.  (One whistle-blower, a man in his 20s, incurred several hundred thousand dollars in legal fees.).")

1   under PAGA, the employer suddenly changes course and asserts its blanket NDA does not mean

2   what it says after all.

3        As explained in the partial concurrence/dissent in *Edwards*: *"*[The employer]'s actions

4   suggest a possible purpose of misleading employees into thinking they had waived rights that

5   could not be waived, thereby minimizing the number of indemnity claims those employees might

6   bring against [the employer]." *Edwards v. Arthur Andersen LLC*, 44 Cal.4th 937, 959 (2008).

7   Consistent with this fact, the *Edwards* majority remanded the case, stating: "Our holding that

8   contracts are ordinarily presumed to incorporate statutory requirements and that the [release] was

9   not per se unlawful, does not preclude Edwards from offering proof on remand of facts that may

10  prove the exception to the general rule based on Anderson's conduct.  We express no opinion

11  concerning the merits of such claim . . . ." *Id.* at 955 n.7.

12       This case deals with JUUL's efforts to prevent whistleblowing, competition, and speech

13  through confidentiality requirements that include, but are not limited to, employer-mandated

14  NDAs.  JUUL's focus on the contorted interpretation of individual contracts loses sight of and

15  detracts from these claims.

16       **C.    JUUL's Argument That Its NDA Is Ambiguous Defeats Its
             Motion to Dismiss**

17       Even if Plaintiff's claims turned entirely on the technical interpretation of contract,

18  JUUL's motion to dismiss must be denied.  JUUL, in reliance on *Edwards*, argues that its

19  overbroad NDA does not prohibit the exercise of protected rights as a matter of law.  The trial

20  court in *Edwards* – without taking evidence – ruled that an agreement in which the plaintiff

21  released "any and all claims " did not release unwaivable claims under Labor Code section 2802.

22  *Id.* at 944.  The Court of Appeal reversed, and found the release *per se* unlawful.  *Id.* at 945.

23       In reversing the Court of Appeal, the California Supreme Court first found the meaning of

24  the release uncertain.  *Id.* at 953 ("if the meaning is uncertain, the general rules of interpretation

25  are to be applied.  Here the meaning is in dispute and uncertain…).  Only *then* did it apply one

26  canon of interpretation (but not others) to resolve the ambiguity about the scope of the release,

27  finding it not "per se" unlawful.  However, the Supreme Court then remanded the case to the trial

28  court to determine if it was unlawful for other reasons.  *Id.* at 953, 957 n.7.

Thus, even JUUL's cited authority would not construe the applicable agreement without evidence. "All the rules of interpretation must be considered and each given its proper weight, where necessary, in order to arrive at the true effect of the instrument." *City of Manhattan Beach v. Superior Court,* 13 Cal.4th 232, 238 (1996). The California Supreme Court made clear that the interpretational guidance from Civil Code sections 1643 and 3541 are just "general rules." In fact, section 1643's guidance to interpret a contract in a way to "make it lawful … and capable of being carried into effect" specifically limits the interpretation to that which "can be done without violating the intention of the parties."

JUUL's assertion that its NDA is ambiguous (a necessary condition to its argument that the Court is required to construe the NDA to include numerous exceptions contrary to the plain language of the NDA) defeats its motion to dismiss. *See e.g. National Abortion Federation v. Center for Medical Progress*, 2015 WL 5071977, at *8 (N.D. Cal Aug. 27, 2015) ("That some causes of action revolve around contract interpretation does not mean that discovery of evidence that helps explain the terms of the agreement should be prohibited."); *Picketfence Inc. v. R.R. Donnelley & Sons Co.,* 2007 WL 9811030, at *2 (N.D. Cal Nov. 6, 2007) ("question of contract interpretation and resolving ambiguity…would be prematurely decided on a Motion to Dismiss); *Toce v. Rentch*, 2018 WL 280024, at *4 (S.D. Cal. Jan. 3, 2018) ("If an agreement is ambiguous, then interpretation of the agreement becomes a fact issue that cannot be resolved on a motion to dismiss"); *Intel Corp. v. Via Technologies, Inc.,* 2001 WL 777085, at *6 (N.D. Cal. Mar. 20, 2001) ("Such contract-interpretation questions should not be resolved on a motion to dismiss.").[3]

Moreover, if the Court determines it is appropriate to interpret the NDA, Termination Certification, and severance agreement at the pleadings stage, then it should conclude that Plaintiff's interpretation is the correct one. "The conduct of the parties after execution of the

---

[3] This Court's application of *Edwards v. Arthur Andersen LLC*, 44 Cal.4th 937 in *Stonebrae, L.P. v. Toll Bros., Inc.*, 2009 WL 248101, at *5 (N.D. Cal. Jan. 30, 2009), confirms that it should deny JUUL's motion here. As an initial matter, the Court applied *Edwards* to cross motions, one for summary judgment and one a motion to strike. Only when the parties had the opportunity to present extrinsic evidence, but did not, did this Court look to *Edwards*, and only because the agreement was "reasonably susceptible" to two interpretations.

contract and before any controversy has arisen as to its effect affords the most reliable evidence of the parties' intentions." *Kennecott Corp. v. Union Oil Co. of California*, 196 Cal. App. 3d 1179, 1189 (1987); *accord Crestview Cemetery Assn. v. Dieden* 54 Cal.2d 744, 754 (1960) ("This rule of practical construction is predicated on the common sense concept that "actions speak louder than words." ); *Salton Bay Marina, Inc. v. Imperial Irrigation Dist*. (1985) 172 Cal.App.3d 914, 936 (1985) (A court "is required to give 'great weight' to the conduct of the parties in interpreting the instrument before any controversy arose").

In this case, the severance agreement attached by JUUL contains numerous purported exceptions <u>not</u> included in the NDA, Termination Certification, or, as alleged, confidentiality policies and practices.  This can only mean that JUUL does not intend the confidentiality requirements *other than the severance agreement* to include the exceptions.  The presence of express exceptions in the severance agreement drafted by JUUL means those same exceptions should not be "read in" to the other agreements and policies <u>also</u> drafted by JUUL.

In sum, Plaintiff pleads an exceedingly reasonable interpretation of JUUL's confidentiality requirements.  JUUL, in contrast, asks the Court to deem ambiguous the confidentiality requirements JUUL imposed and then imply exceptions to JUUL's broad statements that are contrary to its subsequent conduct.  This is not a legitimate basis for granting a motion to dismiss.

### D. Plaintiff Has Adequately Pled PAGA Claims under Labor Code §§ 1102.5(a), 232, 1197.5 and 232.5

Plaintiff's First, Third, and Fifth causes of action allege the following: **(1)** JUUL has unlawfully adopted and enforced a policy of preventing employees from disclosing information about reasonably suspected violations of law, as protected by Labor Code § 1102.5(a) (Complaint ¶¶ 52-57 (First Cause of Action)); **(2)** JUUL unlawfully requires, as a condition of employment, that employees refrain from disclosing the amount of their wages (or information about the wages of others) and requires them to sign writings that "purport to deny" them the right to disclose wage information in violation of Labor Code §§ 232 and 1197.5(k) (Complaint ¶¶ 63-67 (Second Cause of Action)); and **(3)** JUUL unlawfully requires, as a condition of employment, that employees refrain from disclosing information about JUUL's working conditions and requires

them to sign writings that "purport to deny" them the right to disclose such information. (Complaint ¶¶ 68-72) (Third Cause of Action)).

The factual allegations that support these claims include, for example, the following: JUUL's policy of requiring employees, as a condition of initial and continued employment, to sign and comply with an NDA that prohibits them from using or disclosing essentially all information about JUUL, except to benefit JUUL. (Complaint ¶ 26).  JUUL's policy of requiring employees to agree to a non-disparagement provision in the NDA that prohibits employees from disclosing information "detrimental to the interests of the Company." (Complaint ¶ 27).  JUUL's policy of requiring employees to sign a Termination Certification that prohibits them from disclosing or using all information pertaining to the "subject matter" of JUUL or its employees. (Complaint ¶ 33).  JUUL's corporate confidentiality policies and practices. (Complaint ¶ 44). JUUL's practice and policy of offering severance or other agreements in exchange for continued employment that contain non-disparagement provisions (Complaint ¶ 38, 40) and confidentiality provisions prohibiting disclosure of information about the wages and working conditions detailed in the agreements themselves. (Complaint ¶ 39).  And, as noted above, the severance agreement attached to JUUL's RJN contains an express provision requiring that employees not "commence, maintain, prosecute, or participate in, or assist with (unless compelled by legal process or court order) any action or proceeding of any kind, judicial or administrative, whether on behalf of EMPLOYEE or a third party, in any court, agency, or investigative or administrative body against any Releasee." (RJN, Ex. ¶ 6).

These allegations are more than sufficient to state PAGA claims under Labor Code §§ 1102.5(a), 232, 1197.5(k), and 232.5.  Among other things, information about wrongful conduct, working conditions,[4] and wages at JUUL is information about JUUL and employment with JUUL.  JUUL prevents the disclosure or use of this information.  It specifically prohibits the disclosure of this information when it would be disparaging or detrimental to JUUL's interests.

---

[4] JUUL cites Labor Code § 232.5(d) for the proposition that Labor Code § 232.5(a) and (b) "is not intended to permit an employee to disclose proprietary information, trade secret information, or information that is otherwise subject to a legal privilege without the consent of his or her employer."  JUUL does not limit its confidentiality requirements to these enumerated items.  This section is not relevant to the present motion.

Whistleblowing, by its very nature, disparages the wrongdoer and is detrimental to its interests. JUUL's motion to dismiss as to Plaintiff's First, Third, and Fourth Causes of Action must be overruled.

> **E.      Plaintiff Has Adequately Pled PAGA Claims under Labor Code §§ 96(k) and 98.6(b), Labor Code § 432.5, and an Unfair Competition Claim under Business & Professions Code §§ 17200 *et seq.***

Plaintiff has adequately pled claims under Labor Code §§ 96(k) and 98.6(b) (Second Cause of Action), Labor Code § 432.5 (Fifth Cause of Action), and the Unfair Competition Law (Sixth Cause of Action) for the same reasons it has adequately pled the other claims.  JUUL, however, makes a number of additional arguments with respect these causes of action.  These additional arguments also fail.

> 1.      Labor Code §§ 96(k) and 98.6 Make It Unlawful for Employers to Prevent Employees from Exercising Free Speech Rights during Non-Work Hours Away from Their Employer's Premises

Labor Code § 96(k) authorizes the Labor Commissioner to take assignment of claims arising from adverse employment actions resulting from "lawful conduct occurring during nonworking hours away from the employer's premises."  Implicit in this assignment is the existence of a cognizable claim.  Labor Code §98.6(a) and (b) makes it unlawful for an employer to "in any manner discriminate, retaliate, or take any action against any employee" because the employee engaged in "the conduct <u>described</u> in subdivision (k) of Section 96."  The list of adverse actions includes when an employee is "<u>threatened with discharge</u>." Labor Code § 98.6(b).  PAGA expressly identifies both Labor Code § 96(k) and Labor Code § 98.6 as giving rise to claims under PAGA.  Labor Code § 2699.5.

Labor Code § 96(k) has, at a minimum, long been construed as protecting employees in the exercise of their state constitutional rights: "The Legislature further finds and declares that allowing any employer to deprive an employee of any constitutionally protected civil liberties, regardless of the rationale offered, is not in the public interest."  *E.g., Barbee v. Household Automotive Finance Corp.*, 113 Cal.App.4th 525, 534 (2003).  Here, the California Constitution contains a "liberty of speech" provision that <u>extends to private employers.</u>  *Gerawan Farming, Inc. v. Lyons*, 24 Cal.4th 468, 492 (2000).  "Article 1's right to freedom of speech, unlike the First

Amendment, is unbounded in range.  It runs against the world, including private parties as well as government actors."  *Id.* at 492.

Thus, JUUL's reliance on *Grinzi v. San Diego Hospice Corp.*, 120 Cal.App.4th 72 (2004) and *Sepulveda v. Olympus Am., Inc.*, 2007 WL 9811200 (N.D. Cal. 2007) is inapposite.  *Grinzi* concerned only the First Amendment, not California's liberty of speech clause, and *Sepulveda* distinguished *Gerawan* on the facts and ignore the legal principles upon which the *Gerawan* stands.  Moreover, *Sepulveda* was decided before *Golden Gateway Center v. Golden Gateway Tenant Ass'n*, 26 Cal.4th 1013 (2013), where three justices in a divided decision confirmed that California's liberty of speech clause applies to private actors (*Id.* at 1043), three justices disagreed (*Id.* at 1035), and the tie-breaking justice declined to decide the question.   Instead Chief Justice George, in a lone concurrence, stated: "if we were to hold . . . that all types of section 2 free speech claims require state action . . . we effectively would remove any state constitutional obstacle to any such action by a landlord, union, **or employer.** I see no reason to prejudge the resolution of such questions. . . . Given the variety of circumstances in which free speech concerns may come into play, and the difficulty of predicting how the presence or absence of a 'state action' requirement might effect the practical protection conferred by the free speech right embodied in the California Constitution's free speech clause, I believe we should proceed cautiously. . . ." *Id.* at 1043.  This Court, too, should proceed cautiously.  A motion to dismiss is not the best mechanism to decide the important issue of whether the California liberty of speech clause, Labor Code § 96(k) and Labor Code § 98.6 provides <u>no</u> protections, under <u>any</u> circumstances, to an employee's right to speak on matters of considerable public interest. *Cf. Solutionsz Videoconferencing, Inc. v. Davidson,* 2019 WL 6872904 (C.D. Cal. 2019) (declining to find non-solicitation provisions illegal at the early motion-to-dismiss stage when the law was not as clear as defendant claimed).

Plaintiff has adequately pled that JUUL's confidentiality requirements infringe on employee free speech rights within the meaning of Labor Code §§ 96(k) and 98.6(a) and (b).  Among other things, JUUL "threatens to discharge" employees if they violate JUUL's confidentiality requirements because JUUL expressly conditions their employment on their

- 15 -

1    silence.  For this reason as well, JUUL's motion to dismiss as to Plaintiff's Second Cause of

2    Action should be denied.

3              2.       Plaintiff Has Alleged A Claim under Labor Code § 432.5

4                       a.       *An Illegal Contract Is Not Just "Void," It is*

5                                *"Prohibited by Law"*

6    Labor Code § 432.5 states that "no employer . . . shall require any employee or applicant

7    for employment to agree, in writing, to **any** term or condition which is known by such employer .

8    . . to be prohibited by law."  Defendant argues that Plaintiff's entire cause of action under Labor

9    Code § 432.5 must be dismissed because not a single term or condition of any of its

10   confidentiality requirements are "prohibited by law."  This argument fails for the reasons set forth

11   above.

12   In addition, Defendant also argues that, while the overbroad confidential information and

13   post-termination non-solicitation provisions in its NDA may be "void," they are not "prohibited

14   by law."  This circular and unintelligible argument fails.  A contract term that is void because it is

15   illegal is a contract term "prohibited by law."  *E.g., Application Group, Inc. v. Hunter Group,*

16   *Inc.*, 61 Cal.App.4th 881, 908 n. 21 (1998) (finding that restrictive covenant which violates

17   Business & Professions Code § 16600 is underlined unlawful under Business & Professions Code § 17200);

18   *Advanced Bionics Corp. v. Medtronic, Inc.*, 29 Cal.4th 697, 706 (2002) ("we have even called

19   noncompetition agreements illegal.").

20   Restrictive covenants prohibited by law include post-termination non-solicitation

21   provisions and overbroad confidentiality provisions. *AMN Healthcare, Inc. v. Aya Healthcare*

22   *Services, Inc.* 28 Cal.App.5th 923, 936, 940 (2018); *The Retirement Group v. Galante* 176

23   Cal.App.4th 1226, 1239 (2009) (refusing to enforce contractual non-solicitation clause that went

24   beyond protection of trade secrets); *R.R. Donnelly & Sons Co. v. Fagan* 767 F.Supp. 1259, 1269

25   (S.D.N.Y. 1991)  (overbroad NDA restricts trade, competition, and the free flow of information in

26   the same manner as a noncompete); *Bodemer v. Swanel Beverage, Inc.* 884 F.Supp. 717, 729

27   (N.D. Ill. 2012) (NDA that prohibits the disclosure of "all business information" is, for all intents

28

PLAINTIFF'S OPPOSITION TO JUUL MOTION TO DISMISS / CASE NO. 3:20-CV-3710-EMC

and purposes, a covenant not to compete)).[5]  Plaintiff has adequately alleged that JUUL requires employees to sign writings with at least one term or condition (and one is all that is required) "prohibited by law."

b.   *JUUL's Confidentiality Requirements Violates the Federal Defend Trade Secrets Act*

JUUL argues it is not required to include the notice of immunity set forth in the Federal Defend Trade Secrets Act in its confidentiality requirements.  This is incorrect.  The DTSA states: "An employer <u>shall provide</u> the notice of immunity set forth in this subsection in any contract or agreement with an employee that governs the use of a trade secret or other confidential information." 18 U.S.C. § 1833(b)(3)(A).  While the failure to include the notice <u>also</u> means an employer cannot recover exemplary damages or attorneys fees, that does not render the notice "optional."  The requirement that employers "<u>shall provide</u>" the notice means that it is <u>not</u> optional.   JUUL cites no case to the contrary.

JUUL's failure to provide the notice in its confidentiality requirements (other than, as set forth by JUUL, the severance agreement) is "prohibited by law" because it violates the plain language of the DTSA and California's Unfair Competition law, which borrows from the DTSA. Bus & Prof. Code § 17200 (prohibiting any "unlawful, unfair, or fraudulent business act or practice.").

c.   *Plaintiff Has Adequately Pled JUUL's Severance Agreement Is Prohibited by Law under Government Code § 12964.5*

JUUL also asserts that, because the severance agreement included a separation date, it falls outside the scope of Government Code § 12964.5.  This is contrary to both the allegations of the Complaint – which makes clear the agreement was for <u>continued</u> employment though a

---

[5] JUUL's argument that its NDA and other agreements are not trusts within the meaning of the Cartwright Act also fails.  A "trust" is a "combination of capital, skill or acts by two or more persons" to restrain trade.  Business & Professions Code § 16720.  Non-solicitation and confidentiality agreements restrain competition.  An employer has economic interests separate and distinct from its employees.  This is one reason there are unions.  These economic interests are particularly separate and distinct before the employment relationship begins (when the employee must sign the NDA), and after the relationship ends, even though the employees remain bound by the restrictive covenants.  Indeed, employers require confidentiality and non-solicitation provisions precisely <u>because</u> its economic interests are separate and distinct from its employees.

specific date and a bonus (See ¶¶ 36-41) -- and the plain language of Government Code §

12964.5.  This provision states: "It is an unlawful employment practice for an employer, in

exchange for a raise <u>or bonus</u>, or as a condition of employment <u>or continued employment</u>, to:"

(1)(A) "require an employee to sign a release of a claim under" FEHA; or 1(B) "require an

employee to sign a non-disparagement agreement or other document."  Here, JUUL did both.

(Complaint ¶¶ 37-38).  This was prohibited by law.

JUUL's reliance on Government Code § 12964.5(c) does not rescue its motion to dismiss.

That section exempts "a negotiated settlement agreement to resolve <u>an underlying claim under</u>

<u>this part that has been filed</u> by an employee in court, before an administrative agency, alternative

dispute resolution, or through an employer's internal complaint process."  Here, there is no

allegation of an underlying claim under FEHA that had been previously filed anywhere.

JUUL's violation of Government Code § 12964.5 through its offer of the "severance

agreement" was also "prohibited by law" within the meaning of Labor Code § 432.5.

> d.  *Plaintiff Has Adequately Pled Employer "Knowledge"*
> *under Labor Code § 432.5*

In its Motion to Dismiss, JUUL also assumes that Plaintiff, in order to prove a violation of

Labor Code § 432.5, must prove what is essentially a "specific intent" crime.  This is incorrect.

First, the protections of the Labor Code are to be construed broadly in favor of protecting

employees.  *Murphy v. Kenneth Cole Productions, Inc.*, 40 Cal.4th 1094, 1103 (2007).  Permitting

an employer to hide behind its' alleged ignorance of the law turns this proposition on its head.

Second, the courts have construed analogous provisions of the Labor Code as requiring

only a general intent, i.e., simple knowledge that the at-issue term was included (or not included)

in the document.  For example, in *Willner v. Manpower,* 35 F.Supp.3d 1116 (N.D. Cal. 2014), the

district court considered what level of knowledge was required to prove an employer's "knowing

and intentional failure to comply with subdivision (a)" of Labor Code § 226.  *Id.* at 1130.  The

district court concluded this language required "a showing that the defendant knew the facts

existed that brought its actions or omissions within the province of section 226(a) – i.e., that

Manpower knew that it wage statements did not contain the inclusive dates of the period for

which its employees were paid, and knew that they did not contain Manpower's address.  <u>Willner</u>

- 18 -

1   is not required demonstrate that Manpower knew that this conduct, if otherwise proven, was

2   unlawful." *Id.* at 1131.

3         The *Willner* knowledge standard should apply to claims under Labor Code § 432.5. Thus,

4   so long as Plaintiff establishes: (1) that JUUL knew its NDAs and other writings included a

5   specific term or condition; and (2) that the term or condition was "prohibited by law," then she

6   has established a violation of Labor Code § 432.5. The allegations in Plaintiff's Complaint easily

7   meets this standard.

8         Regardless, even under <u>JUUL's</u> proposed knowledge standard, Plaintiff has stated a claim

9   under Labor Code § 432.5. She has alleged facts setting forth JUUL's knowledge of the law.

10  (Complaint ¶ 45). JUUL's violations of those laws is unambiguous. Even as to the non-

11  solicitation provision, since *AMN Healthcare*, every court that has addressed the issue on the

12  merits has concluded post-termination non-solicitation provisions are illegal restraints of trade

13  under California law. *E.g., Barker v. Insight Global, LLC*, 2019 WL 176260, *3 (N.D. Cal. 2019)

14  ("the Court is convinced by the reasoning in *AMN Healthcare* that California law is properly

15  interpreted post-*Edwards* to invalidate employee non-solicitation provisions"); *Nuvasive, Inc. v.

16  Miles*, 2019 WL 4010814, * 7 (Del. Ch. Aug. 26, 2019) (same); *WeRide Corp. v. Huang*, 379

17  F.Supp.3d 834, 852 (N.D. Cal. 2019) (same).[6] Yet, JUUL continues to include this illegal

18  provision in its standard NDA. Plaintiff seeks to stop this brazen and ongoing violation of

19  California law.

20        Because Plaintiff has adequately pled employer knowledge under Labor Code § 432.5,

21  JUUL's motion to dismiss as to this cause of action should be denied.

22              3.      Plaintiff Has Stated a Claim under the Unfair Competition Law

23        Because Plaintiff has adequately pled claims under the Labor Code, the Business &

24  Professions Code, the Government Code, the DTSA, and other laws, she has also pled a claim for

25  Unlawful Competition under Business & Professions Code § 17200 *et seq.* Thus, JUUL's motion

26  to dismiss Plaintiff's Sixth Cause of Action should be denied.

27

28  [6] *Solutionsz Videoconferencing, Inc. v. Davidson,* 2019 WL 6872904 (C.D. Cal. 2019), cited by JUUL, is not to the contrary. That case did not find non-solicitation agreements <u>legal</u>. It simply declined to find them illegal at the early motion to dismiss stage.

**F.      JUUL's Alternative Arguments Should Be Overruled**

Finally, JUUL argues: (1) Plaintiff has no right to a jury trial; (2) Plaintiff has no right to injunctive relief; (3) Plaintiff has no right to pre-judgment interest on PAGA penalties: and (4) The Court should strike the background allegations about the use and problem of NDAs.

While not conceding JUUL's arguments, Plaintiff waives her right to a jury trial and withdraws her request for pre-judgment interest on civil penalties.  These issues are therefore moot.

Plaintiff, however, stands by her request for <u>public</u> injunctive relief.   She has suffered an injury-in-fact as a result of JUUL's unlawful conduct (See Complaint ¶¶ 41-42) and she continues to remain bound by JUUL's NDA and Termination Certification. (Complaint ¶ 43).  Just as importantly, all of JUUL's current and former employees remain subject to the *in terrorem* effect of JUUL's unlawful confidentiality requirements. (Complaint ¶¶ 43, 48, 82).  JUUL's confidentiality requirements harm, not just JUUL's current and former employees, but the public at large – particularly in light of JUUL's questionable business practices and the hazardous nature of its products. (Complaint ¶¶ 23-24).  A public injunction is thus appropriate, and Hamilton has standing to seek one.  Bus & Prof. Code § 17204 (permitting UCL actions on behalf of the public by those who suffered injury in fact or lost money or property); Bus & Prof. Code § 17203 (permitting broad based injunctive relief to prevent the use of practices that constitute unfair competition).

Plaintiff also opposes JUUL's motion to strike.  As detailed above, the at-issue allegations are relevant to both the commonly understood meaning and interpretation of employer NDAs, as well as the need for a robust award of civil penalties and broad-based injunctive relief in this case.

**IV.    CONCLUSION**

For all the reasons set forth above, JUUL''s motion to dismiss and motion to strike should be denied in its entirety.  If it is granted in any respect, Plaintiff request leave to amend.

Dated:   July 23, 2020                              BAKER CURTIS & SCHWARTZ, P.C.


By:_____/s/ Chris Baker_____
      Chris Baker
      Attorneys for Plaintiff
      MARCIE HAMILTON