CHRIS BAKER, State Bar No. 181557
cbaker@bakerlp.com
DEBORAH SCHWARTZ, State Bar No. 208934
dschwartz@bakerlp.com
BAKER CURTIS & SCHWARTZ, P.C.
1 California Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 433-1064
Fax: (415) 366-2525

Attorneys for Plaintiff
MARCIE HAMILTON

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MARCIE HAMILTON,<br><br>              Plaintiff,<br><br>       vs.<br><br>JUUL LABS, INC.,<br><br>              Defendant. | Case No. 3:20-CV-3710-EMC<br><br>**NOTICE OF JUUL AGREEMENT OFFERED TO PLAINTIFF MARCIE HAMILTON**<br><br>Date: August 20, 2020<br>Time: 1:30 p.m.<br>Dept: Courtroom 5, 17th Floor<br>Judge: Honorable Edward M. Chen |

In accordance with the Court's Order Requesting Documentation (Dkt # 20), attached to this pleading is a copy of the JUUL Labs, Inc. Separation Agreement and Release, rejected by Hamilton, that is in Plaintiff's Counsel's file and that is referenced in the Complaint.

                                                                BAKER CURTIS & SCHWARTZ, P.C.


                                                                By:_____/s/ Chris Baker_____
                                                                       Chris Baker
                                                                       Attorneys for Plaintiff
                                                                       MARCIE HAMILTON

DocuSign Envelope D: 1AAFA596 6C6A 4D04 8395 E4C48D4FB87C



# JUUL LABS, INC.
# SEPARATION AGREEMENT AND RELEASE

This Separation Agreement and Release (the "Agreement") is entered into by and between JUUL Labs, Inc., a Delaware corporation, on behalf of itself, its subsidiaries and other corporate affiliates (collectively, "EMPLOYER"), and Marcie Hamilton ("EMPLOYEE"), residing at ███████ ███████ San Francisco, California 94123. The parties to this Agreement are collectively referred to as the "Parties" and individually as a "Party."

WHEREAS, EMPLOYER has employed EMPLOYEE since April 2, 2018, most recently as Director, Program Management; and

WHEREAS, EMPLOYER and EMPLOYEE desire to settle fully and finally all differences or potential differences between them, including, but not limited to, all differences or potential differences arising out of or relating to EMPLOYEE's employment or separation from employment with EMPLOYER.

NOW, THEREFORE, based on the foregoing and in consideration for the covenants below and other good and valuable consideration, the receipt and sufficiency of which are acknowledged, EMPLOYER and EMPLOYEE agree as follows:

1. EMPLOYEE acknowledges that EMPLOYER has made the decision to terminate his/her employment, and that such separation will be effective April 2, 2019 (the "Separation Date"). EMPLOYEE agrees that he/she relinquished his/her operating responsibilities as of March 15, 2019, after which EMPLOYEE has not and will not represent himself/herself as an employee, officer, agent or representative of EMPLOYER for any purpose. Notwithstanding the foregoing, EMPLOYEE will continue to be eligible for a 2018 H2 performance bonus based on actual company and individual performance, to be paid on EMPLOYER's scheduled paydate for US employees. EMPLOYEE will be paid for any PTO that is accrued but unused as of March 15, 2019, and all reimbursable business expenses.

2. In consideration for EMPLOYEE's execution of and compliance with this Agreement, including EMPLOYEE's waiver and release of claims set forth in Paragraph 4 below, and in full and complete satisfaction of all final payments due to EMPLOYEE from EMPLOYER, EMPLOYER agrees to provide EMPLOYEE with the following payments and benefits:

    (a) Subject to signing of this Agreement and expiration of the revocation period described in Paragraph 9 below, EMPLOYEE will be placed on a paid leave of absence between March 16, 2019, and the Separation Date (the "Paid Leave"). During the Paid Leave:

        (i) EMPLOYEE will continue to receive his/her base salary at his/her current gross annual rate on COMPANY's normal payroll dates and subject to applicable tax withholding and other deductions, provided, however, that the first payment made to EMPLOYEE may include a lump sum equal to any installment payments that would have been made to EMPLOYEE prior to that first payment date if payments had begun in accordance with COMPANY's normal payroll practices effective with the first payroll period

1

DocuSign Envelope ID: 1AAFA596-6C6A-4D04-8395-E4C48D4FB87C

Marcie Hamilton<br>Separation Date: April 2, 2019

commencing after March 15, 2019. EMPLOYEE will not accrue any PTO during the Paid Leave.

(ii) EMPLOYEE will be eligible for continued equity vesting through the Separation Date. Specifically, EMPLOYEE is scheduled to vest the following equity on April 2, 2019, subject to continued employment through the Separation Date:

| Grant | Exercise Price | Number of Options |
|---|---|---|
| ES-0100467-A | $20.6140 | 1,000 |
| ES-0100467-B | $13.3840 | 770 |

(b) A separation payment in the total gross amount of $52,500.00, subject to applicable tax withholding and other deductions. Payment shall be made to EMPLOYEE in a lump sum within thirty (30) days after the Effective Date of this Agreement (as defined in Paragraph 8 below).

(c) A special bonus in the amount of $63,000.00, subject to applicable tax withholding and other deductions. Payment shall be made to EMPLOYEE in a lump sum within thirty (30) days after the Effective Date.

(d) Continuation of coverage under EMPLOYER's group health insurance plan through COBRA for the period beginning on May 1, 2019, and ending on July 31, 2019 (the "COBRA Subsidy Period"), under the same coverage and on the same terms and conditions generally afforded to EMPLOYER's then-current active employees, provided EMPLOYEE is eligible to receive such coverage, enrolls in COBRA with EMPLOYER's COBRA administrator not later than sixty (60) days following the Separation Date, completes all documentation necessary to obtain such coverage in a timely manner, and complies with all other conditions in this Paragraph. Following the COBRA Subsidy Period, EMPLOYEE may, subject to statutory eligibility requirements, continue COBRA coverage up to the statutory ending date at standard COBRA rates, and shall be responsible for the entire COBRA premium for the remainder of the applicable COBRA continuation period.

Notwithstanding the foregoing, no payment or benefit shall be made or begin before the Effective Date of this Agreement. A summary of the separation package to which EMPLOYEE is entitled is set forth in **Exhibit A** hereto.

3. EMPLOYEE understands, acknowledges and agrees that the payments and benefits to be provided under this Agreement exceed those to which he/she would otherwise be entitled under the normal operation of any benefit plan, policy or procedure of EMPLOYER or under any previous agreement (written or oral) between EMPLOYEE and EMPLOYER. EMPLOYEE further acknowledges that the agreement by EMPLOYER to provide such additional payments is beyond his/her entitlement, if any, and is conditioned upon EMPLOYEE's release of all claims against EMPLOYER and his/her compliance with all the terms and conditions of this Agreement. EMPLOYEE is not entitled to any additional payment or consideration not specifically referenced in this Agreement. Nothing in this Agreement shall be deemed or

2

DocuSign Envelope ID: 1AAFA596-6C6A-4D04-8395-E4C48D4FB87C

Marcie Hamilton<br>
Separation Date: April 2, 2019

construed as an express or implied policy or practice of EMPLOYER to provide these or other payments or benefits to any individual other than EMPLOYEE.

4. **Release of Claims**.

    (a) For and in consideration of the obligations assumed by EMPLOYER in this Agreement, EMPLOYEE, for himself/herself and his/her heirs, executors, administrators, successors and assigns (collectively, "Releasor"), hereby releases and discharges EMPLOYER and its current or former parents, subsidiaries, related entities and affiliates, and their respective employee benefit plans or funds, officers, directors, shareholders, partners, employees, agents, trustees, administrators, predecessors, successors and assigns (collectively, "Releasees") from any and all claims, demands, causes of action, and liabilities of any kind (upon any legal or equitable theory, whether contractual, common law, statutory, federal, state, local or otherwise, including, but not limited to, any claims for fees, costs and disbursements of any kind), whether known or unknown, which Releasor now has, ever had, or hereafter may have, against Releasees, whether acting as agents of EMPLOYER or in their individual capacities, based on any act, omission, practice, conduct, event or other matter occurring up to and including the date on which EMPLOYEE signs this Agreement.

    (b) Without limiting the generality of the foregoing, Releasor releases and discharges Releasees from any and all claims arising out of EMPLOYEE's employment with EMPLOYER, the termination of his/her employment as provided for in this Agreement and/or the events surrounding the circumstances relating to that termination, including, but not limited to: (i) any claim under the Age Discrimination in Employment Act, Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, the Family and Medical Leave Act, the False Claims Act, the Equal Pay Act, the Employee Retirement Income Security Act, the Civil Rights Act of 1991, Section 1981 of U.S.C. Title 42, the Sarbanes-Oxley Act of 2002, the Fair Labor Standards Act, the California Fair Employment and Housing Act, the California Labor Code, the California Private Attorneys General Act, and any other federal, state or local law or ordinance prohibiting employment discrimination, harassment or retaliation; (ii) any and all claims for compensation of any type whatsoever, including, but not limited to, claims for salary, wages, bonuses, commissions, incentive compensation, vacation, paid time off and severance that may be legally waived and released; (iii) any and all claims arising under tort, contract and quasi-contract law, including, but not limited to, claims of breach of contract (express or implied), tortious interference with contract or prospective business advantage, breach of the covenant of good faith and fair dealing, promissory estoppel, misrepresentation, detrimental reliance, invasion of privacy, wrongful or retaliatory discharge, fraud, defamation, slander, libel, negligent or intentional infliction of emotional distress or compensatory or punitive damages; and (iv) any and all claims for monetary or equitable relief, including, but not limited to, attorneys' fees, back pay, front pay, reinstatement, experts' fees, medical fees or expenses, costs, and disbursements. This Release of Claims does not release claims arising after the date EMPLOYEE executes this Agreement, nor claims that cannot be released as a matter of law, including, but not limited to, EMPLOYEE's right to file a charge with or participate in a charge by the Equal Employment Opportunity Commission, or any other local, state, or federal administrative

DocuSign Envelope ID: 1AAFA596-6C6A-4D04-8395-E4C48D4FB87C

**Marcie Hamilton**<br>**Separation Date: April 2, 2019**

body or government agency that is authorized to enforce or administer laws related to employment, against EMPLOYER (with the understanding that any such filing or participation does not give EMPLOYEE the right to recover any monetary damages against EMPLOYER; EMPLOYEE's Release of Claims herein bars EMPLOYEE from recovering such monetary relief from EMPLOYER).

(c) This Release of Claims is intended to be effective as a general release of and bar to all claims as stated in this Paragraph. EMPLOYEE expressly waives all claims under Section 1542 of the California Civil Code, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, AND THAT IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

EMPLOYEE acknowledges that he/she may later discover claims or facts in addition to or different from those which EMPLOYEE now knows or believes to exist with regards to the subject matter of this Agreement, and which, if known or suspected at the time of executing this Agreement, may have materially affected its terms. Nevertheless, Releasor waives any and all claims that might arise as a result of such different or additional claims or facts.

(d) EMPLOYEE agrees, except as otherwise prohibited by law or set forth in this Paragraph, that he/she has not and will not, at any time hereafter, commence, maintain, prosecute, participate in, or assist with (unless compelled by legal process or court order) any action or proceeding of any kind, judicial or administrative, whether on behalf of EMPLOYEE or a third party, in any court, agency, or investigative or administrative body against any Releasee with respect to any act, omission, practice, conduct, event or any other matter occurring up to and including the date on which EMPLOYEE signs this Agreement. Without limiting the generality of the foregoing, EMPLOYEE agrees that he/she will not bring or participate in any class action or collective action against EMPLOYER which asserts, in whole or in part, any claim(s) which arose prior to the date this Agreement is signed by EMPLOYEE, whether or not such claims are covered by the Release of Claims. EMPLOYEE understands that nothing in this Agreement prohibits EMPLOYEE from engaging in "Protected Activity," which, for purposes of this Agreement, means filing a charge or complaint or otherwise disclosing relevant information to or communicating, cooperating, or participating with, any state, federal, or other governmental agency, including the Securities and Exchange Commission, the Equal Employment Opportunity Commission, and the National Labor Relations Board, but does not include the disclosure of any EMPLOYER's attorney-client privileged communications. EMPLOYEE understands that he/she is not required to obtain prior authorization from EMPLOYER or inform EMPLOYER prior to engaging in any Protected Activity.

DocuSign Envelope D: 1AAFA596 6C6A 4D04 8395 E4C48D4FB87C

Marcie Hamilton
Separation Date: April 2, 2019

(e) EMPLOYEE represents and warrants that he/she has no knowledge of any work-related injury or illness incurred while working for EMPLOYER, that he/she has not filed a claim or an application for benefits under the Workers' Compensation Laws, that he/she does not contend that he/she has any such claim, and that he/she does not intend to make a claim or file an application for benefits.

(f) The sole matters to which the release and covenants in this Paragraph do not apply are: (i) EMPLOYEE's rights under this Agreement; (ii) EMPLOYEE's right to accrued vested benefits under and in accordance with the terms of any qualified plan of EMPLOYER; and (iii) EMPLOYEE's claim for unemployment benefits.

5. The making of this Agreement is not intended, and shall not be construed, as an admission that the Releasees have committed any wrong with respect to EMPLOYEE or that they have violated any statute or other laws.

6. EMPLOYEE acknowledges and reaffirms in its entirety the Proprietary Information and Invention Assignment Agreement executed upon commencement of his/her employment (the "PIIA Agreement") and his/her continuing obligations thereunder. EMPLOYEE agrees that EMPLOYER's obligation to provide the payments and benefits set forth in Paragraph 2 above is subject to confirmation that EMPLOYEE has returned to EMPLOYER an executed copy of the Termination Certification attached as Exhibit C to the PIIA Agreement. Nothing in this Agreement is intended to or shall be construed to modify, impair or terminate any of EMPLOYEE's obligations pursuant to the PIIA Agreement that by the terms of the PIIA Agreement continue after the termination of his/her employment with EMPLOYER. Notwithstanding the foregoing, EMPLOYEE understands that, pursuant to 18 U.S.C § 1833(b)(l), he/she cannot be held criminally or civilly liable under any federal or state trade secret law for the disclosure of a trade secret that (a) EMPLOYEE makes (i) in confidence to a federal, state, or local government official, either directly or indirectly, or to an attorney and (ii) solely for the purpose of reporting or investigating a suspected violation of law; or (b) EMPLOYEE makes in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal. Nothing in this Agreement prohibits or restricts EMPLOYEE (or EMPLOYEE's attorney) from initiating communications directly with, responding to an inquiry from, or providing testimony before the Securities and Exchange Commission ("SEC") any other self-regulatory organization or any other federal or state regulatory authority regarding this Agreement or its underlying facts or circumstances or a possible securities law violation.

7. EMPLOYEE specifically agrees and acknowledges that:

(a) For and in consideration of the payments and benefits provided for in Paragraph 2 above, EMPLOYEE agrees that, without the written authorization of the Chief Executive Officer of EMPLOYER (or his/her authorized designee), he/she and his/her attorneys or agents will not disclose the terms, conditions or existence of this Agreement to any person or entity except to EMPLOYEE's immediate family members; his/her attorney(s), if any; his/her accountant or financial advisor, to the extent necessary to prepare his/her tax returns; in response to a subpoena or court order; or as may be necessary in connection

5

DocuSign Envelope ID: 1AAFA596-6C6A-4D04-8395-E4C48D4FB87C

**Marcie Hamilton**
**Separation Date: April 2, 2019**

with his/her receipt of State unemployment and/or disability benefits. EMPLOYEE further agrees that he/she will advise any individual to whom the terms, conditions or existence of this Agreement have been disclosed (in accordance with the foregoing sentence) of the confidentiality requirements of this Paragraph and shall use his/her best efforts to ensure that the requirements are complied with in all respects. Neither EMPLOYEE nor his/her agents shall solicit, initiate or encourage any demand or request for the disclosure of any information covered in this Paragraph.

(b) EMPLOYEE agrees that EMPLOYER's obligation to provide the payments and benefits set forth in Paragraph 2 above is subject to confirmation that EMPLOYEE has returned all company property, including, but not limited to, keys, badges, credit cards, computer hardware and software (including, but not limited to, laptops, iPads and flash drives), documents or files (whether in electronic or hard copy format), manuals, records, drawings, product samples, and any other company property in his/her possession, custody or control.

(c) EMPLOYEE agrees that, in the event EMPLOYEE is found to owe any monies to EMPLOYER as of the Separation Date, EMPLOYER is authorized to deduct the total amount owed from the payment(s) set forth in Paragraph 2 above. Such monies may include, but are not limited to, monies owed under a Relocation Addendum, charges that EMPLOYEE failed to submit for reimbursement in a timely manner with appropriate documentation per company policy, etc. In the event that the total amount owed by EMPLOYEE exceeds the payment(s) set forth in Paragraph 2, EMPLOYEE agrees to submit a check to EMPLOYER for the remaining balance owed within thirty (30) days of the Separation Date.

(d) EMPLOYEE agrees that, during the Paid Leave period, he/she is prohibited from commencing employment with another employer, whether on a full-time or part-time basis.

(e) EMPLOYEE agrees to refrain from any disparagement, defamation, libel or slander of EMPLOYER or any of the other Releasees or tortious interference with the contracts and relationships of EMPLOYER.

(f) EMPLOYEE agrees that he/she will direct prospective employers to EMPLOYER's People Team at hr@juul.com, which will provide EMPLOYEE's dates of employment, last position held and, subject to EMPLOYEE's authorization, EMPLOYEE's salary information.

(g) EMPLOYEE understands that nothing in this Paragraph restricts or impedes EMPLOYEE from (i) exercising protected rights, including rights under the National Labor Relations Act ("NLRA") or the federal securities laws, to the extent that such rights cannot be waived by agreement; (ii) making statements in connection with filing a charge or participating in any investigation or proceeding conducted by the Equal Employment Opportunity Commission, the National Labor Relations Board or other comparable federal, state or local agency; or (iii) complying with any applicable law or regulation or a valid order of a court of competent jurisdiction or an authorized government agency, provided that such compliance does not exceed that required by the law, regulation, or order. EMPLOYEE

DocuSign Envelope ID: 1AAFA596-6C6A-4D04-8395-E4C48D4FB87C

Marcie Hamilton<br>Separation Date: April 2, 2019

    shall promptly provide written notice of any such order to: Chief Legal Officer, JUUL Labs, Inc., 560 20th Street, San Francisco, California 94107.

8. By signing this Agreement, EMPLOYEE represents and warrants that:

   (a) Under Section 7(t)(2) of the Age Discrimination in Employment Act of 1967, as amended, EMPLOYER advises EMPLOYEE that he/she should consult independent counsel before executing this Agreement; and EMPLOYEE acknowledges that he/she has been so advised. EMPLOYEE further acknowledges that he/she has had an opportunity to consider this Agreement for at least twenty-one (21) days before signing it. It is understood and agreed that the offer contained in this Agreement shall automatically expire on the twenty-first day following EMPLOYEE's receipt of the Agreement.

   (b) EMPLOYEE represents and warrants that he/she has carefully read this Agreement in its entirety; that he/she has had an adequate opportunity to consider it and to consult with any advisor of his/her choice about it; that he/she understands all its terms; that he/she knowingly and voluntarily assents to all the terms and conditions contained herein, including, without limitation, the waiver and release contained herein; that he/she is executing this Agreement, including the waiver and release, in exchange for good and valuable consideration in addition to anything of value to which he/she is otherwise entitled; that he/she is signing this Agreement voluntarily and of his/her own free will; and he/she understands that the release contained in this Agreement does not apply to rights and claims that may arise after the date on which EMPLOYEE signs this Agreement.

   (c) This Agreement shall not become effective until the eighth day following the date on which EMPLOYEE signs it (the "Effective Date"). EMPLOYEE understands that he/she may at any time prior to that Effective Date revoke this Agreement by delivering written notice of revocation to: Chief People Officer, JUUL Labs, Inc., 560 20th Street, San Francisco, California 94107.

9. EMPLOYER may freely assign this Agreement at any time. This Agreement shall inure to the benefit of EMPLOYER and its successors and assigns.

10. This Agreement constitutes the complete agreement and understanding of the Parties, supersedes any prior agreements or understandings of the Parties (whether oral or written), and may be amended only in a writing signed by EMPLOYEE and EMPLOYER. EMPLOYEE acknowledges that no representative of EMPLOYER has made any representation or promise to him/her concerning the terms or conditions of this Agreement or his/her separation from employment with EMPLOYER other than those expressly set forth in this Agreement.

11. No provision of this Agreement may be amended or modified unless such amendment or modification is agreed to in writing and signed by EMPLOYEE and by EMPLOYER's Chief People Officer, or his/her designee. The waiver or failure of either Party to claim a breach of any provision of this Agreement by the other Party shall not be deemed to constitute a waiver or estoppel with respect to any subsequent breach or with respect to any provision thereof. Any waiver must be in writing and signed by the waiving Party in order to be valid.

DocuSign Envelope  D: 1AAFA596 6C6A 4D04 8395 E4C48D4FB87C

Marcie Hamilton<br>
Separation Date: April 2, 2019

12. If any provision of this Agreement is held to be illegal, void or unenforceable, such provision shall be of no force or effect. However, the illegality or unenforceability of such provision shall have no effect upon, and shall not impair the legality or enforceability of, any other provision of this Agreement; provided, however, that upon any finding by a court of competent jurisdiction that a release or waiver of claims or rights or a covenant provided for by Paragraph 4 above is illegal, void or unenforceable, EMPLOYEE agrees, at EMPLOYER's request, to execute promptly a release, waiver and/or covenant that is legal and enforceable.

13. The Parties may execute this Agreement in counterparts, each of which shall be deemed an original, and all of which taken together shall constitute one and the same instrument. Delivery of an executed counterpart of this Agreement by facsimile, email or by any other electronic means intended to preserve the original graphic and pictorial appearance of a document has the same effect as delivery of an executed original of this Agreement.

14. This Agreement is intended to comply with Section 409A of the Internal Revenue Code of 1986, as amended ("Section 409A"), which establishes personal tax and penalty liability for certain deferred compensation, or an exemption thereunder, and shall be construed and administered in accordance with Section 409A. Notwithstanding any other provision of this Agreement, all payments and benefits provided under this Agreement may only be made upon an event and in a manner that complies with Section 409A or an applicable exemption. Any payments under this Agreement that may be excluded from Section 409A either as separation pay due to an involuntary separation from service, as a short-term deferral, or as a settlement payment pursuant to a bona fide legal dispute shall be excluded from Section 409A to the maximum extent possible. For purposes of Section 409A, any installment payments provided under this Agreement shall each be treated as a separate payment. Any payments to be made under this Agreement upon a termination of employment shall only be made upon a "separation from service" under Section 409A. Notwithstanding the foregoing, EMPLOYER makes no representations or warranties with respect to the tax consequences of the payments and any other consideration provided to EMPLOYEE or made on EMPLOYEE's behalf under the terms of this Agreement. In no event shall EMPLOYER be liable for all or any portion of any taxes, penalties, interest or other expenses that may be incurred by EMPLOYEE on account of non-compliance with Section 409A. EMPLOYEE agrees and understands that EMPLOYEE is solely responsible for payment, if any, of local, state, and/or federal taxes on the payments and any other consideration provided hereunder by EMPLOYER and any penalties or assessments thereon.

15. This Agreement shall be interpreted and construed in accordance with the laws of the State of California applicable to contracts made and performed therein without regard to principles of conflict of laws.

    (a) Any controversy, claim or dispute arising out of or relating to this Agreement (or between EMPLOYEE and any other Releasee, each of whom is hereby designated a third party beneficiary of this agreement regarding arbitration), or the interpretation thereof, shall be settled exclusively by arbitration conducted in San Francisco, California, before a single arbitrator in accordance with the employment arbitration rules of JAMS then in effect and

DocuSign Envelope ID: 1AAFA596-6C6A-4D04-8395-E4C48D4FB87C

**Marcie Hamilton**
**Separation Date: April 2, 2019**

    with discovery permitted by both Parties in accordance with such rules. The JAMS Employment Arbitration Rules & Procedures can be found online at: https://www.jamsadr.com/rules-employment. The arbitrator shall administer and conduct any arbitration in accordance with California law, including the California Code of Civil Procedure, and the arbitrator shall apply substantive and procedural California law to any dispute or claim, without reference to any conflict-of-law provisions of any jurisdiction. The award of the arbitrator shall be final and binding, and judgment may be entered on the arbitrator's award in any court having jurisdiction. Nothing in this Paragraph is intended to limit any right EMPLOYEE may have to file a charge or claim with (or, to the extent not barred by the Release of Claims, to obtain relief from) the National Labor Relations Board, or other federal or state agencies. The Parties agree that any such arbitration shall be conducted on an individual basis only, not a class, representative or collective basis, and hereby waive any right to bring classwide, collective or representative claims before any arbitrator or in any forum. **EMPLOYEE KNOWINGLY AND VOLUNTARILY WAIVES ANY RIGHT TO A JURY TRIAL FOR ANY CONTROVERSY, CLAIM OR DISPUTE ARISING OUT OF OR RELATING TO THIS AGREEMENT OR ITS INTERPRETATION.** Notwithstanding the foregoing, nothing in this Paragraph will prevent either Party from seeking provisional relief in court in connection with an arbitration on the ground that an award may be rendered ineffective without provisional relief, including for the improper use, disclosure or misappropriation of a Party's proprietary, confidential or trade secret information.

(b) This Agreement may be entered into any arbitral (or other necessary) proceeding to prove that a settlement was reached and its material terms, so long as application is first made to file it under seal.

(c) In the event that this arbitration provision is for any reason deemed unenforceable by a court of competent jurisdiction, the Parties agree that any civil suit resulting from any controversy or dispute arising out of or relating to this Agreement, or the interpretation thereof, shall be commenced in a court of competent jurisdiction in San Francisco, California.

16. Any breach of the provisions of Paragraphs 2, 4, 6, 7 and/or 8 of this Agreement shall be considered a material breach of this Agreement. Upon the finding of an arbitrator that a Party has breached any provisions of Paragraphs 2, 4, 6, 7 and/or 8, the prevailing party shall be entitled to recover from the other Party such reasonable amount as awarded by the arbitrator, in addition to reasonable attorneys' fees and costs incurred in such action, to the extent permitted under applicable law.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

DocuSign Envelope D: 1AAFA596 6C6A 4D04 8395 E4C48D4FB87C

**Marcie Hamilton**
**Separation Date: April 2, 2019**

THE UNDERSIGNED ACKNOWLEDGE AND AGREE THAT THEY HAVE FULLY READ, UNDERSTAND AND VOLUNTARILY ENTER INTO THIS SEPARATION AGREEMENT AND RELEASE. THE UNDERSIGNED FURTHER ACKNOWLEDGE THAT THIS AGREEMENT IS A LEGALLY BINDING DOCUMENT AND THAT BY SIGNING IT, THEY ARE RELEASING CERTAIN LEGAL RIGHTS.

**EMPLOYEE**    **JUUL LABS, INC.**

By: _____    By: _____
    Marcie Hamilton

Date: _____    Name: _____

Title: _____

Date: _____

DocuSign Envelope D: 1AAFA596 6C6A 4D04 8395 E4C48D4FB87C



# EXHIBIT A

## SEPARATION PACKAGE SUMMARY[1]

## FOR MARCIE HAMILTON

| | | | |
|---|---|---|---|
| Employment Date: | April 2, 2018 | Current Salary: | $210,000.00 |
| Job Title: | Director, Program Management | | |

| | |
|---|---|
| Paid Leave (3/16/2019 – 4/2/2019): | $10,365.38 |
| Separation Pay (3 mths.): | $52,500.00 |
| Special Bonus: | $63,000.00 |
| **TOTAL CASH PAYMENT:** | **$125,865.38** |
| COBRA Subsidy Period: | May 1, 2019, through July 31, 2019 |

---

[1] All amounts set forth are subject to applicable tax withholding and other deductions.