UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCIE HAMILTON,<br><br>    Plaintiff,<br><br>v.<br><br>JUUL LABS, INC.,<br><br>    Defendant. | Case No. 20-cv-03710-EMC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**<br><br>Docket No. 12 |

### I.   INTRODUCTION

Plaintiff Marcie Hamilton filed this lawsuit against her former employer, Defendant Juul Labs, Inc. ("Juul"), seeking civil penalties and injunctive relief related to alleged unlawful policies and various employment agreements. Ms. Hamilton alleges that these policies and agreements violated the California Labor Code. With the exception of her Unfair Competition Law ("UCL") claim, all her causes of action are pursuant to the California Private Attorneys General Act ("PAGA"). Pending before the Court is Juul's motion to dismiss for failure to state a claim or, alternatively, to strike certain factual allegations and prayers for relief. Docket No. 12 ("Mot."). For the reasons discussed below, the Court **GRANTS** in part and **DENIES** in part Juul's motion **without prejudice**.

### II.   BACKGROUND

A.   Factual Background

The Complaint alleges as follows. Ms. Hamilton worked for Juul as a Director of Program Management from April 2018 to March 2019. Docket No. 1 ("Compl.") ¶ 5. As a condition of employment, Ms. Hamilton had to sign Juul's standard non-disclosure agreement entitled the

Proprietary Information and Invention Assignment Agreement (the "NDA").  *Id*. ¶ 25.  On March 15, 2019, Juul informed Ms. Hamilton of her termination and required her to sign a document entitled Termination Certification.  *Id*. ¶ 33.  On the same day, Juul offered Ms. Hamilton a severance agreement.  *Id*. ¶ 36.

1. Juul's Non-Disclosure Agreement[1]

The NDA states that the "Employee shall at all times during the term of the Employee's employment with the Company and thereafter, hold in strictest confidence, and not use . . . or disclose to any person, firm, or corporation, without written authorization from the Company's Board of Directors (the 'Board'), and Confidential Information to the Company."  *Id*. ¶ 26.  Additionally, the NDA contains a non-disparagement clause, which states that "Confidential Information" includes "all information of which the unauthorized disclosure <u>could be detrimental to the interests of the Company</u>, whether or not such information is identified as Confidential Information."  *Id*. ¶ 27 (emphasis in original).

According to Ms. Hamilton, "[t]he NDA contains no 'carve-outs' for whistleblowing under Labor Code § 1102.5, the SEC Rules, or any other law, the disclosure of potentially illegal conduct under Government Code § 12964.5, the disclosure of wages under Labor Code §§ 232 and 1197.5, the disclosure of working conditions under Labor Code § 232.5, or the exercise of free speech rights under Labor Code §§ 96(k) and 98.6."  *Id*. ¶ 28.  Instead, the NDA states that "Employee agree that <u>Employee</u> bears the burden of proving that given information or materials are <u>not</u> confidential."  *Id*. (emphasis in original).

For a period of twelve months following termination from Juul, the NDA states that "the employee shall not either directly or indirectly solicit, induce, recruit, or encourage any of the Company's employees to leave their employment, or attempt to solicit, induce, recruit, encourage or take away employees of the Company, either for Employee or any other person or entity."  *Id*. ¶ 30.  The NDA reserves the right for Juul to enforce it, and it has no temporal or geographical limitations.  *Id*. ¶ 31.

---

[1] Ms. Hamilton appends a copy of the NDA as an exhibit to her Labor and Workforce Department Agency ("LWDA") letter, which is Exhibit A to the Complaint.  Docket No. 1-1 ("NDA").

2. <u>Juul's Termination Certification[2]</u>

The Termination Certification that Ms. Hamilton signed reads as follows:

> In compliance with the [NDA], I will preserve as confidential all trade secrets, confidential knowledge, data, or other proprietary information, relating to products, processes, know-how, designs, formula, development or experimental work, computer programs, data bases, other original works of authorship, customer lists, business plans, financial information <u>or other subject matter pertaining to any business of the Company or any of its employees, clients, consultants, or licensees.</u>

*Id*. ¶ 33 (emphasis and alterations in original).  The combination of Juul's NDA and the Termination Certification, according to Ms. Hamilton, "unlawfully prohibits whistleblowing, competition, and speech."  *Id*. ¶¶ 32, 35.

3. <u>Juul's Severance Agreement[3]</u>

The Severance Agreement that Juul presented to Ms. Hamilton on March 15, 2019 offered to employ her, pay her wages, and pay her a bonus until April 2, 2019, if signed.  *Id*. ¶ 36.  According to Ms. Hamilton, the April 2, 2019 date was of particular import because it was the date on which her equity with Juul would vest.  *Id*.  She stood to lose equity if her employment was terminated before April 2.  The Severance Agreement also contained the following:  (1) a release of all claims arising under the California Fair Employment and Housing Act ("FEHA"); (2) a broad non-disparagement clause; and (3) a confidentiality provision.  *Id*. ¶¶ 37–39.  Ms. Hamilton did not sign the Severance Agreement.  *Id*. ¶ 41.  Thus, her employment terminated

---

[2] A copy of the Termination Certification is attached as Exhibit A to a declaration in support of Juul's request for judicial notice.  *See* Docket No. 12-1 ("Moore Decl."), Ex. A.  Juul also seeks judicial notice of California Senate Judiciary Committee Bill Analysis for Senate Bill 1300.  Docket No. 12-3 ("RJN").  This Court **GRANTS** Juul's request with respect to these two items.  The Termination Certification is referenced throughout the compliant, *see* Compl. ¶¶ 33–35, and the legislative history of SB1300 is a public record not subject to reasonable dispute.  *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007); Fed. R. Evid. 201.

[3] Although Juul seeks judicial notice of an unsigned severance agreement, Ms. Hamilton argues that this agreement was ***not*** the same agreement Juul actually offered her.  Thus, judicial notice of the agreement proffered by Juul is improper because it is disputed.  However, Ms. Hamilton filed the at-issue separation agreement at the direction of this Court.  Docket No. 27 ("Severance Agreement").  The Court will thus deem it incorporated by reference by the complaint and takes judicial notice of it.

before April 2, 2019, she did not receive a bonus, and her equity did not vest. *Id*.

### 4. Juul's Other Policies and Practices

Ms. Hamilton alleges that Juul has "other policies and practices" that "illegally silence current and former employees[.]" *Id.* ¶ 3. According to Ms. Hamilton, Juul knows all its confidentiality agreements are illegal. *Id.* ¶ 45.

She filed this lawsuit on behalf of herself and all aggrieved employees of Juul who signed similar agreements or who were subjugated to similar policies and practices.

### B. Procedural Background

On June 4, 2020, Ms. Hamilton filed her Complaint alleging the following causes of action, the first five of which are pursuant to PAGA: (1) violation of Labor Code section 1102.5 (prohibiting discipline for whistleblowing); (2) violation of Labor Code sections 96(k) and 98.6 (prohibiting discipline based on conduct outside of work hours); (3) violation of Labor Code sections 232 and 1197.5 (prohibiting disciplining employees for disclosing wages); (4) violation of Labor Code section 232.5 (prohibiting disciplining employees for disclosing working conditions); (5) violation of Labor Code section 432.5 (prohibiting conditioning a wage or bonus on the signing of an unlawful agreement); and (6) violation of UCL. *See* Docket No. 1 ("Compl."). On July 7, 2020, Juul filed its motion to dismiss and to strike.

## III. LEGAL STANDARD

### A. Rule 12(b)(6)

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* Fed. R. Civ. P. 12(b)(6). To overcome a Rule 12(b)(6) motion to dismiss after the Supreme Court's decisions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), a plaintiff's "factual allegations [in the complaint] 'must . . . suggest that the claim has at least a plausible chance of success.'" *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014). The court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St.*

*Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). But "allegations in a complaint . . . may not simply recite the elements of a cause of action [and] must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Levitt*, 765 F.3d at 1135 (internal quotation marks omitted).[4] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted).

B.  Rule 12(f)

Pursuant to Rule 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). *See also Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973–74 (9th Cir. 2010). The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial. *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993).

## IV.  DISCUSSION

Juul moves to dismiss on three grounds: (1) the California Supreme Court's decision in *Edwards v. Arthur Andersen LLP*, 44 Cal. 4th 937 (2008) forecloses Ms. Hamilton's claims; (2) Juul's agreements do not violate the underlying Labor Code sections that are the predicate to the entitlement of penalties under PAGA; and (3) its agreements are not unlawful under the UCL. Ms. Hamilton argues her Complaint sufficiently states a claim.

A.  Claims 1–4:  Violation of Labor Code Sections 1102.5(a), 96(k), 98.6, 232, 1197.5(k)

Ms. Hamilton's first four claims for relief contend that Juul's confidentiality requirements (*e.g.*, NDA, Termination Certification, Severance Agreement, and other policies and practices) function as a gag order on her ability to make certain disclosures. More specifically, Ms.

---

[4] A court "need not . . . accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

5

Hamilton's first claim for relief alleges that Juul violated Labor Code section 1102.5 because "JUUL has adopted and enforced policies preventing employees from disclosing information concerning reasonably-suspected violations of the law to government agencies and public bodies." Compl. ¶ 54. In her second claim, she alleges that Juul violates Labor Code sections 96(k) and 98.6 by "threaten[ing] employees with discharge if they engage in lawful conduct during non-working hours away from JUUL's premises, including speech of which JUUL does not approve." *Id*. ¶ 60.[5] More specifically, "Juul threatens to discharge employees if they violate Juul's confidentiality requirements because JUUL expressly conditions their employment on their silence." Opp. at 15. Ms. Hamilton's third and fourth claims state that Juul prohibits employees from discussing their wages or working conditions with other employees. *Id*. ¶¶ 65, 69.

As alleged, these claims arise in contract; Ms. Hamilton relies on the NDA, the Termination Certification, and the Severance Agreement as the enforcement mechanism for the above Labor Code violations. Accordingly, the California Supreme Court's decision in *Edwards v. Arthur Andersen LLP*, 44 Cal. 4th 937 (2008), which informs how contract provisions that are allegedly illegal are to be interpreted, applies.

In *Edwards* the California Supreme Court confronted the issue of whether an employer's separation agreement that contained, *inter alia*, a provision releasing "any and all" claims was unlawful because it sought to waive non-waivable, statutory rights. *Edwards*, 44 Cal. 4th at 950. The plaintiff did not sign the agreement and was terminated. *Id*. The plaintiff argued that the agreement's attempt to waive "any and all" claims violated Labor Code section 2802, which requires an employer to indemnify "all necessary expenditures or losses incurred by the employee

---

[5] Ms. Hamilton also argues that Juul violated Labor Code sections 96(k) and 98.6 by prohibiting free speech. But a private employee has no recognized constitutional protection from termination by a private employer based on speech. *See Grinzi v. San Diego Hospice Corp.*, 120 Cal. App. 4th 72, 88 (2004) ("the First Amendment free speech guarantees at issue are only recognized against **government** interference. Grinzi does not have a recognized constitutional right protecting her against private acts implicating her employment under the first Amendment, and she has not alleged her termination resulted from a government act violating the First Amendment . . . . We conclude neither section 96, subsection (k), nor section 98.6 adequately supports a public policy against a private employer's termination of an employee the employee's lawful conduct, otherwise unprotected by the Labor Code, occurring during nonworking hours away from the employer's premises.") (emphasis in original).

1    in direct consequence of the discharge of his or her duties[.]" *Id.* at 952.

2        Notwithstanding Section 2804—which states that "any contract or agreement, express or
3    implied, made by any employee to waive the benefits of this article or any part thereof, is null and
4    void . . . ," the *Edwards* court held the broad waiver was not unlawful. *Id.* at 955. It relied on the
5    general contract principle "[w]here the language of a contract is clear and not absurd, it will be
6    followed . . . . But if the meaning is uncertain, general rules of interpretation are to be applied. *Id.*
7    (quoting 1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts, § 741; Cal. Civ. Code, §§
8    1637, 1638). The Court found the meaning of the phrase "any and all" in the agreement was in
9    dispute and uncertain and held that "[if] a contract is capable of two constructions courts are
10   bound to give such an interpretation as will make it lawful, operative, definite, reasonable and
11   capable of being carried into effect . . . ." *Id.* at 954. As another basis of contract interpretation,
12   *Edwards* held that the parties presumably intended to incorporate the law existing at the time of
13   formation. *Id.* Section 2804 explicitly made the rights under Section 2802 non-waivable. "All
14   applicable laws in existence when an agreement is made, which laws the parties are presumed to
15   know and to have had in mind, necessarily enter into the contract and form a part of it, without any
16   stipulation to that effect, as if they were expressly referred to and incorporated." *Id.* at 954.

17       Courts, including this Court, have followed *Edwards*. *See, e.g.*, *Pearson Dental Supplies,*
18   *Inc. v. Superior Court,* 48 Cal. 4th 665, 682 (2010) (interpreting an arbitration agreement, which
19   stated that the parties intended "to avoid the inconvenience, cost, and risk that accompany formal
20   administrative or judicial proceedings," as applying only to extent it could "lawfully" preclude
21   administrative claims); *Stonebrae, L.P. v. Toll Bros., Inc.,* No. C-08-0221 EMC, 2009 WL
22   248101, at *5 (N.D. Cal. 2009) (following *Edwards* and holding that "the Court must interpret the
23   Agreement so as to make the Agreement lawful"). Ms. Hamilton cites the partial dissent and
24   concurring opinion in *Edwards* to support her position that Juul's agreements are illegal because
25   they do not contain express carveouts. *See Edwards*, 44 Cal. 4th at 958 ("this court should not
26   lightly dismiss the Court of Appeal's conclusion that Andersen may have wanted its employees to
27   think they had released their indemnity rights, although it knew that any release of such rights was
28   void.") (Kennard, J. dissenting). While there is force to this argument as the potential chilling

7

1   effect of a broad waiver may effectively deter employees from vindicating their rights, the
2   dissenting opinion is not controlling.  The rule of construction applied by the majority prevailed.
3           In an attempt to avoid *Edwards*, Ms. Hamilton argues that the NDA is ambiguous and,
4   thus, cases indicate it is inappropriate to dismiss at this stage.[6]  But if there are no facts alleged in
5   the complaint which would counsel towards a contrary contract interpretation.  *See Microsoft*
6   *Corp. v. Hon Hai Precision Indus. Co.*, No. 19-CV-01279-LHK, 2019 WL 3859035, at *5 (N.D.
7   Cal. Aug. 16, 2019) ("[T]he interpretation and construction of a written contract present only
8   questions of law, within the province of the court, and is therefore properly reached on a 12(b)(6)
9   motion to dismiss.") (internal citation and quotation marks omitted).
10          Applying *Edward*, at least at this juncture, to construe the contracts at issue as not
11  unlawfully prohibiting whistleblowing activity is not unreasonable.  For instance, while the NDA
12  contains a confidentiality provision, it is—for the most part—directed at proprietary information.
13  Indeed, the NDA is entitled the "Proprietary Information and Invention Assignment Agreement."
14  Moreover, the first paragraph of the Termination Certification (which is comprised of only two
15  paragraphs) implies the subject of the agreement is proprietary information:  "[t]his is to certify
16  that I do not have in my possession, nor have I failed to return, any devices, records, data, notes,
17  reports, proposals, lists, correspondence, specifications, drawings, blueprints, sketches, materials,
18  equipment, other documents or property or reproductions of any aforementioned items belonging
19  to [Juul], its subsidiaries, affiliates, successors, or assigns[.]"  Termination Certificate at 1.  This in
20  in accord with the Labor Code that specifically permits an employer to prohibit such disclosures.
21  *See* Cal. Lab. Code. § 232.5(d) ("This section is not intended to permit an employee to disclose
22  proprietary information, trade secret information, or information that is otherwise subject to a legal

---

[6] *See, e.g.*, *National Abortion Federation v. Center for Medical Progress*, 2015 WL 5071977, at *8 (N.D. Cal Aug. 27, 2015) ("That some causes of action revolve around contract interpretation does not mean that discovery of evidence that helps explain the terms of the agreement should be prohibited."); *Picketfence Inc. v. R.R. Donnelley & Sons Co.,* 2007 WL 9811030, at *2 (N.D. Cal Nov. 6, 2007) ("question of contract interpretation and resolving ambiguity . . . would be prematurely decided on a Motion to Dismiss); *Toce v. Rentch*, 2018 WL 280024, at *4 (S.D. Cal. Jan. 3, 2018) ("If an agreement is ambiguous, then interpretation of the agreement becomes a fact issue that cannot be resolved on a motion to dismiss"); *Intel Corp. v. Via Technologies, Inc.,* 2001 WL 777085, at *6 (N.D. Cal. Mar. 20, 2001) ("Such contract-interpretation questions should not be resolved on a motion to dismiss.").

1   privilege without the consent of his or her employer.").

2   To be sure there is broad language in the NDA. Paragraph 4.1 of the NDA reads as
3   follows:

> Employee shall at all times during the term of Employee's employment with the Company and thereafter, hold in strictest confidence, and not use, except for the benefit of the Company, or disclose to any person, firm or corporation without written authorization of the Company's Board of Directors (the "Board"), any Confidential Information of the Company. As used herein, "Confidential Information" means and includes any Company confidential or proprietary information, technical data, trade secrets or know-how, including, but not limited to, research, product plans, products, services, customer lists and customers (including, but not limited to, customers of the Company on whom Employee has called or with whom he or she became acquainted during the term of Employee's employment), markets, software, developments, inventions, conceptions, patentable subject matter, processes, formulas, technology, specifications, designs, drawings, engineering, hardware configuration information, marketing, forecasts, finances or other business information of the Company. Confidential Information includes both information disclosed by the Company to Employee and information developed or learned by Employee during the course of employment with Company. ***Confidential Information also includes all information of which the unauthorized disclosure could be detrimental to the interests of Company, whether or not such information is identified as Confidential Information.*** Confidential Information does not include information which Employee can establish has become publicly known and made generally available through no wrongful act of Employee or of others who were under confidentiality obligations as to the item or items involved.

NDA, ¶ 4.1 (emphasis added). The underscored sentence above is arguably an ambiguous, catch-all phrase that could encompass more than proprietary information. But there is no allegation of acts in the complaint that would counter the *Edwards* rule of interpretation[7] that counsels towards interpreting the NDA in a way that "makes the contract lawful, valid and capable of being carried into effect." *Edwards*, 44 Cal. 4th at 954. Indeed, Paragraph 15 of the NDA reads "[t]his Agreement shall be governed by and construed in accordance with the internal substantive laws, but not the choice of law rules, of the state of California." NDA at ¶ 15. The same rational

---

[7] *Cf. Edwards*, 44 Cal. 4th 955 fn 7 ("Our holding that contracts ordinarily are presumed to incorporate statutory requirements and that the TONC here was not per se unlawful, does not preclude Edwards from offering proof on remand of ***facts that might prove the exception to the general rule based on Andersen's conduct***.") (emphasis added).

9

applies to the Termination Certification (which incorporates the NDA[8]) and the Severance Agreement (which has a similar provision).

Moreover, the Severance Agreement has a carveout for engaging in protected activity, whistleblowing, and exercising protected rights, including under the National Labor Relations Act (which includes the right to discuss wages and working conditions). *See* Severance Agreement at ¶ 4(d). It reads as follows:

> EMPLOYEE understands that nothing in this Agreement prohibits EMPLOYEE from engaging in "Protected Activity," which, for purposes of this Agreement, means filing a charge or complaint or otherwise disclosing relevant information to or communicating, cooperating, or participating with, any state, federal, or other governmental agency, including the Securities and Exchange Commission, the Equal Employment Opportunity Commission, and the National Labor Relations Board[.]

*Id*. Additionally, as noted in *Edwards*, Paragraph 15 of the NDA and Paragraph 4(d) of the Severance Agreement state that the agreements were entered into (or offered) by parties who presumably knew the law at the time of execution. *Id*. The NDA provides, "This Agreement shall be governed by and construed in accordance with the internal substantive laws, but not the choice of law rules, of the state of California." NDA at ¶ 15. The Severance Agreement states, "EMPLOYEE understands that nothing in this Agreement prohibits EMPLOYEE from engaging in "Protected Activity[.]" Severance Agreement at ¶ 4(d). Accordingly, Claims 1 through 4 fail under both governing contractual interpretations held in *Edwards*.

To be sure, the Complaint also asserts a violation of the Labor Code based not on these contractual documents but on Juul's "other policies and practices." Compl. ¶ 3. Specifically, Ms. Hamilton contends that "JUUL maintains policies and practices that unlawfully prohibit employees from engaging in whistleblowing, seeking new or better work, disclosing information about their wages and working conditions, or otherwise engaging in protected speech under

---

[8] "In compliance with the [NDA], I will preserve as confidential all trade secrets, confidential knowledge, data, or other proprietary information, relating to products, processes, know-how, designs, formula, development or experimental work, computer programs, data bases, other original works of authorship, customer lists, business plans, financial information or other subject matter pertaining to any business of the Company or any of its employees, clients, consultants, or licensees." Termination Certification at 1.

10

California law." *Id*. ¶ 44.  While such a non-contractual allegation is not subject to the *Edwards* rule of contract interpretation, this factual allegation of policies and practices is vague and conclusory and fails to contain the specificity required by *Twombly* and *Iqbal*.  Thus, to the extent Claims 1 through 4 rely on this factual allegation, the Court dismisses them without prejudice for failure to meet the minimum pleading requirements.  *See Sobayo v. Chase Home Fin., LLC*, No. C 09-00615 JW, 2009 WL 1330834, at *2–3 (N.D. Cal. May 13, 2009) (plaintiff's conclusory assertion that the parties entered into "various oral and written contracts" that were breached was insufficient to survive a motion to dismiss).

Accordingly, the Court **GRANTS** Juul's motion to dismiss Claims 1 through 4.  The contracts do not, at least facially under *Edwards*, bar whistleblowing or making other disclosures protected by law  However, at the hearing, Ms. Hamilton represented that she has acquired—outside of the mediation privilege—copies of purported policies that buttress her claims that Juul's agreements have been unlawfully applied.  Ms. Hamilton argues that in an amended pleading, she can provide factual allegations beyond a facial challenge to these agreements which may shed light on the proper interpretation of these contracts, similar to the reason the *Edwards* court remanded the case to develop a factual record.  *See Edwards*, 44 Cal. 4th at 955 n.7.  The Court therefore dismisses Ms. Hamilton's claims **without prejudice**; she shall have leave to amend to the extent she can plead factual allegations that demonstrate the contracts should be interpreted as prohibiting her from whistleblowing, engaging in otherwise lawful conduct during non-working hours, disclosing her wages and working conditions, or violating other Labor Code violations.  She may also amend her Complaint to allege specific facts in support of non-contracted based claims.

B.   Claim 5:  Violation of Labor Code Section 432.5

Ms. Hamilton's fifth claim for relief alleges that Juul violated Labor Code section 432.5 because it required her to enter into a contract (*e.g.*, the NDA and Severance Agreement) containing a term or condition that it knew was prohibited by law.  Compl. ¶ 74.  She relies on a number of alleged violations as the predicate:  (1) Business & Professions Code section 17200; (2) California's Cartwright Act; (3) Government Code section 12964.5; (4) Rule 21F-17 of the

11

1   Securities and Exchange Commission; and (5) the Defend Trade Secrets Act.   Compl. ¶ 74(a)–(i).

2         1.      <u>Section 16600 (Cartwright Act)</u>

3         Juul contends that if Ms. Hamilton relies on the NDA's non-solicitation provision (*i.e.*, a violation of California Civil Code section 16600) as the predicate for this Labor Code violation, it fails because Section 16600 makes the non-solicitation provision void—not unlawful.  Juul cites to *Beebe v. Mobility, Inc.*, No. 07CV1766 BTM NLS, 2008 WL 474391, at *1 (S.D. Cal. Feb. 20, 2008), where the plaintiff brought a PAGA action that alleged her employer required employees to sign a restrictive covenant in violation of Labor Code section 432.5.  The district court dismissed the cause of action because Section 432.5 "proscribes only agreements that are 'prohibited by law' rather than those that are void."  *Id.* at 3.  The court found that "§ 16600 specifically states that covenants in restraint of trade will be ***void***."  *Id.* (emphasis in original).  Juul also cites to *Loral Corp. v. Moyes*, 174 Cal. App. 3d 268, 279–80 (1985), which holds a restrictive covenant that prohibited "raiding" employees

> was not void under Bus. & Prof. Code, § 16600, providing that every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void.  The potential impact on trade must be considered before invalidating a noninterference agreement, a contract must be construed to be lawful if possible, and the restriction only slightly affected plaintiff's employees, who were not hampered from seeking employment with defendant's new employer nor from contacting defendant.  Since the noninterference agreement had no overall negative impact on trade or business, it was not void on its face under § 16600.

*Id*.  Thus, under *Beebe*, Section 16600 cannot be the predicate for a Labor Code section 432.5 violation because Section 16600 makes the provision void rather than prohibited by law—and Section 432.5 requires the latter as a prerequisite for a violation.  But even if a void contract (rather than a contract prohibited by law) could be the prerequisite, *Loral* holds that the NDA's non-solicitation provision must actually have a negative impact on Ms. Hamilton's trade or business in order to be declared void.  She makes no such allegation.

      Ms. Hamilton does not address *Beebe* or *Loral*.  Instead, she cites authority for the proposition that "[r]estrictive covenants prohibited by law include post-termination non-solicitation provisions and overbroad confidentiality provisions," citing *AMN Healthcare, Inc. v.*

12

*Aya Healthcare Services, Inc.* 28 Cal. App. 5th 923, 936, 940 (2018). But *AMN Healthcare* is distinguishable and does not support Ms. Hamilton's argument for two reasons. First, *AMN Healthcare* was decided ***after*** Ms. Hamilton signed the NDA (*e.g.*, March 22, 2018). Hence, even if the case stands for the proposition that restrictive covenants are categorically unlawful under Section 16600, Juul could not have known at the time the parties entered into the NDA and, thus, could not have violated Labor Code section 432.5, which requires knowledge that the agreement was unlawful. Second, in *AMN Healthcare,* the plaintiffs were temporary nurse recruiters, so the restrictive covenant actually and completely restrained them from engaging in their chosen profession if the covenant was enforced. *See id.* at 939. Here, Ms. Hamilton does not allege that the NDA prevents her from engaging in her profession like the plaintiffs in *AMN Healthcare* who were recruiters—*i.e.*, their entire profession was completely based on solicitation. Ms. Hamilton was a Director of Program Management, and she does not allege that a prohibition on solicitation has any effect on her chosen post-Juul career. Indeed, "courts have distinguished between 'no hire' provision[s] and 'non-solicitation agreements,' finding that the latter may be permissible under Section 16600 so long as it is 'does not have an overall negative impact on trade or business.'" *W. Air Charter, Inc. v. Schembari*, No. EDCV17420JGBKSX, 2018 WL 10157139, at *14 (C.D. Cal. Nov. 21, 2018) (citing *Loral*, 174 Cal. App. 3d at 276)).

Accordingly, Ms. Hamilton has not sufficiently pled that Juul knew the NDA was illegal when she signed it in March 2018 because the controlling authority at the time (*Loral*) regarding such restrictive covenants held that these agreements were lawful, if they did not negatively affect an individual's chosen profession. *See Loral*, 174 Cal. App. 3d at 279–80 (non-solicitation must have a negative impact on trade or business in order to be void under Section 16600).

        2.       <u>The Defend Trade Secret Act and The Securities And Exchange Commission Rule 21F-17</u>

Ms. Hamilton also alleges that Juul violated Labor Code section 432.5 because the confidentiality agreements are unlawful under the Defend Trade Secrets Act ("DTSA"), which requires the employer to carve out a narrow exception for disclosing trade secrets to the government and requires the employer to include notice of immunity. *See* 18 U.S.C. §

13

1833(b)(1)(A)–(B) ("An individual shall not be held criminally or civilly liable under any Federal or State trade secret law for the disclosure of a trade secret that is made (i) in confidence to a Federal, State, or local government official, either directly or indirectly, or to an attorney; and (ii) solely for the purpose of reporting or investigating a suspected violation of law; or is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal."); *see also* 18 U.S.C. § 1833(b)(3)(A) ("An employer shall provide notice of the immunity set forth in this subsection in any contract or agreement with an employee that governs the use of a trade secret or other confidential information."). The Severance Agreement preserves this statutory exception:

> Notwithstanding the foregoing, EMPLOYEE understands that, pursuant to 18 U.S.C § 1833(b)(l), he/she cannot be held criminally or civilly liable under any federal or state trade secret law for the disclosure of a trade secret that (a) EMPLOYEE makes (i) in confidence to a federal, state, or local government official, either directly or indirectly, or to an attorney and (ii) solely for the purpose of reporting or investigating a suspected violation of law; or (b) EMPLOYEE makes in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal.

*Id*. at ¶ 6. To be sure, Juul's NDA does not contain a DTSA immunity clause. But under the DTSA, failure to include this immunity clause does not make the entire confidentiality agreement unlawful—instead, 18 U.S.C. section 1833(b)(3)(A) states that non-compliance means "the employer may not be awarded exemplary damages or attorneys fees[.]" Thus, failure to include a DTSA immunity clause does not render the agreement unlawful; it waives certain damages.

Ms. Hamilton also contends the Juul violates the Securities And Exchange Commission Rule 21F-17. But similarly, the Severance Agreement has a carveout for matters before the SEC:

> Nothing in this Agreement prohibits or restricts EMPLOYEE (or EMPLOYEE's attorney) from initiating communications directly with, responding to an inquiry from, or providing testimony before the Securities and Exchange Commission ("SEC") any other self-regulatory organization or any other federal or state regulatory authority regarding this Agreement or its underlying facts or circumstances or a possible securities law violation.

*Id*. ¶ 6. Rule 21-F-17(a) states that "no person may take any action to impede an individual from communicating directly with the [SEC] about a possible securities law violation including enforcing, or threatening to enforce a confidentiality agreement with respect to such

14

1    communications." Ms. Hamilton does not respond regarding Rule 21-F-17(a) in her opposition.

2    Accordingly, Ms. Hamilton's Complaint does not state a PAGA claim under Labor Code
3    section 432.5 with her alleged violations of the DTSA or SEC Rules.

       3.       Government Code Section 12964.5

Ms. Hamilton argues that the Severance Agreement violated Government Code section 12964.5 because it conditioned her continued employment, wages, and a bonus on waiving FEHA claims. Juul offers two arguments: (1) it did not offer Ms. Hamilton continued employment; and (2) the legislative history of Senate Bill 1300 states that Section 12954.5 is meant to prohibit preemptive releases.

Juul's first argument is not persuasive. Section 12964.5 states that "[i]t is an unlawful employment practice for an employer, in exchange for a raise or bonus, or as a condition of employment or continued employment, to do either of the following . . . . [f]or an employer to require an employee to sign a release of a claim or right under this part." Cal. Gov't Code § 12964.5(a)(1). The allegations in the Complaint specifically allege that Juul offered Ms. Hamilton a bonus and continued employment (so her equity could vest) if she signed the Severance Agreement that "included a general release of claims, including claims arising under the Fair Employment & Housing Act." Compl. ¶ 37. Although the Severance Agreement states that Ms. Hamilton's operating responsibilities would be relinquished as of March 15, 2019 and she would cease representing herself as an employees, the preceding sentence indicates that Juul "has made the decision to terminate his/her employment, and that such separation will be *effective April 2, 2019* (the 'Separation Date')." Severance Agreement ¶ 1. The fact that Ms. Hamilton would be paid leave of absence, and deemed employed until her stocks vest on April 2, 2019 undermines Juul's contention.

With respect to Juul's argument that SB1300 makes it clear that the prohibition is on ***preemptive*** waivers of liability, Juul is correct that the legislative history so states. *See* Docket No. 12-2 ("Johnsrud Decl."), Ex. A at 22. Specifically, the state legislature recognized that

> The use of waivers and releases as part of the effort to settle an existing dispute raises few public policy concerns. Indeed, finding the terms on which a plaintiff agrees to release claims is usually the

15

> whole point of a settlement. This bill would not impact the use of waivers and releases in the context of settlement or severance agreements.
>
> The bill addresses the *preemptive* use of waivers, in exchange for a raise or a bonus, or as a condition of hire or continued employment . . . . [T]he public policy harms arguably outweigh these benefits by a significant margin. When employers require employees to waive claims preemptively, it provides a mechanism for regularly wiping out claims that might otherwise lead to accountability and reform.

*Id*. (emphasis in original). Thus, while a waiver of a specific existing claim as part of the resolution of such claim is permitting, preemptively waiving all claims, including those which may be asserted in the future, is not.

At the hearing, the parties were in accord that Ms. Hamilton had no pending claims against Juul at the time the Severance Agreement was presented. Thus, as pled in Paragraph 38 of Ms. Hamilton's Complaint, the Severance Agreement's waiver was meant to be preemptive and prospective. Ms. Hamilton sufficiently states a claim for a PAGA violation under Labor Code section 432.5, with Government Code section 12964.5 as the predicate.

Accordingly, the Court **DENIES** Juul's motion to dismiss Claim 5. In turn, this Court also **DENIES** Juul's motion to dismiss Claim 6 under the UCL because she has stated a viable claim under the Labor Code.

## V. MOTION TO STRIKE

Juul argues the Court should strike the following from Ms. Hamilton's Complaint: (1) the request for a jury trial; (2) the request for injunctive relief; and (3) the request for interest on PAGA penalties; (4) and Paragraphs 1, 2, and 22 as irrelevant and immaterial. In response, Ms. Hamilton waives her right to a jury trial and withdraws her request for interest on PAGA penalties. But she maintains that she has standing to pursue an injunction under the UCL and that the allegations in the Complaint are relevant for context. Because this Court finds Juul's NDA and Termination Certification lawful under *Edwards*, Ms. Hamilton does not have standing to pursue a public injunction based on these agreements. To the extent the Severance Agreement violated Government Code section 12964.5 and, thus, violated Labor Code section 432.5, she has not alleged how she has standing to pursue an injunction on this one-time-offered agreement that she did not sign. As such, the Court **GRANTS** Juul's motion to strike the request for injunctive relief

16

based on the UCL.

As to the factual allegations in the Complaint, Juul argues that the following paragraphs should be stricken:

- "A generation ago, the tobacco industry willfully concealed its harmful and illegal conduct through employee non-disclosure agreements ("NDAs") and other unlawful practices (such as misuse of the attorney-client privilege).  The makers of Pall Mall and Lucky Strike sought and obtained an injunction prohibiting one employee, Jeffrey Wigand, from disclosing information about the industry's manipulation of nicotine and the other public health dangers. At the risk of being jailed for contempt, Wigand breached his NDA.  He spoke to the press, to government regulators, to public interest attorneys, and he testified in court. Consequently, the tobacco industry eventually paid more than $300 billion in settlements and faced significant additional regulation.  Wigand was nearly bankrupted from the legal fees associated with the tobacco industry's efforts to enforce his NDA and silence him."  Compl. ¶ 1.

- "Some things, apparently, never change."  *Id*. ¶ 2.

- Armed with these illegal NDAs and confidentiality requirements, and in reliance on their terrorizing effect, powerful employers, often with the help of prominent law firms, threaten employees with termination, financial ruin and more if they dare disclose corporate wrongdoing or engage in other relevant protected conduct.  To identify three notorious examples, a Theranos whistleblower faced threats of litigation and six figures in legal fees for disclosing information about Theranos's fraud.  Carreyrou, Theranos Whistleblower Shook the Company – and His Family, Wall Street Journal (Nov. 18, 2016).  Harvey Weinstein's serial and horrendous misconduct was hidden and facilitated through the use of employer-mandated NDAs.  Helmore, Harvey Weinstein lawsuit: attorney general says 'we have never seen anything as despicable." The Guardian (Feb. 12, 2018) (linking to New York State complaint against Weinstein detailing use of NDAs to prevent reporting of Weinstein's illegal conduct).  And, of course, Jeffrey Wigand lost

17

nearly everything because of the tobacco industry's efforts to silence him with an NDA, lest he disclose its unlawful and unethical conduct. Lyman, A Tobacco Whistle-Blower's Life Is Transformed, the New York Times (Oct. 15, 1999). *Id*. ¶ 22.

Under Rule 12(f), immaterial claims are those have no essential or important relationship to the claim for relief. *See Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993). And an impertinent claim is one that includes allegations that do not pertain, and are not necessary, to the issues in question. *Id*. Normally, a Rule 12(f) motion is not given to strike a part of pleading. *See Colaprico v. Sun Microsystems, Inc*. 758 F. Supp. 1335, 1340 (N.D. Cal. 1991) (denying defendant's motion to strike plaintiff's statements of past historical facts in FAC, noting that a complaint should not be viewed in isolation. "In conjunction with other allegations . . . the court cannot say the [historical facts] contribute nothing to plaintiff's claims."). Here, Paragraphs 1 and 2 are arguably historical facts since it relates to the tobacco industry and the defendant here is Juul, an electronic-cigarette company—and the NDA seeks to prohibit the disclosure of proprietary information. Paragraph 22 cites the potential *in terrorem* effect of broadly worded confidentiality clauses and is relevant. References to Theranos, Weinstein, and Wigand are not and are therefore stricken. The Court **GRANTS** Juul's motion to strike Paragraph 22 except for the first sentence. It **DENIES** the motion to strike Paragraphs 1 and 2.

## VI. CONCLUSION

In sum, the Court rule as follows:

- Juul's motion to dismiss Claims 1 through 4 is **GRANTED without prejudice** for failure to state a claim under *Edwards* and because vague assertions regarding "policies and practices" do not satisfy *Twombly*;
- Juul's motion to dismiss Claims 5 and 6 are **DENIED** because Ms. Hamilton sufficiently pleads a claim for relief under PAGA, with the predicate Labor Code section 432.5 violation because the Complaint alleges a Government Code section 12964.5 violation;
- Juul's motion to strike Ms. Hamilton's prayer for relief for an injunction under the

UCL is **GRANTED** for lack of standing;

- Juul's motion to strike a portion of Paragraph 22 of the Complaint is **GRANTED**; and

- Juul's motion to strike Paragraphs 1 and 2 of the Complaint **DENIED**.

This order disposes of Docket No. 12.

**IT IS SO ORDERED**.

Dated: September 11, 2020

_____
EDWARD M. CHEN
United States District Judge