CHRIS BAKER, State Bar No. 181557
cbaker@bakerlp.com
DEBORAH SCHWARTZ, State Bar No. 208934
dschwartz@bakerlp.com
BAKER CURTIS & SCHWARTZ, P.C.
1 California Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 433-1064
Fax:  (415) 366-2525

Attorneys for Plaintiff
MARCIE HAMILTON

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCIE HAMILTON,<br><br>                    Plaintiff,<br><br>        vs.<br><br>JUUL LABS, INC.,<br><br>                    Defendant. | Case No. 3:20-cv-3710-EMC<br><br>**FIRST AMENDED COMPLAINT**<br><br>**1.  PAGA – LABOR CODE § 1102.5**<br>**2.  PAGA – LABOR CODE §§ 96(k) and 98.6**<br>**3.  PAGA – LABOR CODE § 232 and 1197.5**<br>**4.  PAGA – LABOR CODE § 232.5**<br>**5.  PAGA – LABOR CODE § 432.5**<br>**6.  UNFAIR COMPETITION**<br>**7.  PAGA – LABOR CODE §§ 1101, 1102**<br><br>** REQUEST FOR PUBLIC INJUNCTION** |

1.     This First Amended Complaint ("1AC") is filed in response to the Court's September 11, 2020 Order (Dkt # 23) and in accordance with its October 28, 2020 Order. (Dkt # 31).

**INTRODUCTION**

2.     A generation ago, the tobacco industry willfully concealed its harmful and illegal conduct through employee non-disclosure agreements ("NDAs") and other unlawful practices (such as misuse of the attorney-client privilege).  The makers of Pall Mall and Lucky Strike sought and obtained an injunction prohibiting one employee, Jeffrey Wigand, from disclosing information about the industry's manipulation of nicotine and the other public health dangers.  At the risk of being jailed for contempt, Wigand breached his NDA.  He spoke to the press, to government regulators, to public interest attorneys, and he testified in court.  Consequently, the tobacco industry eventually paid more than $300 billion in settlements and faced significant additional regulation.  Wigand was nearly bankrupted from the legal fees associated with the tobacco industry's efforts to enforce his NDA and silence him.

3.     Some things, apparently, never change.

4.     As detailed below, Defendant JUUL Labs, Inc., now 35% owned by Altria (producer of Marlboro cigarettes, among others), **still** seeks to illegally silence current and former employees through NDAs, exit certifications, severance agreements, and other policies and practices (collectively, "confidentiality requirements").  These confidentiality requirements are deeply harmful to JUUL's current and former employees, to the public, and to the State of California.  They prevent employee speech, whistleblowing, and competition.

5.     JUUL's confidentiality requirements are in gross violation of the California Labor Code and, as detailed below, other California laws.  Thus, pursuant to the Private Attorneys General Act (PAGA) and the Unfair Competition Law, Plaintiff Marcie Hamilton seeks civil penalties, appropriate injunctive relief, and a declaration that JUUL's confidentiality requirements are illegal, unenforceable, and must be changed.

**PARTIES**

6.     Plaintiff Marcie Hamilton is a resident of San Francisco, California.  She worked

at JUUL from approximately April 2, 2018 to March 2019 as its Director of Program Management.  As a high-level managerial employee, she reported directly to JUUL's Senior Vice President of Product Management, who in turn reported to JUUL's Chief Executive Officer.

7.      The State of California is the legal entity upon whose behalf the PAGA claims are brought.  Hamilton acts as the State's proxy under PAGA.  So long as Hamilton was allegedly aggrieved by one Labor Code violation, she has standing as the State's agent to pursue all the Labor Code violations set forth in this Complaint.  *Huff v. Securitas Security Services USA, Inc.*, 23 Cal.App.5th 745 (2020); Labor Code 2699(c).

8.      All JUUL's current and former employees that are or were subject to JUUL's confidentiality requirements are aggrieved employees within the meaning of PAGA.

9.      These aggrieved employees include, but are not limited to, Jim Isaacson.  Isaacson worked as JUUL's Senior Director of Design Assurance from May 2018 through November 1, 2019. Isaacson reported to JUUL's Chief Quality Officer who in turn reported to JUUL's CEO.  While a resident of Utah, Isaacson regularly traveled to and worked at JUUL's offices in San Francisco.  On September 29, 2020, Isaacson provided the Labor Workforce and Development Agency ("LWDA") and JUUL with notice of his intent to serve as a PAGA representative with respect to JUUL's unlawful conduct.

10.     Hamilton seeks the appropriate share of any civil penalties on behalf of and for the benefit of the aggrieved employees.  She also seeks public injunctive relief.

11.     On information and belief, more than 3000 aggrieved employees have been subject to the legal violations that are the subject of this case.  They have collectively worked tens of thousands, if not hundreds of thousands, of pay periods.

12.     Defendant JUUL Labs, Inc. is incorporated in Delaware.  In December 2018, Altria, one of the largest tobacco companies in the world, invested $12.8 billion in JUUL in exchange for 35% of the company.  Altria is a Virginia corporation and its principle executive offices are located in Virginia.  Upon acquiring its stake in JUUL, Altria appointed KC Crosthwaite, an Altria senior executive based in Virginia, as its observer on JUUL's Board of

Directors.

13.     In September 2019, JUUL appointed Crosthwaite as its Chief Executive Officer.

14.     On information and belief, soon after Crosthwaite's appointment, JUUL took steps to sell its San Francisco office building at 123 Mission St.  JUUL currently leases 20,000 square feet or more of office space in Washington, D.C.

15.     JUUL has concluded that the city of San Francisco is hostile to its business. According to a May 5, 2020 news report by the Wall Street Journal, JUUL has announced that it is moving its corporate headquarters from San Francisco to Washington, D.C. as part of a restructuring.  It is also moving its corporate headquarters in an effort to repair its relationships with federal regulators.  On information and belief, this move has already occurred in relevant respects.

16.     In the fall of 2019, and again in May 2020, JUUL announced layoffs of large parts of its workforce.

17.     On information and belief, Crosthwaite currently resides with his wife and family in Virginia, and Crosthwaite's primary physical work locations for JUUL are in Washington, D.C. and Virginia.  This is especially so in light of the current pandemic.

18.     On information and belief, JUUL's former Chief Legal Officer resides in the Washington D.C. Metropolitan Area and his primary physical work location was JUUL's Washington, D.C. office.

19.     On information and belief, five of Crosthwaite's direct reports – including JUUL's Chief Operations Officer, Chief Quality Officer, and Chief Growth Officer – have residences and primary physical work locations in places other than San Francisco, California.

20.     On information and belief, executives currently employed by Altria continue to assert considerable influence, direction and control over JUUL.  These executives have residences and primary physical work locations in places other than San Francisco, California.

21.     JUUL's center of direction, control, and coordination is not a single place in San Francisco, California.  JUUL is not a citizen of California.

///

FIRST AMENDED PAGA/UNFAIR COMPETITION COMPLAINT

**JURISDICTION AND VENUE**

22.     This Court has diversity jurisdiction of this case. 29 U.S.C. § 1332.  The amount in controversy far exceeds $75,000.  At the time of the filing of this suit, Hamilton and JUUL are citizens of different states.  Hamilton is a citizen of California.  Under 29 U.S.C. § 1332(c), JUUL is not a citizen of California.  JUUL is instead a citizen of Delaware (its place of incorporation).  The current location of JUUL's principle place of business or "nerve center" is a physical location in either Washington, D.C. or Virginia.

23.     Venue is proper in the Northern District of California because Hamilton resides in the Northern District and JUUL conducts business in the Northern District.

**BACKGROUND**

24.     It is unfortunately well-established that employers rely on illegal NDAs and other unlawful employment requirements to prevent whistleblowing, competition, and speech by their employees.  This is because "employees, having no reason to familiarize themselves with the specifics of California's employment law, will tend to assume that the contractual terms proposed by their employer. . . are legal, if draconian.  Furthermore, even if they strongly suspect that a . . . clause is unenforceable, such employees will be reluctant to challenge the legality of the contractual terms and risk the deployment of [the employer's] considerable legal resources against them.  Thus, the *in terrorem* effect of the Agreement will tend to secure compliance with its illegal terms in the vast majority of cases." *Latona v. Aetna U.S. Healthcare Inc.* (C.D. Cal. 1999) 82 F.Supp.2d 1089, 1096.

25.     Armed with these illegal NDAs and other confidentiality requirements, and in reliance on their terrorizing effect, powerful employers, often with the help of prominent law firms, threaten employees with termination, financial ruin and more if they dare disclose corporate wrongdoing or engage in other relevant protected conduct.

26.     JUUL currently faces numerous government investigations arising from its business practices, including as it relates to the use of its products by minors.  JUUL also faces numerous administrative and court actions (by governments and otherwise) arising from its business practices, including as it relates to its relationship with Altria and the health dangers of

its products.  JUUL relies on NDAs and other confidentiality requirements to prevent its current and former employees from providing information relevant to these investigations and actions.

27.     JUUL also relies on NDAs and other confidentiality requirements to prevent disclosure of its unlawful and unethical business practices.  JUUL also relies on NDAs and other confidentiality requirements to limit the political speech and activity of its employees in ways that are contrary to JUUL's perceived interests.  JUUL's use of illegal NDAs and other confidentiality requirements violate California law.

**FACTS**

JUUL's Confidentiality and Non-Disparagement Agreement

28.     On March 22, 2018, Hamilton accepted an offer to work for JUUL as its Director of Program Management.  On April 15, 2018, Isaacson accepted an offer to work for JUUL as its Senior Director of Quality Assurance.  As an express condition of their employment, JUUL required them to sign its standard "Proprietary Information and Invention Assignment Agreement" ("NDA").   The offer letters stated that: "this offer, and employment pursuant to this offer, is conditioned upon" . . . "[y]our signed agreement to, and ongoing compliance with, the terms of the enclosed [NDA]."  The offer letters stated they were governed by California law. On information and belief, JUUL has a policy of requiring all of its employees to sign this standard offer letter or one that is substantially similar.

29.     The NDA states "Employee shall at all times during the term of the Employee's employment with the Company and thereafter, hold in strictest confidence, and not use . . . or disclose to any person, firm, or corporation, without written authorization from the Company's Board of Directors (the "Board"), any Confidential Information of the Company."  The NDA defines "Confidential Information" to mean, essentially, everything related to JUUL, including: customers (including those with whom the Employee merely became "acquainted" during the term of Employee's employment), "products," "markets," a laundry list of other categories of items, "other business information of the Company," and "information disclosed by the Company to Employee and information developed or learned by Employee during the course of employment with Company."  But that is not all.

30.     The NDA also contains a non-disparagement provision that prohibits employees from disclosing "all information of which the unauthorized disclosure <u>could be detrimental to the interests of the Company</u>, whether or not such information is identified as Confidential Information."

31.     The NDA further states: "Employee agrees that <u>Employee</u> bears the burden of proving that given information or materials are <u>not</u> confidential."

32.     The NDA requires employees to "execute any proper oath or verify any proper document required to carry out the terms of this Agreement."   It states that: "In the event of the termination of the Employee's employment, Employee hereby covenants and agrees to sign and deliver the 'Termination Certificate' attached hereto as <u>Exhibit C</u>."

33.     The form Termination Certificate attached as <u>Exhibit C</u> states that it is "confidential," and that "any dissemination, copying, or use of its contents without the express written authorization of juul labs, inc. is strictly prohibited."

34.     The NDA has no temporal or geographic limitation.  It lasts forever.  It also purports to give JUUL the right to enforce the agreement "by injunction, specific performance or other equitable relief, without bond" because "Employee may have access to and become acquainted with the Confidential Information of the Company."  The NDA also makes clear that injunctive relief is not JUUL's sole remedy in the event of an employee breach.  An employee may also be held liable to JUUL for monetary damages.

35.     The NDA states that it is governed by California law, and that "[t]he state and federal courts located in the Northern District of California shall be the sole and exclusive forum for disputes arising out of or relating to this Agreement."

36.     JUUL requires all of its employees to sign a standard NDA as a condition of employment.

37.     On information and belief, at some point in 2018-2019, JUUL took steps to revise its NDAs and other employment agreements to "tighten them" to further restrict employee speech, competition, and whistleblowing.

///

The Termination Certificate

38.     On March 15, 2019, JUUL informed Hamilton that it had decided to terminate her employment.  It required her to sign the "Termination Certificate" that all employees must agree to sign as a condition of employment. The Certificate requires employees to certify they have "complied with all the terms of the [NDA]."  The Certificate further states:

> In compliance with the [NDA], I will preserve as confidential all trade secrets, confidential knowledge, data, or other proprietary information, relating to products, processes, know-how, designs, formula, developmental or experimental work, computer programs, data bases, other original works of authorship, customer lists, business plans, financial information <u>or other subject matter pertaining to any business of the Company or any of its employees, clients, consultants, or licensees.</u>

39.     In accordance with her contractual obligations, Hamilton signed the Termination Certificate.  On information and belief, and consistent with their contractual obligations, other former JUUL employees have been required to sign a standard Termination Certificate upon separating from JUUL's employ.

JUUL's Non-Contractual Policies & Practices

40.     JUUL has also made, adopted, and enforced policies that unlawfully prohibit employees from engaging in whistleblowing, competing (by seeking new or better work), disclosing information about their wages and working conditions, and otherwise engaging in protected speech under California law. ("Confidentiality Policies").  These Confidentiality Policies inform the meaning of JUUL's standard NDA, Termination Certificate, and, as detailed below, its standard severance agreement.

*The Written Instruments*

41.     JUUL's Confidentiality Policies are evidenced in part through written instruments that are sometimes described as policies, procedures, rules, work instructions and handbooks. These Confidentiality Policies are also evidenced in training programs and courses.  Employees are required to read and acknowledge these instruments.  JUUL informs employees they must act in accordance with these instruments as a condition of their employment with JUUL.

42.     JUUL purports to tracks its employees' review of certain of these written instruments in a report.  The report purports to identify when these instruments are assigned to an employee for review and when the employee has acknowledged in writing that they have reviewed, understand, and will abide by the written instruments.

43.     Both Plaintiff and Isaacson reviewed and acknowledged certain of these written instruments.  On information and belief, some of the written instruments that evidence JUUL's Confidentiality Policies include the following:

a)   JUUL Quality Policy
b)   Regulatory Agency Inspections Procedure
c)   Managing Requests for Regulatory Agency Inspections Work Instruction
d)   JUUL Information Security Policy Framework
e)   Promotional and Informational Review Committee (PIRC) Policy
f)   Complaint Handling Procedure
g)   Youth Prevention Training Certification
h)   External Communication Policy
i)   Social Media Policy
j)   Privacy and Data Handling Policy
k)   JUUL Labs Code of Conduct
l)   Record Retention Procedure
m)   Compliance Reporting and Investigation Policy
n)   Good Documentation and Communication Practices
o)   Security Awareness Training
p)   Record Retention Procedure
q)   Dimensions of Data Privacy
r)   Quality Manual
s)   Document Control Procedure
t)   Use of Electronic Data Systems
u)   Regulatory Reporting Requirements
v)   Documentation and Records Retention
w)   JUUL Team Training

44.     Another written instrument that evidences JUUL's Confidentiality Policies is JUUL's "Culture & Policy Handbook."

45.     A version of this handbook "Last Updated" on May 15, 2018 contains extensive information about employee wages and working conditions.  This information includes, but is not limited to, information about compensation, overtime, expense reports, benefits, permissible leaves, workplace safety, and other employee working conditions.  This handbook also provides information about JUUL's Confidentiality Policies.

46.     JUUL's Confidentiality Policies advise employees that JUUL "should not be held liable for any repercussions that the employee's [social media communications] may generate."

47.     JUUL's Confidentiality Policies prohibit employees from sharing or discussing publicly business information, regardless of whether or not it is designated as confidential. JUUL's policies also prohibit employees from sharing or discussing "non-public data belonging to JUUL Labs." JUUL further instructs employees that if they have to "think about sharing" information, then they should not share the information.

48.     JUUL's Confidentiality Policies prevent employees from communicating with persons in the investment, regulatory, and trade communities. For example, employees are instructed to not respond to inquiries from these communities, including government regulators, but to instead direct or defer these inquiries to a designated JUUL representative.

49.     JUUL's Confidentiality Policies discourage employees from sharing or disclosing information in a written or recorded form because such information may be subject to discovery in litigation or may be sought by or reviewed by government regulators.

50.     JUUL's Confidentiality Policies place limits on the use of employee personal devices. For example, a version of JUUL's handbook defines "Technology Resources" to include "all means of electronic communication that are owned by JUUL Labs," and all personal devices accessed or used on JUUL's premises and all personal devices that are used in performing JUUL business. JUUL prohibits employees from using these "Technology Resources:" (1) in a manner contrary to JUUL's interests; (2) in any way that discloses JUUL's so-called confidential or proprietary information to third parties, or for personal or pecuniary gain; or (3) to transmit, receive, or store information that is adverse to JUUL or any other entity. JUUL also prohibits employees from accessing JUUL's so-called confidential information in the presence of "unauthorized individuals," and it prohibits employees from storing information in a fashion that permits "unauthorized access."

51.     JUUL's Confidentiality Policies also prohibit political speech and activity. For example, JUUL's practices and business, the benefit and/or detriment of vaping, and the necessity or appropriateness of vaping-related regulations, are all high profile political issues. Nonetheless,

JUUL instructs employees in its training programs and other written instruments that they cannot – among other things – correct political candidates spreading alleged "misinformation" about JUUL, "engage with youth on the topics of tobacco and nicotine," "engage in social media," discuss vaping, cigarettes, drinking, or any age-restricted products in the "earshot of youth," share or laugh at JUUL Labs-related memes, or help a young family member quit smoking.

52.     JUUL's Confidentiality Policies also require employees to falsely inform others (including their fellow employees) that JUUL did not, and does not, target or market its products to minors.

53.     JUUL's handbook further states that all of JUUL's employment policies (including its Confidentiality Policies, and including the handbook itself) cannot be disclosed to third parties. The handbooks states:

> You understand that the working conditions, policies, procedures, and benefits described in this handbook are confidential and may not be distributed in any way nor discussed with anyone who is not an employee of JUUL Labs.

54.     JUUL's Handbook requires employees to acknowledge that they have read the handbook and understand its terms.

55.     JUUL refuses to provide employees with copies of the written instruments that evidence its Confidentiality Policies, even when they are requested, and even when they are signed by the employee.  For example, after Plaintiff learned of JUUL's intent to terminate her employment, she requested copies of these written instruments so that she could better understand her purported obligations to JUUL with respect to speech, competition, and whistleblowing. JUUL refused to provide the instruments themselves.  Instead, JUUL provided her with a copy of the report referenced above that purports to reflect her review and acknowledgement of certain instruments.  The Hamilton report is incomplete and potentially inaccurate.

56.     Similarly, Isaacson – through his counsel – asked for a copy of these signed written instruments on July 28, 2020.  JUUL refused to provide them.  Instead, JUUL provided Isaacson a copy of the report referenced above that purports to reflect his review and acknowledgement of certain instruments.  The Isaacson report is incomplete and inaccurate.

57.     At some point, JUUL took steps to revise the written instruments and documents that evidence its Confidentiality Policies in order to "tighten them" and place even greater restrictions on employee speech and whistleblowing.

58.     JUUL then required its employees to review, acknowledge, and abide by these revised written instruments.  For example, according to the Hamilton report, Plaintiff acknowledged and agreed to abide by a revised Complaint Handling Procedure on or around January 29, 2019.  According to the Isaacson report, Isaacson was required to review and acknowledge revised Social Media and External Communication Policies on or around July 12, 2019.

*JUUL's Practices*

59.     JUUL's Confidentiality Policies are also evidenced by its practices, including the creation and maintenance of a "culture of concealment."  This culture of concealments includes the following:

60.     Employees have been, and on information and belief are still, instructed by senior executives <u>not</u> to relay information in a recorded form, particularly information about potential or actual illegal conduct or the public health dangers of JUUL's products.  Employees were instructed to rewrite or delete written materials to conceal information about potential or actual illegal conduct.  Plaintiff and Isaacson experienced some of this conduct first-hand from senior executives.  As further explained in a recent news report: "Lawyers sent periodic reminders to staff members telling them not to put anything in writing that could be communicated in person."  L. Etter*, <u>JUUL Quietly Revamped Its E-Cigarette, Risking the FDA's Rebuke</u> (Bloomberg Businessweek, July 23, 2020) ("Etters Article.")

61.     JUUL actively prepared for unannounced government inspections of its offices by running "drills" in which employees were instructed to quickly conceal incriminating evidence and information upon receiving notice that a regulator or government agent was on-site.

62.     UUL's executives and officers instructed employees not to speak to government regulators unless they had no choice.  These instructions were given during, among other things, all-hands meetings.  Employees were also instructed that if they were approached by a

government regulator, they were to direct the government regulators to specifically-identified JUUL employees.  These employees were, in turn, trained to conceal information from government regulators while being "technically" truthful.  The training involved, for example, the manner in which employees should avoid disclosing information to the FDA about design changes to its products, including its gasket and pressure sensors.   Plaintiff and Isaacson have first-hand knowledge of this conduct.

63.     In addition, as explained in the Etters Article:

> More than a dozen JUUL employees were schooled using a technique called "hats on-hats off." . . . During hats on, a designated person would play the role of an FDA inspector, asking probing questions.  That was followed by hats off, in which the person evaluated the performance of the employee and offered tips to doing better.  Employees were coached on specific FDA techniques they were told might be used to try to get them to talk more than they should.  In at least one coaching session that included JUUL's chief quality officer, Joanna Engelke, employees were instructed on how to respond to questions about device modifications.  If asked, acknowledge the changes, they were told.  But don't volunteer any information.

64.     JUUL executives also instructed employees through email communications, all-hands meetings, and other communications not to speak to the press or other third parties about JUUL.  Among other things, these admonitions occurred both during and after a government inspection at JUUL's headquarters, as well as after the announcement of Altria's investment in JUUL.

65.     Another practice that evidences JUUL's illegal Confidentiality Policies is its retaliation against whistleblowers.  For example, Plaintiff disclosed information internally about JUUL's violations of, and non-compliance with, the law with respect to JUUL's products, testing on employees, safety and clinical practices, and the shipping of products.  She disclosed this information internally to her superiors, as well as to persons at JUUL in a position to investigate and/or correct these problems.  She sometimes communicated this information in writing, in violation of JUUL's policies.  In response, JUUL retaliated against her as part of its enforcement efforts with respect to its illegal policies against whistleblowing.

FIRST AMENDED PAGA/UNFAIR COMPETITION COMPLAINT

66.     Similarly, and consistent with its pattern and practice, JUUL falsely informed Isaacson that JUUL's products were focused exclusively on harm reduction.  In the fall of 2018, Isaacson wore a JUUL-branded sweatshirt to his daughter's college campus during a parents weekend.  Isaacson found it noteworthy that the sweatshirt was immensely popular amongst college students, and not so popular with his fellow parents.  He reported this problem – and the problem of JUUL's marketing practices – to his superiors at JUUL.  He was subsequently given a poor performance review.

67.     Isaacson also disclosed information internally to his superiors, as well as to persons at JUUL in a position to investigate and/or correct the problem, about other potentially illegal conduct by JUUL.  This illegal conduct included, but was not limited to, information about JUUL: (a) making changes to its products in violation of the FDA's deeming rule; (b) concealing these changes; (c) refusing to document its compliance with applicable policies and regulations (and/or failing to comply at all); (d) rushing potentially unsafe products to market; (e) testing its products on human subjects, (f) continuing to permit vaping in the workplace in violation of the law; and (g) engaging in other gross violations of workplace safety rules, including storing jugs of cancer-causing chemicals in unsecure areas.  JUUL subsequently took adverse action against Isaacson.

68.     On information and belief, JUUL has retaliated against other employee whistleblowers who disclosed potentially illegal conduct by JUUL as protected by Labor Code § 1102.5.

<u>The Standard Release Agreement</u>

69.     In addition to informing Hamilton, on March 15, 2019, of its intent to terminate her employment, JUUL also informed Hamilton it would continue to employ and pay her wages through April 2, 2019, as well as pay her a bonus, if she signed a JUUL release agreement.  This was an important date because employment through April 2, 2019 would allow Hamilton's first tranche of equity to vest.

70.     Similarly, in September and early October of 2019, JUUL informed Isaacson of its intent to terminate his employment.  JUUL – through a Senior People Operations Generalist

located in San Francisco – offered Isaacson continued employment through November 1, 2019 if he signed a release agreement.

71. The release agreements offered to Hamilton and Isaacson were largely the same, except that Isaacson's release agreement contained a Utah choice-of-law provision and a Colorado forum arbitral forum provision.

72. On information and belief, JUUL requires employees to sign release agreements that are the same as, or similar to, those offered to Hamilton and Isaacson as a condition of continued employment or in exchange for the payment of wages, bonuses, or other employment benefits.

73. JUUL's standard release agreements included a general release of claims, including claims arising under the Fair Employment & Housing Act.

74. JUUL's standard release agreements require that employees refrain from any "disparagement" of JUUL and "its current and former parents, subsidiaries, related entities and affiliates, and their respective employee benefit plans or funds, officers, directors, shareholders [including Altria, its largest shareholder], partners, employees, agents, trustees, administrators, predecessors, successors, and assigns."

75. JUUL's standard release agreements further require that employees keep the existence and terms of the release agreement "confidential," even though the agreement contains extensive information about working conditions and wages.

76. When the standard release agreement is offered in exchange for continued employment to a future date, the release agreement also requires the employee to sign JUUL's Termination Certificate.

77. Hamilton declined to sign the release agreement. As a result, JUUL refused to employ her through April 2, 2019 and refused to pay her bonus, resulting in the loss of wages and other compensation. Her equity did not vest.

78. Hamilton retained counsel. On April 1, 2020, her counsel sent a redline of the release agreement to JUUL's in-house counsel. Hamilton's counsel explained: "I have made certain redlines to the agreement to ensure it is legal and consistent with the most current

commercial standards for employee separation agreements."  The proposed redlines included:

       a.    Deletion of language stating that Hamilton must agree that "he/she has not, and will not, at any time hereafter, commence, maintain, prosecute, participate in, or assist with (unless compelled by legal process or court order) any action or proceeding of any kind, judicial or administrative, whether on behalf of EMPLOYEE or a third party, in any court, agency, or investigative or administrative body against any Releasee with respect to any act, omission, practice, conduct, event or any other matter occurring up to and including the date on which EMPLOYEE signs this Agreement."

       b.    Addition of language stating that "Protected Activity" includes the disclosure of "unlawful activity as provided in Government Code § 12964.5, disclosing information as permitted by Code of Civil Procedure § 1001 and Civil Code § 1670.11, [and] engaging in conduct protected by the California Labor Code, or other state or federal law.

       c.    Addition of language stating that Plaintiff's NDA "nor any other agreement shall be construed as restricting EMPLOYEE's rights under the NLRA, Labor Code §§ 98.6, 232, 232.5, 1102.5, 1197.5, SEC rules, or [other laws or rights referenced above]."  And

       d.    Deletion of the non-disparagement provision.

79.    JUUL rejected all of Plaintiff's counsel's proposed revisions to the release agreement.

80.    Hamilton continues to be subject to the NDA and Termination Certificate (but not the release agreement).  These documents are restrictive covenants that restrain Hamilton's employment opportunities and suppress her value in the labor market.

81.    Isaacson signed the release agreement on or around October 14, 2019.  Because he signed this release agreement, he was permitted to continue his employment with JUUL until November 1, 2019, at which time JUUL required him to sign the identical release agreement a second time.  A short time later, JUUL announced layoffs in which employees who had not

1   engaged in whistleblowing were paid substantially larger severance packages than the one offered

2   to Isaacson.

3                                    JUUL's Knowledge

4          82.    JUUL knows its confidentiality requirements are illegal.  Among other things,

5   JUUL is presumed to know the law, and, on information and belief, JUUL received the advice of

6   competent counsel in drafting and promulgating its confidentiality requirements.

7          83.    In addition, as alleged above, JUUL revised its employee agreements and

8   Confidentiality Policies to place even greater restrictions on employee speech and

9   whistleblowing.  A JUUL employee involved in revising the agreements and policies, and who

10  worked closely with JUUL's C-level executives, informed Hamilton that JUUL knew its

11  Confidentiality Policies and employee agreements were illegal.  Nevertheless JUUL chose to

12  tighten them further in order to "protect the company."

13         84.    Also, Plaintiff served JUUL with PAGA notices detailing the manner in which

14  JUUL's confidentiality requirements violate the law.

15                                 Administrative Exhaustion

16         85.    Plaintiff filed her first PAGA notice with the Labor Workforce & Development

17  Agency ("LWDA") on August 14, 2019. It is attached as Exhibit A.  Plaintiff filed her second

18  PAGA notice with the LWDA on June 4, 2020.  It is attached as Exhibit B (without the original

19  complaint attached).  Plaintiff's filed her third PAGA notice with the LWDA on August 27, 2020.

20  It is attached as Exhibit C.  Plaintiff and Isaacson filed a fourth PAGA notice with the LWDA on

21  September 29, 2020.  It is attached as Exhibit D.

22         86.    Plaintiff served her PAGA notices on JUUL through certified mail at the same

23  time she filed them with the LWDA.  Plaintiff has heard no response from the LWDA stating its

24  intent to investigate the subject matter of these PAGA notices.

25         87.    To the extent not inconsistent with this Court's September 11, 2020 Order,

26  Plaintiff hereby incorporates the facts and theories set forth in these PAGA notices into this First

27  Amended Complaint.

28  ///

Pre-Litigation Settlement Efforts

88.     On September 30 and October 1, 2019, the parties entered into a tolling agreement in order to determine if a pre-litigation resolution of their disputes was possible.

89.     The parties engaged in a mediation in January 2020.  Hamilton and JUUL reached a settlement of her individual claims.  The claims alleged in this lawsuit were not resolved.

90.     The parties continued their pre-litigation negotiations during the first half of 2020.  They could not reach a resolution.

91.     On June 4, 2020, Plaintiff filed her original complaint in this case.  The parties' tolling agreement ended on that date.

92.     On information and belief, JUUL still has not changed its illegal confidentiality requirements.  If anything, JUUL continues to aggressively require, implement, and enforce its illegal confidentiality requirements with respect to its current and former employees.  It continues to require employees to sign agreements that unlawfully prohibit them from engaging in whistleblowing, competition, and speech.

Concealment of Evidence

93.     JUUL actively has concealed from Plaintiff evidence relevant to the claims alleged in this case.

94.     For example, Labor Code § 432 states that "if an employee or applicant signs any instrument relating to the obtaining or holding of employment, he shall be given a copy of that instrument upon request."  An instrument is a written document evidencing rights or obligations.  It includes notices and acknowledgements.

95.     Labor Code § 1198.5 states that "every current and former employee, or his or her representative, has the right to inspect and receive a copy of the personnel records that the employee maintains relating to the employee's performance or to any grievance concerning the employee. . . . The employer shall make the contents of those personnel records available for inspection to the current or former employee. . . . "

96.     Labor Code § 226(b) requires an employer "to afford current and former employees the right to inspect and receive a copy of records pertaining to their employment, upon

- 18 -

reasonable request to the employer."

97.     This Court's General Order No. 71 sets forth Initial Discovery Protocols for Employment Cases Alleging Adverse Action.  This Order requires the Defendant to produce "workplace policies and guidelines relevant to the adverse action in effect at the time of the adverse action," as well as "the table of contents and index of any employee handbook, code of conduct, or policies and procedurals manual in effect at the time of the adverse action." (Part 2, § 2(g) and (h).  The Order further provides that these materials must be produced within 30 days of the date upon which the Defendant files a responsive pleading.

98.     Plaintiff's original Complaint alleged JUUL's confidentiality requirements adversely affected both Plaintiff and the aggrieved employees. Plaintiff alleged she has suffered injury in fact and has lost money and property as a result of this unfair competition."  (Original Complaint ¶ 81).

99.     As noted above, upon being advised of JUUL's intent to terminate her employment, Plaintiff requested her employment records.  On March 16, 2020, Plaintiff's counsel also requested her records under Labor Code §§ 226(b), 432, and 1198.5.

100.    Similarly, on July 28, 2020, Plaintiff's counsel requested Isaacson's records under Labor Code §§ 226(b), 432, and 1198.5.

101.    JUUL has refused to provide the written instruments referenced in the Hamilton Report despite Plaintiff's requests.  These materials are instruments, personnel records, and they pertain to Plaintiff's employment.

102.    JUUL has also refused to provide the written instruments referenced in the Isaacson Report, despite Plaintiff's counsel request.  Moreover, and while producing some documents, JUUL did not produce (or even acknowledge the existence of) the Culture and Policy Handbook that Isaacson was required to review, acknowledge, and sign as a condition of his employment, nor the release agreement he signed on or around October 14, 2019 offering to continue his employment through November 1, 2019.  These materials are also instruments, personnel records, and they pertain to Plaintiff's employment.

103.    In addition, JUUL refused to comply with General Order No. 71.  Instead, JUUL

FIRST AMENDED PAGA/UNFAIR COMPETITION COMPLAINT

took the position that this Order does not apply to Hamilton's claims.

Summary of Extrinsic Evidence Concerning

Interpretation of Employment Contracts

104.    As noted above, JUUL requires its employees to sign certain employee agreements as a condition of initial and continued employment, and/or the payment of wages, bonuses, or other compensation.  These employee agreements include its standard offer letter, NDA, Termination Certificate, and release agreements (collectively, "Employment Contracts.")  To the extent these Employment Contracts are ambiguous, the Court must look to rules of contract interpretation and extrinsic evidence in order to determine the meaning of the agreements, based on the "objective intent" of the parties.

105.    This extrinsic evidence includes: (a) JUUL's course of conduct after the execution of the Employee Contracts and before any controversy arose; (b) oral statements about the meaning of the Employment Contracts; (c) the inclusion or exclusion of terms in some contracts between JUUL and its workforce but not others; and (d) the parties' negotiations.  The extrinsic evidence demonstrates that the Employment Contracts were intended to violate, and actually violate, the law.

106.    With respect to JUUL's course of conduct, JUUL's Non-Contractual Policies and Practices demonstrate that JUUL intended the Employment Contracts to prohibit whistleblowing and other protected employee speech.  Among other things, JUUL's written instruments prohibited employees from speaking to regulators, including government agencies.  JUUL's written instruments prohibit employees from disclosing any information disparaging to JUUL. JUUL instructed employees not to disclose information in writing because it might be discovered by government agencies.  JUUL's employee handbook states that its [illegal] working conditions, policies, and procedures are "confidential" and cannot be distributed in any way nor discussed with anyone who is not an employee of JUUL Labs.  JUUL instructed employees to provide false information to government officials and others with respect to the fact that JUUL targets it products to minors.  JUUL engaged in employee drills where they were instructed to conceal information about potentially illegal conduct in the event of surprise government inspections.

- 20 -

JUUL trained employees on how to conceal information from government agencies.  JUUL prohibited employees from speaking to political candidates about alleged "misinformation" concerning JUUL, discussing vaping with minors, or laughing at memes.  JUUL instructed employees via email and in meetings not to speak to the press or third parties.

107.    With respect to oral statements about the meaning of the Employment Contracts, a JUUL employee involved in revising the Employment Contracts stated that JUUL knew the Contracts were illegal but "tightened" the Contracts to render them even more illegal in order to protect the company.

108.    With respect to the inclusion of contract terms in some agreements but not others, the release agreements contained purposefully ambiguous carve-outs for certain protected activity that were not included in the NDA or Termination Certificate.  This creates an inference that the parties did not intend any carve-outs to be read into the NDA or Termination Certificate.

109.    With respect to the parties' contract negotiations, Plaintiff's counsel proposed redlines to JUUL's standard release agreement to ensure it was legal.  These redlines included language permitting Plaintiff to engage in activity protected by the Labor Code and other laws.  JUUL rejected Plaintiff's proposed redlines.

110.    The objective intent of the parties, as established by the extrinsic evidence, is that the Employment Contracts prohibit employee competition, whistleblowing, and speech in violation of the law.  In other words, the Employment Contracts are illegal.

## CAUSES OF ACTION

111.    Hamilton brings the following claims:

## FIRST CAUSE OF ACTION

## (PAGA VIOLATION OF LABOR CODE § 1102.5(a))

112.    Plaintiff incorporates by reference the allegations set forth above.

113.    Labor Code § 1102.5(a) makes it unlawful for an employer to make, "adopt, or enforce any rule, regulation, or policy preventing an employee from disclosing information to a government or law enforcement agency, to a person with authority over the employee [or to another employee with the authority to investigate, discuss, or correct the violation], or from

providing information to, or testifying before, any public body conducting an investigation, hearing or inquiry," if the employee has reasonable cause to believe that the information discloses a violation of law, "regardless of whether disclosing the information is part of the employee's job duties."

114.    JUUL's confidentiality requirements violate Labor Code §1102.5(a).

*The Employment Contracts*

115.    JUUL has a policy of requiring its employees to sign and comply with Employment Contracts that prohibit employees from disclosing information about reasonably-suspected violations of the law to government and law enforcement.  To the extent these Employment Contracts are ambiguous, the Court must look to rules of contract interpretation and extrinsic evidence.  The extrinsic evidence demonstrates that the objective intent of the parties was that JUUL's policy of requiring employees to sign Employment Contracts violated the requirements of Labor Code § 1102.5(a).

*The Non-Contractual Policies & Practices*

116.    JUUL's Non-Contractual Policies and Practices also establish that JUUL made, adopted, and enforced a policy that prevented employees from engaging in both internal and external whistleblowing in violation of Labor Code § 1102.5(a).  This illegal policy is evidenced by JUUL's written instruments, employee training, culture of concealment, and retaliation against whistleblowers.

117.    Labor Code § 1102.5(f) states that, "in addition to other penalties, an employer that is a corporation or limited liability company is liable for civil penalties not exceeding ten thousand dollars ($10,000) for each violation of this section."

118.    Additional penalties under PAGA for a violation of Labor Code § 1102.5(a) are "one hundred dollars ($100) for each aggrieved employee per period for the initial violation and two hundred dollars ($200) for each aggrieved employee per pay period for each subsequent violation."

119.    Plaintiff seeks from Defendant JUUL Labs, Inc., on behalf of herself, the State of California, and all aggrieved employees, PAGA penalties as set forth above for each employee

1    per pay period within the statutory time frame.

2    **SECOND CAUSE OF ACTION**

3    **(PAGA VIOLATION OF LABOR CODE §§ 96(k) and 98.6)**

4    120.    Plaintiff incorporates by reference the allegations set forth above.

5    121.    Labor Code § 96(k) gives employees the right to engage in "lawful conduct

6    occurring during non-working hours away from the employer's premises." As the California

7    Court of Appeals recently explained in *Doe v. Google*, 54 Cal.App.5th 948, 268 CalRptr.3d 783,

8    794 (2020), this lawful conduct includes the right of employees to "speak as they choose about

9    their work lives."  A violation of Labor Code § 96(k) gives rise to a claim under PAGA.  See

10   Labor Code § 2699.5.

11   122.    Labor Code § 98.6 makes it unlawful to threaten an employee with discharge for

12   engaging in conduct protected by Labor Code § 96(k), because the employee made a claim to the

13   Labor Commissioner, or because the employee engaged in conduct protected by Labor Code §§

14   1101, 1102, or 1102.5.  As detailed below, Labor Code §§1101 and 1102 prohibits employers

15   from adopting any policy or otherwise coercing employees in their political activities.

16   *Employment Contracts*

17   123.    JUUL, through its Employment Contracts, prohibits employees from speaking as

18   they choose about their work lives during non-working hours and away from their employer's

19   premises.  JUUL, through its Employment Contracts, also threatens employees with discharge if

20   they engage conduct protected by Labor Code §§ 98.6, 1101, 1102, and 1102.5.

21   124.    To the extent these Employment Contracts are ambiguous, the Court must look to

22   rules of contract interpretation and extrinsic evidence.  The extrinsic evidence demonstrates that

23   the objective intent of the parties was that the Employment Contracts prohibit conduct in

24   violation of Labor Code §§ 96(k) and 98.6.

25   *The Non-Contractual Policies & Practices*

26   125.    Non-Contractual Policies and Practices also establish that JUUL has engaged in

27   conduct that violates Labor Code §§96(k) and 98.6.  As detailed above, this illegal policy is

28   evidenced by its written instruments, employee training, JUUL's culture of concealment, and

- 23 -

retaliation against whistleblowers.

126.    Penalties under PAGA for a violation of Labor Code §§ 96(k) and 98.6 are "one hundred dollars ($100) for each aggrieved employee per period for the initial violation and two hundred dollars ($200) for each aggrieved employee per pay period for each subsequent violation."

127.    Plaintiff seeks from Defendant JUUL Labs, Inc., on behalf of herself, the State of California, and all aggrieved employees, PAGA penalties as set forth above for each employee per pay period within the statutory time frame for each statutory section.

## **THIRD CAUSE OF ACTION**

### **(PAGA VIOLATION OF LABOR CODE §§ 232 AND 1197.5(k))**

129.    Plaintiff incorporates by reference the allegations set forth above.

130.    Labor Code § 232(a) states that no employer may "require, as a condition of employment, that an employee refrain from disclosing the amount of his or her wages."  Labor Code § 232(b) states that no employer may "require an employee to sign a waiver or other document that purports to deny the employee the right to disclose the amount of his or her wages."  Labor Code § 1197.5(k) states, among other things, that "an employer shall not prohibit an employee from disclosing the employee's own wages, discussing the wages of others, inquiring about another employee's wages, or aiding or encouraging any other employee to exercise his or her rights under [Labor Code § 1197.5]."

131.    Labor Code § 200 defines wages as "all amounts for labor performed by employees of every description. . . ."

*Employment Contracts*

132.    JUUL, through its Employment Contracts, prohibits employees from disclosing information about their own wages or discussing the wages of others.  For example, JUUL's release agreements prohibit employees from disclosing information about the terms of the release agreements themselves.  The release agreements include information about wages, including information about bonus and severance amounts.

///

133.     To the extent these Employment Contracts are ambiguous, the Court must look to rules of contract interpretation and extrinsic evidence.  The extrinsic evidence demonstrates that the objective intent of the parties was that the Employment Contracts violate the requirements of Labor Code §§ 232 and 1197.5.

*The Non-Contractual Policies & Practices*

134.     JUUL's Non-Contractual Policies and Practices also establish that JUUL has engaged in conduct that violates Labor Code §§ 232 and 1197.5(k).  To identify one example, JUUL's employee handbook contains extensive information about JUUL's policies and benefits as it relates to wages, including referral bonuses, overtime, discounted JUUL pods, 401(k) plans, and paid time off.  JUUL also states that "the working conditions, policies, procedures, appeal processes, and benefits described in this handbook are confidential and may not be distributed in any way nor discussed with anyone who is not an employee of JUUL Labs."

135.     Penalties under PAGA for a violation of Labor Code §§ 232 and 1197.5 are "one hundred dollars ($100) for each aggrieved employee per period for the initial violation and two hundred dollars ($200) for each aggrieved employee per pay period for each subsequent violation."

136.     Plaintiff seeks from Defendant JUUL Labs, Inc., on behalf of herself, the State of California, and all aggrieved employees, PAGA penalties as set forth above for each employee, per pay period, within the statutory time frame for each statutory section.

**FOURTH CAUSE OF ACTION**

**(PAGA VIOLATION OF LABOR CODE § 232.5)**

137.     Plaintiff incorporates by reference the allegations set forth above.

138.     Labor Code § 232.5(a) states that no employer may "require, as a condition of employment, that an employee refrain from disclosing information about the employer's working conditions."  Labor Code § 232.5(b) states that no employer may "require an employee to sign a waiver or other document that purports to deny the employee the right to disclose information about the employer's working conditions."

*Employment Contracts*

139.   JUUL, through its Employment Contracts, prohibits employees from disclosing information about their employer's working conditions.  Indeed, the Termination Certificate itself – an obvious working condition – declares itself "confidential."  To the extent these Employment Contracts are ambiguous, the Court must look to rules of contract interpretation and extrinsic evidence.  The extrinsic evidence demonstrates that the objective intent of the parties was that the Employment Contracts violate the requirements of Labor Code §§ 232 and 1197.5.

*The Non-Contractual Policies & Practices*

140.   JUUL's Non-Contractual Policies and Practices also establish that JUUL has engaged in conduct that violates Labor Code §§ 232.5.  To identify one example, JUUL's employee handbook contains extensive information about JUUL's working conditions, including its Confidentiality Policies.  JUUL also states that "the working conditions, policies, procedures, appeal processes, and benefits described in this handbook are confidential and may not be distributed in any way nor discussed with anyone who is not an employee of JUUL Labs."

141.   Penalties under PAGA for a violation of Labor Code §§ 232.5 are "one hundred dollars ($100) for each aggrieved employee per period for the initial violation and two hundred dollars ($200) for each aggrieved employee per pay period for each subsequent violation."

142.   Plaintiff seeks from JUUL Labs, Inc., on behalf of herself, the State of California, and all aggrieved employees, PAGA penalties as set forth above for each employee, per pay period, within the statutory time frame.

## **FIFTH CAUSE OF ACTION**

### **(PAGA VIOLATION OF LABOR CODE § 432.5)**

143.   Plaintiff incorporates by reference the allegations set forth above.

144.   Labor Code § 432.5 states that no employer "shall require any employee or applicant to agree, in writing, to any term or condition which is known by such employer . . . to be prohibited by law."

   a.   Business & Professions Code §§ 17200 *et seq.* makes certain business practices unlawful.  Contracts that are "void" as violative of public policy are unlawful

under Business & Professions Code § 17200.

        b.      The Cartwright Act make contracts in restraint of trade unlawful.

        c.      Government Code § 12964.5 makes it unlawful for an employer, in exchange for a raise or bonus, or as a condition of employment, to require an employee to sign a non-disparagement agreement or other document that purports to deny the employee the right to disclose information about unlawful or potentially unlawful conduct.

        d.      Rule 21F-17 of the Securities and Exchange Commission states that "no person may take any action to impede an individual from communicating directly with the [SEC] about a possible securities law violation, including enforcing, or threatening to enforce, a confidentiality agreement."

        e.      The law and public policy prohibit employers from requiring employees to sign NDAs or abide by confidentiality requirements that prohibit them from disclosing potentially illegal conduct in furtherance of a federal securities action, a federal False Claims Act violation, or otherwise, to an attorney investigating such unlawful conduct.

        f.      Labor Code §§ 96(k), 98.6, 232, 232.5, 1101, 1102, 1102.5, and 1197.5(k) place strict restrictions on an employer's ability to silence its current and former employees.

        145.    As detailed above, JUUL, through its confidentiality requirements, require employees to agree in writing to terms and conditions which JUUL knows are prohibited by the above laws.

        146.    Penalties under PAGA for a violation of Labor Code § 432.5 are "one hundred dollars ($100) for each aggrieved employee per period for the initial violation and two hundred dollars ($200) for each aggrieved employee per pay period for each subsequent violation."

        147.    Plaintiff seeks from Defendant JUUL Labs, Inc., on behalf of herself, the State of California, and all aggrieved employees, PAGA penalties as set forth above for each employee, per pay period, within the statutory time frame.

///

1

## SIXTH CAUSE OF ACTION

2

## (UNFAIR COMPETITION)

3      148.    Plaintiff incorporates by reference the allegations set forth above and below.

4      149.    Business & Professions Code § 17200 defines unfair competition to include "any

5   unlawful, unfair, or fraudulent business act or practice."  Business & Professions Code § 17203

6   gives courts the power "to make such orders or judgments, including the appointment of a

7   receiver, as may be necessary to prevent the use or employment . . . of any practice which

8   constitutes unfair competition."

9      150.    JUUL engages in unfair competition through its use of NDAs and other

10  confidentiality requirements.

11     151.    Hamilton has suffered injury in fact and has lost money and property as a result of

12  this unfair competition.

13     152.    Hamilton, like all aggrieved employees, remain subject to JUUL's illegal NDA

14  and has been harmed by its confidentiality requirements.  This is an ongoing and irreparable

15  public harm.

16     153.    Hamilton seeks a public injunction against JUUL.

17

## SEVENTH CAUSE OF ACTION

18

## (LABOR CODE §§ 1101, 1102)

19     154.    Labor Code § 1101 states that no employer shall make, adopt, or enforce any rule,

20  regulation, or policy that: (a) forbids or prevents employees from engaging or participating in

21  politics; or (b) controls or directs, or tends to control or direct, the political activities or

22  affiliations of its employees.

23     155.    Labor Code § 1102 states that "no employer shall coerce or influence or attempt to

24  coerce or influence his employees through or by means of threat of discharge or loss of

25  employment to adopt or refrain from adopting or following any particular course or line of

26  political action or political activity."

27                          *The Employment Contracts*

28     156.    JUUL has a policy of requiring its employees to sign and comply with

- 28 -

FIRST AMENDED PAGA/UNFAIR COMPETITION COMPLAINT

Employment Contracts that prohibit employees from engaging in conduct protected by Labor Code §§ 1101 and 1102. To the extent these Employment Contracts are ambiguous, the Court must look to rules of contract interpretation and extrinsic evidence. The extrinsic evidence demonstrates that the objective intent of the parties was that JUUL's policy of requiring employees to sign the Employment Contracts violated the requirements of Labor Code § 1101 and 1102. For example, JUUL instructs employees in the manner in which they may or may not speak to government agencies, politicians, friends, and family members about political activity as it relates to JUUL, youth smoking, vaping, or the vaping epidemic. JUUL also prohibits employees from disparaging JUUL.

*The Non-Contractual Policies & Practices*

157.     JUUL's Non-Contractual Policies and Practices also establish that JUUL made, adopted, and enforced a policy that prevented employees from engaging in political activity in violation of Labor Code § 1101 and 1102. This illegal policy is evidenced by JUUL's written instruments, employee training, and JUUL's culture of concealment.

158.     Penalties under PAGA for a violation of Labor Code §§ 1101 and 1102 are "one hundred dollars ($100) for each aggrieved employee per period for the initial violation and two hundred dollars ($200) for each aggrieved employee per pay period for each subsequent violation."

159.     Plaintiff seeks from Defendant JUUL Labs, Inc., on behalf of herself, the State of California, and all aggrieved employees, PAGA penalties as set forth above for each employee per pay period within the statutory time frame.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for the following:

1.     Full and complete civil penalties for each separate violation of PAGA, as to each statutory section, in accordance with the Private Attorneys General Act.

2.     Public injunctive relief pursuant to both PAGA and the Unfair Competition Law.

3.     Pursuant to PAGA. Plaintiff stands in the shoes of the LWDA. PAGA was enacted to deter Labor Code violations and unfair competition. PAGA grants courts the same

discretion as the LWDA to assess civil penalties.  Labor Code § 2699(e)(1).  This discretion necessarily includes the discretion to condition any contemplated reduction in civil penalties on an employer's agreement to public injunctive relief.  To the extent the Court considers a reduction of civil penalties as permitted by PAGA, Plaintiff requests that such reduction be conditioned upon JUUL's compliance with appropriate negative and affirmative public injunctive relief.

   4.    <u>Pursuant to the Unfair Competition Law.</u>  The UCL permits the Court to award appropriate negative and affirmative public injunctive relief.

   5.    Plaintiff requests that the public injunction redress JUUL's ongoing violations of the law and remedy its past violations of the law.  The injunction should include:

        a.    An order prohibiting JUUL from seeking to enforce its illegal confidentiality requirements.

        b.    An order requiring JUUL to notify its current and former employees of the Court's injunction, that the at-issue confidentiality requirements are illegal and unenforceable, and that employees have the right to engage in whistleblowing, competition and speech consistent with the laws identified in this Complaint.

        c.    An order requiring JUUL to modify its confidentiality requirements to bring them into compliance with the laws identified in this Complaint.  And

        d.    An order requiring JUUL to verify its compliance with the Court's injunction through independent monitoring or other appropriate means.

   6.    Attorneys' fees and costs under PAGA, CCP § 1021.5, or any other applicable law or doctrine.

   7.    All other relief the Court deems proper and just.


Dated:   October 29, 2020                    BAKER CURTIS & SCHWARTZ, P.C.


                                   By:_____/s/ Chris Baker_____
                                        Chris Baker
                                        Attorneys for Plaintiff
                                        MARCIE HAMILTON

FIRST AMENDED PAGA/UNFAIR COMPETITION COMPLAINT

Exhibit A



Chris Baker
1 California Street, Suite 1250
San Francisco, CA 94111
tel. (415) 433-1064
cbaker@bakerlp.com
www.bakerlp.com

August 14, 2019

**Via On-Line (& Email)**

Labor & Workforce and Development Agency (LWDA)
Attention: PAGA Administrator
Division of Occupational Safety & Health (DOSH)
Attention: Michael Frye
DOSH Regional Manager
455 Golden Gate Ave., Rm 9516
San Francisco, CA  94102
DOSHREG1SanFrancisco@dir.ca.gov

**Via Certified Mail**

Jerry Masoudi
Chief Legal Officer
c/o Miray Gweon
JUUL Labs, Inc.
560 20th Street
San Francisco, CA  94107-4344

      *RE:*    *Request For Relief Under the Private Attorneys General Act*

Dear DOSH, LWDA, Mr. Masoudi, and Ms. Gweon:

      This office represents Marcie Hamilton.  Ms. Hamilton worked as JUUL Labs, Inc's Director of Program Management from on or around April 2, 2018 through April 2, 2019.

      Ms. Hamilton seeks to represent the State of California and other current and former employees of JUUL Labs, Inc. ("JUUL") pursuant to Labor Code § 2698 *et seq.*  Hamilton, of course, may bring Labor Code claims as a PAGA representative even though she may not have

DOSH & LWDA
JUUL Labs, Inc.
August 14, 2019
Page 2

been personally affected by certain violations, because she has been subject to "one or more" Labor Code violations.  *E.g., Huff v. Securitas Security Services, Inc.* (2018) 23 Cal.App.5th 745.

The facts and theories upon which Hamilton bases her Labor Code/PAGA claims include, but are not limited to, the following:

1.      JUUL has a policy of requiring current and former employees to sign and comply with, as a condition of employment, illegal non-disclosure and non-disparagement agreements (NDAs), policies, and practices ("confidentiality requirements").  These agreements, policies, and practices – which JUUL describes as "ongoing" – prohibit employees from disclosing information about their wages, working conditions, and actual or potentially illegal conduct. They also constitute unlawful restrictive covenants because they define, essentially, <u>everything</u> as confidential.  For example:

2.      As partially detailed in the attached exhibit, the JUUL NDA required of Hamilton prohibits her from ever using or disclosing to **<u>any</u>** third party "confidential information," which is defined to include: "customer lists and customers," "business information," and "<u>all information of which the unauthorized disclosure could be detrimental to the interests of Company, whether or not such information is identified as confidential information.</u>"  The NDA further states that "<u>Employee</u> bears the burden of proving that given information or materials are not "Confidential Information."  Indeed, the JUUL NDA even declares **<u>itself</u>** confidential, though it is obviously a condition of working for JUUL.  And

3.      In addition, the NDA required Hamilton to agree to sign, as a condition of employment, an "Exit Certification" that requires her to comply with the JUUL NDA post-employment.  JUUL required Hamilton to sign this termination certification on March 15, 2019 in exchange for continued wages and employment.

4.      Moreover, the NDA also includes an illegal restrictive covenant prohibiting Hamilton from soliciting JUUL employees for a twelve month post-employment period.

5.      JUUL's policy of requiring employees to sign and comply with illegal NDAs (the same as or having the same effect as Hamilton's) and other confidentiality requirements violates numerous Labor Code provisions, including Labor Code §§ 232, 1197.5 (outlawing employer prohibitions on the disclosure or discussion of wage information), § 232.5 (outlawing employer prohibitions on the disclosure or discussion of working conditions); § 1102.5 (outlawing employer policies prohibiting the disclosure of potentially illegal conduct to government agencies); § 96(k) (outlawing employer prohibitions  on employees engaging in lawful conduct during non-work hours, including exercising free speech rights); and § 98.6 (prohibiting employers from threatening to discharge employees for engaging in conduct protected by § 96(k)).

DOSH & LWDA
JUUL Labs, Inc.
August 14, 2019
Page 3

6.      In addition, JUUL's unlawful NDAs and confidentiality requirements violate numerous other laws, including, but not limited to: (1) Business & Professions Code § 16600 and the Cartwright Act (because an overbroad NDA and non-solicitation provision constitute an illegal restraint of trade); (2) the rules of the Securities & Exchange Commission (prohibiting NDAs that prevent employees from communicating with the SEC); (3) the Defend Trade Secrets Act (giving employees an affirmative right to engage in whistleblowing and requiring a notice of immunity in any NDA); (4) public policy and other positive laws in favor of whistleblowing concerning illegal conduct (e.g., Labor Code § 6310, the False Claims Act, etc.); (5) Government Code § 12964.5 (prohibiting NDAs that prevent employees from disclosing potentially illegal conduct); (5) Business & Professions Code § 17200 *et seq.* (stating that illegal or unfair business practices are against the law), and (6) Civil Code § 3513 (a law established for a public reason cannot be contravened by a private agreement).

7.      For all the above reasons, the JUUL NDAs and other confidentiality requirements violate Labor Code § 432.5 because they contain terms that JUUL knows are prohibited by law. Among other things, employers are presumed to know the law.

JUUL's NDAs and confidentiality requirements are illegal.  Accordingly, and consistent with her legal rights (including under Labor Code § 6310), Hamilton state the following additional facts and theories in support of additional PAGA claims.

8.      JUUL permits (and indeed actively encourages) vaping by its employees and contractors of JUUL's products at JUUL's enclosed places of employment.  This vaping occurs, among other places, in JUUL's offices and conferences rooms.  Moreover, JUUL actively encourages vaping by its employees for purposes of product testing.  JUUL does not advise its employees of the hazardous nature of its products or the products' contents.  JUUL's products are unsafe and hazardous.

9.      This conduct violates Labor Code § 6398 (and all regulations adopted pursuant to this section), § 6398.5, § 6400 ("Every employer shall furnish employment and a place of employment that is safe and healthful for the employees therein."); §§ 6401, 6403 (requiring employers to use methods and processes reasonably adequate to render employment and places of employment safe and reasonably necessary to protect the life, safety, and health of employees); § 6402 (stating that no employer shall require, or permit any employee to go or be in any employment or place of employment which is not safe and healthful); § 6404 (prohibiting employers from occupying an unsafe or unhealthy workplace); §6404.5 (prohibiting workplace smoking), and 8 CCR § 5148 (as promulgated pursuant to Labor Code § 142.3).

The aggrieved employees are all current and former JUUL employees and temporary employees (hired through staffing firms or otherwise) required to sign a JUUL NDA and/or otherwise comply with its confidentiality requirements, and/or who work or who have worked at JUUL's places of employment.

DOSH & LWDA
JUUL Labs, Inc.
August 14, 2019
Page 4


For the above violations, Hamilton seeks civil penalties on behalf of herself and all other aggrieved employees (including temporary employees), as well as the State of California, in accordance with Labor Code §§ 2699 *et seq.*

Thank you for your attention to this matter.

Very truly yours,

Chris Baker

EXHIBIT

## PROPRIETARY INFORMATION AND
## INVENTION ASSIGNMENT AGREEMENT

This Agreement is entered into as of **March 20, 2018** (the "Effective Date") by and between JUUL Labs, Inc., a Delaware corporation (the "Company"), and **Marcie Hamilton** ("Employee").  As a condition of Employee's employment with the Company, and in consideration of Employee's employment with the Company and receipt of the compensation now and hereafter paid to Employee by the Company, Employee agrees to the following:

1.    **At-Will Employment.**  The parties agree that Employee's employment with the Company shall be "at-will" employment and may be terminated at any time with or without cause or notice at the option of either the Company or Employee.  No provision of this Agreement shall be construed as conferring upon Employee a right to continue as an employee of the Company.

2.    **Right to Advice of Counsel.**  Employee acknowledges that he or she has had the right to consult with counsel and is fully aware of Employee's rights and obligations under this Agreement.

3.    **Successors**.

3.1    **Company's Successors.**  Any successor to the Company (whether direct or indirect and whether by purchase, lease, merger, consolidation, liquidation or otherwise) to all or substantially all of the Company's business and/or assets shall assume the obligations under this Agreement and agree expressly to perform the obligations under this Agreement in the same manner and to the same extent as the Company would be required to perform such obligations in the absence of a succession.  For all purposes under this Agreement, the term "Company," shall include any successor to the Company's business and/or assets which executes and delivers the assumption agreement described in this subsection 3.1 or which becomes bound by the terms of this Agreement by operation of law.

3.2    **Employee's Successors.**  Without the written consent of the Company, Employee shall not assign or transfer this Agreement or any right or obligation under this Agreement to any other person or entity. Notwithstanding the foregoing, the terms of this Agreement and all rights of Employee hereunder shall inure to the benefit of, and be enforceable by, Employee's personal or legal representatives, executors, administrators, successors, heirs, distributees, devisees and legatees.

4.    **Confidential Information**.

4.1    **Company Information**.  Employee shall at all times during the term of Employee's employment with the Company and thereafter, hold in strictest confidence, and not use, except for the benefit of the Company, or disclose to any person, firm or corporation without written authorization of the Company's Board of Directors (the "Board"), any Confidential Information of the Company.  As used herein, "Confidential Information" means and includes any Company confidential or proprietary information, technical data, trade secrets or know-how, including, but not limited to, research, product plans, products, services, customer lists and customers (including, but not limited to, customers of the Company on whom Employee has called or with whom he or she became acquainted during the term of Employee's employment), markets, software, developments, inventions, conceptions, patentable subject matter, processes, formulas, technology, specifications, designs, drawings, engineering, hardware configuration information, marketing, forecasts, finances or other business information of the Company.  Confidential Information includes both information disclosed by the Company to Employee and information developed or learned by Employee during the course of employment with Company.  Confidential Information also includes all information of which the unauthorized disclosure could be detrimental to the interests of Company, whether or not such information is identified as Confidential Information.  Confidential Information does not include information which Employee can establish has become publicly known and made generally available through no wrongful act of Employee or of others who were under confidentiality obligations as to the item or items involved.

4.2    **Former Employer Information**.  Employee shall not, during Employee's employment with the Company, improperly use or disclose any proprietary information or trade secrets of any former or concurrent employer or other person or entity and Employee shall not bring onto the premises of the Company any unpublished document or proprietary information belonging to any such employer, person or entity unless consented to in writing by such employer, person or entity.

DocuSign Envelope ID: 39AEE075-A35F-4490-A88D-C1EB9662D1DA

4.3     **Third Party Information**.  Employee shall hold all confidential or proprietary information that the Company has received from any third party to which it is the Company's obligation to maintain the confidentiality of such information and to use it only for certain limited purposes in the strictest confidence and not to disclose it to any person, firm or corporation or to use it except as necessary in carrying out Employee's work for the Company consistent with the Company's agreement with such third party.

5.     **Inventions**.  Employee hereby represents, warrants and covenants as follows:

5.1     **Inventions Retained and Licensed**.  Attached hereto, as Exhibit A, is a list describing all inventions, original works of authorship, developments, improvements, and trade secrets which were made by Employee prior to Employee's employment with the Company (collectively referred to as "Prior Inventions"), which belong to Employee, which relate to the Company's proposed business, products or research and development, and which are not assigned to the Company hereunder; or, if Exhibit A is left blank, Employee hereby represents that there are no such Prior Inventions.  If in the course of Employee's employment with the Company, Employee incorporates into a Company product, process or machine a Prior Invention owned by Employee or in which Employee has an interest, the Company is hereby granted and shall have a nonexclusive, royalty-free, irrevocable, perpetual, worldwide license to make, have made, modify, use and sell such Prior Invention as part of or in connection with such product, process or machine.

5.2     **Assignment of Inventions**.  Employee shall, or will promptly make, full written disclosure to the Company, will hold in trust for the sole right and benefit of the Company, and agrees to assign and hereby does assigns to the Company, or its designee, all of Employee's rights, title, and interest, including, without limitation, any right of priority, in and to any and all inventions, original works of authorship, developments, concepts, improvements, designs, discoveries, ideas, trademarks or trade secrets, whether or not patentable or registrable under copyright or similar laws, which Employee may solely or jointly conceive or develop or reduce to practice, or cause to be conceived or developed or reduced to practice, during the period of time Employee is employed by the Company (collectively referred to as "Inventions"), except as provided in Section 5.5 below.  Employee hereby acknowledges that all original works of authorship which are made by Employee (solely or jointly with others) within the scope of and during the period of Employee's employment with the Company and which are protectable by copyright are "works made for hire," as that term is defined in the United States Copyright Act.  Employee hereby understands and agrees that the decision whether or not to commercialize or market any invention developed by Employee solely or jointly with others is within the Company's sole discretion and for the Company's sole benefit and that no royalty will be due to Employee as a result of the Company's efforts to commercialize or market any such Invention.

5.3     **Maintenance of Records**.  Employee shall keep and maintain adequate and current written records of all Inventions made by him or her (solely or jointly with others) during the term of Employee's employment with the Company.  The records will be in the form of notes, sketches, drawings, and any other format that may be specified by the Company.  The records will be available to and remain the sole property of the Company at all times.

5.4     **Registrations**.  Employee shall assist the Company, or its designee, at the Company's expense, in every proper way to secure the Company's rights in the Inventions and any copyrights, patents, mask work rights or other intellectual property rights relating thereto in any and all countries, including the disclosure to the Company of all pertinent information and data with respect thereto, the execution of all applications, specifications, oaths, assignments and all other instruments which the Company shall deem necessary in order to apply for and obtain such rights and in order to assign and convey to the Company, its successors, assigns, and nominees the sole and exclusive rights, title and interest in and to such Inventions, and any copyrights, patents, mask work rights or other intellectual property rights relating thereto.  Employee agrees that it is Employee's obligation to execute or cause to be executed, when it is in Employee's power to do so, any such instrument or papers after the termination of this Agreement.  If the Company is unable because of Employee's mental or physical incapacity or for any other reason to secure Employee's signature to apply for or to pursue any application for any United States or foreign patents, mask works or copyright registrations covering Inventions or original works of authorship assigned to the Company as above, then Employee hereby irrevocably designates and appoints the Company and its duly authorized officers and agents as Employee's agent and attorney in fact, to act for and in Employee's behalf and stead to execute and file any such applications and to do all other lawfully permitted acts to further the prosecution and issuance of letters patent or copyright registrations thereon with the same legal force and effect as if executed by Employee.

DocuSign Envelope ID: 39AEE075-A35E-4190-A88D-C1EB9562<sup></sup>1DAA

5.5    **Exception to Assignments**. It is agreed and acknowledged that the provisions of this Agreement requiring assignment of Inventions to the Company do not apply to any invention which qualifies fully under the provisions of California Labor Code Section 2870 (attached hereto as <u>Exhibit B</u>). Employee covenants that he or she will advise the Company promptly in writing of any inventions that he or she believes meet the criteria in California Labor Code Section 2870 and not otherwise disclosed on <u>Exhibit A</u>.

6.    **Conflicting Employment**. Employee shall not, during the term of Employee's employment with the Company, engage in any other employment, occupation, consulting or other business activity related to the business in which the Company is now involved or becomes involved during the term of Employee's employment, nor will he or she engage in any other activities that conflict with Employee's obligations to the Company.

7.    **Returning Company Documents**. At the time of leaving the employ of the Company, Employee covenants that he or she shall deliver to the Company (and will not keep in Employee's possession, recreate or deliver to anyone else) any and all devices, records, data, notes, reports, proposals, lists, correspondence, specifications, drawings blueprints, sketches, materials, equipment, other documents or property, or reproductions of any aforementioned items developed by Employee pursuant to Employee's employment with the Company or otherwise belonging to the Company, its successors or assigns, including, without limitation, those records maintained pursuant to Section 5.3. In the event of the termination of Employee's employment, Employee hereby covenants to sign and deliver the "Termination Certification" attached hereto as <u>Exhibit C</u>.

8.    **Notification of New Employer**. In the event that Employee leaves the employ of the Company, Employee agrees to grant consent to notification by the Company to Employee's new employer about Employee's rights and obligations under this Agreement.

9.    **Representations and Covenants**. Employee agrees to execute any proper oath or verify any proper document required to carry out the terms of this Agreement. Employee represents that his or her performance of all the terms of this Agreement will not breach any agreement to keep in confidence proprietary information acquired by Employee in confidence or in trust prior to Employee's employment by the Company. Employee has not entered into, and agrees not to enter into, any oral or written agreement in conflict herewith. Employee agrees that Employee bears the burden of proving that given information or materials are not Confidential Information or that the assignment of inventions does not apply under the circumstances.

10.    **Solicitation of Employees**. Employee covenants that, for a period of twelve (12) months immediately following the termination of Employee's relationship with the Company for any reason, whether with or without cause, he or she shall not either directly or indirectly solicit, induce, recruit or encourage any of the Company's employees to leave their employment, or take away such employees, or attempt to solicit, induce, recruit, encourage or take away employees of the Company, either for Employee or for any other person or entity.

11.    **Equitable Relief**. Because Employee's services are personal and unique and because Employee may have access to and become acquainted with the Confidential Information of the Company, the Company shall have the right to enforce this Agreement and any of its provisions by injunction, specific performance or other equitable relief, without bond and without prejudice to any other rights and remedies that the Company may have for a breach of this Agreement.

12.    **Notice Clause.**

12.1    **Manner.** Any notice hereby required or permitted to be given shall be sufficiently given if in writing and delivered in person, by facsimile transmission, electronic mail, overnight delivery service or U.S. mail, in which event it may be mailed by first-class, certified or registered, postage prepaid, to either party at the address of such party or such other address as shall have been designated by written notice by such party to the other party.

12.2    **Effectiveness.** Any notice or other communication required or permitted to be given under this Agreement will be deemed given (i) on the day when delivered in person, (ii) on the first business day of or after the date of confirmation that the facsimile has been successfully transmitted to the facsimile number for the party notified if sent by facsimile, (iii) on the first business day of or after the date of receipt by the party notified if sent by electronic mail, or (iv) the third business day after the day on which such notice was mailed in accordance with this Section.

13.     **Severability.**   The invalidity or unenforceability of any provision of this Agreement, or any terms hereof, shall not affect the validity or enforceability of any other provision or term of this Agreement.

14.     **Integration.**   This Agreement represents the entire agreement and understanding between the parties as to the subject matter herein and supersedes all prior or contemporaneous agreements whether written or oral.   No waiver, alteration, or modification of any of the provisions of this Agreement shall be binding unless in writing and signed by duly authorized representatives of the parties hereto.

15.     **Governing Law and Venue.**   This Agreement shall be governed by and construed in accordance with the internal substantive laws, but not the choice of law rules, of the state of California. The state and federal courts located in the Northern District of California shall be the sole and exclusive forum for disputes arising out of or relating to this Agreement. The parties hereby consent to the personal jurisdiction of such courts.

16.     **Counterparts.**   This Agreement may be executed in any number of counterparts, each of which shall be an original, and all of which together shall constitute on and the same instrument.

[signature page follows]

IN WITNESS WHEREOF, each of the parties has executed this Agreement, in the case of the Company by their duly authorized officers, as of the day and year first above written.

**JUUL LABS, INC.**

By: _____

Name: Lee Readman

Title: VP, Talent & International HR

**EMPLOYEE**

Sign: _____

Print Name: _____

JUUL Labs, Inc.   560 20th St., San Francisco CA, 94107   juullabs.com

**EXHIBIT A**

**LIST OF PRIOR INVENTIONS
AND ORIGINAL WORKS OF AUTHORSHIP**

| Title | Date | Identifying Number or Brief Description |
|-------|------|----------------------------------------|
| N/A   |      |                                        |

_X_ No inventions or improvements

_____ Additional Sheets Attached

Signature of Employee: _____

Date: _3/22/2018_____

CONFIDENTIAL   This document and any materials attached thereto may contain proprietary and confidential information.
Any dissemination, copying or use of its contents without the express written authorization of juul labs, inc is strictly prohibited.

JUUL Labs, Inc.   560 20th St., San Francisco CA, 94107   juullabs.com

# EXHIBIT B

## CALIFORNIA LABOR CODE SECTION 2870
## INVENTION ON OWN TIME – EXEMPTION FROM AGREEMENT

"(a)      Any provision in an employment agreement which provides that an employee shall assign, or offer to assign, any of employee's rights in an invention to employee's employer shall not apply to an invention that the employee developed entirely on employee's own time without using the employer's equipment, supplies, facilities, or trade secret information except for those inventions that either:

(1)      Relate at the time of conception or reduction to practice of the invention to the employer's business, or actual or demonstrably anticipated research or development of the employer; or

(2)      Result from any work performed by the employee for the employer.

(b)      To the extent a provision in an employment agreement purports to require an employee to assign an invention otherwise excluded from being required to be assigned under subdivision (a), the provision is against the public policy of this state and is unenforceable."

CONFIDENTIAL   This document and any materials attached thereto may contain proprietary and confidential information.
Any dissemination, copying or use of its contents without the express written authorization of juul labs, inc is strictly prohibited.

JUUL Labs, Inc.   560 20th St., San Francisco CA, 94107   juullabs.com

## EXHIBIT C

## TERMINATION CERTIFICATION

This is to certify that I do not have in my possession, nor have I failed to return, any devices, records, data, notes, reports, proposals, lists, correspondence, specifications, drawings, blueprints, sketches, materials, equipment, other documents or property, or reproductions of any aforementioned items belonging to _____, its subsidiaries, affiliates, successors or assigns (together, the "Company"). I have complied with all the terms of the Proprietary Information and Invention Assignment Agreement signed by me, including the reporting of any inventions and original works of authorship (as defined therein), conceived or made by me (solely or jointly with others) covered by that agreement.

In compliance with the Proprietary Information and Invention Assignment Agreement, I will preserve as confidential all trade secrets, confidential knowledge, data or other proprietary information relating to products, processes, know-how, designs, formulas, developmental or experimental work, computer programs, data bases, other original works of authorship, customer lists, business plans, financial information or other subject matter pertaining to any business of the Company or any of its employees, clients, consultants or licensees.

Date: _____

Print Name: _____

CONFIDENTIAL   This document and any materials attached thereto may contain proprietary and confidential information.
Any dissemination, copying or use of its contents without the express written authorization of juul labs, inc is strictly prohibited.

Exhibit B



Chris Baker
1 California Street, Suite 1250
San Francisco, CA 94111
tel. (415) 433-1064
cbaker@bakerlp.com
www.bakerlp.com

June 4, 2020

**<u>Via On-Line Portal</u>**

Labor & Workforce and Development Agency (LWDA)
Attention: PAGA Administrator

**<u>Via Certified Mail</u>**

Jerry Masoudi
Chief Legal Officer
JUUL Labs, Inc.
1000 F Street NW
Washington, D.C., 20004

     RE:    *Request For Relief Under the Private Attorneys General Act*

Dear LWDA and Mr. Masoudi:

     This office represents Marcie Hamilton.  This PAGA follows, and to the extent necessary or appropriate amends, the PAGA notice dated and filed on August 14, 2019.  Attached is a copy of the complaint filed in the United States District Court for the Northern District of California on June 4, 2020.

     To the extent Hamilton has not previously exhausted the PAGA notice requirements with respect to the allegations in this complaint, Hamilton hereby does so through the filing of this present notice and its attachment.  The specific provisions of the Labor Code alleged to have been violated, and the facts and theories to support the alleged violations, are set forth in Hamilton's prior PAGA notice and in the attached complaint.  The specific provisions include Labor Code §§ 96(k), 98.6, 232, 232.5, 432.5, 1102.5, and 1197.5.  Hamilton is aggrieved by one or more of JUUL's violations of these Labor Code provisions.

LWDA & JUUL Labs, Inc.
June 4, 2020
Page 2

For these violations, Hamilton seeks civil penalties on behalf of herself and all other aggrieved employees (including temporary employees), as well as the State of California, in accordance with Labor Code §§ 2699 *et seq.*

Thank you for your attention to this matter.

Very truly yours,

*Chris Baker (e-signature)*

Chris Baker

Exhibit C



**BAKER CURTIS & SCHWARTZ** PC

Chris Baker
1 California Street, Suite 1250
San Francisco, CA 94111
tel. (415) 433-1064
cbaker@bakerlp.com
www.bakerlp.com

August 27, 2020

**Via On-Line Portal**

Labor & Workforce and Development Agency (LWDA)
Attention: PAGA Administrator

**Via Certified Mail**

Jerry Masoudi
Chief Legal Officer
JUUL Labs, Inc.
1000 F Street NW
Washington, D.C., 20004

   *RE:*  *Request For Relief Under the Private Attorneys General Act*

Dear LWDA and Mr. Masoudi:

   This office represents Marcie Hamilton.  This PAGA notice follows, and, to the extent necessary or appropriate, amends the PAGA notices dated and filed on August 14, 2019 and June 4, 2020.  This PAGA notice is intended to "relate back" to these prior PAGA notices, as permitted by the LWDA (which allows for the filing of amended PAGA notices) and California law. *E.g, Brown v. Ralph's Grocery Company*, 28 Cal.App.4th 824, 841-842 (2018).  To the extent it should be determined that this notice does not "relate back," this should be considered a new PAGA notice.

   As explained in the prior PAGA notices, JUUL – through its policies, practices, and agreements – engages in conduct that violates the Labor Code.  To further expound on what has already been stated, and among other things:

   1.  JUUL has and maintains culture, conduct, social media, communications, security and other policies and rules that violate the law (collectively "confidentiality policies").  These policies set forth detailed information about employee working conditions and wages, including, but not limited to, information about paydays, overtime, benefits and other employment matters.

LWDA & JUUL Labs, Inc.
August 27, 2020
Page 2

JUUL prohibits employees from disclosing any of this information, and expressly describes this information as "confidential."  For example, the JUUL handbook states: "You understand that the working conditions, policies, procedures, appeal processes, and benefits described in this handbook are confidential and may not be distributed in any way nor discussed with anyone who is not an employee of JUUL Labs, Inc."

2.     JUUL's policies place limits on the information that employees may convey electronically.  Its conduct and social media policies and rules advise employees that JUUL "should not be held liable for any repercussions that the employee's [social media communications] may generate."  Information about wages, working conditions, and illegal conduct can generate "repercussions" to JUUL and create liability to JUUL.

3.     JUUL's conduct and other confidentiality policies prohibit employees from sharing or discussing business information publicly, regardless of whether or not it is designated as confidential.  JUUL's policies also prohibit employees from sharing or discussing "non-public data belonging to JUUL Labs."  JUUL further instructs employees that if they have to "think about sharing" information, then they should not share the information.

4.     JUUL's conduct and other policies and rules prevent employees from communicating with persons in the investment, regulatory, and trade communities.  Employees are instructed to <u>not</u> respond to inquiries from these communities, including government regulators, but to instead direct or defer these inquiries to a designated JUUL representative.

5.     JUUL's communication and other confidentiality policies and rules are intended to prevent employees from disclosing information in a written or recorded form because such information may be subject to discovery in litigation or may be sought by or reviewed by government regulators.  Employees have been, and on information and belief are still, instructed by senior executives to <u>not</u> relay information in a recorded form, particularly information about potential or actual illegal conduct or the public health dangers of JUUL's products.  Employees were instructed to rewrite or delete written materials to conceal information about potential or actual illegal conduct.  Hamilton experienced this conduct first-hand from senior executives.  As further explained in a recent news report: "Lawyers sent periodic reminders to staff members telling them not to put anything in writing that could be communicated in person."  L. Etter, <u>JUUL Quietly Revamped Its E-Cigarette, Risking the FDA's Rebuke</u> (Bloomberg Businessweek, July 23, 2020) ("Etters Article.")

6.     JUUL's information technology, security, and other policies set forth further violations of the Labor Code.  For example, these policies define "Technology Resources" to include "all means of electronic communication that are owned by JUUL Labs," <u>and</u> all personal devices accessed or used on JUUL's premises <u>and</u> all personal devices that are used in performing JUUL business.  Thus, JUUL's policies place illegal limits on the use of both work and personal communication devices.  JUUL prohibits employees from using these "Technology Resources:" (1) in a manner contrary to JUUL's interests; (2) in any way that discloses JUUL's so-called confidential or proprietary information to third parties, or for personal or pecuniary

LWDA & JUUL Labs, Inc.
August 27, 2020
Page 3

gain; or (3) to transmit, receive, or store information that is adverse to JUUL or any other entity. JUUL also prohibits employees from accessing JUUL's so-called confidential information in the presence of "unauthorized individuals" and it prohibits employees from storing information in a fashion that permits "unauthorized access."

7. Following increased scrutiny of JUUL by the Food and Drug Administration (FDA) in 2018, as well as by other government agencies, JUUL's executive office took steps to further "tighten" its confidentiality policies, practices, NDAs, and other employment and severance agreements in a manner that violates the California Labor Code and other laws. JUUL's purpose was to make it less likely that employees would disclose information about JUUL's working conditions, wages, and illegal conduct. JUUL knew that its confidentiality policies and agreements were illegal, and knew that its revisions "tightening" these policies and agreements were also illegal, but made the revisions anyway to "protect the company."

8. JUUL informs employees that if they fail to comply with JUUL's policies, they may be subject to discipline, up to and including termination. JUUL informs employees that compliance with JUUL's policies is a condition of their employment.

In addition, JUUL, through its confidentiality policies, rules, and practices (including trainings), has also adopted and enforced illegal policies, rules, and other prohibitions on speech, including about wages, working conditions, and internal and external whistleblowing, in violation of the Labor Code. Among other things:

1. JUUL has numerous training courses through which employees are instructed to not engage in whistleblowing or other protected speech. These instructions violate the Labor Code.

2. JUUL actively prepared for unannounced government inspections of its offices by running "drills" in which employees were instructed to quickly conceal incriminating evidence and information upon receiving notice that a regulator or government agency was on-site.

3. JUUL's executives and officers instructed employees to not speak to government regulators unless they had no choice. These instructions were given during, among other things, all-hands meetings. Employees were also instructed, if they were approached by a government regulator, to direct the government regulators to specifically-identified individuals. These individuals were, in turn, trained to conceal information from government regulators while being "technically" truthful. Hamilton has first-hand knowledge of this conduct. In addition, as explained in the Etters Article:

> More than a dozen JUUL employees were schooled using a technique called "hats on-hats off." . . . During hats on, a designated person would play the role of an FDA inspector, asking probing questions. That was followed by hats off, in which the person evaluated the performance of the employee and offered tips

LWDA & JUUL Labs, Inc.
August 27, 2020
Page 4

to doing better.  Employees were coached on specific FDA
techniques they were told might be used to try to get them to talk
more than they should.  In at least one coaching session that
included JUUL's chief quality officer, Joanna Engelke, employees
were instructed on how to respond to questions about device
modifications.  If asked, acknowledge the changes, they were told.
But don't volunteer any information.

4.      JUUL policies and practices included instructing JUUL's employees to inform
government regulators, other employees, and others that JUUL did not target its products to
minors, and to thus conceal and not disclose information that JUUL did, in fact, target its
products to minors in violation of the law.

5.      Following the FDA raid on JUUL's headquarters, employees were instructed via
email, through all-hands meetings, and otherwise to not speak to the press or others about JUUL.
These admonitions were repeated following Altria's investment in JUUL.

6.      JUUL further enforced its policies and rules against internal and external
whistleblowing by taking adverse action against employees who engaged in conduct protected by
Labor Code § 1102.5.  For example, Hamilton disclosed information internally about violations
of, and non-compliance with, the law with respect to JUUL's products, testing on employees,
safety and clinical practices, and the shipping of products.  She disclosed this information
internally to her superiors, as well as to persons at JUUL in a position to investigate and/or
correct the problem.  She sometimes communicated this information in writing, in violation of
JUUL's policies.  In response, JUUL retaliated against her as part of its enforcement efforts with
respect to its illegal policies against whistleblowing. On information and belief, JUUL has
retaliated against other employees as part of its enforcement of its illegal policies.  These other
employees include, but are not limited to, Siddharth Breja.

The above policies and practices provide further evidence that JUUL's NDAs and other
agreements are intended to, and should be construed to, violate the Labor Code.

The specific provisions of the Labor Code alleged to have been violated by the above
conduct (as well as the conduct set forth in the prior PAGA notices) include Labor Code §§
96(k), 98.6, 232, 232.5, 432.5, 1102.5, and 1197.5.  Hamilton is aggrieved by one or more of
JUUL's violations of these Labor Code provisions.

LWDA & JUUL Labs, Inc.
August 27, 2020
Page 5


        For these violations, Hamilton seeks civil penalties on behalf of herself and all other aggrieved employees (including temporary employees), as well as the State of California, in accordance with Labor Code §§ 2699 *et seq.*

        Thank you for your attention to this matter.

                                        Very truly yours,

                                        Chris Baker

cc:      Brian Johnsrud; Jennifer Lotz

Exhibit D



**BAKER CURTIS & SCHWARTZ** PC

Chris Baker
1 California Street, Suite 1250
San Francisco, CA 94111
tel. (415) 433-1064
cbaker@bakerlp.com
www.bakerlp.com

September 29, 2020

**Via On-Line Portal**

Labor & Workforce and Development Agency (LWDA)
Attention: PAGA Administrator

**Via Certified Mail**

Jerry Masoudi
Chief Legal Officer
JUUL Labs, Inc.
1000 F Street NW
Washington, D.C., 20004

      RE:    *Request For Relief Under the Private Attorneys General Act*
              *On Behalf of Marcie Hamilton and James Isaacson*

Dear LWDA and Mr. Masoudi:

      This office represents Jim Isaacson in addition Marcie Hamilton with respect to the PAGA claims against JUUL Labs, Inc.  Mr. Isaacson – while a resident of Utah -- was based out of JUUL's San Francisco office, had a desk in California, and regularly traveled and worked in the geographic boundaries of California.  At the time of his employment, JUUL was based in California and  JUUL's illegal conduct originated in and emanated from California.  Mr. Isaacson is entitled to the protection and benefits of California law. He worked for JUUL from May 2018 to November 1, 2019.

      Mr. Isaacson seeks to join Ms. Hamilton as a PAGA representative with respect to her and the State's claims against JUUL Labs, Inc.  Through this PAGA notice, Mr. Isaacson hereby incorporates by reference Ms. Hamilton's prior PAGA notices (with attachments) as to JUUL, including those dated August 15, 2019, June 4, 2020, and August 27, 2020.  Isaacson hereby incorporates by reference the facts, theories, and Labor Code sections set forth in those notices, which are already in the possession of the State and JUUL.

LWDA & JUUL Labs, Inc.
September 29, 2020
Page 2

This PAGA notice – provided on behalf of both Isaacson and Hamilton – follows, supplements, and, to the extent necessary or appropriate, amends Ms. Hamilton's prior PAGA notices.  This PAGA notice is intended to "relate back" to those prior PAGA notices, as permitted by the LWDA (which allows for the filing of amended PAGA notices) and California law. *E.g, Brown v. Ralph's Grocery Company*, 28 Cal.App.4th 824, 841-842 (2018).  To the extent it should be determined that this notice does not "relate back," this should be considered a new and additional PAGA notice.

As explained in the prior PAGA notices, JUUL – through its policies, practices, and agreements – engages in conduct that violates the Labor Code.  To further expound on what has already been stated, and among other things:

1.      JUUL trained employees on how to avoid the disclosure of factual information to government agencies, including, but not limited to, the FDA.  The training involved, for example, the manner in which employees should avoid disclosing information about design changes to its products, including its gasket and pressure sensors,

2.      JUUL's official policy was to permit employees to vape in the workplace.  JUUL then stated this was no longer its policy, but at the same time encouraged employees to continue vaping in the workplace.  For example, at an all-hands meeting after the announcement of the vaping "ban," JUUL's head of Human Resources conspicuously vaped while conducting a presentation to JUUL's workforce.

3.      JUUL engaged in other reasonably-suspected illegal conduct.  This included, but was not limited to: (a) making changes to its products in violation of the FDA's deeming rule; (b) concealing these changes; (c) refusing to document its compliance with applicable policies and regulations (and/or failing to comply at all); (d) rushing potentially unsafe products to market; (e) testing its products on human subjects, (f) continuing to permit vaping in the workplace; and (g) engaging in other gross violations of workplace safety rules, including storing jugs of cancer-causing chemicals in unsecure areas.  Isaacson disclosed information about this illegal conduct.  Consistent with the adoption and enforcement of its policy against whistleblowing, JUUL took adverse action against Isaacson.

4.      JUUL prohibited employees from disclosing JUUL's illegal marketing of its products to young people.  Instead, JUUL actively instructed employees to falsely claim that JUUL did not target its products to young people.  Many employees believed JUUL's lies.  For example, in the fall of  2018, Isaacson, believing he was employed by a company focused exclusively on harm reduction, wore a JUUL-branded sweatshirt[1] to his daughter's college campus during a parents weekend.  Isaacson found it noteworthy that the sweatshirt was immensely popular amongst college students, and not so popular with his fellow parents.  He reported this problem – and the problem of JUUL's marketing practices – to his superiors at JUUL.  He was subsequently given a poor performance review.

_____

[1] JUUL provides its employees with many types of JUUL-branded employee "swag."

LWDA & JUUL Labs, Inc.
September 29, 2020
Page 3

     5.     JUUL has made, adopted and enforces illegal rules, regulations, policies and practices. These illegal requirements inform the understanding and meaning of JUUL's illegal non-disclosure agreements. These illegal requirements are sometimes described as policies ("POL"), standard operating procedures ("SOP") and work instructions ("WI"). As previously noted, JUUL "tightened" its illegal prohibitions on competition, whistleblowing, and freedom of speech – with full knowledge that doing so was illegal. JUUL tracks its employees with respect to their review and acknowledgement of certain of its illegal requirements. The requirements at issue include (but are not limited to) those set forth in Exhibit A. For example, on information and belief, the illegal requirements include:

a) JUUL Quality Policy
b) Regulatory Agency Inspections Procedure
c) Managing Requests for Regulatory Agency Inspections Work Instruction
d) JUUL Information Security Policy Framework
e) Promotional and Informational Review Committee (PIRC) Policy
f) Complaint Handling Procedure
g) Youth Prevention Training Certification
h) External Communication Policy
i) Social Media Policy
j) Privacy and Data Handling Policy
k) JUUL Labs Code of Conduct
l) Record Retention Procedure
m) Compliance Reporting and Investigation Policy
n) Good Documentation and Communication Practices
o) Security Awareness Training
p) Record Retention Procedure
q) Dimensions of Data Privacy
r) Quality Manual
s) Document Control Procedure
t) Use of Electronic Data Systems
u) Regulatory Reporting Requirements
v) Documentation and Records Retention
w) JUUL Team Training

     6.     JUUL also has made, adopted and/or enforces rules, regulations, and policies that control or direct (or tend to control or direct) the political activities or political action of their employees. JUUL also seeks to unlawfully coerce and/or influence its employees with respect to their political action and/or political activity. This is a violation of Labor Code § 1101 and 1102. Among other things, JUUL's practices and business, the value and/or detriments of vaping, and the necessity or appropriateness vaping-related regulations, are all high profile political issues. Nonetheless, JUUL instructs employees they cannot – among other things – correct political candidates spreading alleged "misinformation" about JUUL, "engage with youth on the topics of tobacco and nicotine," "engage in social media," discuss vaping, cigarettes, drinking, or any age-

LWDA & JUUL Labs, Inc.
September 29, 2020
Page 4

restricted products in the "earshot of youth," share or laugh at JUUL Labs-related memes, or help a young family member quit smoking.

7.      On or around October 15, 2019, JUUL required Isaacson to sign a "Separation Agreement and Release" in exchange for continued employment through November 1, 2019 and other consideration.  This agreement was in material respects the same as the one offered to Hamilton.  The separation agreement contained numerous provisions illegal under California law, including under Government Code § 12964.5.  The illegal provisions included a non-disparagement provision and a release of claims under the Fair Employment and Housing Act.  This agreement was illegal, and JUUL knew it to be so.

In light of the above-referenced facts and theories (as well as those set forth in the prior PAGA notices), JUUL has violated Labor Code §§ 96(k), 98.6, 232, 232.5, 432.5, 1101, 1102, 1102.5, and 1197.5.  For these violations, as well as those set forth in Hamilton's prior PAGA notices, Hamilton and Isaacson seek civil penalties on behalf of themselves and all other aggrieved employees (including temporary employees), as well as the State of California, in accordance with Labor Code §§ 2699 *et seq.*

Thank you for your attention to this matter.

Very truly yours,

Chris Baker

cc:     Brian Johnsrud; Jennifer Lotz

Exhibit A

| Username | First Name | Last Name | Course Title | Course Percentage | Course Complete? | Date Course Completed | Course Overdue? |
|---|---|---|---|---|---|---|---|
| marcie@juul.com | Marcie | Hamilton | JUUL Quality Policy | 100 | YES | 6/3/18 | No |
| marcie@juul.com | Marcie | Hamilton | SOP-00027 Rev A: Training Procedure | 100 | YES | 7/15/18 | No |
| marcie@juul.com | Marcie | Hamilton | JUUL Quality System Overview | 100 | YES | 7/15/18 | No |
| marcie@juul.com | Marcie | Hamilton | POL-00002 Rev A: Purchasing Policy | 100 | YES | 7/15/18 | No |
| marcie@juul.com | Marcie | Hamilton | SOP-00042 Rev A: Contract Management Procedure | 100 | YES | 8/22/18 | No |
| marcie@juul.com | Marcie | Hamilton | SOP-00037 Rev A: Record Retention Procedure | 100 | YES | 9/25/18 | No |
| marcie@juul.com | Marcie | Hamilton | POL-00002 Rev B: Purchasing Policy | 100 | YES | 10/24/18 | No |
| marcie@juul.com | Marcie | Hamilton | POL-00009 Rev A: Travel and Expense (T&E) Policy | 100 | YES | 10/24/18 | No |
| marcie@juul.com | Marcie | Hamilton | POL-00007 Rev A: Compliance Reporting and Investigation Policy | 100 | YES | 11/13/18 | No |
| marcie@juul.com | Marcie | Hamilton | POL-00010 Rev A: Global Anti-Bribery Anti-Corruption Policy | 100 | YES | 12/3/18 | No |
| marcie@juul.com | Marcie | Hamilton | WI-00029 Rev A: SKU Request Work Instruction | 100 | YES | 12/3/18 | No |
| marcie@juul.com | Marcie | Hamilton | SOP-00032: SS 401 - Investigator Selection and Qualification | 100 | YES | 1/31/19 | No |
| marcie@juul.com | Marcie | Hamilton | SOP-00031: SS 402 - Site Enrollment and Initiation | 100 | YES | 1/31/19 | No |
| marcie@juul.com | Marcie | Hamilton | SOP-00030: DM 701   Clinical Data Management | 100 | YES | 1/31/19 | No |
| marcie@juul.com | Marcie | Hamilton | SOP-00029: DM 702   Use of Electronic Data Systems | 100 | YES | 1/31/19 | No |
| marcie@juul.com | Marcie | Hamilton | SOP-00028: RA 202    Regulatory Submissions | 100 | YES | 1/31/19 | No |
| marcie@juul.com | Marcie | Hamilton | SOP-00020: RA 203    Regulatory Reporting Requirements | 100 | YES | 1/31/19 | No |
| marcie@juul.com | Marcie | Hamilton | SOP-00019: QA 801    Quality Assurance Audits | 100 | YES | 1/31/19 | No |
| marcie@juul.com | Marcie | Hamilton | SOP-00018: QA 802 - Regulatory Inspections | 100 | YES | 1/31/19 | No |
| marcie@juul.com | Marcie | Hamilton | SOP-00017: CP 301 - Clinical Protocol Development | 100 | YES | 1/31/19 | No |
| marcie@juul.com | Marcie | Hamilton | SOP-00016: CP 302 - Investigational Plan and Report of Prior Investigations | 100 | YES | 1/31/19 | No |
| marcie@juul.com | Marcie | Hamilton | SOP-00015: PM 504 - Study Closeout Visit | 100 | YES | 1/31/19 | No |
| marcie@juul.com | Marcie | Hamilton | SOP-00014: PM 505 - Ensuring Investigator Compliance | 100 | YES | 1/31/19 | No |
| marcie@juul.com | Marcie | Hamilton | SOP-00004: PM 501 - Investigational Product Management | 100 | YES | 1/31/19 | No |
| marcie@juul.com | Marcie | Hamilton | SOP-00003: GA 105 - Outsourcing | 100 | YES | 1/31/19 | No |
| marcie@juul.com | Marcie | Hamilton | SOP-00002: GA 101 - Overview of JUUL Responsibilities and Delegation | 100 | YES | 1/31/19 | No |
| marcie@juul.com | Marcie | Hamilton | SOP-00008: †Documentation and Records Retention - Regulatory | 100 | YES | 1/31/19 | No |
| marcie@juul.com | Marcie | Hamilton | SOP-00009: †Regulatory Authority Contacts and Meetings | 100 | YES | 1/31/19 | No |
| marcie@juul.com | Marcie | Hamilton | SOP-00010: †PM 503   Monitoring Clinical Investigations | 100 | YES | 1/31/19 | No |
| marcie@juul.com | Marcie | Hamilton | SOP-00011: †GA 104 - Conflict of Interest Disclosure Requirements | 100 | YES | 1/31/19 | No |
| marcie@juul.com | Marcie | Hamilton | SOP-00012: †GA 103 - JUUL Team Training | 100 | YES | 1/31/19 | No |
| marcie@juul.com | Marcie | Hamilton | SOP-00013: †GA 102 - Document Development and Change Control | 100 | YES | 1/31/19 | No |
| marcie@juul.com | Marcie | Hamilton | SOP-00021: †SM 603    Subject Eligibility and Enrollment | 100 | YES | 1/31/19 | No |
| marcie@juul.com | Marcie | Hamilton | SOP-00022: †SM 602    Subject Recruitment Practices | 100 | YES | 1/31/19 | No |
| marcie@juul.com | Marcie | Hamilton | SOP-00023: †SM 606    Protected Health Information | 100 | YES | 1/31/19 | No |
| marcie@juul.com | Marcie | Hamilton | SOP-00024: †SM 601    Human Subject Protection | 100 | YES | 1/31/19 | No |
| marcie@juul.com | Marcie | Hamilton | SOP-00025: †SM 605    Adverse Device Effects Recognition and Reporting | 100 | YES | 1/31/19 | No |
| marcie@juul.com | Marcie | Hamilton | SOP-00026: †SM 604    Specimen Management | 100 | YES | 1/31/19 | No |
| marcie@juul.com | Marcie | Hamilton | SOP-00037 Rev B: Record Retention Procedure | 100 | YES | 12/4/18 | No |
| marcie@juul.com | Marcie | Hamilton | Dimensions of Data Privacy | 100 | YES | 1/7/19 | No |
| marcie@juul.com | Marcie | Hamilton | Good Documentation and Communication Practices | 100 | YES | 1/7/19 | No |
| marcie@juul.com | Marcie | Hamilton | SOP-00047 Rev C: Complaint Handling Procedure | 100 | YES | 1/29/19 | No |
| marcie@juul.com | Marcie | Hamilton | WI-00031 Rev A: Change Request Work Instructions - Item, BOM, Sourcing | 100 | YES | 1/30/19 | No |
| marcie@juul.com | Marcie | Hamilton | SOP-00015 Rev A: Packaging Engineering Development Procedure | 100 | YES | 2/10/19 | No |
| marcie@juul.com | Marcie | Hamilton | POL-00013 Rev A: Anti-Money Laundering Policy | 100 | YES | 2/26/19 | No |
| marcie@juul.com | Marcie | Hamilton | Know84: Security Awareness Training | 100 | YES | 2/25/19 | No |
| marcie@juul.com | Marcie | Hamilton | WI-00033 Rev A: Non-Copy Packaging Qualification Request Work Instruction | 100 | YES | 3/15/19 | No |
| marcie@juul.com | Marcie | Hamilton | WI-00034 Rev A: Alternate Supplier Sourcing: Packaging Qualification Request Work Instruction | 100 | YES | 3/15/19 | No |
| marcie@juul.com | Marcie | Hamilton | WI-00035 Rev A: Copy Packaging Qualification Request Work Instruction | 100 | YES | 3/15/19 | No |
| marcie@juul.com | Marcie | Hamilton | WI-00036 Rev A: Structural - Paper: Packaging Qualification Request Work Instruction | 100 | YES | 3/15/19 | No |
| marcie@juul.com | Marcie | Hamilton | WI-00037 Rev A: Structural - Blister: Packaging Qualification Request Work Instruction | 100 | YES | 3/15/19 | No |
| marcie@juul.com | Marcie | Hamilton | WI-00038 Rev A: Non-Mechanical Document Change: Packaging Qualification Request Work Instruction | 100 | YES | 3/15/19 | No |
| marcie@juul.com | Marcie | Hamilton | POL-00013 Rev A: Conflicts of Interest Policy | 0 | NO | | No |
| marcie@juul.com | Marcie | Hamilton | POL-00010 Rev B: Global Anti-Bribery Anti-Corruption Policy | 100 | YES | | No |
| marcie@juul.com | Marcie | Hamilton | POL-00015 Rev A: Global Anti-Harassment Policy | 100 | YES | 3/15/19 | No |

| Username | First Name | Last Name | Course Active? | Course Title | Course Assigned Date | Course Percentage | Course Complete? | Date Course Completed | Course Overdue? | Course Due Date | People Manager |
|---|---|---|---|---|---|---|---|---|---|---|---|
| jisaacson@juul.com | Jim | Isaacson | YES | JUUL Quality Policy | 5/24/2018 | 100 | YES | 6/1/2018 17:24 | NO | 6/7/2018 | John Daley |
| jisaacson@juul.com | Jim | Isaacson | YES | SOP-00035 v2.0: Regulatory Agency Inspections Procedure | 7/13/2020 | 0 | NO | | YES | 7/27/2020 | John Daley |
| jisaacson@juul.com | Jim | Isaacson | YES | WI-00160 v1.0: Managing Requests for Regulatory Agency Inspections Work Instruction | 7/13/2020 | 0 | NO | | YES | 7/27/2020 | John Daley |
| jisaacson@juul.com | Jim | Isaacson | YES | Checklist For Invoice Approvals | 7/22/2020 | | | | YES | | John Daley |
| jisaacson@juul.com | Jim | Isaacson | YES | SOP-00040 v2.0 Global Contract Management Procedure | 6/2/2020 | 0 | NO | | YES | 6/16/2020 | John Daley |
| jisaacson@juul.com | Jim | Isaacson | YES | WI-00148 v1.0 Corrective and Preventive Action (CAPA) Review Board Work Instruction | 8/6/2020 | 0 | NO | | YES | 8/20/2020 | John Daley |
| jisaacson@juul.com | Jim | Isaacson | YES | SOP-00035 v3.0 Global Travel and Expense (T&E) Policy | 6/9/2020 | 0 | NO | | YES | 6/23/2020 | John Daley |
| jisaacson@juul.com | Jim | Isaacson | YES | WI-00106 v2.0; Change Control - Change Assessment Form (CAF) Work Instructions | 6/26/2020 | 0 | NO | | YES | 7/10/2020 | John Daley |
| jisaacson@juul.com | Jim | Isaacson | YES | SOP-00216 v3.0; Change Control - Change Control Board (CCB) Review Procedure | 6/26/2020 | 0 | NO | | YES | 7/10/2020 | John Daley |
| jisaacson@juul.com | Jim | Isaacson | YES | JUUL Information Security Policy Framework | 7/13/2020 | 0 | NO | | NO | 8/12/2020 | John Daley |
| jisaacson@juul.com | Jim | Isaacson | YES | POL-00006 Rev B: Grants Policy | 4/16/2020 | 0 | NO | | YES | 4/30/2020 | John Daley |
| jisaacson@juul.com | Jim | Isaacson | YES | POL-00038 v1.0: Health and Safety Policy | 5/7/2020 | 0 | NO | | NO | | John Daley |
| jisaacson@juul.com | Jim | Isaacson | YES | POL-00002 v3.0 Global Purchasing Policy | 6/2/2020 | 0 | NO | | NO | 6/16/2020 | John Daley |
| jisaacson@juul.com | Jim | Isaacson | YES | POL-00041 Rev A: Promotional and Informational Review Committee (PIRC) Policy | 2/10/2020 | 0 | NO | | YES | 2/24/2020 | John Daley |
| jisaacson@juul.com | Jim | Isaacson | YES | SOP-00047 Rev E Complaint Handling Procedure | 2/14/2020 | 0 | NO | | YES | 2/28/2020 | John Daley |
| jisaacson@juul.com | Jim | Isaacson | YES | SOP-00063 Rev A: Health Hazard Evaluation Procedure | 2/14/2020 | 0 | NO | | YES | 2/28/2020 | John Daley |
| jisaacson@juul.com | Jim | Isaacson | YES | WI-00113 Rev A: Health Hazard Evaluation Work Instructions | 3/2/2020 | 0 | NO | | NO | | John Daley |
| jisaacson@juul.com | Jim | Isaacson | YES | SOP-00038 Rev B: Management Review Procedure | 3/12/2020 | 0 | NO | | YES | 3/26/2020 | John Daley |
| jisaacson@juul.com | Jim | Isaacson | YES | SOP-00122 Rev A: Test Method Validation Procedure | 10/16/2019 | 0 | NO | | YES | 10/30/2019 | John Daley |
| jisaacson@juul.com | Jim | Isaacson | YES | SOP-00172 Rev A: Quality Management System Data Analysis Procedure | 10/30/2019 | 0 | NO | | YES | 11/13/2019 | John Daley |
| jisaacson@juul.com | Jim | Isaacson | YES | WI-00092 Rev A: Complaint Review Board Work Instructions | 1/23/2020 | 0 | NO | | NO | 2/6/2020 | John Daley |
| jisaacson@juul.com | Jim | Isaacson | YES | SOP-00215 Rev A: Production and Process Controls Procedure | 1/28/2020 | 0 | NO | | YES | 2/11/2020 | John Daley |
| jisaacson@juul.com | Jim | Isaacson | YES | Youth Prevention Training Certification | 9/20/2019 | 100 | YES | 9/23/2019 15:31 | NO | | John Daley |
| jisaacson@juul.com | Jim | Isaacson | YES | SOP-00128 Rev A: Document Management Procedure | 9/12/2019 | 100 | YES | 9/19/2019 13:25 | NO | | John Daley |
| jisaacson@juul.com | Jim | Isaacson | YES | Smoke/Vapor-Free Workplace Policy | 9/28/2019 | 100 | YES | 10/7/2019 15:28 | NO | | John Daley |
| jisaacson@juul.com | Jim | Isaacson | YES | WI-00093 Rev B: Design Reviews Work Instructions | 9/26/2019 | 100 | YES | 9/26/2019 23:48 | NO | | John Daley |
| jisaacson@juul.com | Jim | Isaacson | YES | WI-00012 Rev B: Design Verification and Validation Work Instructions | 9/26/2019 | 100 | YES | 9/26/2019 23:49 | NO | | John Daley |
| jisaacson@juul.com | Jim | Isaacson | YES | WI-00041 Rev A: Risk Management Workbook Work Instruction | 7/24/2019 | 100 | YES | 7/29/2019 19:42 | NO | | John Daley |
| jisaacson@juul.com | Jim | Isaacson | YES | SOP-00163 Rev A: Statistical Methods for Product Development Procedure | 7/29/2019 | 100 | YES | 7/29/2019 19:40 | NO | | John Daley |
| jisaacson@juul.com | Jim | Isaacson | YES | SOP-00006 Rev B: Risk Management Procedure | 9/11/2019 | 100 | YES | 9/19/2019 3:22 | NO | | John Daley |
| jisaacson@juul.com | Jim | Isaacson | YES | SOP-00001 Rev B: Design Control Procedure | 9/11/2019 | 100 | YES | 9/19/2019 3:21 | NO | | John Daley |
| jisaacson@juul.com | Jim | Isaacson | YES | WI-00005 Rev B: Design History File Work Instructions | 9/25/2019 | 100 | YES | 9/25/2019 17:13 | NO | | John Daley |
| jisaacson@juul.com | Jim | Isaacson | YES | WI-00133 Rev A: Equipment Out of Tolerance Look Back Procedure | 7/18/2019 | 100 | YES | 7/18/2019 14:38 | NO | | John Daley |
| jisaacson@juul.com | Jim | Isaacson | YES | POL-00019 Rev A: External Communications Policy | 7/12/2019 | 100 | YES | 7/22/2019 20:43 | NO | | John Daley |
| jisaacson@juul.com | Jim | Isaacson | YES | POL-00001 Rev A: Social Media Policy | 7/12/2019 | 100 | YES | 7/22/2019 20:38 | NO | | John Daley |
| jisaacson@juul.com | Jim | Isaacson | YES | REF-00018 Rev A: Data Protection Impact Assessment (DPIA) Guidelines | 6/24/2019 | 100 | YES | 7/1/2019 23:29 | NO | | John Daley |
| jisaacson@juul.com | Jim | Isaacson | YES | REF-00019 Rev A: Privacy by Design and Default Guidelines | 6/24/2019 | 100 | YES | 7/2/2019 23:36 | NO | | John Daley |
| jisaacson@juul.com | Jim | Isaacson | YES | REF-00022 Rev A: Data Subject Rights Guidelines | 6/24/2019 | 100 | YES | 7/2/2019 23:47 | NO | | John Daley |
| jisaacson@juul.com | Jim | Isaacson | YES | SOP-00130 Rev A: Personal Data Breach Procedure | 6/24/2019 | 100 | YES | 7/1/2019 23:49 | NO | | John Daley |
| jisaacson@juul.com | Jim | Isaacson | YES | SOP-00055 Rev B: Supplier Corrective Action (SCAR) Procedure | 7/12/2019 | 100 | YES | 7/22/2019 20:48 | NO | | John Daley |
| jisaacson@juul.com | Jim | Isaacson | YES | Privacy and Data Protection | 12/16/2019 | 100 | YES | | NO | 1/20/2020 | John Daley |
| jisaacson@juul.com | Jim | Isaacson | YES | REF-00020 Rev A: Entertainment Guidelines - Americas | 6/12/2019 | 100 | YES | 6/20/2019 22:49 | NO | | John Daley |
| jisaacson@juul.com | Jim | Isaacson | YES | POL-00017 Rev A: Corporate Sponsorships Policy | 6/18/2019 | 100 | YES | 6/20/2019 22:50 | NO | | John Daley |
| jisaacson@juul.com | Jim | Isaacson | YES | POL-00018 Rev A: Privacy and Data Handling Policy | 6/24/2019 | 100 | YES | 7/2/2019 23:21 | NO | | John Daley |
| jisaacson@juul.com | Jim | Isaacson | YES | POL-00016 Rev A: U.S. Anti-Trust Compliance Policy and Guidelines | 5/15/2019 | 100 | YES | 5/28/2019 15:39 | NO | | John Daley |
| jisaacson@juul.com | Jim | Isaacson | YES | POL-00008 Rev A: Global Trade Compliance Policy | 5/15/2019 | 100 | YES | 5/28/2019 15:37 | NO | | John Daley |
| jisaacson@juul.com | Jim | Isaacson | YES | SOP-00035 Rev B: Statistical Techniques Procedure | 5/22/2019 | 100 | YES | 5/28/2019 16:22 | NO | | John Daley |
| jisaacson@juul.com | Jim | Isaacson | YES | JUUL Labs Code of Conduct | 5/22/2019 | 100 | YES | 5/28/2019 15:49 | NO | | John Daley |
| jisaacson@juul.com | Jim | Isaacson | YES | SOP-00037 Rev A: Retention Procedure | 4/26/2019 | 100 | YES | 4/26/2019 17:09 | NO | 5/10/2019 | John Daley |
| jisaacson@juul.com | Jim | Isaacson | YES | POL-00010 Rev B: Global Anti-Bribery Anti-Corruption Policy | 3/13/2019 | 100 | YES | 3/13/2019 22:44 | NO | | John Daley |
| jisaacson@juul.com | Jim | Isaacson | YES | POL-00015 Rev A: Global Anti-Harassment Policy | 3/15/2019 | 100 | YES | 3/26/2019 22:50 | NO | | John Daley |
| jisaacson@juul.com | Jim | Isaacson | YES | SOP-00057 Rev E: Good Documentation Practices Procedure | 3/22/2019 | 100 | YES | 4/2/2019 21:10 | NO | | John Daley |
| jisaacson@juul.com | Jim | Isaacson | YES | SOP-00073 Rev A: Receiving Control Procedure | 4/3/2019 | 100 | YES | 4/15/2019 17:21 | NO | | John Daley |
| jisaacson@juul.com | Jim | Isaacson | YES | SOP-00048 Rev B: Internal Audit Procedure | 4/11/2019 | 100 | YES | 4/22/2019 17:33 | NO | | John Daley |
| jisaacson@juul.com | Jim | Isaacson | YES | WI-00034 Rev A: Alternate Supplier Sourcing; Packaging Qualification Request Work Instruction | 3/6/2019 | 100 | YES | 3/13/2019 22:34 | NO | | John Daley |

JLI0000089

JLI0000090

| Email | First | | Last | Document | Date | Pct | Y/N | Completed | N | Date | Reviewer |
|---|---|---|---|---|---|---|---|---|---|---|---|
| jisakcson@juul.com | Jim | YES | Isakcson | WI-00035 Rev A: Copy: Packaging Qualification Request Work Instruction | 3/6/2019 | 100 | YES | 3/13/2019 22:35 | NO | | John Daley |
| jisakcson@juul.com | Jim | YES | Isakcson | WI-00036 Rev A: Structural - Paper: Packaging Qualification Request Work Instruction | 3/6/2019 | 100 | YES | 3/13/2019 22:36 | NO | | John Daley |
| jisakcson@juul.com | Jim | YES | Isakcson | WI-00037 Rev A: Structural - Blister: Packaging Qualification Request Work Instruction | 3/6/2019 | 100 | YES | 3/13/2019 22:36 | NO | | John Daley |
| jisakcson@juul.com | Jim | YES | Isakcson | WI-00038 Rev A: Non-Mechanical Document Change: Packaging Qualification Request Work Instruction | 3/6/2019 | 100 | YES | 3/13/2019 22:37 | NO | | John Daley |
| jisakcson@juul.com | Jim | YES | Isakcson | POL-00013 Rev A: Conflicts of Interest Policy | 3/7/2019 | 100 | YES | 3/13/2019 22:41 | NO | | John Daley |
| jisakcson@juul.com | Jim | YES | Isakcson | KnowBe4: Security Awareness Training | 2/19/2019 | 100 | YES | 3/11/2019 22:07 | NO | | John Daley |
| jisakcson@juul.com | Jim | YES | Isakcson | WI-00031 Rev A: Change Request Work Instructions - Item, BOM, Sourcing | 1/29/2019 | 100 | YES | 2/4/2019 16:16 | NO | | John Daley |
| jisakcson@juul.com | Jim | YES | Isakcson | POL-00032 Rev A: Anti-Money Laundering Policy | 2/14/2019 | 100 | YES | 2/25/2019 22:27 | NO | | John Daley |
| jisakcson@juul.com | Jim | YES | Isakcson | SOP-00007 Rev A: Process Validation Procedure | 2/19/2019 | 100 | YES | 3/4/2019 20:12 | NO | 3/7/2019 | John Daley |
| jisakcson@juul.com | Jim | YES | Isakcson | WI-00033 Rev A: Non-Copy: Packaging Qualification Request Work Instruction | 3/6/2019 | 100 | YES | 3/13/2019 22:33 | NO | | John Daley |
| jisakcson@juul.com | Jim | YES | Isakcson | POL-00007 Rev A: Compliance Reporting and Investigation Policy | 11/12/2018 | 100 | YES | 11/19/2018 22:34 | NO | | John Daley |
| jisakcson@juul.com | Jim | YES | Isakcson | Good Documentation and Communication Practices | 12/18/2018 | 100 | YES | 1/9/2019 17:13 | NO | | John Daley |
| jisakcson@juul.com | Jim | YES | Isakcson | SOP-00062 Rev C: Field Action Procedure | 10/11/2018 | 100 | YES | 10/11/2018 23:33 | NO | | John Daley |
| jisakcson@juul.com | Jim | YES | Isakcson | POL-00003 Rev A: Supplier Management Policy | 7/16/2018 | 100 | YES | 7/18/2018 16:36 | NO | 7/30/2018 | John Daley |
| jisakcson@juul.com | Jim | YES | Isakcson | JUUL Quality System Overview | 6/13/2018 | 100 | YES | 6/18/2018 22:47 | NO | 6/27/2018 | John Daley |
| jisakcson@juul.com | Jim | NO | Isakcson | SOP-00005 Rev A: Quality Planning | 6/21/2018 | 100 | YES | 6/25/2018 14:14 | NO | | John Daley |
| jisakcson@juul.com | Jim | NO | Isakcson | SOP-00005 Rev A: Document Control Procedure | 5/21/2018 | 0 | NO | 6/1/2018 15:03 | NO | | John Daley |
| jisakcson@juul.com | Jim | NO | Isakcson | SOP-00038 Rev A: Management Review Procedure | 7/5/2018 | 100 | YES | 7/6/2018 19:48 | NO | 7/19/2018 | John Daley |
| jisakcson@juul.com | Jim | NO | Isakcson | SOP-00034 Rev A: Regulatory Agency Inspections Procedure | 6/13/2018 | 100 | YES | 6/25/2018 14:07 | NO | 6/27/2018 | John Daley |
| jisakcson@juul.com | Jim | NO | Isakcson | MAN-00001 Rev A: Quality Manual | 6/13/2018 | 100 | YES | 6/21/2018 21:24 | NO | 6/27/2018 | John Daley |
| jisakcson@juul.com | Jim | NO | Isakcson | SOP-00027 Rev A: Training Procedure | 6/13/2018 | 100 | YES | 6/21/2018 23:10 | NO | 6/15/2020 | John Daley |
| jisakcson@juul.com | Jim | NO | Isakcson | SOP-0216i v 2.0: Change Control Board (CCB) Review Procedure | 6/1/2020 | 0 | NO | | YES | 5/19/2020 | John Daley |
| jisakcson@juul.com | Jim | NO | Isakcson | SOP-0216i v 1.0: Change Control Board (CCB) Review Procedure | 5/5/2020 | 0 | NO | | YES | 6/15/2020 | John Daley |
| jisakcson@juul.com | Jim | NO | Isakcson | WI-00106 v 1.0: Change Assessment Form (CAF) Work Instructions | 6/1/2020 | 0 | NO | | YES | 2/25/2020 | John Daley |
| jisakcson@juul.com | Jim | NO | Isakcson | POL-00009 Rev A/B: Global Travel and Expense (T&E) Policy | 2/11/2020 | 0 | NO | | YES | 11/5/2019 | John Daley |
| jisakcson@juul.com | Jim | NO | Isakcson | SOP-00044 Rev E: Supplier Evaluation, Qualification, and Monitoring Procedure | 10/22/2019 | 0 | NO | | YES | 1/21/2020 | John Daley |
| jisakcson@juul.com | Jim | NO | Isakcson | WI-00032 Rev B: Change Assessment Form (CAF) Work Instructions | 1/7/2020 | 0 | NO | | YES | | John Daley |
| jisakcson@juul.com | Jim | NO | Isakcson | SOP-00053 Rev B: Engineering Change Control Procedure | 10/3/2019 | 100 | YES | 10/7/2019 17:22 | NO | | John Daley |
| jisakcson@juul.com | Jim | NO | Isakcson | WI-00049 Rev A: Supplier Change Request Work Instruction | 8/5/2019 | 100 | YES | 8/16/2019 14:25 | NO | | John Daley |
| jisakcson@juul.com | Jim | NO | Isakcson | SOP-00040 Rev A: Equipment Management Procedure | 7/10/2019 | 100 | YES | 7/18/2019 14:35 | NO | | John Daley |
| jisakcson@juul.com | Jim | NO | Isakcson | SOP-00049 Rev A: Control of Nonconforming Product Procedure | 7/16/2019 | 100 | YES | 7/18/2019 14:51 | NO | 7/30/2019 | John Daley |
| jisakcson@juul.com | Jim | NO | Isakcson | SOP-00044 Rev D: Supplier Evaluation, Qualification and Monitoring Procedure | 8/5/2019 | 100 | YES | 8/16/2019 14:28 | NO | | John Daley |
| jisakcson@juul.com | Jim | NO | Isakcson | SOP-00006 Rev A: Risk Management Procedure | 7/1/2019 | 100 | YES | 7/2/2019 23:52 | NO | | John Daley |
| jisakcson@juul.com | Jim | NO | Isakcson | SOP-00005 Rev B: Document Control Procedure | 6/6/2019 | 100 | YES | 6/20/2019 22:45 | NO | | John Daley |
| jisakcson@juul.com | Jim | NO | Isakcson | SOP-00047 Rev D: Complaint Handling Procedure | 6/12/2019 | 100 | YES | 6/20/2019 22:47 | NO | | John Daley |
| jisakcson@juul.com | Jim | NO | Isakcson | SOP-00053 Rev A: Engineering Change Control Procedure | 9/11/2019 | 100 | YES | 9/19/2019 3.23 | NO | | John Daley |
| jisakcson@juul.com | Jim | NO | Isakcson | WI-00032 Rev A: Change Assessment Form (CAF) Work Instructions | 6/3/2019 | 100 | YES | 6/20/2019 22:45 | NO | | John Daley |
| jisakcson@juul.com | Jim | NO | Isakcson | SOP-00040 Rev A: Design Control Procedure | 4/22/2019 | 100 | YES | 4/25/2019 21:36 | NO | | John Daley |
| jisakcson@juul.com | Jim | NO | Isakcson | SOP-00001 Rev A: Design Control Procedure | 4/22/2019 | 100 | YES | 4/25/2019 22:17 | NO | | John Daley |
| jisakcson@juul.com | Jim | NO | Isakcson | WI-00003 Rev A: Design Reviews Work Instructions | 4/22/2019 | 100 | YES | 4/25/2019 21:43 | NO | | John Daley |
| jisakcson@juul.com | Jim | NO | Isakcson | WI-00005 Rev A: Design History File Work Instructions | 4/22/2019 | 100 | YES | 4/25/2019 22:29 | NO | | John Daley |
| jisakcson@juul.com | Jim | NO | Isakcson | WI-00012 Rev A: Design Verification and Validation Work Instructions | 4/18/2019 | 100 | YES | 4/25/2019 19:53 | NO | | John Daley |
| jisakcson@juul.com | Jim | NO | Isakcson | POL-00006 Rev A: Grants and Charitable Contributions Policy | 3/22/2019 | 100 | YES | 4/2/2019 21:00 | NO | | John Daley |
| jisakcson@juul.com | Jim | NO | Isakcson | SOP-00005 Rev C: Document Control Procedure | 1/22/2019 | 100 | YES | 2/4/2019 16:12 | NO | | John Daley |
| jisakcson@juul.com | Jim | NO | Isakcson | SOP-00047 Rev C: Complaint Handling Procedure | 11/19/2018 | 100 | YES | 11/26/2018 16:11 | NO | | John Daley |
| jisakcson@juul.com | Jim | NO | Isakcson | POL-00010 Rev A: Global Anti-Bribery Anti-Corruption Policy | 12/4/2018 | 100 | YES | 12/4/2018 22:36 | NO | | John Daley |
| jisakcson@juul.com | Jim | NO | Isakcson | SOP-00037 Rev B: Record Retention Procedure | 12/17/2018 | 100 | YES | 1/18/2019 22:29 | NO | | John Daley |
| jisakcson@juul.com | Jim | NO | Isakcson | Dimensions of Data Privacy | 1/10/2019 | 100 | YES | 1/18/2019 22:31 | NO | | John Daley |
| jisakcson@juul.com | Jim | NO | Isakcson | SOP-00044 Rev C: Supplier Evaluation, Qualification, and Monitoring Procedure | 9/18/2018 | 100 | YES | 9/18/2018 22:57 | NO | | John Daley |
| jisakcson@juul.com | Jim | NO | Isakcson | MAN-00001 Rev B: Quality Manual | 9/12/2018 | 100 | YES | 10/8/2018 4:50 | NO | | John Daley |
| jisakcson@juul.com | Jim | NO | Isakcson | SOP-00037 Rev A: Retention Procedure | 10/4/2018 | 100 | YES | 10/5/2018 19:53 | NO | | John Daley |
| jisakcson@juul.com | Jim | NO | Isakcson | SOP-00047 Rev B: Complaint Handling Procedure | 10/17/2018 | 100 | YES | 10/29/2018 17:20 | NO | | John Daley |
| jisakcson@juul.com | Jim | NO | Isakcson | POL-00002 Rev A: Purchasing Policy | 10/17/2018 | 100 | YES | 10/29/2018 18:21 | NO | | John Daley |
| jisakcson@juul.com | Jim | NO | Isakcson | POL-00009 Rev A: Travel and Expense (T&E) Policy | 11/9/2018 | 100 | YES | 11/19/2018 22:27 | NO | 8/2/2018 | John Daley |
| jisakcson@juul.com | Jim | NO | Isakcson | WI-00028 Rev A: Post Market Clinical Analyst Work Instructions | 12/4/2018 | 100 | YES | 12/4/2018 22:36 | NO | | John Daley |
| jisakcson@juul.com | Jim | NO | Isakcson | SOP-00005 Rev B: Document Control Procedure | 7/19/2018 | 100 | YES | 7/30/2018 20:23 | NO | | John Daley |
| jisakcson@juul.com | Jim | NO | Isakcson | SOP-00062 Rev B: Field Action Procedure | 8/20/2018 | 100 | YES | 8/23/2018 21:50 | NO | | John Daley |

JLI0000091

| Email | First | Last | | Document | Date | | | Timestamp | | Date 2 | Approver |
|---|---|---|---|---|---|---|---|---|---|---|---|
| jisaacson@juul.com | Jim | Isaacson | NO | SOP-00063 Rev B: Health Hazard Evaluation Procedure | 8/20/2018 | 100 | YES | 8/20/2018 17:36 | NO | | John Daley |
| jisaacson@juul.com | Jim | Isaacson | NO | SOP-00042 Rev A: Contract Management Procedure | 8/21/2018 | 100 | YES | 8/23/2018 17:27 | NO | 9/4/2018 | John Daley |
| jisaacson@juul.com | Jim | Isaacson | NO | SOP-00044 Rev B: Supplier Evaluation Qualification Procedure | 10/11/2018 | 100 | YES | 10/11/2018 23:45 | NO | | John Daley |
| jisaacson@juul.com | Jim | Isaacson | NO | SOP-00062 Rev A: Field Action Procedure | 10/12/2018 | 100 | YES | 7/9/2018 19:10 | NO | 10/26/2018 | John Daley |
| jisaacson@juul.com | Jim | Isaacson | NO | SOP-00048 Rev A: Internal Audit Procedure | 7/5/2018 | 100 | YES | 7/9/2018 17:08 | NO | 7/19/2018 | John Daley |
| jisaacson@juul.com | Jim | Isaacson | NO | SOP-00047 Rev A: Complaint Handling Procedure | 7/9/2018 | 100 | YES | 7/9/2018 23:01 | NO | | John Daley |
| jisaacson@juul.com | Jim | Isaacson | NO | POL-00002 Rev A: Purchasing Policy | 7/14/2018 | 100 | YES | 7/16/2018 23:19 | NO | 7/28/2018 | John Daley |
| jisaacson@juul.com | Jim | Isaacson | NO | SOP-00050 Rev A: Corrective and Preventative Action (CAPA) Procedure | 7/12/2018 | 100 | YES | 7/16/2018 17:47 | NO | | John Daley |
| jisaacson@juul.com | Jim | Isaacson | NO | SOP-00044 Rev A: Supplier Evaluation Qualification Procedure | 7/16/2018 | 100 | YES | 7/23/2018 18:53 | NO | | John Daley |
| jisaacson@juul.com | Jim | Isaacson | NO | SOP-00055 Rev A: Supplier Corrective Action (SCAR) Procedure | 7/16/2018 | 100 | YES | 7/23/2018 20:01 | NO | 7/30/2018 | John Daley |
| jisaacson@juul.com | Jim | Isaacson | NO | SOP-00054 Rev A: Supplier Audit Procedure | 7/9/2018 | 100 | YES | 7/9/2018 17:23 | NO | 7/23/2018 | John Daley |
| jisaacson@juul.com | Jim | Isaacson | NO | SOP-00063 Rev A: Health Hazard Evaluation Procedure | 6/21/2018 | 100 | YES | 6/25/2018 14:11 | NO | 7/5/2018 | John Daley |