1   BRIAN L. JOHNSRUD, State Bar No. 184474
    JENNIFER LOTZ, State Bar No. 196925
2   CURLEY, HURTGEN & JOHNSRUD LLP
    4400 Bohannon Drive, Suite 230
3   Menlo Park, CA 94025
    Telephone:   650.600.5300
4   Facsimile:    650.323.1002
    E–mail:  bjohnsrud@chjllp.com
5            jlotz@chjllp.com

6   Attorneys for Defendant
    JUUL LABS, INC.

7

8                    UNITED STATES DISTRICT COURT

9              FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11  MARCIE HAMILTON,                    Case No. 3:20–CV–3710–EMC

12              Plaintiff,              **DEFENDANT JUUL LABS, INC.'S
                                        MOTION TO DISMISS PLAINTIFF'S**
13       v.                             **FIRST AMENDED COMPLAINT FOR
                                        FAILURE TO STATE A CLAIM;**
14  JUUL LABS, INC.,                    **MEMORANDUM OF POINTS AND
                                        AUTHORITIES (F.R.C.P. 12(b)(6))**
15              Defendant.
                                        DATE:    January 7, 2021
16                                      TIME:    1:30 p.m.
                                        DEPT:    Courtroom 5, 17th Floor
17                                      JUDGE:  Hon. Edward M. Chen

18

19

20

21

22

23

24

25

26

27

28

CURLEY, HURTGEN &
JOHNSRUD LLP
COUNSELORS AT LAW
MENLO PARK

# TABLE OF CONTENTS

**Page No.**

I.  INTRODUCTION ................................................................................................. 3

II.  STATEMENT OF FACTS ................................................................................... 5

III.  STANDARD OF REVIEW .................................................................................. 7

IV.  LEGAL ARGUMENT .......................................................................................... 8

    A.  The First Through Fifth And Seventh Causes Of Action Fail To State A
    Claim Because Hamilton Fails To Allege Facts Sufficient To Establish That
    JLI's Agreements, Policies, Or Practices Violate The Labor Code ........................ 8

        1.  The Policies And Practices Cited By Hamilton Fail To Show That
        JLI's Agreements Prohibit Protected Activity ............................................... 8

            a.  JLI's Policies Do Not Demonstrate That The Agreements
            Prohibit Protected Activity .................................................................... 9

                (1)  Unrelated Policies That Have No Have No Bearing On
                The Definition Of Confidential Information Are
                Irrelevant To Interpreting The Agreements ......................... 9

                (2)  Extrinsic Evidence Cannot Contradict Express
                Carve-Outs For Protected Activity ..................................... 10

                (3)  None Of JLI's Policies Defines Confidential
                Information In A Way That Would Prohibit Protected
                Activity .............................................................................. 10

            b.  JLI's Practices Do Not Demonstrate That The Agreements
            Prohibit Protected Activity .................................................................. 12

        2.  The Policies Are Not Independently Actionable Because They Do Not
        Prohibit Protected Activity ......................................................................... 13

            a.  The Social Media Provision In The Handbook Does Not
            Prohibit Protected Activity .................................................................. 14

            b.  The IT Policy And Procedures In The Handbook Does Not
            Prohibit Protected Activity .................................................................. 14

            c.  The Juul Labs Communications Provision In The Handbook
            Does Not Prohibit Protected Activity ................................................... 15

            d.  The External Communications Policy Does Not Prohibit
            Protected Activity ................................................................................ 16

            e.  The Handbook Does Not Prohibit Protected Activity. ................... 16

CURLEY, HURTGEN &
JOHNSRUD LLP
COUNSELORS AT LAW
MENLO PARK

## TABLE OF CONTENTS
### (cont'd)

Page No.

f.    Hamilton's Allegations On Information And Belief Fail To
State A Claim ....................................................................... 17

3.    The Alleged Practices Are Not Independently Actionable ....................... 17

a.    Hamilton Fails To Identify Any Generally Applicable Practice
That Prohibits Protected Activity................................................ 17

b.    Alternatively, The Court Should Dismiss As Unmanageable
Hamilton's PAGA Claims Based On Alleged Practices................ 19

B.    Hamilton's Second PAGA Cause Of Action Also Fails To State A Claim For
Violation Of Labor Code §§ 96(k) And 98.6 Because Neither Provision
Protects The Speech Of Private Employees ............................................................. 20

C.    Hamilton's Fifth PAGA Cause Of Action Also Fails To State A Claim For
Violation of Labor Code § 432.5 Because She Cannot Plead a Violation Of
The Underlying Laws ................................................................................................ 21

1.    Hamilton Fails To Allege Facts Sufficient To Establish A PAGA Claim
Predicated On A Violation Of Business & Professions Code § 17200...... 21

2.    Hamilton Fails To Allege Facts Sufficient To Establish A PAGA
Claim Predicated On The Cartwright Act .................................................... 22

3.    Hamilton Fails To Allege Facts Sufficient To Establish A Violation
Of Rule 21F–17 Of The SEC ...................................................................... 22

4.    Hamilton Fails To Allege Facts Sufficient To Establish A Violation Of
Laws Prohibiting Employers From Preventing Employees From
Disclosing Potentially Illegal Conduct........................................................ 22

5.    Hamilton Fails To Allege Facts Sufficient To Establish A Violation
Of Labor Code §§ 96(k), 98.6, 232, 232.5, 1102.5, And 1197.5(k) ......... 23

D.    Hamilton's Derivative Sixth Cause Of Action For Unfair Competition Fails
To State A Claim......................................................................................................... 23

E.    Hamilton's Seventh Cause Of Action Fails To State A Claim Because
Statements About Vaping Or JLI Do Not Implicate Political Activity ................ 23

V.    CONCLUSION .................................................................................................................... 25

Curley, Hurtgen &
Johnsrud llp
Counselors At Law
Menlo Park

ii

DEF. MOTION TO DISMISS FAC; MPA
(CASE NO. 3:20–CV–3710–EMC)

# <u>TABLE OF AUTHORITIES</u>

<u>Page No(s).</u>

**Cases**

*24 Hour Fitness, Inc. v. Super. Ct.*
  66 Cal. App. 4th 1199 (1998) ........................................................ 4

*Abbey v. Mothers Against Drunk Driving*
  1993 WL 559688 (E.D. Cal. May 14, 1993) .................................... 25

*Alameda Cnty. Flood Control v. Dept. of Water Res.*
  213 Cal. App. 4th 1163 (2013) ................................................... 3, 9

*Amiri v. Cox Commc'ns Cal., LLC*
  272 F. Supp. 3d 1187 (C.D. Cal. 2017) .................................... 19, 24

*Anderson v. City of Rialto*
  2018 WL 6131227 (C.D. Cal. Jan. 4, 2018) ................................... 24

*Asahi Kasei Pharma Corp. v. CoTherix, Inc.*
  204 Cal. App. 4th 1 (2012) .......................................................... 22

*Ashcroft v. Iqbal*
  556 U.S. 662 (2009) ............................................................... 7, 17

*Bell Atl. Corp. v. Twombly*
  550 U.S. 544 (2007) ...................................................................... 7

*Black v. Bank of America N.T. & S.A.*
  30 Cal. App. 4th 1 (1994) ............................................................ 22

*Bryant v. San Diego Gas & Elec. Co.*
  2015 WL 6164142 (Cal. Ct. App. 2015) ....................................... 18

*Burnett v. Banks*
  130 Cal. App. 2d 631 (1955) ......................................................... 4

*Chie v. Reed Elsevier, Inc.*
  2011 WL 3879495 (N.D. Cal. Sept. 2, 2011) ................................ 20

*Couch v. Morgan Stanley & Co.*
  2015 WL 4716297 (E.D. Cal. Aug. 7, 2015) ................................. 25

*Doe v. Google*
  54 Cal. App. 5th 948 (2020) .................................................... 4, 21

*Edwards v. Arthur Andersen LLP*
  44 Cal. 4th 937 (2008) ........................................................ 1, 4, 8

*Gay Law Students Ass'n v. Pac. Tel. & Tel. Co.*
  24 Cal.3d 458 (1979) .................................................................. 24

## TABLE OF AUTHORITIES
### (cont'd)

**Page No(s).**

*Glenn K. Jackson Inc. v. Roe*
273 F.3d 1192 (9th Cir. 2001).................................................................................23

*Grinzi v. San Diego Hospice Corp.*
120 Cal. App. 4th 72 (2004).................................................................................21

*Hervey v. Mercury Cas. Co.*
185 Cal. App. 4th 954 (2010).................................................................................10

*Johnson v. Fed. Home Loan Mortg. Corp.*
793 F.3d 1005 (9th Cir. 2015)..................................................................................7

*Korea Supply Co. v. Lockheed Martin Corp.*
29 Cal. 4th 1134 (2003).................................................................................21

*Lawrence v. Lenders for Cmty. Dev.*
2010 WL 4922662 (N.D. Cal. Nov. 29, 2010)..................................................7

*Lennar Mare Island, LLC v. Steadfast Ins. Co.*
176 F. Supp. 3d 949 (E.D. Cal. 2016)..................................................................8

*Lockheed Aircraft Corp. v. Super. Ct.*
28 Cal. 2d 481 (1946) ...............................................................................18

*Menzel v. Scholastic, Inc.*
2018 WL 1400386 (N.D. Cal. Mar. 19, 2018)................................................17

*Moss Dev. Co. v. Geary*
41 Cal. App. 3d 1 (1974)...........................................................................11

*Mujica v. Airscan, Inc.*
771 F.3d 580 (9th Cir. 2014).................................................................7, 17

*Northrop Grumman Corp. v. Factory Mut. Ins. Co.*
563 F.3d 777 (9th Cir. 2009)....................................................................9

*Raphael v. Tesoro Ref. and Mktg. Co. LLC*
2015 WL 5680310 (C.D. Cal. Sep. 25, 2015)...............................................19

*Salameh v. Tarsadia Hotel*
726 F.3d 1124 (9th Cir. 2013)...................................................................8

*Sheahan v. State Farm Gen. Ins. Co.*
442 F. Supp. 3d 1178 (N.D. Cal. 2020) ..................................................7

*Skilstaf, Inc. v. CVS Caremark Corp.*
669 F.3d 1005 (9th Cir. 2012)....................................................................9

*Sprewell v. Golden St. Warriors*
266 F.3d 979 (9th Cir. 2001).....................................................................7

CURLEY, HURTGEN &
JOHNSRUD LLP
COUNSELORS AT LAW
MENLO PARK

iv

DEF. MOTION TO DISMISS FAC; MPA
(CASE NO. 3:20–CV–3710–EMC)

1

## TABLE OF AUTHORITIES
### (cont'd)

2

**Page No(s).**

3

*Tam v. Qualcomm, Inc.*
  2018 WL 9918097 (S.D. Cal. Oct. 31, 2018) ............................................................ 19

4

*Thomas v. Silgan Container Corp.*
  2001 WL 590013 (N.D. Cal. May 24, 2001) ............................................................ 10

5

6

*Varga v. Wells Fargo Bank, N.A.*
  2018 WL 7017982 (C.D. Cal. Sept. 28, 2018)............................................................ 9

7

8  **Statutes**

9  Cal. Bus. & Prof. Code § 17200 ............................................................................ 21

10  Cal. Civ. Code § 3541 ........................................................................................ 4

11  Cal. Gov. Code § 12964.5 ............................................................................ 5, 23

12  Cal. Lab. Code § 1101 ............................................................ 5, 18, 23, 24, 25

13  Cal. Lab. Code § 1102 ............................................................ 5, 18, 23, 24, 25

14  Cal. Lab. Code § 1102.5 .................................................................................. 23

15  Cal. Lab. Code § 1102.5(a) ............................................................................. 18

16  Cal. Lab. Code § 1197.5(k) ............................................................................. 23

17  Cal. Lab. Code § 1197.5(k)(1) ........................................................................ 19

18  Cal. Lab. Code § 232 .............................................................................. 19, 23

19  Cal. Lab. Code § 232.5 .................................................................................. 23

20  Cal. Lab. Code § 432.5 ........................................................................ 5, 21, 22

21  Cal. Lab. Code § 96(k) ................................................................... 4, 20, 21, 23

22  Cal. Lab. Code § 98.6 ....................................................... 4, 18, 20, 21, 23

23  **Rules**

24  Rule 12(b)(6) ............................................................................................... 7

25

26

27

28

Curley, Hurtgen &
Johnsrud llp
Counselors At Law
Menlo Park

v

DEF. MOTION TO DISMISS FAC; MPA
(CASE NO. 3:20–CV–3710–EMC)

1

## NOTICE OF MOTION AND MOTION TO DISMISS

2

**TO PLAINTIFF MARCIE HAMILTON AND HER ATTORNEYS OF RECORD:**

3

**PLEASE TAKE NOTICE** that on January 7, 2021, at 1:30 p.m., or as soon thereafter as

4 this matter may be heard in Courtroom 5, located on the 17th Floor, of the United States District

5 Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco,

6 CA 94102, before the Honorable Edward M. Chen, Defendant Juul Labs, Inc. ("JLI" or

7 "Defendant") will and hereby does move the Court, pursuant to Federal Rule of Civil Procedure

8 12(b)(6), for an order dismissing Plaintiff Marcie Hamilton's ("Plaintiff" or "Hamilton") First

9 Amended Complaint with prejudice for failure to state a claim upon which relief can be granted.

10 Hamilton's First through Fifth and Seventh Causes of Action for violation of the Private

11 Attorneys General Act ("PAGA") predicated on California Labor Code §§ 1102.5, 96(k) and

12 98.6, 232 and 1197.5, 232.5, 432.5, and 1101 and 1102 fail to state a claim because Hamilton

13 fails to, and cannot, allege facts sufficient to establish that her Proprietary Information and

14 Invention Assignment Agreement ("PIIAA"), the corresponding Termination Certification, and

15 the Separation Agreement and Release (the "Separation Agreement") (collectively, the

16 "Agreements") should, contrary to the California Supreme Court's holding in *Edwards v. Arthur*

17 *Andersen LLP*, 44 Cal. 4th 937 (2008), be interpreted to:

18       (i)    prevent employees from reporting actual or potential violations of law (§ 1102.5);

19       (ii)   threaten employees with discharge for engaging in free speech during non-working

20 hours away from JLI's premises (§§ 96(k) and 98.6);

21       (iii)  prevent employees from disclosing or discussing wages (§§ 232 and 1197.5);

22       (iv)  prevent employees from disclosing working conditions (§ 232.5);

23       (v)   contain any terms or conditions known by JLI to be unlawful (§ 432.5); or

24       (vi)  prevent employees from engaging in political activities (§§ 1101 and 1102).

25 Hamilton also fails to state a claim with respect to the First through Fifth and Seventh

26 Causes of Action based on alleged "policies and practices" of JLI that purportedly violate these

27 Labor Code provisions.  JLI's policies do not facially prohibit employees from engaging in

28 protected activities and, to the contrary, several policies expressly confirm the right to do so.

CURLEY, HURTGEN &
JOHNSRUD LLP
COUNSELORS AT LAW
MENLO PARK

1

DEF. MOTION TO DISMISS FAC; MPA (CASE
NO. 3:20–CV–3710–EMC)

Further, JLI's purported "practices" of maintaining a "culture of concealment" and retaliating against claimed whistleblowers do not constitute a generally applicable "rule, regulation, or policy" or a "condition of employment."  Moreover, even if they do, these claims would require numerous individualized inquiries, rendering them unmanageable.

The Second Cause of Action fails on the further basis that, as the Court previously ruled "a private employee has no recognized constitutional protection from termination by a private employer based on speech," and, therefore, provisions of the Agreements and alleged policies and practices that purportedly threaten employees with discharge for engaging in free speech during non-working hours cannot violate §§ 96(k) and 98.6.  ECF–23, at 6:4–7, n. 5.

Hamilton's derivative Sixth Cause of Action for unfair competition in violation of Business & Professions Code § 17200 *et seq.* fails to state a claim upon which relief may be granted because the underlying claims on which this cause of action is predicated fail and the Court has already held that Hamilton lacks standing to seek a public injunction (ECF–23, at 16:22–17:1), which is the only remedy sought pursuant to the Sixth Cause of Action.

Finally, Hamilton's Seventh Cause of Action, a PAGA claim predicated on California Labor Code §§ 1101 and 1102, fails to state a claim because statements about vaping do not implicate political activity and JLI's claimed policies have an apolitical purpose.

This Motion is based on this Notice, the Memorandum of Points and Authorities below, the Request for Judicial Notice and corresponding declaration of Angela Hayes, all of which are filed and served concurrently herewith, the complete pleadings, files, and records in this action, and such other oral and documentary evidence as may be presented to the Court at or before the hearing on this Motion.

Dated: November 19, 2020                 CURLEY, HURTGEN & JOHNSRUD LLP

By /s/ Brian L. Johnsrud
    BRIAN L. JOHNSRUD
    Attorneys for Defendant
    JUUL LABS, INC.

CURLEY, HURTGEN &
JOHNSRUD LLP
COUNSELORS AT LAW
MENLO PARK

2

DEF. MOTION TO DISMISS FAC; MPA
(CASE NO. 3:20–CV–3710–EMC)

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2

**I.      INTRODUCTION**

3

Plaintiff Hamilton's amended allegations fail to state a claim.  In dismissing the bulk of

4

Hamilton's first Complaint on September 11, 2020 (ECF–23), this Court granted Hamilton leave

5

to amend to "plead factual allegations that demonstrate the contracts should be interpreted as

6

prohibiting her from whistleblowing, engaging in otherwise lawful conduct during non-working

7

hours, disclosing her wages and working conditions, or violating other Labor Code [provisions],"

8

and "to allege specific facts in support of non-contract based claims."  ECF–23, at 11:16–22.  In

9

the absence of expressly unlawful contract language, Hamilton attempts to meet her burden solely

10

with extrinsic evidence (consisting of various unrelated policies and alleged practices).  Her

11

attempt fails for the following reasons:

12

*First,* the alleged extrinsic evidence does not relate to the definition of confidential

13

information in, or whether an employee's right to engage in protected activity is implicated by,

14

the Agreements.[1]  Instead, it consists of unrelated policies and alleged out of context statements

15

that are unconnected to the terms of the Agreements.  *See, e.g.,* *Alameda Cnty. Flood Control v.*

16

*Dept. of Water Res.,* 213 Cal. App. 4th 1163, 1195 (2013) ("[E]xtrinsic evidence [must] show

17

an[] ambiguity *in the contract*.").  Among other unrelated evidence, Hamilton relies on a

18

technology resources policy that addresses the use of certain devices while conducting JLI

19

business on JLI property, "drills" to prepare for government inspections, and claimed directives

20

about speaking to the press.  First Amended Complaint ("FAC") (ECF–32), ¶¶ 50, 60–64.  These

21

policies and alleged practices have nothing to do with the Agreements.[2]

22

*Second*, the extrinsic evidence suffers from the same defects as the Agreements – there is

23

nothing in the cited policies that is unlawful.  On their face, the policies do **not** prevent JLI

24

employees from engaging in the types of activities that Hamilton wrongly contends they preclude.

25

---

26

[1]  The at-issue contracts are the Proprietary Information and Invention Assignment Agreement ("PIIAA"), Termination Certification, and Separation Agreement and Release (the "Separation Agreement") (collectively, the "Agreements").

27

[2]  JLI offered to produce various policies to Hamilton as part of the discovery process **before** she had to file her First Amended Complaint (so that she could challenge specific language) but she declined that offer.

28

CURLEY, HURTGEN &
JOHNSRUD LLP
COUNSELORS AT LAW
MENLO PARK

3

DEF. MOTION TO DISMISS FAC; MPA (CASE
NO. 3:20–CV–3710–EMC)

To the contrary, several policies expressly **confirm** the right of employees to report actual or potential violations of law and engage in other protected activities.  As with the Agreements, these policies—to the extent they are extrinsic evidence of anything—must be interpreted in a way that renders them valid, not void.  Indeed, the rule in *Edwards* about interpreting contracts in a way that renders them valid is **not** a principle unique to contracts but instead consistent with a rule in effect for near1y 150 years that "[a]n interpretation which gives effect is preferred to one which makes void."  Cal. Civ. Code § 3541.  Section 3541 applies both generally and to employer policies.  *See, e.g., Burnett v. Banks*, 130 Cal. App. 2d 631, 637–38 (1955) (applying Civil Code section 3541 to bylaws); *24 Hour Fitness, Inc. v. Super. Ct.,* 66 Cal. App. 4th 1199, 1214–15 (1998) (applying Section 3541 and holding that a conflict between an employer's handbook and arbitration agreement must be resolved in favor of upholding the agreement).  Hamilton cannot credibly argue that the Court should—under *Edwards*—interpret the Agreements in a way that renders them lawful but then interpret her proffered extrinsic evidence inconsistent with that rule.

*Third*, JLI's purported "practice" of maintaining a "culture of concealment" and claimed individual acts of retaliation do not constitute a generally applicable "rule, regulation, or policy" or a "condition of employment."  Rather, they are based on alleged isolated statements by unspecified individuals to unspecified employees at unspecified times and claimed retaliation against two employees, Hamilton and a former Utah-based employee, James Isaacson.  Additionally, such claims would require numerous individualized inquiries, rendering them unmanageable and making the potential scope of "aggrieved employees" uncertain.

*Fourth*, Hamilton's Second Cause of Action—a Private Attorneys General Act ("PAGA") claim based on Labor Code §§ 98.6 and 96(k)—fails on the further basis that, as this Court previously held, private employees do not have constitutionally protected free speech rights.  The new case cited by Hamilton, *Doe v. Google,* 54 Cal. App. 5th 948 (2020), does not hold otherwise and, instead, holds only that PAGA claims based on §§ 98.6 and 96(k) are not preempted by the National Labor Relations Act, an argument JLI does not raise.

*Fifth*, Hamilton's Sixth Cause of Action—an Unfair Competition Law ("UCL") claim—fails because it is derivative of her other unsustainable PAGA claims and she lacks standing to

seek a public injunction (the only relief sought pursuant to this claim).

*Finally*, the Seventh Cause of Action—a new PAGA claim based on Labor Code §§ 1101 and 1102—fails to state a claim because statements about vaping (which is JLI's business) do not implicate political activity and any such policies have an apolitical purpose. Thus, the Court should grant JLI's motion and dismiss the First through Fourth, Sixth, and Seventh Causes of Action, and the remaining predicates for the Fifth Cause of Action, with prejudice.[3]

## II.      STATEMENT OF FACTS

Hamilton is a former high-level managerial employee who worked as JLI's Director of Program Management for just under one year. FAC, ¶ 6. Hamilton claims that, as a result of her employment, she was subject to the PIIAA and other alleged policies and practices of JLI that purportedly prevented her from "engaging in whistleblowing, competing (by seeking new or better work), disclosing information about [her] wages and working conditions, and otherwise engaging in protected speech." *Id.*, ¶¶ 26–68. Contrary to Hamilton's allegations, JLI's policies **authorize and encourage** the very protected activities she claims are prohibited, as follows:

**Handbook** (FAC, ¶¶ 44–47, 50, 53–54). The "No Retaliation" provision in the Handbook confirms that JLI "strictly prohibits retaliation . . . [for] filing, testifying, assisting, or participating in any manner in any investigation, proceeding, or hearing conducted by the Company or a governmental enforcement agency." Declaration of Angela Hayes ("Hayes Dec."), ¶ 2, Ex. A at 40.[4] The policy goes on to state that "[t]he Company does not consider conduct in violation of this policy to be within the course and scope of employment and does not sanction such conduct on the part of any employee, including management and executive employees." *Id.*[5]

---

[3] JLI's motion is not directed at the portion of Hamilton's Fifth Cause of Action alleging a violation of Labor Code § 432.5 predicated on Government Code § 12964.5 as the Court held that she had alleged facts sufficient to state a claim on this basis. ECF-23, at 16:9–16; FAC, ¶ 144(c). The remaining predicates for the Fifth Cause of Action should be dismissed with prejudice.

[4] The at-issue Handbook provisions cited throughout this motion are identical in each version of the Handbook attached to the Hayes Declaration. *Compare* Hayes Dec., Ex. A at 31–34 and 40 to Ex. B at 27–30 and 36, Ex. C at 30–33 and 39–40, and Ex. D at 23–26 and 32.

[5] While purporting to quote from various JLI policies, Hamilton's FAC fails to attach any of the policies or to identify the source of her selective quotations, instead referring to the policies collectively as "[JLI's] Confidentiality Policies." FAC, ¶¶ 40-58. Therefore, JLI has requested

CURLEY, HURTGEN &
JOHNSRUD LLP
COUNSELORS AT LAW
MENLO PARK

5

DEF. MOTION TO DISMISS FAC; MPA
(CASE NO. 3:20–CV–3710–EMC)

**Compliance Reporting and Investigation Policy** (FAC, ¶ 43(m)).  In discussing the specific subject of reporting, this policy emphasizes that employees not only have the right, but also the **responsibility**, to report actual or potential violations of law, stating:

> All JUUL Labs Personnel who become aware of any issue or practice that involves an actual or potential Violation [of the Code of Conduct, Company policies or procedures, or any other suspected violations of law or fraudulent activities] have a **responsibility** to report such issue or practice in a timely fashion and are not permitted to overlook such actual or potential wrongdoing.

Hayes Dec., ¶ 6, Ex. E, at § 1.3 (emphasis added); *see also* § 3.2.[6]

The Compliance Reporting and Investigation Policy further states:

> [N]othing in this Policy is intended to prevent any employee from reporting information to federal or state law enforcement agencies when an employee has a reasonable cause to believe that the violation of a federal or state statute has occurred.  A report to law enforcement, regulatory, or administrative agencies may be made instead of or in addition to, a report directly to JUUL Labs.  (§ 3.3.)

This policy also confirms that "JUUL Labs strictly prohibits and does not tolerate unlawful retaliation against any individual for reporting a suspected Violation in good faith or otherwise cooperating in an investigation of a potential Violation."  *Id.,* at § 8.1.

**Code of Conduct** (FAC, ¶ 43(k)).  The Code of Conduct confirms that JLI "**encourages** a culture of reporting concerns and suspected violations of any applicable law or company policies and procedures" and "**do[es] not permit** retaliation of any kind for good faith reports of potential violations."  Hayes Dec., ¶ 7, Ex. F, at § 12 (emphasis added).  It also confirms that JLI "conducts its business and affairs in compliance with all applicable local, state, and federal laws," and "respect[s] the right of our employees to participate in political activities."  *Id.*, at §§ 3.6, 4.

**Social Media Policy (**FAC, ¶ 43(i)). The Social Media Policy confirms the right of employees to "engag[e] in activities protected by state or federal law, . . . such as discussing wages, benefits, or other terms and conditions of employment . . ."  *Id.*, ¶ 9, Ex. H, at § 6.2.

---

judicial notice of various policies that are cited by Hamilton, or contain language quoted by Hamilton, in the FAC.  *See* JLI's Request for Judicial Notice ("RJN").

[6]  "[I]f you are aware of a potential Violation and do not report it according to this Policy, your inaction may be considered a Violation itself, which may result in disciplinary action, up to and including termination of your employment or working relationship with Juul Labs."

CURLEY, HURTGEN &
JOHNSRUD LLP
COUNSELORS AT LAW
MENLO PARK

6

DEF. MOTION TO DISMISS FAC; MPA
(CASE NO. 3:20–CV–3710–EMC)

### III.    STANDARD OF REVIEW

Under Rule 12(b)(6), a defendant may move to dismiss an action for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).  "A complaint is not 'plausible' if the conduct at issue is 'more likely explained by' lawful behavior." *Lawrence v. Lenders for Cmty. Dev.*, No. C 10–00619 CRB, 2010 WL 4922662, at *4 (N.D. Cal. Nov. 29, 2010) (*quoting Iqbal*, 556 U.S. at 680).

The Court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden St. Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  "[P]laintiffs must satisfy the pleading requirements of Rule 8 before the discovery stage, not after it " as Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Mujica v. Airscan, Inc.*, 771 F.3d 580, 593 (9th Cir. 2014) (*citing Iqbal*, 556 U.S. at 678–79).  Nor does the Court need accept as true "allegations contradicting documents that are referenced in the complaint." *Johnson v. Fed. Home Loan Mortg. Corp.*, 793 F.3d 1005, 1008 (9th Cir. 2015) (affirming dismissal of breach of contract claim where contractual language contradicted allegation in pleading).

Finally, as Hamilton was previously granted leave to amend and still fails to allege facts sufficient to state a claim, her claims should be dismissed with prejudice.[7]  *See, e.g.*, *Sheahan v. State Farm Gen. Ins. Co.*, 442 F. Supp. 3d 1178, 1190 (N.D. Cal. 2020) (granting motion to dismiss and dismissing claims with prejudice, *citing Salameh v. Tarsadia Hotel*, 726 F.3d 1124,

---

[7]  The Court granted JLI's motion with leave to amend as to the First through Fourth Causes of Action.  ECF–23, at 5:16–11:22.  With respect to the Fifth Cause of Action under Labor Code § 432.5, the Court dismissed every predicate for this claim with the exception of Government Code § 12964.5.  *Id.*, at 15:5–16:13.  Further, while the Court did not dismiss the derivative Sixth Cause of Action for Unfair Competition, it found that Hamilton lacked standing to pursue a public injunction based on her claim under section 12964.5 (*id.*, at 16:22–17:1), which is the only relief sought pursuant to the Sixth Cause of Action.  FAC, ¶ 153; Prayer, ¶¶ 2, 4, 5.

1133 (9th Cir. 2013) ("A district court's discretion to deny leave to amend is 'particularly broad' where the plaintiff has previously amended.")).

## IV.   LEGAL ARGUMENT

### A.   The First Through Fifth And Seventh Causes Of Action Fail To State A Claim Because Hamilton Fails To Allege Facts Sufficient To Establish That JLI's Agreements, Policies, Or Practices Violate The Labor Code.

Hamilton's First through Fifth and Seventh Causes of Action based on the Agreements fail because she does not (and cannot) allege any extrinsic evidence demonstrating that these contracts should be interpreted as unlawful. As this Court held, the Agreements are not unlawful on their face and California Supreme Court's ruling in *Edwards v. Arthur Andersen LLP*, 44 Cal. 4th 937, 954 (2008) "counsels towards interpreting [the Agreements] in a way that 'makes the contract[s] lawful, valid and capable of being carried into effect.'" ECF–23 at 5:22–11:22. As shown below, Hamilton fails to demonstrate that the Agreements, policies, and practices violated any of the Labor Code provisions that are the predicates to her PAGA claims.

#### 1.   The Policies And Practices Cited By Hamilton Fail To Show That JLI's Agreements Prohibit Protected Activity.

The Court previously found a "catch-all" definition of "Confidential Information" in the PIIAA (and related language in the Termination Certification) to be "arguably ambiguous" as it could "encompass more than proprietary information."[8] ECF–23, at 8:3–11:22. Hamilton attempts to turn this "arguably ambiguous" contractual language into "unlawful" language by relying on "extrinsic evidence" of various JLI policies and practices. (FAC, ¶¶ 40–68.) A fatal defect with Hamilton's strategy is that "any extrinsic evidence [relied upon to resolve a claimed ambiguity] must be tethered to specific contract language." *Lennar Mare Island, LLC v. Steadfast Ins. Co.*, 176 F. Supp. 3d 949, 964, 970 (E.D. Cal. 2016) (rejecting parol evidence

---

[8]  This "catch-all" provision states: "Confidential Information also includes all information of which the unauthorized disclosure could be detrimental to the interest of Company, whether or not such information is identified as Confidential Information." FAC, Ex. A (PIIAA), at ¶ 4.1. It is preceded by a more fulsome definition of "Confidential Information" which includes "any Company confidential proprietary information, technical data, trade secrets, or know-how, including, but not limited to, research, product plans, . . . developments, inventions, patentable subject matter, . . . forecasts, finances or other business information of the Company." *Id.*

1    where plaintiff "d[id] not tie its evidence to any specific term, phrase, or clause"); *Alameda Cnty.*

2    *Flood Control*, 213 Cal. App. 4th at 1195; *see also Northrop Grumman Corp. v. Factory Mut.*

3    *Ins. Co.*, 563 F.3d 777, 788 (9th Cir. 2009) (rejecting extrinsic evidence regarding the meaning of

4    "flood" in an excess policy because the proffered evidence did not involve the excess policy at

5    issue); *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1014–15, 1017 (9th Cir. 2012)

6    (affirming order granting motion to dismiss, holding that an email offered as extrinsic evidence

7    "addressed only the extent of the release and did not address the covenant not to sue").

8               **a.**     **JLI's Policies Do Not Demonstrate That The Agreements**

9                     **Prohibit Protected Activity.**

                    **(1)**    **Unrelated Policies That Have No Have No Bearing On**

10                     **The Definition of Confidential Information Are**

11                     **Irrelevant To Interpreting The Agreements.**

12        Hamilton cites to some 23 different policies (FAC, ¶ 43) and JLI's "Culture & Policy

13    Handbook" (the "Handbook")[9] (FAC, ¶¶ 44–54), but fails to explain—other than in a conclusory

14    fashion—how any of them relate to the Agreements at all, let alone to the definition of

15    "confidential information." *Id.*, ¶¶ 104–10, 113–16, 121–25, 130–34, 138–40, 144–45, 154–57.

16    Nor does Hamilton allege that these policies informed her understanding of the PIIAA.  Her

17    counsel's legal argument is not parol evidence of her understanding.  *See, e.g., Varga v. Wells*

18    *Fargo Bank, N.A.*, No. CV 16–9650–DMG (KSX), 2018 WL 7017982, at *4 (C.D. Cal. Sept. 28,

19    2018) (disregarding legal conclusions offered as "extrinsic evidence" and dismissing breach of

20    contract claim on the pleadings because the interpretation of an agreement that is a "mere legal

21    conclusion . . . is not entitled to the assumption of truth."), *aff'd*, 796 F. App'x 430 (9th Cir. 2020).

22        Instead, Hamilton alleges generally that JLI's policies advise employees that JLI "should

23    not be held liable for any repercussions the employee's [social media communications] may

24    generate," "place limits on the use of employee personal devices," and "prohibit political speech

25    and activity" by allegedly instructing employees that they cannot (among other activities)

26

27    _____

    [9]  JLI's Handbook is titled the "Juul Labs Employee Guide" and is also referred to as the "Juul

28    Labs Employee Handbook" (as stated on the Acknowledgement page) and the "Juul Labs Culture
    & Policy Handbook."  Hayes Dec., ¶¶ 2–5, Exs. A–D.

CURLEY, HURTGEN &
JOHNSRUD LLP
COUNSELORS AT LAW
MENLO PARK

9

DEF. MOTION TO DISMISS FAC; MPA
(CASE NO. 3:20–CV–3710–EMC)

"'engage with youth on the topics of tobacco or tobacco and nicotine,' 'engage in social media,' . . . or help a young family member quit smoking." *Id.*, ¶¶ 46, 50, 51. She also claims that JLI's policies "require employees to falsely inform others . . . that [JLI] did not, and does not, target or market its products to minors." *Id.*, ¶ 52. Even accepting these allegations as true, none of the policies bear on the interpretation of the "catch-all" definition of "confidential information." Rather, they address matters such as social media, technology use, youth prevention, and marketing, which are wholly unrelated. *See, e.g.*, *Thomas v. Silgan Container Corp.*, No. 97–3311 MMC (JCS), 2001 WL 590013, at *7, n. 7 (N.D. Cal. May 24, 2001) (finding that extrinsic evidence was "irrelevant" to the definition of "Job Elimination Termination" under the Plan because "[o]n its face, the [disability] form has no relation to severance benefits under the Plan, but rather relates to long term disability conversion insurance").

### (2)   Extrinsic Evidence Cannot Contradict Express Carve-Outs For Protected Activity.

Further, the Court already concluded that "the Severance Agreement has a carveout for engaging in protected activity, whistleblowing, and exercising protected rights, including under the National Labor Relations Act (which includes the right to discuss wages and working conditions)." ECF–23, at 10:3–19. Therefore, Hamilton cannot rely on parol evidence to contradict the express carve-outs for protected activity in the Separation Agreement. *See, e.g.*, *Hervey v. Mercury Cas. Co.*, 185 Cal. App. 4th 954, 961 (2010) (parol evidence "is not admissible if it contradicts a clear and explicit policy provision").

### (3)   None Of JLI's Policies Defines Confidential Information In A Way That Would Prohibit Protected Activity.

Hamilton also cannot rely on the policy language to demonstrate that the Agreements prohibit protected activity because, to the extent the at-issue policies mention "confidential information" at all, they either say **nothing** about the right of employees to engage in protected activities (which is addressed in separate policies that directly speak about this issue), or they **expressly authorize it,** as discussed in Section II above. FAC, ¶¶ 47–48, 50, 53–54; *see also* Hayes Dec., ¶ 2, Ex. A at 31–34, 40; ¶ 6, Ex. E at §§ 1.3, 3.3, 8.1; ¶ 7, Ex. F at §§ 3.6, 4, 12; ¶ 8,

CURLEY, HURTGEN &
JOHNSRUD LLP
COUNSELORS AT LAW
MENLO PARK

10

DEF. MOTION TO DISMISS FAC; MPA
(CASE NO. 3:20–CV–3710–EMC)

Ex. G; ¶ 9, Ex. H at § 6.2.  Thus, even taking this alleged extrinsic evidence into account, the

Court should construe the Agreements as lawful.  *See, e.g.*, *Moss Dev. Co. v. Geary*, 41 Cal. App.

3d 1, 9–10 (1974) ("If a contract is susceptible to more than one interpretation, and if the

ambiguity is not eliminated by extrinsic evidence, the court is bound to give the contract '. . . such

an interpretation as will make it lawful, operative, definite, reasonable, and capable of being

carried into effect . . . .'").  Specifically:

   **Handbook: Social Media provision.**  Hamilton contends that language in the Social

Media provision in the Handbook[10] prevents employees from sharing or discussing "non-public

data belonging to JUUL Labs," instructing them that if they have to "think about it, don't share

it."  Hayes Dec., ¶ 2, Ex. A, at 33; *see* FAC, ¶ 47 ("JUUL further instructs employees that if they

have to 'think about sharing' information, then they should not share the information.").  The

reference to "non-public data" is a similar "catch-all" provision to the PIIAA's and it is clarified

by providing specific examples of the confidential business information protected, similar to the

definition in the PIIAA.[11]  Further, the Social Media provision in the Handbook does not address

protected activity, while the "No Retaliation" provision in the Handbook does.

   **Handbook: IT Policy and Procedures.**  Hamilton claims that the IT Policy and

Procedures in the Handbook "place[s] limits on the use of employee personal devices" by

allegedly prohibiting employees from using "'Technology Resources'[12] . . . in any way that

---

[10]  Hamilton does not identify the policies or provisions she quotes from by name and, instead, refers to them collectively as "[JLI's] Confidentiality Policies."  FAC, ¶¶ 40-48.  JLI has submitted the policies and provisions which contain either the quoted language (or substantially identical language) or the document title cited in the FAC.  *See* RJN and Hayes Dec.

[11]  The complete at-issue text of the Social Media provision states: "We are a privately-held company. We do not share or discuss our business information publicly.  [This includes:] Financial information of any sort; Design plans and new product development initiatives; Customer or consumer data; Sales, Forecasts, Trends, Future Promotional Plans; Any other non-public data belonging to JUUL Labs.  ¶ If you have to think about it, don't share it."  Hayes Dec., ¶ 2, Ex. A, at 33 (and identical language in Exhibits B–D); *see also* FAC, Ex. A (PIIAA), at ¶ 4.1.

[12]  "'Technology Resources' consist of all electronic devices, software, and means of electronic communication that are owned by JUUL Labs, that are used on or accessed from JUUL Labs' premises, or that are used in performing JUUL Labs business. This can include, but is not limited to, personal computers, laptops, computer hardware, external hard disks, printers, modems, fax machines, copiers, computer software (including software that grants access to external services, such as the Internet, email, chat/messaging (Slack, Google Chat), etc. ), voicemail systems, telephones, cellular phones, and other handheld devices."  Hayes Dec., ¶ 2, Ex. A, at 31.

Curley, Hurtgen &
Johnsrud llp
Counselors At Law
Menlo Park

11

DEF. MOTION TO DISMISS FAC; MPA
(CASE NO. 3:20–CV–3710–EMC)

1    discloses [JLI's] so-called confidential or proprietary information to third parties."  FAC, ¶ 50;

2    Hayes Dec., ¶ 2, Ex. A at 31–33.  The IT Policy and Procedures only summarily define

3    "confidential information" as "trade secrets and other confidential and proprietary information of

4    both JUUL Labs and third parties."  *Id.*, at p. 32.  Thus, it does not provide further clarity on the

5    meaning of the "catch-all" provision.  Further, this policy does **not** address protected activity,

6    while the Handbook's No Retaliation provision does.  *Id.*, at 40.

7          **External Communications Policy.**  Hamilton also contends that JLI's External

8    Communications Policy "prevent[s] employees from communicating with persons in the

9    investment, regulatory, and trade communities."  FAC, ¶¶ 48, 106; Hayes Dec., ¶ 8, Ex. G at §§

10   6.2.5, 6.4.2.1, and 6.4.3.1.  This policy defines "confidential information" in general terms, with a

11   "catch-all" provision similar to that in the PIIAA, followed by specific examples of confidential

12   business information consistent with those in the PIIAA.[13]  Moreover, the policy itself says

13   nothing about reporting actual or potential violations of law or other protected activities, while

14   other JLI policies **expressly authorize** such activities.  *See* Hayes Dec., ¶ 2, Ex. A (Handbook at

15   40); ¶ 6, Ex. E (Compliance Reporting and Investigation Policy at §§ 1.3, 3.3, 8.1); ¶ 7, Ex. F

16   (Code of Conduct at §§ 3.6, 4, 12); and ¶ 9, Ex. H (Social Media Policy at § 6.2).

17         Thus, these unrelated policies do not demonstrate that the "catch-all" provision in the

18   Agreements is intended to prevent employees from engaging in protected activity.

19              **b.    JLI's Practices Do Not Demonstrate That The Agreements
                        Prohibit Protected Activity.**
20

21         Likewise, Hamilton's allegations regarding alleged "practices" fail to demonstrate that the

22   Agreements prohibit protected activity.  FAC, ¶¶ 9, 59–68, 70–71, 81, 104–06.  The claimed

23   practices are completely divorced from the Agreements or the meaning of "confidential

24   information."  FAC, ¶¶ 59–64; ECF–23, at 8:3–11:22.  Rather, they involve isolated acts of

25

26
     _____

27   [13]  The External Communications Policy defines "confidential information" as "[a]ny and all
     information regarding the Company that has not been publicly disseminated.  This includes, but is
     not limited to, designs, patents, concepts, ideas, customer or supplier lists and information and
28   financial data."  Hayes Dec., ¶ 8, Ex. G, at § 4; *see also* FAC, Ex. A (PIIAA), at ¶ 4.1.

CURLEY, HURTGEN &
JOHNSRUD LLP
COUNSELORS AT LAW
MENLO PARK

12

DEF. MOTION TO DISMISS FAC; MPA
(CASE NO. 3:20–CV–3710–EMC)

alleged verbal guidance regarding recordkeeping, participating in inspections by government

regulators, and responding to press inquiries.  Specifically, Hamilton claims that JLI:

- maintained a "culture of concealment" pursuant to which unspecified individuals instructed unspecified employees not to relay information about "potential or actual illegal conduct" in a recorded form, FAC, ¶ 60;

- conducted "drills" to "prepare[] for unannounced government inspections" in which employees were allegedly told to "conceal incriminating evidence and information," "not speak to government regulators unless they had no choice," and "to direct government regulators to specifically-identified [JLI] employees," FAC, ¶¶ 61–63;

- gave instructions "not to speak to the press or other third parties about [JLI]," including, for example "Altria's investment," FAC, ¶ 64; and

- retaliated against Hamilton and another former JLI employee who was based in Utah and signed a release (Isaacson) for purported whistleblowing, FAC, ¶¶ 9, 65–68, 70–71, 81.

As with the policies, these out of context practices do not relate to any terms in the Agreements.  Hamilton does not allege that any of the Agreements, or the subject of what constitutes "confidential information," was mentioned in any of these alleged communications. FAC, ¶¶ 59–68, 104–06.  She also does not allege that employees were told that acting contrary to these purported instructions would somehow breach the PIIAA.  *Id.*  In short, Hamilton's extrinsic evidence does not inform the meaning or scope of confidential information in the "catch-all" provision in the Agreements.

In sum, given the absence of any unlawful term in the Agreements (either on their face or established through extrinsic evidence), the Court should dismiss Hamilton's PAGA claims as based on those Agreements.  What remains, then, is whether the policies and practices cited by Hamilton independently give rise to any PAGA claim.  As shown below, they do not.

## 2. The Policies Are Not Independently Actionable Because They Do Not Prohibit Protected Activity.

The policies and provisions cited by Hamilton, like the Agreements, are not facially unlawful.  Moreover, the policies either say nothing about an employee's right to engage in

Curley, Hurtgen &
Johnsrud llp
Counselors At Law
Menlo Park

13

DEF. MOTION TO DISMISS FAC; MPA
(CASE NO. 3:20–CV–3710–EMC)

protected activity (and, thus, have no bearing on Hamilton's claims that JLI's policies preclude employees from engaging in such activities), or, as discussed in Section II(A) above, **expressly authorize** the very activities Hamilton claims are precluded.  Hayes Dec., ¶ 2, Ex. A at 40; ¶ 6, Ex. E at §§ 1.3, 3.2, 3.3, 8.1; ¶ 7, Ex. F at §§ 3.6, 4, 12; and ¶ 9, Ex. H at § 6.2.  Hamilton's argument to the contrary fails to state a claim for the reasons set forth below.

**a.      The Social Media Provision In The Handbook Does Not Prohibit Protected Activity.**

Nothing in Handbook's "Social Media" provision is facially unlawful.  Hamilton claims that this provision advises employees that JLI "should not be held liable for any repercussions that the employee's [social media communications] may generate."  FAC, ¶ 46.  In fact, the provision simply advises employees to "[p]ractice diligence **as a representative of the Company**" and "[a]void ANY comments that could be interpreted as discriminatory (racist, sexist, etc.)."  Hayes Dec., ¶ 2, Ex. A at 33 (emphasis added).

Hamilton next contends that this Social Media provision prevents employees from sharing or discussing "**non-public data** belonging to JUUL Labs," instructing them that if they have to "think about sharing" information "then they should <u>not</u> share the information."  FAC, ¶ 47.  Like the PIIAA, this provision has the lawful purpose of protecting JLI's **confidential business information** from public disclosure, including "financial information of any sort," "design plans and new product development initiatives," "customer or consumer data," and "sales, forecasts, trends, future promotional plans."  Hayes Dec., ¶ 2, Ex. A at 33; *see also* Cal. Lab. Code § 232.5 ("This section is not intended to permit an employee to disclose proprietary information, trade secret information, or information that is otherwise subject to a legal privilege without the consent of his or her employer."); ECF–23, at 8:10–9:1 ("[W]hile the NDA contains a confidentiality provision, it is—for the most part—directed at proprietary information. . . . This in in accord with the Labor Code that specifically permits an employer to prohibit such disclosures.")

**b.      The IT Policy And Procedures In The Handbook Does Not Prohibit Protected Activity.**

Hamilton next claims that the Handbook's "IT Policy and Procedures" "place limits on the

use of employee personal devices" by allegedly prohibiting employees from using "'Technology

Resources' (1) in any manner contrary to [JLI's] interests; (2) in any way that discloses [JLI's]

so-called confidential or proprietary information to third parties, or for personal or pecuniary

gain; or (3) to transmit, receive, or store information that is adverse to JUUL or any other entity."

FAC, ¶ 50; Hayes Dec., ¶ 2, Ex. A at 31–33.  There is nothing in the plain language of this

provision that prohibits an employee from engaging in protected activity.  Indeed, the provision

does not mention protected activity and the only improper uses of a device are primarily **illegal**

uses, such as: (1) illegally sharing copyrighted materials; (2) transmitting, receiving, or storing

any information that is discriminatory, harassing, defamatory, obscene, indecent, threatening, or

that could adversely affect any individual, group, or entity (*e.g.*, sexually explicit or racial

messages, jokes, or cartoons); (3) copying, retrieving, forwarding, or sending copyrighted

materials unless the employee has the author's permission; and (4) using Technology Resources

for any illegal purpose, violation of any company policy, in a manner contrary to the best interests

of JLI, in any way that discloses confidential or proprietary information of JLI or third parties, or

for personal or pecuniary gain.  *Id.* at 31–32.  Further, the provision does not purport to address

an employee's use of a personal device in any context other than while on JLI premises and/or

performing JLI business.  *Id.* at 31–33.

### c.   The Juul Labs Communications Provision In The Handbook Does Not Prohibit Protected Activity.

Hamilton claims that JLI prevents employees from engaging in "political speech and

activity" related to its "practices and business, the benefit and/or detriment of vaping, and the

necessity or appropriateness of vaping-related regulations."  FAC, ¶ 51.  While Hamilton (again)

does not identify the at-issue policy by name, she appears to be relying on the "Juul Labs

Communications" provision of the Handbook.  This provision merely offers employees optional

"bullet points . . . to share in [their own] words" when "approached by neighbors, strangers, etc.

who ask about Juul, [its] product, and/or the issue of minors potentially gaining access to [its]

product."  Hayes Dec., ¶ 2, Ex. A at 34.  There is nothing in the plain language of this provision

CURLEY, HURTGEN &
JOHNSRUD LLP
COUNSELORS AT LAW
MENLO PARK

15

DEF. MOTION TO DISMISS FAC; MPA
(CASE NO. 3:20–CV–3710–EMC)

that prevents employees from engaging in political speech or other protected activities, or to refrain from expressing their own opinions.

### d. The External Communications Policy Does Not Prohibit Protected Activity.

Hamilton contends that JLI's External Communications Policy "prevent[s] employees from communicating with persons in the investment, regulatory, and trade communities," by instructing employees "to <u>not</u> respond to inquiries from these communities, including government regulators, but to instead direct or defer these inquiries to a designated [JLI] representative," implying that this would prevent employees from reporting actual or potential violations of law. FAC, ¶¶ 48, 106; Hayes Dec., ¶ 8, Ex. G at §§ 6.2.5, 6.4.2.1, and 6.4.3.1.  These allegations ignore the stated purpose of the policy, which, by its terms, is applicable only to "all external communications **made by or on behalf of the Company**," **not** an employee's personal communications.  *Id.*, § 1.1 and § 2.4 ("This policy **does not apply** to communications made by JUUL Labs personnel **in a purely personal capacity**.") (emphasis added).  Moreover, the policy itself says nothing about reporting actual or potential violations of law, while other JLI policies, including the Compliance Reporting and Investigations Policy (which speaks directly to the subject of whistleblowing), **authorize** such activities.  Hayes Dec., ¶ 6, Ex. E, at §§ 1.3, 3.3, 8.1.

### e. The Handbook Does Not Prohibit Protected Activity.

Hamilton claims that the Handbook violates Labor Code § 232.5 by stating that "the working conditions, policies, procedures, appeals processes, and benefits in this handbook are confidential and may not be distributed in any way nor discussed with anyone who is not an employee of JUUL Labs, Inc."  FAC, ¶¶ 53; 44–45, 54, 140.  This language cannot be found in the relevant Handbook and, even if Hamilton has some other version that includes this language (which she has not produced), the Handbook has a "No Retaliation" provision confirming the right to engage in protected activities and the Social Media Policy authorizes disclosure of "other terms and conditions of employment."  Hayes Dec., ¶¶ 2–5, Exs. A–D; ¶ 9, Ex. H, at § 6.2.

In short, as nothing in these policies prevents employees from engaging in activities protected by the Labor Code, and other JLI policies expressly **authorize** such activities, Hamilton

1   cannot state a PAGA claim based on JLI's policies.

2           **f.**      **Hamilton's Allegations On Information And Belief Fail To**
3                       **State A Claim.**

4        Hamilton fails to identify a number of the policies or policy provisions on which she

5   relies, instead making the conclusory allegation "on information and belief" that a laundry list of

6   policies that she and Isaacson reviewed during their employment "evidence [JLI's] [purportedly

7   unlawful] Confidentiality Policies."  FAC, ¶¶ 40–54, 106.  These conclusory allegations are

8   insufficient.  It is well settled that "plaintiffs must satisfy the pleading requirements of Rule 8

9   before the discovery stage, not after it."  *Mujica*, 771 F.3d at 593.  Therefore, "while facts may be

10   alleged upon information and belief, that does not mean that conclusory allegations are permitted.

11   . . .  An allegation made on information and belief must still be 'based on factual information that

12   makes the inference of culpability plausible.'"  *Menzel v. Scholastic, Inc.*, No. 17–cv–05499–

13   EMC, 2018 WL 1400386, at *2 (N.D. Cal. Mar. 19, 2018) (granting motion to dismiss for failure

14   to plead facts establishing wrongdoing by the defendant).

15        Additionally, while, in some instances "critical information is held exclusively by the

16   defendant and there is no other practical way to obtain such information," that is not the case

17   here.  *Menzel,* 2018 WL 1400386, at *4.  The FAC alleges that Hamilton and Isaacson (who,

18   respectively, held Director and Senior Director roles) "reviewed and acknowledged" these

19   materials.  FAC, ¶¶ 6, 9, 41–43, 55–56.  Therefore, Hamilton's conclusory allegations "on

20   information and belief" about the purported unlawful content of the policies are insufficient to

21   state a plausible claim.  *See Iqbal,* 556 U.S. at 678.

22           **3.**      **The Alleged Practices Are Not Independently Actionable.**

23               **a.**      **Hamilton Fails To Identify Any Generally Applicable Practice**
24                         **That Prohibits Protected Activity.**

25        Hamilton fails to (and cannot) allege facts sufficient to establish that any generally

26   applicable practice of JLI violates the Labor Code.  FAC, ¶¶ 59–68, 104–07.

27        *First,* Hamilton's allegations fail to establish that JLI had a generally applicable "rule,

28   regulation, or policy" of prohibiting employees from engaging in whistleblowing or political

CURLEY, HURTGEN &
JOHNSRUD LLP
COUNSELORS AT LAW
MENLO PARK

17

DEF. MOTION TO DISMISS FAC; MPA
(CASE NO. 3:20–CV–3710–EMC)

activity.  Cal. Lab. Code §§ 1101, 1102, 1102.5(a).  A "rule, regulation, or policy" is defined as a "settled or definite course or method adopted and followed by a[n] . . . institution . . . ."  *Lockheed Aircraft Corp. v. Super. Ct.,* 28 Cal. 2d 481, 485–86 (1946).  Here, the claimed "practices" are far from "settled or definite."  Rather, they are based on a handful of alleged isolated statements made by unspecified individuals to unspecified employees at unspecified times on an unspecified number of occasions and two alleged instances of terminating employees for claimed whistleblowing.  FAC, ¶¶ 59–68, 104–07.  These types of individualized actions have been found insufficient to establish a rule, regulation, or policy that violates PAGA because "a plain reading of the definitions of rule and policy suggests that they must be intended to apply generally to a group or class, rather than to one of many members of a group or class."  *See, e.g.*, *Bryant v. San Diego Gas & Elec. Co.*, D066467, 2015 WL 6164142, at *3–4 (Cal. Ct. App. 2015) (reversing verdict as to Labor Code § 1102.5(a) and related PAGA claim because a manager's instruction to one employee was not a "rule or policy" to prevent whistleblowing).[14]  Accordingly, the First and Seventh Causes of Action fail as to claimed practices.

*Second,* Hamilton fails to establish that JLI "threatened" employees with discharge for engaging in lawful conduct during non-working hours away from JLI's premises.  Cal. Lab. Code § 98.6.  The alleged instructions not to relay certain information in a recorded form, how to respond to government regulators, and not to speak to the press (even if true) provide guidance on performing duties for JLI on JLI's premises during working hours with respect to recordkeeping, preparing for and responding to regulatory inspections, and responding to inquiries from the press on business-related matters.  FAC, ¶¶ 59–68.  They do not purport to regulate an employee's non-work-related conduct during non-working hours away from JLI's premises.  Moreover, Hamilton does not allege that employees were told that they would be terminated if they did not follow these instructions.  *Id.*  Therefore, the Second Cause of Action fails as to practices.

*Third,* none of the claimed practices prohibit employees from disclosing their wages or discussing the wages of others.  FAC, ¶¶ 59–68, 104–107.  Therefore, the Third Cause of Action

---

[14]  Federal courts may consider unpublished state decisions as persuasive authority.  *See Holt v. Noble House Hotels & Resort, Ltd.,* 370 F. Supp. 3d 1158, 1165 (S.D. Cal. 2019).

Curley, Hurtgen &
Johnsrud llp
Counselors At Law
Menlo Park

18

DEF. MOTION TO DISMISS FAC; MPA
(CASE NO. 3:20–CV–3710–EMC)

1   fails to state a PAGA claim based on alleged practices.  Cal. Lab. Code §§ 232, 1197.5(k)(1).

2          *Fourth,* none of the claimed instructions purport to require, as a condition of employment,

3   that employees refrain from disclosing their "working conditions," which include matters such as

4   "attire, proper behavior, break room condition, elevator maintenance, seat comfort, temperature,

5   lighting, uniforms, hair requirements, breaks, restroom facilities, and 'even one's required

6   attitude.'" *Tam v. Qualcomm, Inc.,* No. 17–CV–710 JLS (AGS), 2018 WL 9918097, at *11 (S.D.

7   Cal. Oct. 31, 2018); FAC, ¶¶ 59–68.  Further, as discussed in Section II above, JLI's Social

8   Media Policy confirms the right of employees to "engag[e] in activities protected by state or

9   federal law, . . . such as discussing . . . terms and conditions of employment."  Hayes Dec., ¶ 9,

10  Ex. H, at § 6.2.  Accordingly, the Fourth Cause of Action also fails as to claimed practices.

<strong>b.        Alternatively, The Court Should Dismiss As Unmanageable Hamilton's PAGA Claims Based On Alleged Practices.</strong>

13         Hamilton's PAGA claims based on JLI's alleged "practices" also fail for the independent

14  reason that the individualized nature of these claims renders them unmanageable.  Hamilton

15  purports to represent 3,000 aggrieved employees, yet her claims are based on a handful of isolated

16  statements and actions.  FAC, ¶¶ 11, 59–68.  Courts have dismissed similar claims as "nothing

17  short of unmanageable" where "[t]he Court would have to engage in a multitude of individualized

18  inquires" to determine which employees were impacted by the alleged violations.  *Raphael v.*

19  *Tesoro Ref. and Mktg. Co. LLC*, No. 2:15–cv– 02862–ODW, 2015 WL 5680310, at *3 (C.D. Cal.

20  Sep. 25, 2015) (granting motion for judgment on the pleadings and dismissing PAGA claims); *see*

21  *also Amiri v. Cox Commc'ns Cal., LLC*, 272 F. Supp. 3d 1187, 1193–1195 (C.D. Cal. 2017)

22  (finding PAGA claims unmanageable where "the alleged Labor Code violations rely on unique

23  characteristics of *Plaintiff's experience* . . ., rather than on policies or practices common to

24  'aggrieved employees' across California," thus, "liability determinations will require

25  individualized inquiries . . .").

26         This case would also require numerous individualized inquiries, including, for example:

27         (1) which employees were instructed "to rewrite or delete written materials to conceal

28  information about potential or actual illegal conduct," when these alleged instructions were given,

by whom, the specific words used, and in what context (FAC, ¶ 60);

(2) which employees were allegedly instructed to "conceal information from government regulators while being 'technically' truthful," when these alleged instructions were given, by whom, the specific instructions given, and in what context (FAC, ¶ 62);

(3) which employees were allegedly instructed "not to speak to the press or third parties about [JLI]," when, who gave these instructions, the specific words used, and in what context (FAC, ¶ 64); and

(4) which employees were allegedly retaliated against for whistleblowing, when, who made these decisions, and what alleged adverse action was taken against the employee (FAC, ¶¶ 65–68).  This final issue would certainly result in numerous mini-trials on individual wrongful termination claims in the context of an alleged PAGA action.

Hamilton's PAGA claims based on claimed practices should also be dismissed for failing to define the alleged "aggrieved employees" with sufficient specificity.  *See, e.g.*, *Chie v. Reed Elsevier, Inc.*, No. C–11–1784 (EMC), 2011 WL 3879495, at *4 (N.D. Cal. Sept. 2, 2011) (dismissing PAGA claims for failing to sufficiently identify the alleged "aggrieved employees" and stating "there must be some specificity as to who the persons are that the plaintiff seeks to represent.")  Hamilton's broad and general definition of "aggrieved employees" as "all [JLI] current and former employees that are or were subject to [JLI's] confidentiality requirements" fails to account for the individualized nature of her claims or provide adequate notice as to who she purports to represent in the context of these claimed "practices."  FAC, ¶ 8.  Accordingly, the Court should dismiss with prejudice Hamilton's PAGA claims based on JLI's claimed practices.

    **B.**    **Hamilton's Second PAGA Cause Of Action Also Fails To State A Claim For Violation Of Labor Code §§ 96(k) And 98.6 Because Neither Provision Protects The Speech Of Private Employees.**

The Second Cause of Action fails for the independent reason that this Court has already held that Hamilton cannot predicate a PAGA claim on an alleged violation of §§ 96(k) and 98.6 because "a private employee has no recognized constitutional protection from termination by a private employer based on speech."  ECF–23, at 6:4–7, n. 5.  Despite this prior Order, Hamilton attempts to revive her dismissed claim by citing *Doe v. Google*, 54 Cal. App. 5th 948, 268 Cal.

Rptr. 3d 783, 793-800 (2020).  The case is not on point.  In *Doe*, the Court of Appeal decided

only that the plaintiffs' PAGA claims (including claims predicated on Labor Code §§ 96(k) and

98.6) were not preempted by the National Labor Relations Act—an issue that JLI did not raise in

its Motion to Dismiss Hamilton's first complaint and that is not raised in the instant motion.  *Id.*

Further, *Doe* does not address whether the plaintiffs could state a PAGA claim under Labor Code

§§ 96(k) and 98.6 based on an alleged violation of constitutional free speech rights by a private

employer, nor did the *Doe* court cite *Grinzi*.  *Doe* thus does not contradict or overrule the holding

in *Grinzi* that **state action** is required for a claimed violation of free speech rights.  *See Grinzi v.*

*San Diego Hospice Corp.*, 120 Cal. App. 4th 72, 81–82 (2004).  Accordingly, the Court should

dismiss the Second Cause of Action with prejudice.

### C.   Hamilton's Fifth PAGA Cause Of Action Also Fails To State A Claim For Violation of Labor Code § 432.5 Because She Cannot Plead a Violation Of The Underlying Laws.

The Fifth Cause Action fails for the independent reason that Hamilton cannot state a claim

for violation of Labor Code § 432.5 which prohibits an employer from "requir[ing] any employee

to agree, in writing, to any term or condition which is known by such employer . . . to be

prohibited by law."  Cal. Lab. Code § 432.5; FAC, ¶¶ 144–45.  Indeed, this claim necessarily fails

as to JLI's alleged practices as there are no allegations that employees were required to agree to

such practices in writing.  FAC, ¶¶ 59–68.

#### 1.   Hamilton Fails To Allege Facts Sufficient To Establish A PAGA Claim Predicated On A Violation Of Business & Professions Code § 17200.

Hamilton makes the conclusory claim that JLI's "confidentiality requirements" violate the

UCL, which "makes certain business practices unlawful."  FAC, ¶¶ 144(a), 145.  The unlawful

prong of the UCL "borrows violations from other laws by making them independently actionable

as unfair competitive practices."  *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134,

1143 (2003).  As set forth above and below, neither the Agreements nor any of JLI's policies

violate the Labor Code or any other statute on which Hamilton relies.  Accordingly, she cannot

state a PAGA claim based on an alleged violation of the unlawful prong of the UCL.

### 2.     Hamilton Fails To Allege Facts Sufficient To Establish A PAGA Claim Predicated On The Cartwright Act.

Hamilton's claim under the Cartwright Act was previously dismissed and she does not and cannot allege any new facts sufficient to establish that the Agreements or any of JLI's policies constitute an unlawful "contract in restraint of trade." FAC, ¶¶ 144(b), 145; ECF–23, at 12:2–13:22; *see also Asahi Kasei Pharma Corp. v. CoTherix, Inc.*, 204 Cal. App. 4th 1, 8 (2012) (a "trust" within the meaning of the Cartwright Act is an agreement between "separate entities pursuing separate economic interests" conspiring to restrain competition, fix prices, or restrict trade). Indeed, "[i]t has long been the rule in California that agents and employees of a corporation cannot conspire with their corporate principal or employer where they act in their official capacities on behalf of the corporation and not as individuals for their individual advantage." *Black v. Bank of America N.T. & S.A.*, 30 Cal. App. 4th 1, 4 (1994). Accordingly, Hamilton cannot state a PAGA claim under § 432.5 based on the Cartwright Act.

### 3.     Hamilton Fails To Allege Facts Sufficient To Establish A Violation Of Rule 21F–17 Of The SEC.

Hamilton's claim that JLI's confidentiality requirements violate Rule 21F–17 of the Securities and Exchange Commission was also dismissed and, for the reasons discussed in Section IV(A) above, she fails to allege facts sufficient to establish that the Agreements or JLI's policies "impede an individual from communicating directly with the [SEC] about a possible securities law." ECF–23, at 14:20–15:3; FAC, ¶¶ 144(d), 145. As the Court's Order granting JLI's prior Motion to Dismiss observed, the Separation Agreement "has a carveout for matters before the SEC," and JLI's policies expressly authorize and encourage employees to report actual or potential violations of law to government agencies. ECF–23, at 14:20–15:3; Hayes Dec., ¶ 2, Ex. A at 40; *id.* ¶ 6, Ex. E at §§ 1.3, 3.3, 8.1; ¶ 7, Ex. F at §§ 4, 12; *id.* ¶ 9, Ex. H at § 6.2. Accordingly, Hamilton cannot state a PAGA claim under § 432.5 based on Rule 21F–17.

### 4.     Hamilton Fails To Allege Facts Sufficient To Establish A Violation Of Laws Prohibiting Employers From Preventing Employees From Disclosing Potentially Illegal Conduct.

Hamilton also alleges generally that JLI's confidentiality requirements violate "[t]he law

and public policy" related to "disclosing potentially illegal conduct in furtherance of a federal

securities action, a federal False Claims Act violation, or otherwise, to an attorney investigating

such unlawful conduct." FAC, ¶¶ 144(e), 145. This claim is not based on any specific statutory

violation and, as set forth in Section IV(A)(1), nothing in the Agreements or JLI's policies

prevents employees from disclosing potentially illegal conduct to government agencies while

both the Separation Agreement and various JLI policies expressly **authorize** such disclosures.

> **5.      Hamilton Fails To Allege Facts Sufficient To Establish A Violation Of Labor Code §§ 96(k), 98.6, 232, 232.5, 1102.5, And 1197.5(k).**

Finally, Hamilton alleges that JLI's confidentiality requirements "silence" employees in

violation of Labor Code §§ 96(k), 98.6, 232, 232.5, 1101, 1102, 1102.5, and 1197.5(k). FAC, ¶¶

144(f), 145. As set forth in Section IV(A), the Agreements, policies, and practices do not violate

these Labor Code provisions. Therefore, this claim also fails.

> **D.      Hamilton's Derivative Sixth Cause Of Action For Unfair Competition Fails To State A Claim.**

Hamilton alleges that JLI "engages in unfair competition through its use of NDAs and

other confidentiality requirements," that she remains subject to the PIIAA, and that she "has been

harmed by its confidentiality requirements." FAC, ¶¶ 149–152. This derivative claim fails for

the same reasons discussed above. *See, e.g., Glenn K. Jackson Inc. v. Roe*, 273 F.3d 1192, 1203

(9th Cir. 2001) (holding that a party cannot "plead around" the absolute bars to relief contained in

other possible causes of action by recasting those causes of action as a UCL claim).

Further, as the only relief Hamilton seeks pursuant to this claim is "a public injunction,"

and the Court previously determined that Hamilton lacked standing to pursue an injunction on her

claim that this "one-time-offered" Separation Agreement that she did not sign violated

Government Code § 12964.5, the Court should dismiss the Sixth Cause of Action with prejudice.

FAC, ¶ 153 and Prayer, ¶¶ 2, 4–5; ECF–23, at 16:23–28.

> **E.      Hamilton's Seventh Cause Of Action Fails To State A Claim Because Statements About Vaping Or JLI Do Not Implicate Political Activity.**

Hamilton's new Seventh Cause of Action for violation of Labor Code §§ 1101 and 1102

1   fails on the additional and independent basis that JLI's alleged instructions to employees about

2   "the manner in which they may or may not speak to government agencies, politicians, friends,

3   and family members about political activity as it relates to [JLI], youth smoking, vaping, or the

4   vaping epidemic" do not implicate a "political activity" and, even if they do, such policies have

5   an apolitical purpose.  FAC, ¶¶ 51–52, 156–157.

6       Sections 1101 and 1102 do not define "political activity" and the cases interpreting them

7   require at least "some degree of action to promote the acceptance" of a political candidate or

8   political cause—that is, an effort to influence the government or society on a political issue, such

9   as civil rights or advocating for a political candidate.  *See, e.g.*, *Mallard v. Boring*, 182 Cal. App.

10  2d 390, 395 (1960); *see also Gay Law Students Ass'n v. Pac. Tel. & Tel. Co.*, 24 Cal.3d 458, 488

11  (1979) ("[T]he struggle of the homosexual community for equal rights, particularly in the field of

12  employment, must be recognized as a political activity."); *Anderson v. City of Rialto*, No. EDCV

13  16–01915 JGB (SPx), 2018 WL 6131227, at *16 (C.D. Cal. Jan. 4, 2018) (rejecting §§ 1101 and

14  1102 claims where "[p]laintiff neither espoused a candidate or cause nor took any action to

15  promote such a view by other persons.")

16      Hamilton fails to (and cannot) allege that statements about vaping or JLI, such as

17  "correct[ing] political candidates spreading alleged 'misinformation' about [JLI], 'engag[ing]

18  with youth on the topics of tobacco or tobacco and nicotine,' . . . discuss[ing] vaping, cigarettes,

19  drinking, or any age-restricted products in the 'earshot of youth,' shar[ing] or laugh[ing] at Juul

20  Labs-related memes, or help[ing] a young family member quit smoking," constitute "political

21  activity."  FAC, ¶ 51.  There is nothing inherently political about the topics of tobacco, nicotine,

22  cigarettes, vaping, or youth prevention.  *See, e.g.*, *Keiser v. Lake Cnty. Super. Ct.*, No. C05–

23  02310 MJJ, 2005 WL 3370006, at *2, *11 (N.D. Cal. Dec. 12, 2005) (granting motion to dismiss

24  § 1101 claim where plaintiff's role setting up a non-profit "in anticipation of the implementation

25  of the Trial Court Employment Protection and Governance Act" was not a "political activity"

26  because it did not "advocate a particular view or encourage support for a particular candidate").

27      Further, even if such activities can be seen as political, Sections 1101 and 1102 do not

28  prohibit an employer's rule, regulation, or policy that is enacted for wholly apolitical reasons.

CURLEY, HURTGEN &
JOHNSRUD LLP
COUNSELORS AT LAW
MENLO PARK

24

DEF. MOTION TO DISMISS FAC; MPA
(CASE NO. 3:20–CV–3710–EMC)

*See, e.g.*, *Couch v. Morgan Stanley & Co.*, No. 1:14–cv–10–LJO–JLT, 2015 WL 4716297, at

*12–13, 15 (E.D. Cal. Aug. 7, 2015), *aff'd* 656 F. App'x 841 (9th Cir. 2016) (holding that conflict

of interest policy, which could prevent an employee from running for political office due to

potential conflicts, did not violate § 1101 because it had an apolitical purpose).

Here, JLI's alleged policies are entirely "apolitical."  Vaping is JLI's business.  Taking

Hamilton's allegations as true, it would be entirely reasonable for JLI to instruct employees not to

"correct political candidates spreading alleged 'misinformation'" about JLI because any such

"correction" should come from an authorized Company representative.  *See, e.g., Abbey v.*

*Mothers Against Drunk Driving*, No. S–90–0673, 1993 WL 559688, at *16 (E.D. Cal. May 14,

1993) (employer did not violate §§ 1101 and 1102 where it had the "right to place reasonable

restrictions on political activities by an employee acting in his or her official capacity.")

It is also reasonable for JLI to provide employees with optional bullet point guidance on

how to address questions about vaping and youth prevention when "approached by neighbors,

strangers, etc." which employees can "share in [their own] words," such as:

- "Juul Labs' mission is to eliminate cigarettes. We develop products solely intended to enable adult smokers to switch permanently away from cigarettes."

- "The company absolutely agrees that no young person should ever try our product. In fact, adults who are not already smokers should not try Juul."

- "The company is always willing and able to discuss these issues, answer questions and provide additional information. The easiest way to contact us is to email the company at youthprevention@juul.com. You will receive a prompt, thorough and personal response."

Hayes Dec., ¶ 2, Ex. A at 34.

Accordingly, Hamilton's Seventh Cause of Action should be dismissed with prejudice.

## V.   CONCLUSION

This Court should grant JLI's motion and dismiss the First through Fourth, Sixth, and

Seventh Causes of Action in the FAC, together with the remaining predicates for the Fifth Cause

of Action, with prejudice.

Curley, Hurtgen &
Johnsrud llp
Counselors At Law
Menlo Park

25

DEF. MOTION TO DISMISS FAC; MPA
(CASE NO. 3:20–CV–3710–EMC)

1    Dated: November 19, 2020           CURLEY, HURTGEN & JOHNSRUD LLP

2

3                                   By /s/  Brian L. Johnsrud

                                        BRIAN L. JOHNSRUD

4                                         Attorneys for Defendant

                                        JUUL LABS, INC.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28