1

2

3

4                          UNITED STATES DISTRICT COURT

5                        NORTHERN DISTRICT OF CALIFORNIA

6

7     MARCIE HAMILTON,                          Case No.  20-cv-03710-EMC

8                    Plaintiff,

9              v.                               ORDER GRANTING IN PART AND
                                                DENYING IN PART DEFENDANT'S
10    JUUL LABS, INC.,                          MOTION TO DISMISS

11                   Defendant.                 Docket Nos. 33, 34

12

13

14         Plaintiff Marcie Hamilton filed this lawsuit against her former employer, Defendant Juul

15   Labs, Inc. ("Juul"), seeking civil penalties and injunctive relief related to alleged unlawful policies

16   and various separation agreements.  Complaint, Docket No. 1.  Ms. Hamilton alleged that these

17   policies and agreements violated the California Labor Code.  Juul moved to dismiss the complaint,

18   which this Court granted in part and denied in part.  *See* Order (Docket No. 23).  Counts 1-4 were

19   dismissed without prejudice for failure to state a claim under *Edwards v. Arthur Andersen LLP*, 44

20   Cal. 4th 937 (2008); counts 5-6 survived the motion to dismiss because Plaintiff sufficiently pled a

21   claim under California Labor Code § 432.5, and thereby stated a plausible claim under the UCL.

22   Order at 18.

23         Plaintiff has filed a First Amended Complaint ("FAC") (Docket No. 32), adding a seventh

24   cause of action under California Labor Code §§ 1101 and 1102 for Juul's alleged suppression of

25   the political activities of its employees.  Juul once again moves to dismiss for failure to state a

26   claim ("MTD") (Docket No. 33) and moves to strike portions of the FAC ("MTS") (Docket No.

27   34).  For the reasons that follow, this Court **GRANTS** in part and **DENIES** in part Juul's motion

28   to dismiss.

United States District Court
Northern District of California

# I.   **BACKGROUND**

A.   Factual Background

Plaintiff Marcie Hamilton worked at Juul from approximately April 2, 2018 to March 2019, serving as its Director of Program Management.  FAC ¶ 6.  Plaintiff Jim Isaacson served as JUUL's Senior Director of Design Assurance from May 2018 through November 1, 2019.  FAC ¶ 9.  Ms. Hamilton filed her first notice with the LWDA on August 14, 2019, and a second and third notice on June 4, 2020 and August 27, 2020, respectively.  FAC ¶ 85.  Docket No. 32, Ex. A, B, C.  Ms. Hamilton and Mr. Isaacson filed a fourth PAGA notice with the LWDA on September 29, 2020.  Docket No. 32, Ex. D.  This PAGA suit is brought on behalf of more than 3,000 aggrieved employees.  FAC ¶ 11.

There are three documents which form the factual predicate of Plaintiffs' claims: (1) the Non-Disclosure Agreement; (2) the Termination Certificate; and (3) the Severance Agreement.

1.   Juul's Non-Disclosure Agreement and Non-Disparagement Agreement

As an express condition of their employment at Juul, Ms. Hamilton and Mr. Isaacson were required to sign the "Proprietary Information and Invention Assignment Agreement" ("NDA").  FAC ¶ 28.  Their offer letters stated the following: "this offer, and employment pursuant to this offer, is conditioned upon . . . [y]our signed agreement to, and ongoing compliance with, the terms of the enclosed [NDA]," and included a disclaimer that the offer letter is governed by California law.  *Id.*  Plaintiffs allege that Juul has a policy of requiring all of its employees to sign this offer letter (or one that is substantially similar).  *Id.*

The NDA specifically states that its employees "shall at all times during the term of [their] employment with the Company and thereafter, hold in strictest confidence, and not use . . . or disclose to any person, firm, or corporation, without written authorization from the Company's Board of Directors (the 'Board'), any Confidential Information of the Company."  FAC ¶ 29 (citing NDA, Docket No. 32, Ex. A, § 4.1 ("Company Information")).  Plaintiffs allege that "Confidential Information" is defined by the NDA to mean essentially everything related to Juul (*e.g.*, information about Juul's customers, products, and markets, as well as catch-all terms such as "other business information of the Company" and "information disclosed by the Company to

United States District Court
Northern District of California

United States District Court
Northern District of California

Employee and information developed or learned by Employee during the course of employment with Company"). *Id.* (citing NDA, Docket No. 32, Ex. A, § 4.1 ("Company Information")).

The NDA also contains a non-disparagement provision, which prohibits employees from disclosing "all information of which the unauthorized disclosure <u>could be detrimental to the interests of the Company</u>, whether or not such information is identified as Confidential Information." FAC ¶ 30 (emphasis in original). Further, the NDA creates a presumption of confidentiality, stating "Employee agrees that <u>Employee</u> bears the burden of proving that given information or materials are <u>not</u> confidential." FAC ¶ 31 (emphasis in original).

The NDA contains a direct nexus to the Termination Certificate discussed below because it states that "[i]n the event of the termination of the Employee's employment, Employee hereby covenants and agrees to sign and deliver the 'Termination Certificate' attached hereto as Exhibit C." FAC ¶ 32. It has no temporal or geographic limitation (*i.e.*, it lasts forever and applies whether an employee is on or off Juul's premises), and it contains a provision subjecting it to California law. FAC ¶¶ 34, 35. Plaintiffs allege that at some point in 2018 or 2019, Juul took steps to "tighten" its NDAs to further restrict employee speech, competition, and whistleblowing. FAC ¶ 37. Plaintiffs do not explain how the NDA's were so tightened but allege that Juul knew that its confidentiality policies were illegal and that the tightening was done as a means of "'protect[ing] the company.'" FAC ¶ 83.

### 2. Termination Certificate

On March 15, 2019, Ms. Hamilton was informed that her employment at Juul had been terminated, and Juul required her to sign the "Termination Certificate" that all employees must sign as a condition of employment. FAC ¶ 38. The Certificate requires employees to verify that they have complied with the terms of the NDA, and further states:

> "[i]n compliance with the [NDA], I will preserve as confidential all trade secrets, confidential knowledge, data, or other proprietary information, relating to products, processes, know-how, designs, formula, developmental or experimental work, computer programs, data bases, other original works of authorship, customer lists, business plans, financial information <u>or other subject matter pertaining to any business of the Company or any of its employees, clients, consultants, or licensees.</u>"

3

FAC ¶ 38 (emphasis in original).  Ms. Hamilton signed the Termination Certificate in compliance with her contractual obligations, and she alleges that other Juul employees have also been required to sign a standard Termination Certificate when leaving employment at Juul.  FAC ¶ 39.

### 3. Severance Agreement

The third document at issue is the Severance Agreement (referred to in the FAC as the "Standard Release Agreement").  When Ms. Hamilton's employment was terminated on March 15, 2019, Juul informed her that it would continue to employ her and pay her wages through April 2, 2019 (as well as pay her a bonus), if she signed a Juul Severance Agreement.  FAC ¶ 69.  This date (April 2, 2019) was significant because it would allow Ms. Hamilton's first tranche of equity to vest.  *Id.*  Similarly, when Mr. Isaacson was notified of Juul's intent to terminate his employment in September and early October 2019, Juul offered him continued employment through November 1, 2019 if he signed a release agreement.[1]  FAC ¶ 70.  Plaintiffs allege that Juul requires its employees to sign Severance Agreements that are the same (or similar to) those offered to Ms. Hamilton and Mr. Isaacson (*i.e.*, conditioning continued employment and the payment of wages, bonuses, or other employment benefits on signing the Agreement).  FAC ¶ 72.

Juul's Severance Agreements include a general release of claims (including those arising under the Fair Employment & Housing Act, or "FEHA"), and contain another non-disparagement clause, which applies to Juul and " its current and former parents, subsidiaries, related entities and affiliates, and their respective employee benefit plans or funds, officers, directors, shareholders [including Altria, its largest shareholder], partners, employees, agents, trustees, administrators, predecessors, successors, and assigns."  FAC ¶ 74.  Juul's Severance Agreement also requires that employees keep its existence and terms confidential.  FAC ¶ 75.

Ms. Hamilton declined to sign the Severance Agreement, and as a result, (1) Juul refused to employ her through April 2, 2019, (2) Juul refused to pay her bonus, and (3) her equity did not vest.  FAC ¶ 77.  However, Ms. Hamilton continues to be subject to the NDA and Termination

---

[1] The release agreements offered to Ms. Hamilton and Mr. Isaacson were largely the same, except that Mr. Isaacson's release agreement contained a Utah choice-of-law provision and a Colorado arbitral forum provision.  FAC ¶ 71.

United States District Court
Northern District of California

Certificate, which she alleges are "restrictive covenants that restrain [her] employment opportunities and suppress her value in the labor market." FAC ¶ 80. Mr. Isaacson signed the Severance Agreement on or around October 14, 2019. FAC ¶ 81. Because he signed the agreement, he was permitted to continue his employment until November 1, 2019, at which time Juul required him to sign the identical Severance Agreement a second time. *Id.*

B.    Plaintiff's Initial Causes of Action

    In her original complaint, Plaintiff Ms. Hamilton stated six causes of action. The first cause of action was for a PAGA violation of California Labor Code § 1102.5(a), which provides:

> "[a]n employer, or any person acting on behalf of the employer, shall not make, adopt, or enforce any rule, regulation, or policy preventing an employee from disclosing information to a government or law enforcement agency, to a person with authority over the employee, or to another employee who has authority to investigate, discover, or correct the violation or noncompliance, or from providing information to, or testifying before, any public body conducting an investigation, hearing, or inquiry, if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties."

Cal. Lab. Code § 1102.5(a). The second cause of action was for a PAGA violation of California Labor Code §§ 96(k) and 98.6. Labor Code § 96(k) gives employees the right to engage in "lawful conduct occurring during nonworking hours away from the employer's premises." Cal. Lab. Code § 96(k). Labor Code § 98.6 provides, in relevant part, "[a] person shall not discharge an employee or in any manner discriminate, retaliate, or take any adverse action against any employee or applicant for employment because the employee or applicant engaged in any conduct delineated in this chapter, including the conduct described in subdivision (k) of Section 96." Cal. Lab. Code § 98.6.

    Ms. Hamilton's third cause of action was for a PAGA violation of Labor Code §§ 232 and 1197.5(k). Labor Code § 232 provides, *inter alia*, that an employer may not "[r]equire, as a condition of employment, that an employee refrain from disclosing the amount of his or her wages." Cal. Lab. Code § 232. Labor Code § 1197.5(k) provides, *inter alia*, that "[a]n employer shall not prohibit an employee from disclosing the employee's own wages, discussing the wages

United States District Court
Northern District of California

5

of others, inquiring about another employee's wages, or aiding or encouraging any other employee to exercise his or her rights under this section."  Cal. Lab. Code § 1197.5(k).

Plaintiff's fourth cause of action was for a PAGA violation of Labor Code § 232.5, which provides, *inter alia*, that no employer may "[r]equire, as a condition of employment, that an employee refrain from disclosing information about the employer's working conditions."  Cal. Lab. Code § 232.5(a).  Plaintiff's fifth cause of action was for a PAGA violation of Labor Code § 432.5, which provides "[n]o employer, or agent, manager, superintendent, or officer thereof, shall require any employee or applicant for employment to agree, in writing, to any term or condition which is known by such employer, or agent, manager, superintendent, or officer thereof to be prohibited by law."  Cal. Lab. Code § 432.5.

Finally, Plaintiff's sixth cause of action was brought under California's Unfair Competition Law ("UCL"), which defines unfair competition to mean "any unlawful, unfair or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200.

Plaintiffs allege that Juul's confidentiality agreements are in violation of the California Labor Code.  FAC ¶ 5.  Separately, Plaintiffs allege that Juul's policies and practices are a direct violation of the Labor Code irrespective of these three documents.  Plaintiffs seek civil penalties under PAGA for the Labor Code violations, as well as an injunction under the UCL which prevents Juul from enforcing its confidentiality agreements with current and former employees. FAC at 30.

C.   Juul's First Motion to Dismiss

In adjudicating Claims 1-4 in Juul's motion to dismiss the original complaint, this Court relied on the canon of contractual interpretation espoused by the California Supreme Court in *Edwards*.  In *Edwards*, the Court interpreted whether a separation agreement which contained, *inter alia*, a provision releasing "any and all" claims was unlawful because it sought to waive non-waivable, statutory rights.  *Edwards*, 44 Cal. 4th at 950.  Plaintiff argued that this provision violated California Labor Code § 2802, which provides "[a]n employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties," and Labor Code § 2804, which makes an employee's right to

United States District Court
Northern District of California

indemnification from his or her employer nonwaivable.  *Id.* at 943 (citing Cal. Lab. Code §§ 2802, 2804).

The *Edwards* court held that the broad waiver was not unlawful.  *Id.* at 955.  The Court found that the phrase "any and all" was in dispute, and therefore it was bound to "give such an interpretation as will make [the phrase] lawful, operative, definite, reasonable, and capable of being carried into effect."  *Edwards*, 44 Cal. 4th at 954.  Applying that rule of contract interpretation, the *Edwards* court found:

> "that a contract provision releasing 'any and all' claims, such as that used in the TONC [termination of non-compete agreement] in the present case, does not encompass nonwaivable statutory protections, such as the employee indemnity protection of Labor Code section 2802. In so holding, we interpret the TONC such that it does not violate Labor Code section 2804. As a consequence, the TONC is neither unlawful nor null and void."

*Id.*  This Court applied that principle of contract interpretation to Juul's first motion to dismiss: "[a]pplying *Edwards*, at least at this juncture, to construe the contracts at issue as not unlawfully prohibiting whistleblowing activity is not unreasonable."  Order at 8.

For instance, the Court found that the NDA's confidentiality provision was primarily directed at preserving proprietary information, which is allowable under Cal. Lab. Code § 232.5(d).  Order at 8-9.  And while parts of the NDA are catch-all provisions that could encompass more than proprietary information (*e.g.*, Paragraph 4.1, which states that "[c]onfidential Information also includes all information of which the unauthorized disclosure could be detrimental to the interests of Company, whether or not such information is identified as Confidential Information"), the Court found that under *Edwards*, it can interpret the NDA in a way to make it lawful (*i.e.*, that the restriction on Confidential Information encompassed only proprietary information), particularly because Paragraph 15 of the NDA reads "[t]his Agreement shall be governed by and construed in accordance with the internal substantive laws, but not the choice of law rules, of the state of California."  Order at 9-10.

Finally, the Court addressed Ms. Hamilton's claims concerning "other policies and practices" of Juul, specifically, that "JUUL maintains policies and practices that unlawfully prohibit employees from engaging in whistleblowing, seeking new or better work, disclosing

1  information about their wages and working conditions, or otherwise engaging in protected speech

2  under California law." *Id.* ¶ 44.  The Court held that such allegations were non-contractual and

3  therefore fall outside the ambit of *Edwards*, but that they were nonetheless too vague and

4  conclusory to meet the pleading standards of *Twombly* and *Iqbal*.  Order at 10-11.

5  In light of the above, the Court granted Juul's motion to dismiss Claims 1-4 without

6  prejudice.  Ms. Hamilton has argued that she could pose an as-applied challenge to the three

7  employment documents at issue (rather than a facial challenge), with copies of purported Juul

8  policies that buttress her claims.  Order at 11.  This Court therefore allowed Ms. Hamilton leave to

9  amend her complaint with two categories of factual allegations: (1) allegations that demonstrate

10  the contracts should be *interpreted* as prohibiting her from whistleblowing, engaging in otherwise

11  lawful conduct during non-working hours, disclosing her wages and working conditions, or

12  violating other Labor Code violations; and (2) allegations in support of her non-contract based

13  claims.  *Id.  Cf. Edwards*, 44 Cal. 4th at 955 n.7 ("[o]ur holding that contracts ordinarily are

14  presumed to incorporate statutory requirements and that the TONC here was not per se unlawful,

15  does not preclude Edwards from offering proof on remand of facts that might prove the exception

16  to the general rule based on Andersen's conduct. We express no opinion concerning the merits of

17  such a claim, which alleges a factual theory that is independent of the legal theory the trial court

18  resolved and that we review in this opinion").

19  With respect to Claims 5-6, the Court found that Ms. Hamilton sufficiently stated a claim

20  for a PAGA violation under Labor Code § 432.5, with Government Code § 12964.5 as the

21  predicate.  Order at 16.  It denied Juul's motion to dismiss Claim 5 and also denied Juul's motion

22  to dismiss Claim 6 under the UCL because she stated a viable claim under the Labor Code.  *Id.*

23  **II.      DISCUSSION**

24  A.      Rule 12(b)(6)

25  Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain

26  statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A

27  complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil

28  Procedure 12(b)(6).  *See* Fed. R. Civ. P. 12(b)(6).  To overcome a Rule 12(b)(6) motion to dismiss

after the Supreme Court's decisions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), a plaintiff's "factual allegations [in the complaint] 'must . . . suggest that the claim has at least a plausible chance of success.'" *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014). The court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). But "allegations in a complaint . . . may not simply recite the elements of a cause of action [and] must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Levitt*, 765 F.3d at 1135 (internal quotation marks omitted).[2] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted).

B.      Rule 12(f)

Pursuant to Rule 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). *See also Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973–74 (9th Cir. 2010). The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial. *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993).

C.      Ms. Hamilton's FAC

Ms. Hamilton alleges the same six claims in the FAC as in the original, unamended complaint. However, she adds a seventh claim for an alleged violation of Labor Code §§ 1101 and 1102. FAC ¶ 154. Labor Code § 1101 provides as follows:

> "[n]o employer shall make, adopt, or enforce any rule, regulation, or policy:

---

[2] A court "need not . . . accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

United States District Court
Northern District of California

1

> (a)    Forbidding or preventing employees from engaging or participating in politics or from becoming candidates for public office.

2

3

> (b)    Controlling or directing, or tending to control or direct the political activities or affiliations of employees.

4

5    Cal. Lab. Code § 1101.  Labor Code § 1102, in turn provides as follows:

6

> "[n]o employer shall coerce or influence or attempt to coerce or influence his employees through or by means of threat of discharge or loss of employment to adopt or follow or refrain from adopting or following any particular course or line of political action or political activity."

7

8

9    Cal. Lab. Code § 1102.  Plaintiff seeks relief for a violation of Labor Code §§ 1101 and 1102 in

10   the form of civil penalties under PAGA.  FAC ¶ 158.

11         Plaintiffs allege that Juul has violated PAGA and the Labor Code in two distinct ways.

12   First, Plaintiffs provide evidence of Juul's policies and practices in order to show that Juul's

13   employment contracts should be interpreted in a way that is violative of the California Labor Code

14   despite *Edwards*.  *Cf. Edwards*, 44 Cal. 4th at 955 n.7 (holding that, while contracts "ordinarily

15   are presumed to incorporate statutory requirements," Plaintiff was "not preclude[d] … from

16   offering proof on remand of facts that might prove the exception to the general rule based on

17   [Defendant's] conduct").  Second, Plaintiffs allege that Juul's policies and practices are violative

18   of the Labor Code irrespective of the three employment contracts at issue.  Accordingly, the Court

19   analyzes the plausibility of Plaintiffs' claims that:  (1) even under *Edwards* the three contractual

20   documents violate the law, and (2) Juul's conduct violates PAGA and the Labor Code separate

21   and apart from contract issues under *Edwards*.  To do so, the Court first examines the alleged

22   practices and policies of Juul.

23   D.    Plausibility of Claim 1 (California Labor Code § 1102.5(a))

24         Claim 1 is brought under California Labor Code § 1102.5(a), which broadly prohibits

25   employers from adopting rules which prevent employees from disclosing information to (1)

26   government or law enforcement agencies, (2) persons who have the authority to investigate,

27   discover, or correct the violation or non-compliance, and/or (3) any public body conducting an

28   investigation, hearing, or inquiry into the matter.  Cal. Lab. Code § 1102.5(a).  The employee must

10

1   have reasonable cause to believe that the information discloses a violation of a state or federal

2   statute, or a violation of or noncompliance with a local, state, or federal rule or regulation

3   (regardless of whether disclosing the information is part of that employee's job duties).  *Id.*

4     Here, Plaintiffs allege that Juul employees were instructed by senior executives not to relay

5   information in a recorded form, particularly information concerning potential or actual illegal

6   conduct at Juul or the public health dangers of Juul's products.  FAC ¶¶ 60, 106.  Further,

7   Plaintiffs allege that Juul employees were instructed to rewrite or delete written materials to

8   conceal information about potential or actual illegal conduct from government investigators.  *Id.*

9   Plaintiffs allege that they experienced this conduct "first-hand from senior executives."  *Id.*

10     According to Plaintiffs, Juul had a carefully crafted plan for dealing with government

11   investigators.  First, Juul actively prepared for unannounced government inspections of its offices

12   by running "drills" wherein employees concealed incriminating evidence and information upon

13   receiving notice that a regulator or government agent was on site.  FAC ¶¶ 61, 106.  Second,

14   employees were instructed at all-hands meetings not to speak to government regulators unless they

15   had no choice, and that they should direct such regulators to specifically identified Juul

16   employees.  FAC ¶ 62.  Third, those Juul employees who did speak to government regulators were

17   trained to conceal information while still being "technically" truthful, *e.g.*, by avoiding disclosure

18   to the FDA of information about design changes to products, including gasket and pressure

19   sensors.  *Id.*  Specifically, Juul instructed its employees to provide false information to

20   government officials with respect to the fact that Juul targets its products to minors.  FAC ¶ 106.

21     Juul executives also instructed employees (through email communications, all-hands

22   meetings, and other communications) not to speak to the press or other third parties about Juul.

23   FAC ¶ 64.  Plaintiffs specifically allege that these admonitions occurred both during and after a

24   government inspection at JUUL's headquarters, as well as after the announcement by Altria (one

25   of the largest tobacco companies in the world) of a $12.8 billion investment in Juul in exchange

26   for 35% of the company.  FAC ¶¶ 12, 64.  Mr. Isaacson also alleges that he received a negative

27   reception from fellow parents concerning his Juul-branded sweatshirt during a visit to his

28   daughter's college campus, and that he was subsequently given a poor performance review after

United States District Court
Northern District of California

1    reporting this incident (and Juul's marketing problems more generally).  FAC ¶ 66.  Juul

2    subsequently took further adverse action against Mr. Isaacson for reporting illegal conduct.  FAC

3    ¶ 67.

4           Both Ms. Hamilton and Mr. Isaacson describe a "culture of concealment" at Juul, and

5    report instances of direct retaliation for reporting illegal conduct, as well as conduct that is

6    potentially violative of government regulations.  FAC ¶ 59.  For instance, Ms. Hamilton internally

7    disclosed information concerning Juul's potentially unlawful conduct with respect to its products,

8    testing on employees, safety and clinical practices, and the shipping of products.  FAC ¶ 65.  This

9    information was disclosed to her superiors as well as "persons at JUUL in a position to investigate

10   and/or correct these problems," often in writing (in violation of Juul's policies, which forbid the

11   recordation of potentially incriminating information).  *Id.*  She alleges that Juul retaliated against

12   her in response to these reports.  *Id.*  Mr. Isaacson alleges similar retaliation.  He claims that he

13   reported information to his superiors (and others in a position to investigate and correct the

14   problem) concerning potentially illegal conduct with respect to Juul (a) making changes to its

15   products in violation of the FDA's deeming rule; (b) concealing these changes; (c) refusing to

16   document its compliance with applicable policies and regulations (and/or failing to comply at all);

17   (d) rushing potentially unsafe products to market; (e) testing its products on human subjects, (f)

18   continuing to permit vaping in the workplace in violation of the law; and (g) engaging in other

19   gross violations of workplace safety rules, including storing jugs of cancer-causing chemicals in

20   unsecure areas.  FAC ¶ 67.  Mr. Isaacson alleges that Juul subsequently took adverse action

21   against him, and that it has retaliated against other employee whistleblowers who disclosed

22   potentially illegal conduct.  FAC ¶¶ 67, 68.

23          Accepting these allegations as true, and construing all inferences in Plaintiffs' favor, the

24   NDA can be interpreted as unlawful under *Edwards*.  This Court previously found that Paragraph

25   15, which subjects the NDA to the "internal substantive laws … of the state of California," was a

26   savings clause for the confidentiality provision of Paragraph 4.1, because the latter could be read

27   as only prohibiting proprietary information as permitted by Labor Code § 232.5(d).  *See* NDA,

28   Docket No. 32, Ex. A, §§ 4.1, 15.  Plaintiffs have now plausibly alleged that the NDA should be

1    interpreted more broadly so as to rebut the savings rule of construction under *Edwards*.  The

2    factual allegations concerning Juul's culture of concealment allow for Paragraph 4.1 to be read as

3    extending beyond proprietary information and encompassing employee communications on any

4    matter which could be detrimental to Juul, including communications about potential violations of

5    state or federal laws or regulations, in violation of Labor Code § 1102.5(a).

6         Separately and apart from the *Edwards* contractual interpretation issue, Plaintiffs have

7    plausibly alleged that Juul's policies and practices themselves directly violate the Labor Code.

8    Plaintiffs allege that Juul has a pattern and practice of (1) preventing employees from sharing

9    information with government investigators, and (2) reprimanding employees for reporting

10   negative publicity and illegal conduct internally.  Both Ms. Hamilton and Mr. Isaacson allege

11   specific instances wherein Juul trained its employees to conceal and withhold information from

12   government regulators.  And they both allege instances wherein Juul reprimanded them for

13   internally reporting unlawful conduct to employees in a position to investigate and/or correct the

14   violation.  This is precisely the type of conduct which Labor Code § 1102.5 makes unlawful.  As

15   the Director of Program Management and the Senior Director of Design Assurance, Ms. Hamilton

16   and Mr. Isaacson were in a position to have "reasonable cause to believe" that they were

17   disclosing information about potential violations of federal and state laws.  *See* Cal. Lab. Code §

18   1102.5(a).

19        The Court therefore finds that Plaintiffs have stated a plausible claim that the NDA can be

20   interpreted as violating Labor Code § 1102.5(a) in a way that rebuts *Edwards*, and that Plaintiffs

21   have also stated a plausible claim that Juul's policies and practices violate § 1102.5(a) irrespective

22   of the contract provisions subject to *Edwards*.

23   E.   Plausibility of Claim 2 (California Labor Code §§ 96(k), 98.6(a))

24        Claim 2 is brought under Labor Code § 96(k), which provides as follows: "[t]he Labor

25   Commissioner … shall, upon the filing of a claim therefor by an employee … take assignments of

26   … [c]laims for loss of wages as the result of demotion, suspension, or discharge from employment

27   for lawful conduct occurring during nonworking hours away from the employer's premises."  Cal.

28   Lab. Code § 96(k).  Claim 2 is also brought under Labor Code § 98.6, which provides as follows:

United States District Court
Northern District of California

13

United States District Court
Northern District of California

"[a] person shall not discharge an employee or in any manner discriminate, retaliate, or take any adverse action against any employee … because the employee … engaged in … the conduct described in subdivision (k) of Section 96, and Chapter 5 (commencing with Section 1101) or because the employee … has filed a bona fide complaint or claim or instituted … any proceeding under or relating to his or her rights that are under the jurisdiction of the Labor Commissioner." Cal. Lab. Code § 98.6(a).  § 98.6 therefore protects the political conduct described in Labor Code § 1101, which prohibits employers from "[c]ontrolling … the political activities or affiliations of employees," and that described in Labor Code § 1102, which prohibits employers from coercing or influencing employees' "political activit[ies]."  *See* Cal. Lab. Code §§ 1101, 1102.  These two statutes "cannot be narrowly confined to partisan activity," for "'[t]he term 'political activity' connotes the espousal of a candidate *or a cause*, and some degree of action to promote the acceptance thereof by other persons."  *Gay Law Students Ass'n v. Pac. Tel. & Tel. Co.*, 24 Cal. 3d 458, 487, 156 Cal. Rptr. 14, 32, 595 P.2d 592, 610 (1979) (emphasis in original; citing *Mallard v. Boring*, 182 Cal. App. 2d 390, 395 (1960)).  *Cf. Ross v. Indep. Living Res.*, No. C08-00854 TEH, 2010 U.S. Dist. LEXIS 73886, at *26 (N.D. Cal. July 21, 2010) ("[t]he California Supreme Court has defined political activity in the section 1101 context as extending beyond partisan activity to include the espousal of a candidate or a cause, and some degree of action to promote the acceptance thereof by other persons") (internal quotation marks omitted).

However, in *Grinzi*, the California Fourth District Court of Appeal clarified that "neither section 96, subsection (k), nor section 98.6 adequately supports a public policy against a private employer's termination of an employee for the employee's lawful conduct, *otherwise unprotected by the Labor Code*, occurring during nonworking hours away from the employer's premises." *Grinzi v. San Diego Hospice Corp.*, 120 Cal. App. 4th 72, 88, 14 Cal. Rptr. 3d 893, 904-05 (2004) (emphasis added).  Further, a private employee has no recognized constitutional protection from termination by a private employer based on speech.  *See id.*

Accordingly, in order to state a plausible claim under *Grinzi*, Plaintiffs must show that they suffered adverse action for engaging in activity which is protected under the Labor Code.  For instance, Plaintiffs state a claim for protected activities under § 98.6 when they allege (1) that they

14

United States District Court
Northern District of California

1    were retaliated against for reporting illegal conduct at Juul to their supervisors or government

2    investigators in violation of Labor Code § 1102.5, or (2) when they state that Juul improperly

3    attempted to control their political opinions (*i.e.*, their espousal of a candidate or a cause) in

4    violation of Labor Code §§ 1101 and 1102. *See Hollie v. Concentra Health Servs.*, No. C 10-5197

5    PJH, 2012 U.S. Dist. LEXIS 40203, at *18 (N.D. Cal. Mar. 23, 2012) ("[u]nder § 98.6, employers

6    may not discharge or discriminate against an employee for *political activities*; for *whistleblowing*;

7    for assigning wage claims to the Labor Commissioner resulting from demotion, suspension, or

8    discharge for lawful conduct occurring during nonworking hours away from employer's premises;

9    for filing a complaint with the Labor Commissioner or testifying in such proceedings; for

10   initiating proceedings against the employer to collect civil penalties under [PAGA]; and for

11   exercising any rights afforded him or her") (emphasis added) (internal quotation marks omitted);

12   *Weingand v. Harland Fin. Sols., Inc.*, No. C-11-3109 EMC, 2012 U.S. Dist. LEXIS 114651, at

13   *17-18 (N.D. Cal. Aug. 14, 2012) (agreeing with the holding in *Hollie* that Labor Code § 98.6

14   protects the whistleblowing activities described in Labor Code § 1102.5).

15   Applied to the case at bar, Plaintiffs have stated a plausible claim that Juul's enforcement

16   of its External Communications Policy ("ECP") violates §§ 96(k) and 98.6(a) in a way that

17   overcomes *Edwards*.  Plaintiffs cite numerous provisions of Juul's ECP as evidence of the

18   suppression of political activities outside the workplace.  Plaintiffs allege that the ECP

19   encompasses the written instruments which evidence Juul's confidentiality policies.  FAC ¶ 43.

20   Because the FAC explicitly refers to the ECP, and because it is central to Plaintiffs' claims and the

21   parties agree on its validity, the Court incorporates it by reference.  *Cf. Marder v. Lopez*, 450 F.3d

22   445, 448 (9th Cir. 2006) ("[a] court may consider evidence on which the complaint 'necessarily

23   relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's

24   claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion");

25   *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1003 (9th Cir. 2018) ("[w]e have stated that,

26   unlike judicial notice, a court may assume [an incorporated document's] contents are true for

27   purposes of a motion to dismiss under Rule 12(b)(6)") (internal citation omitted).

28   The ECP regulates communications, subjecting them to sanctions, which are protected by

the Labor Code.  For instance, at the motion hearing, counsel for Plaintiffs cited Section 6.4.6.3 of the ECP, which provides "[a]ll JUUL Labs Personnel must be aware that any communication about the Company or its products, staff, policies, research, relationships, or competitors generally constitutes a Company Communication and is covered by this Policy."  *See* Juul Labs, Inc. External Communications Policy, Hayes Decl., Ex. G ("Providing Product Information") ("ECP") (Docket No. 33-1).  Section 6.2.1, in turn, provides "[a]ll Company Communications must receive internal approval," and Section 6.2.2 provides "[c]onfidential information, any information marked or intended only for internal communication or use within the Company, *and any other information obtained during the course of employment* must not be disclosed or used in any Company Communication or personal communication without prior approval."  *See* ECP §§ 6.2.1, 6.2.2 ("Approval of Communications") (emphasis added).  Section 1.1 provides "[t]his Policy … clarifies the obligations [of] all JUUL Labs directors, officers, and employees, *regardless of location* or nationality."  ECP § 1.1 (emphasis added).

These provisions of the ECP operate to prevent Juul employees from "espous[ing] … a candidate or a cause" absent company approval, regardless of their location. *Gay Law Students Ass'n*, 24 Cal. 3d at 487.  Plaintiffs allege that Juul relies upon these provisions of the ECP to "prohibit[] employees from speaking to political candidates about alleged 'misinformation' concerning JUUL, discussing vaping with minors, or laughing at memes."  FAC ¶ 106. Discussions about minors' use of vaping products, and the role of vaping products as alternatives to tobacco-based products, undoubtedly qualify as a "cause" for purposes of §§ 1101 and 1102, and these discussions are likely to generate "heated political debate."  *Gay Law Students Ass'n*, 24 Cal. 3d at 488 ("the struggle of the homosexual community for equal rights, particularly in the field of employment, must be recognized as a political activity. Indeed the subject of the rights of homosexuals incites heated political debate today").

The ECP therefore restricts (and subjects to Juul's prior approval) protected political communications, including purely personal communications, about Juul obtained during the course of employment.  Such communications, which may occur outside of Juul's premises and

1    outside of working hours, must receive approval from Juul as a "Company Communication."[3]

2    Plaintiff has therefore plausibly alleged that the ECP prevents employees from engaging in

3    political activities, such as engaging with political candidates about alleged misinformation and

4    discussing vaping with minors, that are explicitly protected by §§ 1101 and 1102 Labor Code.

5         Plaintiffs have also stated a plausible claim that Juul's policies and practices violate the

6    Labor Code, separately and apart from any presumptive construction under *Edwards*.  Section

7    6.2.5 of the ECP provides "[a]ll communications with governmental, regulatory, non-

8    governmental, or other public bodies must be made by personnel authorized by the Chief Legal

9    Officer in consultation with the necessary regulatory or governmental employees."  ECP § 6.2.5.

10   But Plaintiffs allege that Juul's policies and practices are even more restrictive than this provision

11   of the ECP.  Juul instructed its employees "not to speak to government regulators unless they had

12   no choice," trained its employees "to conceal information from government regulators while being

13   'technically' truthful," and held "hats on-hats off" meetings in which employees were coached on

14   the ways in which FDA regulators may attempt to glean information.  FAC ¶ 62, 63.  Even when

15   Ms. Hamilton sought to disclose information *internally* regarding Juul's unlawful testing of its

16   products on employees and its safety practices, she was retaliated against.[4]  FAC ¶ 65.

17        This is unlawful because employees in California have a protected right to engage in such

18   whistleblowing activities, whether information is disclosed internally or to a government agency.

19   *See* Cal. Lab. Code § 1102.5(a) (making it unlawful for an employer to impose any policy which

20

21   [3] To be fair, the ECP also provides that it "does not apply to communications made by JUUL Labs
     Personnel in a purely personal capacity."  ECP § 2.4.  But the determination of whether a

22   particular communication is a Company Communication, as opposed to a personal
     communication, is entirely in Juul's discretion.  *See id.* ("[t]he determination as to whether a

23   communication constitutes a Company Communication shall be subject to the determination of
     Legal and Compliance").

24   [4] At the motion hearing, counsel for Defendant noted that § 1101 applies to any "rule, regulation,

25   or policy" by an employer.  Cal. Lab. Code § 1101.  Counsel for Defendant cited *Lockheed
     Aircraft Corp. v. Superior Court of L.A. Cty.*, 28 Cal. 2d 481, 485-86, 171 P.2d 21, 24 (1946),

26   which defined a "policy" as "[a] settled or definite course or method adopted and followed by a
     government, institution, body, or individual," and argued that Juul does not have a company

27   policy within this definition.  *Id.*  However, Plaintiffs have alleged a policy within the meaning of
     *Lockheed Aircraft*.  They allege that Juul "enforced a *policy* that prevented employees from
     engaging in both internal and external whistleblowing," and that such a policy was part of a

28   "culture of concealment" which was hostile to whistleblowers.  FAC ¶ 116 (emphasis added).

1   "prevent[s] an employee from disclosing information to a government or law enforcement agency

2   … or to another employee who has authority to investigate, discover, or correct the violation or

3   noncompliance").  And, as discussed *supra*, Labor Code § 98.6 expressly prohibits employers

4   from discharging or discriminating against an employee for whistleblowing activities protected by

5   Labor Code § 1102.5.  *Hollie*, 2012 U.S. Dist. LEXIS 40203 at *18.

6        In sum, Plaintiffs have rebutted the *Edwards* saving construction and state a plausible

7   claim that the ECP unlawfully impinges on speech protected by the Labor Code.  Separate and

8   apart from *Edwards*, Plaintiffs have plausibly alleged that Juul's policies and practices are

9   unlawful, on their own, under §§ 96(k) and 98.6(a).

10  F.     Plausibility of Claim 3 (California Labor Code §§ 232, 1197.5(k))

11       Claim 3 alleges a violation of Labor Code §§ 232, which provides that no employer may

12  "require, as a condition of employment, that an employee refrain from disclosing the amount of

13  his or her wages," and 1197.5(k), which states, *inter alia*, that "an employer shall not prohibit an

14  employee from disclosing the employee's own wages, discussing the wages of others, inquiring

15  about another employee's wages, or aiding or encouraging any other employee to exercise his or

16  her rights under [Labor Code § 1197.5]."  *See* Cal Lab. Code §§ 232, 1197.5(k).  The term

17  "wages" includes "all amounts for labor performed by employees of every description, whether

18  the amount is fixed or ascertained by the standard of time, task, piece, commission basis, or other

19  method of calculation."  *See* Cal. Lab. Code § 200.  *Cf. Grant-Burton v. Covenant Care, Inc.*, 99

20  Cal. App. 4th 1361, 1371, 122 Cal. Rptr. 2d 204, 213 (2002) ("[t]he complaint alleged that Grant-

21  Burton was discharged for discussing the subject of bonuses with other marketing directors and

22  for saying she did not receive one. The complaint specifically cited section 232. Accordingly, the

23  issues raised in the complaint properly framed the scope of Covenant Care's motion for summary

24  judgment").

25       In support of Claim 3, Ms. Hamilton alleges the following: "JUUL's employee handbook

26  contains extensive information about JUUL's policies and benefits as it relates to wages, including

27  referral bonuses, overtime, discounted JUUL pods, 401(k) plans, and paid time off. JUUL also

28  states that 'the working conditions, policies, procedures, appeal processes, and benefits described

United States District Court
Northern District of California

18

in this handbook are confidential and may not be distributed in any way nor discussed with anyone who is not an employee of JUUL Labs.'"  FAC ¶ 134.  However, even if the term "wages" were construed broadly, this language is not contained in the applicable Handbook.  The passage which Ms. Hamilton cites in paragraph 134 of the FAC apparently comes from a version of the Handbook which was issued *before* August 14, 2018.  But any PAGA claim based on any such earlier version of the Handbook would fall outside the PAGA limitations period.  The statute of limitations for PAGA claims is one year, which means that aggrieved employees have one year in which to file their PAGA notice for the alleged Labor Code violations at issue.  *See* Cal. Code Civ. Proc. § 340; *Brown v. Ralphs Grocery Co.*, 28 Cal. App. 5th 824, 839, 239 Cal. Rptr. 3d 519, 530 (2018).  Here, Ms. Hamilton was terminated on March 15, 2019 and filed her first PAGA complaint with the Labor Workforce & Development Agency ("LWDA") on August 14, 2019.  Compl. ¶ 36; FAC ¶ 85.  But there is nothing in the August 14, 2018 Culture & Policy Handbook ("Handbook"), or any of the later versions, which contains the language Plaintiffs rely upon (*i.e.*, which evinces an intent to prevent Juul employees from discussing wages, bonuses, overtime, or any other facets of their employee benefits with individuals who do not work for Juul).  *See* Hayes Decl., Ex. A-D (Docket No. 33-1).  Accordingly, Plaintiff is time-barred from relying on earlier versions of the Handbook in support of Claim 3, and must be dismissed.

G.      Plausibility of Claim 4 (California Labor Code § 232.5)

       Claim 4 is predicated on an alleged violation of (1) California Labor Code § 232.5(a), which provides that no employer may "[r]equire, as a condition of employment, that an employee refrain from disclosing information about the employer's working conditions," and (2) California Labor Code § 232.5(b), which provides that no employer may "[r]equire an employee to sign a waiver or other document that purports to deny the employee the right to disclose information about the employer's working conditions."  Cal. Lab. Code §§ 232.5(a), (b).  Labor Code § 232.5(a) applies to both internal and external disclosures of working conditions.  *See Ferrick v. Santa Clara Univ.*, 231 Cal. App. 4th 1337, 181 Cal. Rptr. 3d 68 (2014) (finding that an employee pled a plausible claim under § 232.5 where she made an internal report about alleged wrongdoing and there was a causal connection between her internal report and her termination).

United States District Court
Northern District of California

1    Ms. Hamilton and Mr. Isaacson allege numerous instances of retaliatory conduct occurring

2    after they used internal complaint mechanisms to make allegations of illegal conduct.  *See*, *e.g.*,

3    FAC ¶¶ 64 (describing the "admonitions" Juul employees received for speaking to the press or

4    third parties about Juul); 65 (Ms. Hamilton reprimanded after internal written complaints

5    concerning Juul's testing and safety practices); 66 (Mr. Isaacson reprimanded for reporting the

6    negative reaction he received from parents when wearing a Juul-branded sweatshirt to his

7    daughter's college campus); 67 (Mr. Isaacson receiving adverse action after disclosing illegal

8    conduct to superiors who were in a position to investigate); 68 (alleging that this practice was

9    widespread).  And, as in *Ferrick*, there is a direct causal connection between this whistleblowing

10   activity and the circumstances of their termination.  *See*, *e.g.*, FAC ¶¶ 65 (describing direct

11   retaliation against Ms. Hamilton for internally disclosing potentially unlawful practices, in writing,

12   to her superiors), 81 ("JUUL announced layoffs in which employees who had not engaged in

13   whistleblowing were paid substantially larger severance packages than the one offered to

14   Isaacson").  These internal complaints allege violations of regulatory statutes and other federal and

15   state laws that affect the health and welfare of our society.  *Cf. Smith v. Constellation Brands, Inc.*,

16   725 F. App'x 504, 506 (9th Cir. 2018) (holding that an employee may state a claim for wrongful

17   discharge in violation of public policy, under Labor Code § 232.5(c), where the disclosed matters

18   relate to an issue that inures to the benefit of the public, rather than a purely personal matter).

19   Sanctioning whistleblowing conduct violates California Labor Code § 232.5(a) and (b).

20   Once again, these factual allegations serve to rebut the *Edwards* presumption, because they

21   show that Paragraph 4 of the NDA, which this Court previously found could be interpreted in a

22   way that is lawful (*e.g.*, as only preventing the disclosure of proprietary information), operates

23   more broadly in practice to silence whistleblower employees who disclose potentially unlawful

24   practices.

25   Further, under *Ferrick*, Plaintiffs may state a plausible claim under § 232.5 for Juul's

26   policies and practices (independent of *Edwards*), because they made internal disclosures to

27   supervisory employees in a position to investigate the matter, and they have pled a causal link

28   between these disclosures and their termination.

Plaintiffs have therefore stated a plausible claim that the NDA violates Labor Code § 232.5 under *Edwards*, and they have stated a plausible claim that Juul's policies and practices violate Labor Code § 232.5 independently of *Edwards*.

H.     Plausibility of Claim 7 (California Labor Code §§ 1101, 1102)

Claim 7 is brought under Labor Code § 1101, which forbids employers from adopting any rule, regulation, or policy which: (a) "[f]orbid[s] or prevent[s] employees from engaging or participating in politics or from becoming candidates for public office" or (b) "[c]ontrol[s] or direct[s], or tend[s] to control or direct the political activities or affiliations of employees." Cal. Lab. Code § 1101.  It is also brought under Labor Code § 1102, which provides that no employer shall "influence or attempt to coerce or influence his employees through or by means of threat of discharge or loss of employment to adopt or follow or refrain from adopting or following any particular course or line of political action or political activity." Cal. Lab. Code § 1102.

Labor Code §§ 1101 and 1102 are "designed to protect the fundamental right of employees in general to engage in political activity without interference by employers." *Couch v. Morgan Stanley & Co.*, No. 1:14-cv-10-LJO-JLT, 2015 U.S. Dist. LEXIS 104021, at *31 (E.D. Cal. Aug. 6, 2015) (internal quotation marks omitted).  The purpose of these sections is to prevent employers from "misus[ing] their economic power" to interfere with their employees' political activities, namely their "espousal of a candidate or a cause." *Gay Law Students Ass'n*, 24 Cal. 3d at 487 (emphasis omitted).  In essence, these two sections "forbid employers to attempt to control the political activities of employees." *McKeon v. Mercy Healthcare Sacramento*, 19 Cal. 4th 321, 330, 79 Cal. Rptr. 2d 319, 324, 965 P.2d 1189, 1194 (1998).

The provisions of the ECP, discussed *supra*, exhibit the strict control over Juul employees' political opinions which the Labor Code forbids.  Section 6.4.6.3 provides "[a]ll JUUL Labs Personnel must be aware that any communication about the Company or its products, staff, policies, research, relationships, or competitors generally constitutes a Company Communication and is covered by this Policy." *See* Juul Labs, Inc. External Communications Policy, Hayes Decl., Ex. G ("Providing Product Information") ("ECP") (Docket No. 33-1).  Section 6.2.1 provides "[a]ll Company Communications must receive internal approval," and Section 6.2.2 provides

United States District Court
Northern District of California

1    "[c]onfidential information, any information marked or intended only for internal communication

2    or use within the Company, *and any other information obtained during the course of employment*

3    must not be disclosed or used in any Company Communication or personal communication

4    without prior approval."  *See* ECP §§ 6.2.1, 6.2.2 ("Approval of Communications") (emphasis

5    added).  Together, these provisions operate to place prior restraints on Juul employees'

6    communications about any matter related to the company, including their espousal of causes

7    relating to vaping products.  The ECP thereby interferes with the opinions of Juul employees' in a

8    manner that violates the Labor Code, and it can be interpreted as unlawfully broad despite

9    *Edwards*.

10        Juul's day-to-day policies and practices are just as restrictive.  Plaintiffs allege that

11    "JUUL's Non-Contractual Policies and Practices … establish that JUUL made, adopted, and

12    enforced a policy that prevented employees from engaging in political activity in violation of

13    Labor Code § 1101 and 1102. This illegal policy is evidenced by JUUL's written instruments,

14    employee training, and JUUL's culture of concealment."  FAC ¶ 157.  For instance, Juul instructs

15    employees "that they cannot – among other things – correct political candidates spreading alleged

16    'misinformation' about JUUL, 'engage with youth on the topics of tobacco and nicotine,' 'engage

17    in social media,' discuss vaping, cigarettes, drinking, or any age-restricted products in the 'earshot

18    of youth,' share or laugh at JUUL Labs-related memes, or help a young family member quit

19    smoking."  FAC ¶ 51.  Accepting these allegations as true and drawing all reasonable inferences in

20    Plaintiffs' favor, the Court finds that these allegations state a plausible claim for unlawful

21    suppression of protected political activities that is independent of *Edwards*.[5]  Even without the

22    ECP, these policies and practices operate as a prior restraint on Juul employees' espousal of a

23

24    [5] At the motion hearing, counsel for Juul argued that these alleged practices only took place with
     respect to a limited subset of employees, and that any trial would therefore be unmanageable
25    because it would devolve into a series of individualized mini trials.  The Court first notes that
     many district courts in the Ninth Circuit have held that PAGA does not include a separate
26    manageability requirement.  *See, e.g.*, *Tseng v. Nordstrom, Inc.*, No. CV11-8471-CAS(MRWx),
     2016 U.S. Dist. LEXIS 176790, at *15-16 (C.D. Cal. Dec. 19, 2016); *Zackaria v. Wal-Mart
27    Stores, Inc.*, 142 F. Supp. 3d 949, 959 (C.D. Cal. 2015); *Zayers v. Kiewit Infrastructure W. Co.*,
     No. 16-CV-06405 PSG (PJW), 2017 U.S. Dist. LEXIS 216715, at *29 (C.D. Cal. Nov. 9, 2017).
28    Nonetheless, the Court need not resolve this question at this stage of the litigation, because the
     inquiry concerns plausibility not manageability.

1    candidate or a cause.  These policies and practices prevent Juul employees from promoting (or

2    even engaging with) a political candidate, and they prevent employees from engaging with vaping-

3    related causes on the internet.

4          In sum, Plaintiffs have stated a plausible claim in two ways.  They have offered evidence

5    that the ECP can be interpreted as to be unlawfully broad, having rebutted the *Edwards*

6    presumptive construction.  And they have stated a plausible claim that its practices and policies

7    violate §§ 1101 and 1102 independent of *Edwards*.

8    I.    Juul's Motion to Strike

9          Juul asks the Court to strike two portions of the FAC.  First, Juul wishes to strike the

10   portions of the FAC concerning concealment of evidence (FAC ¶¶ 55-56, 93-103).  MTS at 7.

11   These portions primarily relate to Ms. Hamilton's inability to obtain the Handbook and other

12   written policies concerning the confidentiality provisions at issue for her and Mr. Isaacson

13   throughout their tenure as employees.

14         Specifically, Ms. Hamilton alleges that Juul's refusal to produce the handbook during

15   discovery violated two California Labor Code statutes: (1) § 1198.5, which states that "every

16   current and former employee, or his or her representative, has the right to inspect and receive a

17   copy of the personnel records that the employee maintains relating to the employee's performance

18   or to any grievance concerning the employee. . . The employer shall make the contents of those

19   personnel records available for inspection to the current or former employee. . ." and (2) § 226(b),

20   which requires the employer "to afford current and former employees the right to inspect and

21   receive a copy of records pertaining to their employment, upon reasonable request to the

22   employer." FAC ¶¶ 95, 96.  Ms. Hamilton also alleges a violation of this Court's General Order

23   No. 71, which requires a Defendant to produce "workplace policies and guidelines relevant to the

24   adverse action in effect at the time of the adverse action," as well as "the table of contents and

25   index of any employee handbook, code of conduct, or policies and procedurals manual in effect at

26   the time of the adverse action."  *See* Initial Discovery Protocols for Employment Cases Alleging

27   Adverse Action, Part 2, §2(g) and (h). The Order further provides that these materials must be

28   produced within 30 days of the date upon which the Defendant files a responsive pleading.  *Id.*

United States District Court
Northern District of California

23

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Indeed, Juul only submitted the Handbook as an attached declaration with its Motion to Dismiss, which was filed on November 19, 2020.  It was not provided to Ms. Hamilton during discovery.  Because Juul's refusal to turn over the agreements (which employees signed as a regular part of their employment) is probative of how these agreements operated in practice, and of Juul's compliance with its discovery obligations, the Court denies Juul's motion to strike the factual allegations in paragraphs 55-56, and 93-103 of the FAC.

Second, Juul argues that the Court should strike Ms. Hamilton's allegations in paragraphs 78–79 and 109 that her counsel proposed various revisions to her Severance Agreement to "ensure it was legal."  MTS at 11. Juul argues that these allegations ignore and disregard the Court's Order on Juul's prior motion to dismiss, which found that the Severance Agreement included carveouts for protected activity.  *Id.*  Juul argues that Ms. Hamilton's allegations that her counsel needed to propose revisions to the Severance Agreement "to ensure it was legal" are therefore immaterial and impertinent and should be stricken.  MTS at 12.  The Court agrees.  These proposed revisions by counsel have no probative value to the issues at hand.

### III.   <u>CONCLUSION</u>

For the foregoing reasons, the Court **GRANTS** Defendant's Motion to Dismiss Claim 3 (Plaintiffs' claims brought under Labor Code §§ 232 and 1197.5(k)), and this dismissal is with prejudice because Plaintiffs have already been given leave to amend.  However, the Court **DENIES** Defendant's Motion to Dismiss Claims 1, 2, 4, 5, 6, and 7.

///

///

///

///

///

///

///

///

///

The Court **DENIES** Defendant's motion to strike the portions of the FAC concerning concealment of evidence (FAC ¶¶ 55-56, 93-103), and **GRANTS** Defendant's motion to strike Ms. Hamilton's allegations (in paragraphs 78–79 and 109 of the FAC) concerning the various revisions which her counsel proposed to the Severance Agreement.

This order disposes of Docket Nos. 33 and 34.


**IT IS SO ORDERED**.


Dated: January 27, 2021

_____
EDWARD M. CHEN
United States District Judge